

**U.S. Department of Justice**

Antitrust Division

---

*Mark W. Ryan*　　　　　　　　　　*950 Pennsylvania Avenue, NW,*
*Director of Litigation*　　　　　　　　*Suite 3109*
*Direct Dial: (202) 532-4753*　　　　　*Washington, DC 20530*
*e-mail: mark.w.ryan@usdoj.gov*



June 20, 2012

BY HAND DELIVERY

The Honorable Denise L. Cote
United States District Judge
Southern District of New York
Daniel P. Moynihan U.S. Courthouse
500 Pearl St.
New York, NY 10007-1312

　　　　　　Re:　U.S. v. Apple, Inc., et al, No. 12-cv-2826 (DLC)
　　　　　　　　　11 md 2293 (DLC)

Dear Judge Cote:

　　　　The United States believes that discovery should proceed without delay and that the resolution of the United States' claims need not be combined with trials in the other sets of cases. At the same time, the United States does not wish to see thorough discovery of relevant facts, and the development of a full record for the benefit of the Court, sacrificed solely for the sake of speed. Nor does the United States wish to burden parties and non-parties with repeat depositions or other duplicative discovery as a result of a failure to make reasonable accommodations to the multiple parties in the different sets of cases. "[I]t is best to coordinate discovery plans to avoid conflicts and duplication," MANUAL FOR COMPLEX LITIGATION (FOURTH) § 11.455, at 89, and to save costs, *id.* § 11.423, at 57. Therefore, the United States has been working diligently with the several parties in this litigation to achieve consensus on an approach to discovery.

　　　　The United States' proposal provides for optimal coordination across the cases in discovery, particularly with respect to (1) schedule, (2) limitations on depositions, and (3) the Settling Defendants' participation in discovery. While disagreements on these topics remain, and are addressed below, the United States respectfully submits that its proposed approach offers the most efficient way for the Court and the parties to participate in coordinated discovery.

**Case Schedule.** The United States proposes that all fact discovery in these matters conclude by March 22, 2013. This includes discovery related to class certification and to alleged damages sought by the Plaintiff States or the private plaintiffs. The United States respectfully submits that nine months of fact discovery in major antitrust litigation involving three distinct sets of cases is reasonable. The Plaintiff States and the private plaintiffs agree with the United States on the

March 22 deadline. On the other hand, Apple wants less time for discovery and its co-defendants would like more. Apple asks for a December 7, 2012 deadline, which all other parties believe is insufficient to ensure thorough document discovery and depositions of Apple, its five co-defendants, and multiple third parties.

Apple's suggestion that the United States and the Plaintiff States have had the bulk of the discovery they need as a result of pre-filing investigations is overstated. For example, only one representative of each defendant was deposed during those investigations. Document subpoenas were limited as to breadth and number of custodians. There is much yet to be learned about the scope and identity of individuals who participated in the conspiracy described in the Complaints before the Court and a March 22 deadline will give the Plaintiffs a fair opportunity to do so.

Discovery in litigation is governed by the scope of the pleadings and not by a defendant's assertions about the nature of a pre-filing government investigation. *See, e.g., SEC v. Sargent*, 229 F.3d 68, 80 (1st Cir. 2000) ("Here, even though the [agency] had already conducted a pre-filing investigation . . . there is no authority which suggests that it is appropriate to limit the [agency]'s right to take discovery based upon the extent of its previous investigation into the facts underlying its case." (quotation omitted)). The Complaints here describe a long-running, detailed conspiracy that affected millions of U.S. consumers and likely involved multiple executives at each co-conspirator. Some of the acts in furtherance of the conspiracy occurred in Europe, where the Defendants also pursued a similar course of conduct aimed at European consumers. And many third parties are likely to possess information relevant to the parties' claims and defenses. Time is required to sort these matters out and to bring the full course of the Defendants' conduct to light.

**Deposition Limits.** There is a significant gap between the maximum number of depositions Plaintiffs believe should be allowed in these cases and the smaller number Defendants have proposed. At the outset, it is important to note that there are important differences in the three sets of cases. The United States' case does not involve any claim for damages, which is a part of the Plaintiff States' and the private plaintiffs' cases. The private plaintiffs also seek to establish that their case is suitable for class certification. In addition to these substantive differences in the lawsuits, counsel for different parties undoubtedly will have different ideas as to the best way to prove their respective client's case or, on the defense side, to rebut claims. Prior to document and other preliminary discovery, it is difficult to predict in a litigation of this magnitude how many depositions may ultimately be required.

As to depositions of parties, Defendants have proposed that Plaintiffs collectively be limited to 25 depositions. With six Defendants, this works out to four depositions per Defendant (plus one). But those four must be shared among three sets of Plaintiffs and, at this stage of the proceedings, the Plaintiffs are unable to predict that this severe limitation will prove workable. It may very well be, for example, that there are many employees at each Defendant who were aware of all or some part of the multi-year conspiracy described in the Complaints. The United States fully expects that to be the case. Apart from person with knowledge of the actual conspiracy, there will be others working for the Defendants who will have highly relevant information about the development of the e-book business, intense competition among e-book

retailers, threats directed at Amazon, and the remarkable degree of high level executive meetings among the Defendants to plot common strategies.

To allow for the development of a full factual record, while still imposing a reasonable limitation on the number of depositions, Plaintiffs propose a maximum of 20 depositions of each party. This limitation would allow a maximum of 60 depositions of personnel from the six Defendants, which we respectfully submit is far from an extraordinary number in major, hotly contested antitrust litigation. More than likely, Plaintiffs will take fewer depositions of the parties as there will be overlap of deponents. Nothing in Plaintiffs' proposal would permit any individual to be deposed more than once.

As for non-party depositions, Plaintiffs have suggested a limitation of up to 40, Apple suggests 20, and Macmillan and Penguin suggest 35. In the interest of compromise, the United States will agree to 35.

**Settling Defendants' Participation in Discovery.** Defendants Hachette, HarperCollins, and Simon & Schuster (collectively, "Settling Defendants") have settled the cases brought by the Plaintiff States and by the United States, although not the private class action litigation. As a result of the settlements, these Defendants assert the right to be given special treatment as "non-parties," and to avoid any further discovery unless the party seeking the discovery demonstrates "good cause." *See* Joint Initial Report, Attach. C at 16, 17, 19.

The Settling Defendants did not obtain limitations on providing evidence in future discovery in the settlement agreements they reached with the United States or with the Plaintiff States. This is, after all, a conspiracy case in which the Settling Defendants are alleged co-conspirators. There is, therefore, no remotely plausible argument that they are not likely to be sources of highly relevant evidence. Neither is there any argument that the Settling Defendants have already made available all relevant evidence they may have. For example, the Settling Defendants submitted documents to European Commission competition enforcement authorities in connection with the EC's parallel investigation of the Defendants' conduct. Those documents have not yet been turned over to the United States or to the Plaintiff States. Immunizing the Settling Defendants from further discovery may result in those documents never coming to light in these proceedings and may thwart efforts to obtain testimony from European-based conspirators, not to mention testimony from U.S. personnel.

Respectfully submitted,

Mark W. Ryan

cc: Counsel of Record