UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
UNITED STATES OF AMERICA,      :
           :
          Plaintiff,     :    12 Civ. 2826 (DLC)
           :
          v.       :
APPLE, INC. et al.,       :
           :
          Defendants.   :
------------------------------------------------------------x

**MEMORANDUM OF [PROPOSED] *AMICUS CURIAE* THE AUTHORS GUILD, INC.
IN RESPONSE TO THE DOJ'S TUNNEY ACT FILINGS**

The Authors Guild, Inc. submits this memorandum of law in response to the DOJ's

Tunney Act Filings, Dkt. 81, 90, pending its motion for leave to appear as *amicus curiae* to assist

in the Court's public interest determination regarding the Proposed Judgment against three of the

defendant publishers.

The Proposed Judgment, by requiring three major publishers to allow vendors to sell

select e-books at a loss, would have far-reaching effects on competition throughout the literary

marketplace including: (1) in the e-book market -- including the market for books themselves

and reading devices that play a critical, integral role in that market, (2) in the print book market,

and (3) between and among traditional and virtual booksellers.

The DOJ, rather than assessing the impact of the Proposed Judgment on these markets,

chooses to treat them as irrelevant.  It deems the impact of the Proposed Judgment on markets

other than the market it has narrowly defined -- the market for e-books, particularly e-book

editions of newly released hardcover titles -- to be beyond the scope of the Court's Tunney Act

inquiry.  This misreads the plain language of the Tunney Act, which requires the Court to assess

whether the Proposed Judgment is in the public interest by specifically considering "the impact

253344.1

1

of entry of such judgment upon competition in the relevant market or markets."  15 U.S.C. §

16(e)(1)(B).  The DOJ's narrow-gauge approach also violates the spirit of the Tunney Act and

relevant precedent, which states that the Court "should be concerned with any allegations that the

proposed settlement will injure a third party."  *United States v. SBC Commc'ns, Inc.* 489 F. Supp.

2d 1, 17 (D.D.C. 2007) (citing *United States v. Microsoft Corp.*, 56 F.3d 1448, 1462 (D.C. Cir.

1995)).

     For these reasons, the Court should "pause or 'hesitate' in order to consider these [third

party] claims before reaching a conclusion that the proposed decree is appropriate."  *United

States v. Microsoft Corp.*, 231 F. Supp. 2d 144, 152 (D.D.C. 2002) (citing *United States v.

Microsoft Corp.*, 56 F.3d at 1462); *see also United States v. Microsoft Corp.*, 159 F.R.D. 318,

324-25 (D.D.C. 1995) (third party input "helps to correct [any] oversights" by the DOJ) (quote

and cite omitted), *rev'd on other grounds*, 56 F.3d 1448.

## I.     THE DOJ IMPROPERLY DISREGARDS THE WIDESPREAD IMPACT OF THE PROPOSED JUDGMENT.

     The realistic effects of the Proposed Judgment's flawed remedy -- an effective ban on

agency agreements for two years, an extraordinary length of time in the fast-moving e-book

market -- reach far beyond the narrow new-release e-book market that the DOJ alleges.  For

example, by allowing Amazon to resume selling most titles at a loss, the Proposed Judgment will

drive trade out of traditional bookstores and into the proprietary world of the Kindle.

     However, traditional bookstores remain critical showrooms for works by new or lesser-

known authors and for entire categories of books, such as children's picture books.  Marketing

studies consistently show that readers are far more open to trying new genres and new authors

when in a bookstore than when shopping online.  Enabling Amazon to intensify its targeting of

these bookstores by allowing it to sell select e-books from three major publishers below cost --

253344.1

even giving them away, if it sees fit -- will ensure the further decline of these critical players, diminishing readers' choices in how and where they shop for books and narrowing the opportunities for new authors to be discovered by readers.  Of all possible remedies to the alleged collusion, requiring three large publishers to allow Amazon to sell e-books at a loss is among the most destructive of competition that one could imagine.

To the extent that the DOJ relies on *SBC* for refusing to consider the Proposed Judgment's impact on the entire literary market, that reliance is misplaced.  First, *SBC* permits the Court to consider the Proposed Judgment's impact on all "markets implicated by the government's complaint."  489 F. Supp. 2d at 14.  The DOJ's complaint explicitly implicates the many aspects of the literary marketplace.[1]  Even if it did not, *SBC* permits the Court to consider effects in those aspects of the market if "the limited nature of the complaint makes a mockery of judicial power."  *Id.* at 13.  Failing to address the relationship between the markets for e-books and print books, both of which increasingly make the same literary content available; failing to discuss the ties between the markets for e-books in proprietary formats and proprietary e-reading devices (the hardware used by millions of readers); and failing to acknowledge Amazon's utter dominance in online bookselling anywhere outside the narrow new-release e-book market are textbook examples of limited pleading that "violate[s] the 'mockery' standard."  *Id.*[2]

---

[1]  *See, e.g.*, Compl. ¶ 3 (alleging that "Publisher Defendants feared that [Amazon's e-book pricing] might lead eventually to lower wholesale prices for [inter alia] lower prices for print books, or other consequences the publishers hoped to avoid. . . . [Therefore they allegedly] conspired to raise retail e-book prices . . . .").

[2]  DOJ's failure to consider the Proposed Judgment's impact outside the new-release e-book market that the Authors Guild addresses is far worse than any "insubstantial shortcoming" identified by *SBC amici.* 489 F. Supp. 2d at 21. The *SBC* "shortcomings" addressed only highly specific elements of an extremely technical divestiture, such as the quality of service offered by particular buyers of divested interests.  *Id.* at 20-21. The Authors Guild, by contrast, points out the DOJ's odd refusal to consider the true effects of conduct by a firm with unparalleled heft in online book markets.  Response at 21-22 (citing Compl. ¶ 30). *SBC*'s finding that the "shortcomings" of the proposed judgment there did not preclude that judgment from being "reasonably adequate" simply does not apply here.

253344.1

## II.  THE DOJ MISREPRESENTS THE AUTHORS GUILD'S "INTEREST" IN THE PROPOSED JUDGMENT.

A persistent theme in the Response is that the Authors Guild's opposition to the Proposed Judgment is motivated solely by economic self-interest.  *See* Response at 2-3 ("Most of these comments came from publishers, authors, agents, and bookstores that acknowledged an interest in higher retail e-book prices.").[3]  This accusation is false.  In fact, authors earn lower royalties under the agency model.  The Authors Guild's interest is in a healthy literary marketplace -- with consumers having a wide range of choices of booksellers -- as this best supports a diverse range of authors and provides a livelihood for more than a few.[4]  As described above, the Proposed Judgment will result in a return to below-cost (or no cost) sales, especially of key front-list titles, and will reduce competition as a whole.

## III.  THE COURT SHOULD HOLD A HEARING TO ENSURE THAT IT IS FULLY INFORMED ABOUT THE EFFECTS OF THE PROPOSED JUDGMENT.

According to the DOJ's Response, it received 868 comments, but fewer than 70 of those were supportive of the Judgment.  Response at 2.[5]  "Where there exist third-party claims that the entry of the proposed decree will cause affirmative harm, the district court should at least pause or 'hesitate' in order to consider these claims before reaching a conclusion that the proposed

---

[3]  *See also* Response at v ("Critical comments generally were submitted by those who have an interest in seeing consumers pay more for e-books, and hobbling retailers that might want to sell e-books at lower prices."); vi ("Many critics of the settlements view the consequences of the conspiracy--higher prices--as serving their own self-interests, and they prefer that unfettered competition be replaced by industry collusion that places the welfare of certain firms over that of the public.").

[4]  The Response cynically implies that the Guild solicited copycat comments from members who "took up the torch" to oppose the settlement.  Response at 39.  The Guild's two straightforward notices to members and the diversity of comments received from every segment of the industry -- overwhelmingly opposed to the Proposed Judgment -- speak for themselves.  *See* http://blog.authorsguild.org/2012/06/04/the-justice-departments-e-book-proposal-needlessly-imperils-bookstores-how-to-weigh-in/ and http://www.authorsguild.org/advocacy/articles/last-call-tell-the-justice-department.html.  Nor does the DOJ advance its position by cherry-picking comments to prove a point that no one disputes -- that the views of authors are diverse on this subject.  Response at 41-42.

[5]  The Authors Guild's Act comment, ATC-0214, may be found the Guild's website, http://www.authorsguild.org/advocacy/articles/guilds-tunney-act-filing-to-the.html, and the DOJ's website, http://www.justice.gov/atr/cases/apple/comments/atc-0214.pdf.

253344.1

decree is appropriate." *Microsoft*, 231 F. Supp. 2d at 152 (citing *Microsoft*, 56 F.3d at 1462); *see also SBC*, 489 F. Supp. 2d at 17 ("the court should be concerned with any allegations that the proposed settlement will injure a third party").

The Authors Guild respectfully urges the Court to hold a hearing or take other steps within its power under 15 U.S.C. § 16(f) to thoroughly assess the impact of the Proposed Judgment on competition in vital literary markets and submarkets. Should the Court hold such a hearing, the Authors Guild respectfully requests that the Court permit the Authors Guild to participate. Doing so will help ensure that the Court is "adequately informed about the intricacies and complexities of the industry affected by the consent decree." *See Microsoft*, 159 F.R.D. at 325. Moreover, if the Court holds a hearing, we believe it will find the DOJ's proposal represents a needlessly risky intervention in the book market. The DOJ's goal of undoing alleged collusion can be achieved with far less risk to competition.

Dated:  August 15, 2012

Respectfully submitted,

THE AUTHORS GUILD, INC.

By: ___/s___ Jan Friedman Levien
Jan Friedman Levien (Constantine)
jconstantine@authorsguild.org
Paul D. Aiken
paiken@authorsguild.org
31 East 32nd Street, 7th Floor
New York, New York 10016-5509
(212) 563-5904

*Motion for Leave to Appear*
*as Amicus Curiae Pending*

253344.1