IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.12-CV-2826 (DLC) |
| ) | |
| APPLE, INC., ) | |
| HACHETTE BOOK GROUP, INC., ) | |
| HARPERCOLLINS PUBLISHERS, L.L.C. ) | |
| VERLAGSGRUPPE GEORG VON ) | |
| HOLTZBRINK PUBLISHERS, LLC ) | |
| d/b/a MACMILLAN, ) | |
| THE PENGUIN GROUP, ) | |
| A DIVISION OF PEARSON PLC, ) | |
| PENGUIN GROUP (USA), INC. and ) | |
| SIMON & SCHUSTER, INC., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDOM OF IN SUPPORT OF MOTION BY BOB KOHN
FOR LEAVE TO INTERVENE FOR THE SOLE PURPOSE OF APPEAL**

i

# Table of Contents

INTRODUCTION ................................................................................................................................1

INTERESTS OF MOVANT ...............................................................................................................3

ARGUMENT ......................................................................................................................................5

   I.    MOVANT SHOULD BE PERMITTED TO INTERVENE FOR THE SOLE PURPOSE OF APPEAL ..................................................................................................5

      A.    Movant Would Aid the Court in Making Its Public Interest Determination .............................6

      B.    Movant Has Presented Serious Issues Regarding the Propriety of the Decree Entered by This Court ...................................................................................................6

      C.    Movant Is Well-Situated to Demonstrate That the Proposed Final Judgment is Contrary to the Dictates of the Tunney Act ..........................................................................6

   II.   MOVANT FULLY MEETS THE PERMISSIVE INTERVENTION CRITERIA OF FEDERAL RULE OF CIVIL PROCEDURE 24(b) ..................................................................9

      A.    The Present Motion is Timely Made .......................................................................10

      B.    Movant Has a Claim or Defense That Shares With The Main Action A Common Question of Law or Fact ................................................................................10

      C.    Intervention will not Unduly Delay or Prejudice the Adjudication of the Rights of the Original Parties .........................................................................................15

      D.    This Motion States the Grounds for Intervention and Otherwise Satisfies the Requirements of Rule 24(c) .................................................................................16

CONCLUSION ................................................................................................................................17

# Table of Authorities

**CASES**

*Broadcast Music v. CBS*, 441 U.S. 1 (1979)..................................................................................................2
*Flying J Inc. v. Van Hollen*, 578 F.3d 569 (7th Cir. 2009) ...........................................................................10
*FTC. v. Indiana Fed'n of Dentists*, 476 U.S. 447, 459 (1986),......................................................................2
*Massachusetts School of Law at Andover, Inc. v. United States*, 118 F.3d 776 (D.C. Cir. 1997) ....................... passim
*Massachusetts v. Microsoft Corp.*, 373 F.3d 1199 (D.C. Cir. 2004) .................................................. 1, 5, 15, 16
*McCarthy v. Kleindienst*, 741 F.2d 1406 (D.C.Cir. 1984).............................................................................16
*SEC* v. *United States Realty & Improvement Co.,* 310 U. S. 434, 459 (1940) ...........................................14
*United States v. American Tel. & Tel. Co.*, 552 F.Supp. 131 (D.D.C. 1982).............................................1, 5
*United States v. Keyspan Corp.*, 783 F. Supp.2d 633 (S.D.N.Y. 2011)..................................................3, 4, 6
*United States v. LTV Corp.*, 746 F.2d 51 (D.C.Cir. 1984)...........................................................................5, 6
*United States v. Thomson Corp.*, 1997-1 Trade Cas. (CCH) ¶71,735, 1997 U.S. Dist. LEXIS 1893 at *15 (D.C.C. February 27, 1997) ................................................................................................................................2

**STATUTES**

Tunney Act, 15 U.S.C. §16(b)........................................................................................................................9
Tunney Act, 15 U.S.C. §16(f)(3)................................................................................................................1, 9

**RULES**

ANTITRUST GUIDELINES FOR THE LICENSING OF INTELLECTUAL PROPERTY (DOJ/FTC 1995) ...................11
Federal Rules of Civil Procedure Rule 23 ......................................................................................................4
Federal Rules of Civil Procedure Rule 24 ............................................................................................. passim
Federal Rules of Civil Procedure Rule 7 ......................................................................................................16

**ARTICLES & TREATISES**

Al Kohn & Bob Kohn, KOHN ON MUSIC LICENSING (Wolters Kluwer, 4th Edition 2002)............................7
William M. Landes & Richard A. Posner, THE ECONOMIC STRUCTURE OF INTELLECTUAL PROPERTY (Harvard University Press, 2003) ......................................................................................................................12

**PUBLIC COMMENTS**

Comments of Bob Kohn (ATC-0143, May 30, 2012), 12-02826 (DLC) ..........................................1, 2, 6, 7

**COURT DOCUMENTS**

*Amicus Brief of Bob Kohn*, 12-cv-2826, Docket No. 110 (September 4, 2012) ..........................................2
Complaint, 12-02826 (DLC) (Docket No. 1) (April 11, 2012)....................................................12, 13, 14, 15
Motion for Leave to Participate as Amicus Curiae, 12-cv-2826, Docket No. 97 (August 13, 2012) ............7
Opinion & Order re: Final Judgment, 12-2826, (Docket No. 113) (September 6, 2012) ...............1, 4, 16, 18
Opinion & Order, 12-02826 (Docket No. 108) (August 28, 2012).............................................................1, 7
Proposed *Amicus Brief of Bob Kohn*, 12-cv-2826, Docket No. 97 (August 13, 2012).........................2, 7, 13

## INTRODUCTION

Bob Kohn, on his own behalf and through his pro bono attorneys pursuant to 15 U.S.C. §16(f)(3) and Rule 24 of the Federal Rules of Civil Procedure, respectfully submits this memorandum in support of his motion for leave to intervene for the sole purpose of appeal.

Movant submitted to the Department of Justice extensive comments[1] objecting to the proposed Final Judgment and later was granted leave to participate as amicus curiae in proceedings before this Court.[2] With a Final Judgment now entered,[3] Movant moves for leave to intervene solely for the purpose of seeking appellate review of such entry by the United States Court of Appeal for the Second Circuit.

In this Tunney Act proceeding, the public comments were "both voluminous and overwhelmingly negative." *U.S. v. Apple, Inc. et.al.*, Opinion & Order at 19 (September 6, 2012). "More than 90 percent of the 898 comments opposed entry of the proposed Final Judgment." Id. Many of the comments were "very thoughtful." Id. When a Tunney Act settlement is presented with serious and thoughtful opposition, federal courts have routinely authorized post-judgment intervention for purpose of appeal by individuals or organizations who submitted comments to the Justice Department during the Tunney Act proceedings. See, *Massachusetts v. Microsoft Corp.*, 373 F.3d 1199, 1234-36 (D.C. Cir. 2004); *United States v. American Tel. & Tel. Co.*, 552 F.Supp. 131 (D.D.C. 1982), *aff'd mem. sub. nom. Maryland v. United States*, 460 U.S. 101 (1983).

Though the Court has disagreed with the substantive arguments advanced by Movant in his comments and amicus curiae brief, Movant respectfully submits that the issues to be raised

---

[1] Comments of Bob Kohn (ATC-0143, May 30, 2012).
[2] Opinion & Order, No. 12-2826 (Docket No. 108) (August 28, 2012).
[3] Opinion & Order re: Final Judgment, No. 12-2826, (Docket No. 113) (September 6, 2012). Actual entry of Final Judgment was imminent at the time of this writing.

on its appeal constitute serious and credible applications of U.S. Supreme Court and Second Circuit precedent that must not be ignored if the public interest is to be secured. Where the issues raised are important, "their presentation to the Court of Appeals should not be foreclosed by this Court." *United States v. Thomson Corp.*, 1997-1 Trade Cas. (CCH) ¶71,735, 1997 U.S. Dist. LEXIS 1893 at *15 (D.C.C. February 27, 1997).

Movant, like millions of consumers, has a vital interest in competitive markets for e-books and the e-book readers and systems that support them. That vital interest necessarily includes an interest, not in what the government contends are *low* prices, but rather in *efficient* prices for e-books. The purported public interest in "low" prices was fabricated by the Justice Department with a now discredited citation. See, *Amicus Brief of Bob Kohn* at 2 (Docket No. 110) and proposed *Amicus Brief of Bob Kohn* at 23 (Docket No. 97). As Movant has pointed out to this Court, the government's position on this point is contrary to the law of the Second Circuit and most other federal jurisdictions that have considered the issue.[4] Should the proposed Final Judgment result in what the government's stated intention—lowering certain e-book prices to below marginal cost—millions of consumers will be harmed.

Moreover, since none of the parties have raised, or even responded to, these issues, it is unlikely that any party, should they seek to appeal the entry of judgment, will raise them for consideration by the Court of Appeals. In fact, the non-setting defendants may have already

---

[4] In its Opinion & Order dated September 5, 2012, the Court appeared to base its reply solely upon Movant's comments filed during the 60-day comment period, with virtually no reference to his amicus brief (Docket No. 110), and clearly no reference to his proposed amicus brief (Docket No. 97). The proposed 25-page amicus brief had specifically anticipated the Court's narrow interpretation of *Broadcast Music v. CBS*, 441 U.S. 1 (1979), using an important reference in the U.S. Supreme Court's decision in *FTC. v. Indiana Fed'n of Dentists*, 476 U.S. 447, 459 (1986) as an example. In that case, the high court extended the coverage of *Broadcast Music* beyond *per se* to the *rule of reason*. DOJ sidestepped the relevance of *Indiana Fed'n of Dentists* with a non-sequitur, (see. Docket No. 111 at fn 3), and no reference is to be found to the *Indiana Fed'n of Dentists* case in the Court's Opinion & Order. Moreover, the Court did not take the opportunity to address in its Opinion & Order the fact that the literal horizontal price-fixing in *Broadcast Music* was sustained by the need to countervail the monopsony in that case (other than making a factual reference in footnote 14 of its Opinion & Order that amicus had raised the "monopsony" power issue in this case).

taken positions that would foreclose their credibly raising these issues on appeal. For example, all three non-settling Defendants have suggested that the Defendants' conduct has resulted in lower e-book prices. The premise of the argument Movant has made, and will raise on appeal, is that Defendants' conduct, as alleged, resulted in higher prices for some e-books—a result which is good for consumers. Even the Justice Department—while ignoring the substantive legal issues raised by Movant—still characterized Movant's comments as coming from a "unique perspective." Accordingly, <u>without Movant's intervention, "no party will be in a position to present these issues to the Court of Appeals</u>." *Thomson*, *supra* (emphasis added).

For these reasons, this intervention is<u> essential to "ensure that the Final Judgment is properly tested in the appellate crucible</u>" Id (emphasis added).

## **INTERESTS OF MOVANT**

Being that the "remedy" contained in the decree is now purported to be in the public interest, it is only appropriate that a member of the <u>public</u> be allowed to seek appellate review of such remedy on the grounds that the decree is not in the <u>public</u> interest—especially under these circumstances. In this context, it is extremely important to appreciate that an appeal of this case will hinge upon <u>not</u> whether the Department of Justice has "vigorously and faithfully" represented the interest of consumers. That is, the proposed appeal would not concern whether the Final Judgment adequately or effectively addresses the anticompetitive harms alleged, but will question the factual foundation upon which the government used to identify the alleged "harms." As demonstrated in Movant's proposed amicus brief and amicus brief, the government could not, as a matter of law, have reached a conclusion that Defendants' conduct was harmful to

consumer welfare, and without that, under *Keyspan*,[5] the government's conclusions could not have been reasonable.

Accordingly, as well-intentioned as the DOJ may have embarked upon this action, it can no more "vigorously and faithfully" further the interests of consumers than a doctor in the course of committing malpractice can "vigorously and faithfully" further the interest of his or her patient. Under the Tunney Act, the Justice Department is not the final arbiter as to whether it is committing civic malpractice. The courts are. Given that the District Court has determined that the proposed Final Judgment is in the public interest, then it should permit a non-party well-situated to seek appellate review of the Court's decision.

Movant's arguments in this matter have been completely focused on the <u>public</u> interest, taking the perspective of <u>consumers</u> of e-books and the public generally. Movant is directly affected by the Final Judgment, having purchased e-books before and after the effect of the agency model, not unlike millions of other consumers of e-books. Indeed, had this motion to intervene been filed as a "class action" on behalf the class of consumers affected by the proposed Final Judgment, all of the prerequisites set forth in Rule 23(a) and (b) may well have been satisfied.[6]

Movant is well-situated to intervene for the purpose of demonstrating to the Court of Appeals that the Court's public interest determination is contrary to the dictates of the Tunney Act. Movant believes he is uniquely qualified to assist the Court in appreciating the nature of the

---

[5] *United States v. Keyspan Corp.*, 783 F. Supp.2d 633 (S.D.N.Y. 2011).
[6] Under Rule 23(a), (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to th class; (3) the claims or defenses of the representatives parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Further, suffice it to say that Movant also believes that all of the criteria for maintenance of the class under Rule 23(b)(1), (2), or (3) would be satisfied. Though Movant is not formally seeking to represent a class—sparing the parties and the Court the time and expense of satisfying and adjudicating the remaining requirements of Rule 23—Movant nevertheless hopes to be heard as furthering the interests of millions consumers of e-books and e-books systems who would be victims of the Final Judgment.

markets in which e-book transactions occur and the countervailing pro-competitive effects of Defendants' conduct—critical elements of the factual foundation of the government's decisions and essential to the Court's determination, under the *Keyspan* standard of review, about whether government's conclusions regarding the proposed settlement are reasonable. Movant has approached the issues in this proceeding specifically from the perspective of the public interest in the promotion of competition and innovation—especially as it concerns, as it does in this case, copyrighted works of authorship disseminated in digital form. As a consumer of digital goods, author of a treatise on copyright, and founder and CEO of technology companies directly involved in the digital distribution of music and e-books, Movant as a unique perspective to provide in the appellate review of the Court's entry of judgment.

## ARGUMENT

### I.   MOVANT SHOULD BE PERMITTED TO INTERVENE FOR THE SOLE PURPOSE OF APPEAL

Tunney Act commentators who wish to appeal entry of a government antitrust settlement must first seek intervenor status in the district court. *United States v. LTV Corp.*, 746 F.2d 51 (D.C.Cir. 1984).

> [T]hose who object to entry of a consent judgment must seek to intervene in the proceedings (either before or after entry of the judgment) as a condition of taking an appeal.

Id. at 53; see also, *Massachusetts v. Microsoft Corp.*, 373 F. 3d 1199, 1234-36 (2004); *United States v. American Tel. & Tel. Co.*, 642 F.2d 1285, 1290 (D.C. Cir. 1980).

Movant should be permitted to intervene in this action solely for purposes of appeal, because Movant (a) would aid the court in making its public interest determination, (b) has presented serious issues regarding the propriety of the proposed Final Judgment, (c) is well-

situated to demonstrate that the Final Judgment is contrary to the dictates of the Tunney Act, and (c) fully meets the permissive intervention criteria of Federal Rule of Civil Procedure 24(b).

### A. Movant Would Aid the Court in Making Its Public Interest Determination

> To gain status as an intervenor, the would-be appellant must first establish that participation by the intervenor would aid the court in making its public interest determination under the APPA [i.e., the Tunney Act]

*LTV*, 746 F.2d at 53. This Court has already made such a finding with regard to Movant in permitting his participation as *amicus curiae*. Opinion & Order at Docket No. 108. Movant had set forth the reasons why he believes he would aid the Court in making its public interest determination in his Motion for Leave to Participate as Amicus Curiae. See, Docket No. 97; see also, discussion *infra*. Even if the Court had ruled that Movant would not aid the District Court, Movant respectfully submits that it would aid the Court of Appeal in its review of the District Court's public interest determination.

### B. Movant Has Presented Serious Issues Regarding the Propriety of the Decree Entered by This Court

In the Comments of Bob Kohn, and in his proposed amicus curiae brief and amicus brief, Movant raised serious issues that called into question whether the proposed decree, which has been entered by this Court unchanged, is in the public interest. Applying the standard of review followed by this Court in *Keyspan*, Movant showed that the factual foundation of the government's decisions were such that its conclusions about the proposed remedy were unreasonable.

### C. Movant Is Well-Situated to Demonstrate That the Proposed Final Judgment is Contrary to the Dictates of the Tunney Act

One seeking to intervene for purposes of appellate review to "correct a district court's 'public interest' determination when the record indicates the determination is contrary to the

6

dictates of the Tunney Act" should be any "non-party well-situated to demonstrate that this is so." *Massachusetts School of Law at Andover, Inc. v. United States*, 118 F.3d 776, 785 (D.C. Cir. 1997) (Judge Wald, concurring) (hereinafter, "*MSL*").

During the course of Movant's 30-year career–working for entertainment, computer software, and internet companies–he has had responsibility and oversight for several high profile antitrust matters involving the adoption by consumers of technology products and copyrighted works, which operated in conjunction with each other, in a multi-sided market prone to attempted monopolization by dominant systems providers. These matters directly concerned the intersections between copyright and antitrust law as they relate to the public interest in promoting innovation and competition. Movant has testified on these subjects before both the FTC (1995) and joint hearings held by the DOJ and the FTC (2002).[7]

Movant is co-author of KOHN ON MUSIC LICENSING (Wolters Kluwer, 4th Edition 2002), cited by the U.S. Supreme Court[8], the Second Circuit[9], the Sixth Circuit[10], and the Southern District of New York.[11] Movant has testified as an expert before the District Court in *In Re Application of AOL, RealNetworks and Yahoo!* (related to *United States v. ASCAP), 559 F.Supp.2d 332* (S.D.N.Y. 2008) (a rate hearing in which Movant provided testimony to the late District Judge William C. Conner on how music is transmitted and marketed on the Internet).[12]

---

[7] *See,* Testimony of Robert H. Kohn, *Hearings of the Federal Trade Commission on the Changing Nature of Competition* (panel on "*Networks, Standards, Foreclosure, Strategic Conduct*") http://www.ftc.gov/opp/global/bobkohn.shtm (Washington, D.C., November 29, 1995). Cited in, *Antitrust for High Tech Companies* (Prepared Remarks of Susan DeSanti, Director of Policy Planning, Federal Trade Commission) http://www.ftc.gov/speeches/other/desanti1.shtm (San Francisco, February 2, 1996). See, Testimony of Robert H. Kohn, *DOJ/FTC Joint Hearings on "Competition and Intellectual Property Law and Policy in the Knowledge-Based Economy"* http://www.ftc.gov/opa/2002/02/ipsecond.shtm (Berkeley, California, February 27, 2002).
[8] *Eldred v. Ashcroft*, 57 U.S. 186 (2003).
[9] *Woods v. Bourne*, 60 F.3d 978 (2d Cir. 1995); *Boosey & Hawkes v. Buena Vista Home Video*, 145 F.3d 481 (2d Cir. 1988).
[10] *Bridgeport Music v. Dimension Films*, 410 F.3d 792 at fn 18 (6th Cir. 2005).
[11] *Fred Ahlert Music Corp. v. Warner/Chappell Music*, 958 F.Supp. 170 (S.D.N.Y. 1997).
[12] A more complete resume and disclosure of the amicus curiae's background, qualifications and affiliations is contained in the Comments of Bob Kohn (ATC-0143, May 30, 2012).

7

As stated in Movant's Comments, during the time Movant served as general counsel of Borland International, Inc., he was responsible for overseeing the six-year litigation of *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 516 U.S. 233 (1996), where a divided Supreme Court let stand the 1st Circuit decision that the menu-command structure of Lotus 1-2-3 was an uncopyrightable "method of operation." *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 49 F.3d 807 (1st Cir. 1995). The court adopted the "network externalities" theory raised by Borland and *amicus curiae* brief on appeal. The theory suggests that a single product may emerge as the *de facto* standard in a market, giving the proprietor of the standard a monopoly over which it may illegally exercise market power.

Movant also oversaw and settled on behalf of Borland an antitrust action brought by the DOJ to stop Borland's acquisition of Ashton-Tate in 1991. This was an acquisition which the DOJ alleged would provide Borland overwhelming market share in database management software. In exchange for allowing the acquisition to proceed, the DOJ accepted Borland's offer to not enforce any copyright rights in the dBASE programming language for five years. The DOJ accepted Borland's theory that, without the ability to enforce any rights it may have had in the dominant database programming standard at the time, Borland would not be able to use the effects of network externalities to tip the database management market entirely in its favor.

Also during that time, Movant was called in by both the DOJ and FTC on several occasions in connection with the government's antitrust investigation of Microsoft Corp. Movant met with four of the Commissioners of the FTC and then with the Assistant Attorney General for Antitrust of that time, Joel Klein. Beginning in the early 1990's, Borland claimed that Microsoft was leveraging their monopoly in PC operating systems to gain an illegal competitive advantage in the market for applications software, such as word processors, spreadsheets, and database

management software. See, *Microsoft,* 56 F.3d at 1453.

In December, 1997, Movant co-founded eMusic (NASDAQ: EMUS), the first digital music download service to sell digital music "MP3" files for 99 cents per track, a business not unlike Amazon's Kindle or Barnes & Noble Nook platforms for e-book downloads.

Movant is licensed to practice law in California and is a member in good standing of the State Bar of California. He has taught law at Monterey College of Law, Monterey, California.

Movant believes he is as well-situated as any consumer, and uniquely-situated among any of the parties or other participants in this action, to demonstrate that the proposed Final Judgment is not in the public interest and that entry of the Final Judgment would be contrary to the dictates of the Tunney Act.

## II.  MOVANT FULLY MEETS THE PERMISSIVE INTERVENTION CRITERIA OF FEDERAL RULE OF CIVIL PROCEDURE 24(b)

Under Rule 24(b), permissive intervention is authorized by a District Court

(i) "[o]n a timely motion,"

(ii) when an applicant is "anyone" who "has a claim or defense that shares with the main action a common question of law or fact," and

(iii) where intervention will not "unduly delay or prejudice the adjudication of the rights of the original parties."

In addition, under Rule 24(c), "A motion to intervene must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought."

All of these criteria are satisfied by Movant.

A.     **The Present Motion is Timely Made**

Under the Tunney Act, Movant could have moved to intervene at any point after the filing of this action on April 11 2012. See, 15 U.S.C. §16(f)(3)). Instead, Movant chose to first take advantage of the 60-day comment period under 15 U.S.C. §16(b) to give the DOJ an opportunity to reconsider its action, withdraw from or modify the settlement, and/or dismiss the case. The DOJ has refused to do so. On September 6, 2012, the Court ordered that the proposed Final Judgment be entered. This motion was filed the next day. A motion not filed until the district court has entered final judgment is not untimely where all the Movant wants to do is take an appeal. *Flying J Inc. v. Van Hollen*, 578 F.3d 569, 572 (7th Cir. 2009) (opinion by Circuit Judge Posner).

B.     **Movant Has a Claim or Defense That Shares With The Main Action A Common Question of Law or Fact**

Permissive intervention is available to "anyone" who "has a claim or defense that shares with the main action a common question of law or fact." Rule 24(b)(1).

<u>First</u>, Movant certainly qualifies as "anyone." An intervenor need not be a trade association, established issue-oriented activist group, or organization of any kind. Nor need an intervenor be a competitor of one or more of the parties or a business whose has a pecuniary or contractual interest directly affected by the decree. On the contrary, one who is seeking to intervene for purposes of appellate review to correct a district court's 'public interest' determination under the Tunney Act" may be <u>any "non-party"</u> well-situated to demonstrate that the district court's public interest determination is "contrary to the dictates of the Tunney Act." *MSL*, 118 F.3d at 785 (Judge Wald, concurring).

<u>Second</u>, Movant has a "defense that shares with the main action a common question of law or fact." This requirement is satisfied because Movant wants to present the same defenses

10

that the Defendants presented or are available to the Defendants to present. See, *Flying J Inc. v. Van Hollen*, 578 F.3d 569, 573 (7th Cir. 2009).  In fact, Movant and other consumers each have quite a number of defenses in common with the Defendants in the main action.

For example, in the very first allegation of the Complaint and in the very last, the government mischaracterizes the goods at issue in this case (see Complaint at ¶ 1 and ¶ 99), therefore making it impossible for a court to find a rational relation to the methodology that the courts prescribe to define a market for antitrust purposes. The description of the goods at issue reads more like an advertisement for e-books than a reflection of sound antitrust policy. The antitrust policy of the United States, as embodied in the DOJ's own IP Guidelines,[13] direct that the characteristics that distinguish the intellectual property at issue from other forms of property must be taken into account in evaluating the specific market circumstances in which e-book transactions occur. For a discussion of such characteristics, see proposed *Amicus Brief of Bob Kohn*, 12-CV-02826 (DLC), Docket No. 97 at pp. 5-11.

Movant and other consumers also deny the allegations made in Paragraph 8 of the Complaint that price and non-price competition among e-book publishers and among e-book retailrs was unlawfully eliminated to the detriment of U.S. consumers.

Contrary to Paragraph 9 of the Complaint, Movant and other consumers believe the effect of the lawsuit, should it succeed, would be <u>harmful</u> to consumer welfare, because it seeks to undo the pro-competitive effects that Defendants' actions, as alleged, had on the markets relevant to the purchase and consumption of e-books.

Contrary to Paragraph 10, Movant and other consumers believe that, as a result of Defendants' alleged conduct, it more likely than not that consumers will pay tens of millions of

---

[13] The antitrust policy of the United States with respect to copyrighted works is set forth in the ANTITRUST GUIDELINES FOR THE LICENSING OF INTELLECTUAL PROPERTY (DOJ/FTC 1995) (the "IP Guidelines").

dollars <u>less</u> (not more) for e-books, that they will pay less for e-book reader devices, that they will benefit from increased innovation in those devices and in the systems platforms that support the devices and the consumption of e-books.

Contrary to the government's allegations in Paragraph 25 of the Complaint, Movant and other consumers deny that e-books are "books published in electronic formats." An e-book is a string of bits of data, commonly referred to as a set of "1's and 0's," and is comprised of one or more kinds of "works of authorship," as that term is used in copyright parlance. Works of authorship may include literary works, musical works, dramatic works, pictorial works, graphic works, and other kinds of works. Unlike books, which may be read by merely holding and opening them, e-books must be read with the aid of a machine or device. Unlike a book, an e-book has no value whatsoever to consumers without the aid of a machine or device.

In addition, **Movant and other** consumers deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegation that e-book publishers avoid some of the expenses incurred in producing and distributing print books, including most manufacturing expenses, warehousing expenses, distribution expenses, and costs of dealing with unsold stock. The cost of producing a book has two components: (1) the cost of creating the work, which consists primarily of the author's time and effort plus the cost to the publisher of soliciting and editing the manuscript and setting it up for publication and (2) the cost of producing, distributing and accounting for the actual copies. The former is generally a fixed cost while the latter generally a variable cost. William M. Landes & Richard A. Posner, THE ECONOMIC STRUCTURE OF INTELLECTUAL PROPERTY (Harvard University Press, 2003).

Contrary to the allegations in Paragraph 26 of the Complaint, while Movant and other consumers admit that we sometimes purchase e-books through Web sites of e-book retailers and

sometimes purchase e-books through applications loaded onto our reading devices, this is not always the case. Sometimes consumers are unable to purchase e-books though applications loaded onto our reading devices due to restrictions imposed by the seller of the devices. For example, one cannot purchase an e-book sold by Apple directly from a Kindle device. Likewise, one cannot purchase an e-book sold by Amazon <u>within the Kindle application</u> loaded on an Apple iPad; to do so, the consumer must open a browser on the iPad and purchase the e-book from Amazon, whereupon it can be downloaded in the Kindle application on the iPad. These differences, which the complaint glosses over with its imprecision, have important impacts upon competition in the markets concerning e-book consumption.

Contrary to Paragraph 63 through 66 of the Complaint, **Movant and other** consumers deny that the purpose or effect of the alleged provisions of the agency model raised and stabilized e-book prices to the detriment of consumers. Whatever the purpose of the agency model was, its effect was to eliminate below marginal cost pricing of e-books, which is a result that is <u>unmistakably</u> good for consumers.

And finally, for example, contrary to Paragraph 99 of the Complaint, consumers deny that the relevant product market for purposes of this action is "trade e-books." As addressed at length in the Comments of Bob Kohn and Movant's proposed amicus brief and amicus brief, this cannot be the market or markets that must be considered in an antitrust action brought as a result of Defendants' alleged actions.

In addition to the denials and defenses consumers have in common with the main action, consumers would pose many of the same separate and additional defenses, including (1) the relief sought is not in the public interest, (2) the Complaint fails to state a claim upon which relief can be granted, (3) Defendants' alleged actions did not result in harm to competition, and

(3) the pro-competitive justifications for Defendants' alleged actions outweighed any alleged harm to competition, among others.

Each and every consumer of e-books and e-book systems has been affected by Defendants' alleged conduct in a positive way. Even if some consumers, under the agency model, have paid a higher price for some e-books than they would have paid under the retail model, every consumer of e-books <u>has benefited</u> from (a) paying more *efficient* prices (e.g., prices no longer set below marginal cost) for e-books and (b) increased competition among e-book systems providers, resulting in increased innovation in e-book systems, new entrants to the e-books systems market, and lower long-term prices for e-books themselves—all of which directly resulted from Defendants' actions.

By the same token, every consumer of e-books and e-book systems in the United States will become a <u>victim</u> of the harmful effects of the Final Judgment beginning the day it is enforced. While *permissive* intervention does <u>not</u> require "that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation" (See, *SEC* v. *United States Realty & Improvement Co.,* 310 U. S. 434, 459 (1940)), Movant, like millions of other consumers, has a direct pecuniary interest in whether the proposed Final Judgment takes effect.

Accordingly, each consumer of e-books, including Movant, has a "claim or defense that [he or she] shares with the main action." These claims or defenses concerning questions of law or fact in common with the main action are specifically set forth in the accompanying draft pleading submitted pursuant to Rule 24 (c).

### C. Intervention will not Unduly Delay or Prejudice the Adjudication of the Rights of the Original Parties

Under Rule 24(b)(2), the court "shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." In *MSL*, the court held that, in connection with an intervention for purposes of appeal of a Tunney Act case,

> If the attempted intervenor shows adequate grounds for upsetting the consent judgment, then delay will be entailed (a remand for further proceedings, possibly including trial), but it would be hard to say that this delay is undue. *MSL* at 782.

Moreover, Judge Wald homed in on this issue in his concurring opinion, which is set forth below in full (with emphasis added):

> I concur in the judgment and in most of the reasoning of the panel opinion. I do want to stress, however, that in my view, the application of Federal Rule of Civil Procedure 24(b)(2) in this case responds to the unusual nature of proceedings under the Tunney Act, Pub.L. No. 93-528, 88 Stat. 1706 (1974) (codified as amended at 15 U.S.C. § 16(b)-(h) (1994)), as well as to the fact that the would-be intervenor here appeals from the denial of a post-judgment intervention motion, and that the applicability of a similar analysis outside of this context should not be assumed. This court long ago observed that the language of Rule 24 required "other than literal application in atypical cases." *Textile Workers Union v. Allendale Co.*, 226 F.2d 765, 767 (D.C.Cir.1955) (en banc). I believe that this is such an atypical case, and that we have therefore properly allowed for a somewhat "non-literal" application of Rule 24(b)(2). Thus, I would not expect our opinion to stand for the proposition that the process of appellate review, or of remand for the correction of errors made by the district court, may generally be treated as factors that "delay or prejudice the adjudication of the rights of the original parties" under Rule 24(b)(2). Cf. majority opinion at 782. We treat them as such here so that this court may reserve the discretion to review and correct a district court's "public interest" determination when the record indicates that the determination is contrary to the dictates of the Tunney Act and a non-party well-situated to demonstrate that this is so seeks to subject that determination to appellate review.

*MSL* at 785 (Judge Wald, concurring).

More recently, in *Massachusetts v. Microsoft Corp.*, 373 F.3d 1199 (D.C. Cir. 2004), the Court of Appeals held that allowing the intervenors to appeal from the Tunney Act proceeding would not "unduly delay or prejudice the adjudication of the rights of the original parties." Id. at 1235-36. Intervenors in that case each submitted extensive public comments to the Justice

15

Department and filed an amicus brief with the district court. "Because the district court already confronted [the intervenors'] arguments in rendering its decision, there is no reason to fear 'issue proliferation,' 'confusion,' 'extra cost,' or 'an increased risk of error'." *Massachusetts v. Microsoft* at 1236 (quoting *MSL*, 118 F.3d at 782).

Accordingly, this motion to intervene for purposes of appeal would not unduly delay or prejudice the adjudication of the rights of the original parties to this case.

### D. This Motion States the Grounds for Intervention and Otherwise Satisfies the Requirements of Rule 24(c)

Under Rule 24(c), "A motion to intervene must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." It is submitted that the grounds for Movant's motion to intervene are fully set forth in this Memorandum. Movant is well-situated to aid the courts in making its public interest determination and has presented serious issues regarding the propriety of the proposed Final Judgment. Moreover, as more fully set forth in this Memorandum, Movant has a direct and immediate interest in the outcome of this case and that, absent Movant's participation, appellate review of the Court's entry of judgment and "public interest" determination with reference to the issues raised by Movant may be foreclosed.

While Rule 24(c) also requires that a "motion to intervene must…be accompanied by a pleading that sets out the claim or defense for which intervention is sought," (emphasis added),[14] the courts "have not be[en] hypertechnical, actually, in making sure that …potential intervenors do file a pleading." *Massachusetts v. Microsoft,* 373 F.3d 1199, 1250 at fn 19.  Accordingly, "procedural defects in connection with intervention motions should be excused by a court."

---

[14] Rule 7 lists the "only" pleadings allowed in Federal Court: (a) a complaint, (b) an answer to a complaint (or to a counterclaim, a cross claim, or a third-party complaint), (c) a third-party complaint, and (d) if the court orders one, a reply to an answer.

16

*McCarthy v. Kleindienst*, 741 F.2d 1406, 1416 (D.C.Cir. 1984). Under these "atypical" circumstances, Rule 24 requires "other than literal application." *MSL*, 118 F.3d at 785.

Nevertheless, Movant is prepared to file an Answer to the Complaint setting forth potential defenses for which intervention is sought, should the Court so require. Because this motion to intervene is solely for the purpose of appeal, Movant respectfully requests that the Court not to require a "literal application" of Rule 24 in considering this motion and therefore not require the filing of a pleading in connection herewith.

## CONCLUSION

For all these reasons, the Court should grant this motion and permit Movant to intervene in this case for the sole purpose of appealing the Court's Order and entry of Final Judgment.

Dated: September 7, 2012    Respectfully submitted,

_____
BOB KOHN
California Bar No. 100793
140 E. 28th St.
New York, NY 10016
Tel. +1.408.602.5646; Fax. +1.831.309.7222
eMail: bob@bobkohn.com


      /s/ Steven Brower
By: _____
    STEVEN BROWER [PRO HAC]
California Bar No. 93568
**BUCHALTER NEMER**
18400 Von Karman Ave., Suite 800
Irvine, California 92612-0514
Tel: +1.714.549.5150
Fax: +1.949.224.6410
Email: sbrower@buchalter.com

*Pro Bono Counsel* to Bob Kohn

17