Cote, T

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> APPLE, INC., ) <br> HACHETTE BOOK GROUP, INC., ) <br> HARPERCOLLINS PUBLISHERS L.L.C., ) <br> VERLAGSGRUPPE GEORG VON ) <br>    HOLTZBRINCK GMBH, ) <br> HOLTZBRINCK PUBLISHERS, LLC ) <br>    d/b/a MACMILLAN, ) <br> THE PENGUIN GROUP, ) <br>    A DIVISION OF PEARSON PLC, ) <br> PENGUIN GROUP (USA), INC., and ) <br> SIMON & SCHUSTER, INC., ) <br> ) <br> Defendants. ) <br> ) | USDC SDNY <br> DOCUMENT <br> ELECTRONICALLY FILED <br> DOC #: _____ <br> DATE FILED: 9/6/2012 <br><br><br> Civil Action No. 12-CV-2826 (DLC) |

**FINAL JUDGMENT**
**AS TO DEFENDANTS HACHETTE, HARPERCOLLINS, AND SIMON & SCHUSTER**

WHEREAS, Plaintiff, the United States of America filed its Complaint on April 11, 2012, alleging that Defendants conspired to raise retail prices of E-books in violation of Section 1 of the Sherman Act, as amended, 15 U.S.C. § 1, and Plaintiff and Settling Defendants, by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law;

AND WHEREAS, this Final Judgment does not constitute any admission by Settling Defendants that the law has been violated or of any issue of fact or law, other than that the jurisdictional facts as alleged in the Complaint are true;

AND WHEREAS, Settling Defendants agree to be bound by the provisions of this Final Judgment pending its approval by the Court;

AND WHEREAS, Plaintiff requires Settling Defendants to agree to undertake certain actions and refrain from certain conduct for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, Settling Defendants have represented to the United States that the actions and conduct restrictions can and will be undertaken and that they will later raise no claim of hardship or difficulty as grounds for asking the Court to modify any of the provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of Settling Defendants, it is ORDERED, ADJUDGED, AND DECREED:

## I. JURISDICTION

This Court has jurisdiction over the subject matter of this action and over the Settling Defendants. The Complaint states a claim upon which relief may be granted against Settling Defendants under Section 1 of the Sherman Act, as amended, 15 U.S.C. § 1.

## II. DEFINITIONS

As used in this Final Judgment:

A. "Agency Agreement" means an agreement between an E-book Publisher and an E-book Retailer under which the E-book Publisher Sells E-books to consumers through the E-book Retailer, which under the agreement acts as an agent of the E-book Publisher and is paid a commission in connection with the Sale of one or more of the E-book Publisher's E-books.

2

B. "Apple" means Apple, Inc., a California corporation with its principal place of business in Cupertino, California, its successors and assigns, and its parents, subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

C. "Department of Justice" means the Antitrust Division of the United States Department of Justice.

D. "E-book" means an electronically formatted book designed to be read on a computer, a handheld device, or other electronic devices capable of visually displaying E-books. For purposes of this Final Judgment, the term E-book does not include (1) an audio book, even if delivered and stored digitally; (2) a standalone specialized software application or "app" sold through an "app store" rather than through an e-book store (*e.g.*, through Apple's "App Store" rather than through its "iBookstore" or "iTunes") and not designed to be executed or read by or through a dedicated E-book reading device; or (3) a media file containing an electronically formatted book for which most of the value to consumers is derived from audio or video content contained in the file that is not included in the print version of the book.

E. "E-book Publisher" means any Person that, by virtue of a contract or other relationship with an E-book's author or other rights holder, owns or controls the necessary copyright or other authority (or asserts such ownership or control) over any E-book sufficient to distribute the E-book within the United States to E-book Retailers and to permit such E-book Retailers to Sell the E-book to consumers in the United States. Publisher Defendants are E-book Publishers. For purposes of this Final Judgment, E-book Retailers are not E-book Publishers.

3

F.    "E-book Retailer" means any Person that lawfully Sells (or seeks to lawfully Sell) E-books to consumers in the United States, or through which a Publisher Defendant, under an Agency Agreement, Sells E-books to consumers. For purposes of this Final Judgment, Publisher Defendants and all other Persons whose primary business is book publishing are not E-book Retailers.

G.    "Hachette" means Hachette Book Group, Inc., a Delaware corporation with its principal place of business in New York, New York, its successors and assigns, and its subsidiaries, divisions, groups, and partnerships, and their directors, officers, managers, agents, and employees.

H.    "HarperCollins" means HarperCollins Publishers L.L.C., a Delaware limited liability company with its principal place of business in New York, New York, its successors and assigns, and its subsidiaries, divisions, groups, and partnerships, and their directors, officers, managers, agents, and employees.

I.    "Including" means including, but not limited to.

J.    "Macmillan" means (1) Holtzbrinck Publishers, LLC d/b/a Macmillan, a New York limited liability company with its principal place of business in New York, New York; and (2) Verlagsgruppe Georg von Holtzbrinck GmbH, a German corporation with its principal place of business in Stuttgart, Germany, their successors and assigns, and their parents, subsidiaries, divisions, groups, affiliates, and partnerships, and their directors, officers, managers, agents, and employees.

K.    "Penguin" means (1) Penguin Group (USA), Inc., a Delaware corporation with its principal place of business in New York, New York, and (2) The Penguin Group, a division of

U.K. corporation Pearson PLC with its principal place of business in London, England, their successors and assigns, and their parents, subsidiaries, divisions, groups, affiliates, and partnerships, and their directors, officers, managers, agents, and employees.

L. "Person" means any natural person, corporation, company, partnership, joint venture, firm, association, proprietorship, agency, board, authority, commission, office, or other business or legal entity, whether private or governmental.

M. "Price MFN" means a term in an agreement between an E-book Publisher and an E-book Retailer under which

1. the Retail Price at which an E-book Retailer or, under an Agency Agreement, an E-book Publisher Sells one or more E-books to consumers depends in any way on the Retail Price, or discounts from the Retail Price, at which any other E-book Retailer or the E-book Publisher, under an Agency Agreement, through any other E-book Retailer Sells the same E-book(s) to consumers.

2. the Wholesale Price at which the E-book Publisher Sells one or more E-books to that E-book Retailer for Sale to consumers depends in any way on the Wholesale Price at which the E-book Publisher Sells the same E-book(s) to any other E-book Retailer for Sale to consumers; or

3. the revenue share or commission that E-book Retailer receives from the E-book Publisher in connection with the Sale of one or more E-books to consumers depends in any way on the revenue share or commission that (a) any other E-book Retailer receives from the E-book Publisher in connection with the Sale of the same E-book(s) to consumers, or (b) that

5

E-book Retailer receives from any other E-book Publisher in connection with the Sale of one or more of the other E-book Publisher's E-books.

For purposes of this Final Judgment, it will not constitute a Price MFN under subsection 3 of this definition if a Settling Defendant agrees, at the request of an E-book Retailer, to meet more favorable pricing, discounts, or allowances offered to the E-book Retailer by another E-book Publisher for the period during which the other E-book Publisher provides that additional compensation, so long as that agreement is not or does not result from a pre-existing agreement that requires the Settling Defendant to meet all requests by the E-book Retailer for more favorable pricing within the terms of the agreement.

N. "Publisher Defendants" means Hachette, HarperCollins, Macmillan, Penguin, and Simon & Schuster. Where this Final Judgment imposes an obligation on Publisher Defendants to engage in or refrain from engaging in certain conduct, that obligation shall apply to each Publisher Defendant individually and to any joint venture or other business arrangement established by any two or more Publisher Defendants.

O. "Purchase" means a consumer's acquisition of one or more E-books as a result of a Sale.

P. "Retail Price" means the price at which an E-book Retailer or, under an Agency Agreement, an E-book Publisher Sells an E-book to a consumer.

Q. "Sale" means delivery of access to a consumer to read one or more E-books (purchased alone, or in combination with other goods or services) in exchange for payment; "Sell" or "Sold" means to make or to have made a Sale of an E-book to a consumer.

R. "Settling Defendants" means Hachette, HarperCollins, and Simon & Schuster. Where the Final Judgment imposes an obligation on Settling Defendants to engage in or refrain from engaging in certain conduct, that obligation shall apply to each Settling Defendant individually and to any joint venture other business arrangement established by a Settling Defendant and one or more Publisher Defendants.

S. "Simon & Schuster" means Simon & Schuster, Inc., a New York corporation with its principal place of business in New York, New York, its successors and assigns, and its subsidiaries, divisions, groups, and partnerships, and their directors, officers, managers, agents, and employees.

T. "Wholesale Price" means (1) the net amount, after any discounts or other adjustments (not including promotional allowances subject to Section 2(d) of the Robinson-Patman Act, 15 U.S.C. § 13(d)), that an E-book Retailer pays to an E-book Publisher for an E-book that the E-book Retailer Sells to consumers; or (2) the Retail Price at which an E-book Publisher, under an Agency Agreement, Sells an E-book to consumers through an E-book Retailer minus the commission or other payment that E-book Publisher pays to the E-book Retailer in connection with or that is reasonably allocated to that Sale.

### III. APPLICABILITY

This Final Judgment applies to Settling Defendants and all other Persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

## IV. REQUIRED CONDUCT

A. Within seven days after entry of this Final Judgment, each Settling Defendant shall terminate any agreement with Apple relating to the Sale of E-books that was executed prior to the filing of the Complaint.

B. For each agreement between a Settling Defendant and an E-book Retailer other than Apple that (1) restricts, limits, or impedes the E-book Retailer's ability to set, alter, or reduce the Retail Price of any E-book or to offer price discounts or any other form of promotions to encourage consumers to Purchase one or more E-books; or (2) contains a Price MFN, the Settling Defendant shall notify the E-book Retailer, within ten days of the filing of the Complaint, that the E-book Retailer may terminate the agreement with thirty-days notice and shall, thirty days after the E-book Retailer provides such notice, release the E-book Retailer from the agreement. For each such agreement that the E-book Retailer has not terminated within thirty days after entry of this Final Judgment, each Settling Defendant shall, as soon as permitted under the agreement, take each step required under the agreement to cause the agreement to be terminated and not renewed or extended.

C. Settling Defendants shall notify the Department of Justice in writing at least sixty days in advance of the formation or material modification of any joint venture or other business arrangement relating to the Sale, development, or promotion of E-books in the United States in which a Settling Defendant and at least one other E-book Publisher (including another Publisher Defendant) are participants or partial or complete owners. Such notice shall describe the joint venture or other business arrangement, identify all E-book Publishers that are parties to it, and attach the most recent version or draft of the agreement, contract, or other document(s) formalizing

8

the joint venture or other business arrangement. Within thirty days after a Settling Defendant provides notification of the joint venture or business arrangement, the Department of Justice may make a written request for additional information. If the Department of Justice makes such a request, the Settling Defendant shall not proceed with the planned formation or material modification of the joint venture or business arrangement until thirty days after substantially complying with such additional request(s) for information. The failure of the Department of Justice to request additional information or to bring an action under the antitrust laws to challenge the formation or material modification of the joint venture shall neither give rise to any inference of lawfulness nor limit in any way the right of the United States to investigate the formation, material modification, or any other aspects or activities of the joint venture or business arrangement and to bring actions to prevent or restrain violations of the antitrust laws.

The notification requirements of this Section IV.C shall not apply to ordinary course business arrangements between a Publisher Defendant and another E-book Publisher (not a Publisher Defendant) that do not relate to the Sale of E-books to consumers, or to business arrangements the primary or predominant purpose or focus of which involves: (i) E-book Publishers co-publishing one or more specifically identified E-book titles or a particular author's E-books; (ii) a Settling Defendant licensing to or from another E-book Publisher the publishing rights to one or more specifically identified E-book titles or a particular author's E-books; (iii) a Settling Defendant providing technology services to or receiving technology services from another E-book Publisher (not a Publisher Defendant) or licensing rights in technology to or from another E-book Publisher; or (iv) a Settling Defendant distributing E-books published by another E-book Publisher (not a Publisher Defendant).

D.   Each Settling Defendant shall furnish to the Department of Justice (1) within seven days after entry of this Final Judgment, one complete copy of each agreement, executed, renewed, or extended on or after January 1, 2012, between the Settling Defendant and any E-book Retailer relating to the Sale of E-books, and, (2) thereafter, on a quarterly basis, each such agreement executed, renewed, or extended since the Settling Defendant's previous submission of agreements to the Department of Justice.

## V.   **PROHIBITED CONDUCT**

A.   For two years, Settling Defendants shall not restrict, limit, or impede an E-book Retailer's ability to set, alter, or reduce the Retail Price of any E-book or to offer price discounts or any other form of promotions to encourage consumers to Purchase one or more E-books, such two-year period to run separately for each E-book Retailer, at the option of the Settling Defendant, from either:

1.   the termination of an agreement between the Settling Defendant and the E-book Retailer that restricts, limits, or impedes the E-book Retailer's ability to set, alter, or reduce the Retail Price of any E-book or to offer price discounts or any other form of promotions to encourage consumers to Purchase one or more E-books; or

2.   the date on which the Settling Defendant notifies the E-book Retailer in writing that the Settling Defendant will not enforce any term(s) in its agreement with the E-book Retailer that restrict, limit, or impede the E-book Retailer from setting, altering, or reducing the Retail Price of one or more E-books, or from offering price discounts or any other form of promotions to encourage consumers to Purchase one or more E-books.

Each Settling Defendant shall notify the Department of Justice of the option it selects for each E-book Retailer within seven days of making its selection.

B.  For two years after the filing of the Complaint, Settling Defendants shall not enter into any agreement with any E-book Retailer that restricts, limits, or impedes the E-book Retailer from setting, altering, or reducing the Retail Price of one or more E-books, or from offering price discounts or any other form of promotions to encourage consumers to Purchase one or more E-books.

C.  Settling Defendants shall not enter into any agreement with an E-book Retailer relating to the Sale of E-books that contains a Price MFN.

D.  Settling Defendants shall not retaliate against, or urge any other E-book Publisher or E-book Retailer to retaliate against, an E-book Retailer for engaging in any activity that the Settling Defendants are prohibited by Sections V.A, V.B, and VI.B.2 of this Final Judgment from restricting, limiting, or impeding in any agreement with an E-book Retailer. After the expiration of prohibitions in Sections V.A and V.B of this Final Judgment, this Section V.D shall not prohibit any Settling Defendant from unilaterally entering into or enforcing any agreement with an E-book Retailer that restricts, limits, or impedes the E-book Retailer from setting, altering, or reducing the Retail Price of any of the Settling Defendant's E-books or from offering price discounts or any other form of promotions to encourage consumers to Purchase any of the Settling Defendant's E-books.

E.  Settling Defendants shall not enter into or enforce any agreement, arrangement, understanding, plan, program, combination, or conspiracy with any E-book Publisher (including another Publisher Defendant) to raise, stabilize, fix, set, or coordinate the Retail Price or

11

Wholesale Price of any E-book or fix, set, or coordinate any term or condition relating to the Sale of E-books.

This Section V.E shall not prohibit a Settling Defendant from entering into and enforcing agreements relating to the distribution of another E-book Publisher's E-books (not including the E-books of another Publisher Defendant) or to the co-publication with another E-book Publisher of specifically identified E-book titles or a particular author's E-books, or from participating in output-enhancing industry standard-setting activities relating to E-book security or technology.

F. A Settling Defendant (including each officer of each parent of the Settling Defendant who exercises direct control over the Settling Defendant's business decisions or strategies) shall not convey or otherwise communicate, directly or indirectly (including by communicating indirectly through an E-book Retailer with the intent that the E-book Retailer convey information from the communication to another E-book Publisher or knowledge that it is likely to do so), to any other E-book Publisher (including to an officer of a parent of a Publisher Defendant) any competitively sensitive information, including:

1. its business plans or strategies;
2. its past, present, or future wholesale or retail prices or pricing strategies for books sold in any format (*e.g.*, print books, E-books, or audio books);
3. any terms in its agreement(s) with any retailer of books Sold in any format; or
4. any terms in its agreement(s) with any author.

12

This Section V.F shall not prohibit a Settling Defendant from communicating (a) in a manner and through media consistent with common and reasonable industry practice, the cover prices or wholesale or retail prices of books sold in any format to potential purchasers of those books; or (b) information the Settling Defendant needs to communicate in connection with (i) its enforcement or assignment of its intellectual property or contract rights, (ii) a contemplated merger, acquisition, or purchase or sale of assets, (iii) its distribution of another E-book Publisher's E-books, or (iv) a business arrangement under which E-book Publishers agree to co-publish, or an E-book Publisher agrees to license to another E-book Publisher the publishing rights to, one or more specifically identified E-book titles or a particular author's E-books.

## VI.   PERMITTED CONDUCT

A.   Nothing in this Final Judgment shall prohibit a Settling Defendant unilaterally from compensating a retailer, including an E-book Retailer, for valuable marketing or other promotional services rendered.

B.   Notwithstanding Sections V.A and V.B of this Final Judgment, a Settling Defendant may enter into Agency Agreements with E-book Retailers under which the aggregate dollar value of the price discounts or any other form of promotions to encourage consumers to Purchase one or more of the Settling Defendant's E-books (as opposed to advertising or promotions engaged in by the E-book Retailer not specifically tied or directed to the Settling Defendant's E-books) is restricted; *provided that* (1) such agreed restriction shall not interfere with the E-book Retailer's ability to reduce the final price paid by consumers to purchase the Settling Defendant's E-books by an aggregate amount equal to the total commissions the Settling Defendant pays to the E-book Retailer, over a period of at least one year, in connection with the

Sale of the Settling Defendant's E-books to consumers; (2) the Settling Defendant shall not restrict, limit, or impede the E-book Retailer's use of the agreed funds to offer price discounts or any other form of promotions to encourage consumers to Purchase one or more E-books; and (3) the method of accounting for the E-book Retailer's promotional activity does not restrict, limit, or impede the E-book Retailer from engaging in any form of retail activity or promotion.

## VII.   ANTITRUST COMPLIANCE

Within thirty days after entry of this Final Judgment, each Settling Defendant shall designate its general counsel or chief legal officer, or an employee reporting directly to its general counsel or chief legal officer, as Antitrust Compliance Officer with responsibility for ensuring the Settling Defendant's compliance with this Final Judgment. The Antitrust Compliance Officer shall be responsible for the following:

A.   furnishing a copy of this Final Judgment, within thirty days of its entry, to each of the Settling Defendant's officers and directors, and to each of the Settling Defendant's employees engaged, in whole or in part, in the distribution or Sale of E-books;

B.   furnishing a copy of this Final Judgment in a timely manner to each officer, director, or employee who succeeds to any position identified in Section VII.A of this Final Judgment;

C.   ensuring that each person identified in Sections VII.A and VII.B of this Final Judgment receives at least four hours of training annually on the meaning and requirements of this Final Judgment and the antitrust laws, such training to be delivered by an attorney with relevant experience in the field of antitrust law;

D.      obtaining, within sixty days after entry of this Final Judgment and on each anniversary of the entry of this Final Judgment, from each person identified in Sections VII.A and VII.B of this Final Judgment, and thereafter maintaining, a certification that each such person (a) has read, understands, and agrees to abide by the terms of this Final Judgment; and (b) is not aware of any violation of this Final Judgment or the antitrust laws or has reported any potential violation to the Antitrust Compliance Officer;

E.      conducting an annual antitrust compliance audit covering each person identified in Sections VII.A and VII.B of this Final Judgment, and maintaining all records pertaining to such audits;

F.      communicating annually to the Settling Defendant's employees that they may disclose to the Antitrust Compliance Officer, without reprisal, information concerning any potential violation of this Final Judgment or the antitrust laws;

G.      taking appropriate action, within three business days of discovering or receiving credible information concerning an actual or potential violation of this Final Judgment, to terminate or modify the Settling Defendant's conduct to assure compliance with this Final Judgment; and, within seven days of taking such corrective actions, providing to the Department of Justice a description of the actual or potential violation of this Final Judgment and the corrective actions taken;

H.      furnishing to the Department of Justice on a quarterly basis electronic copies of any non-privileged communications with any Person containing allegations of Settling Defendants' noncompliance with any provisions of this Final Judgment;

15

I.  maintaining, and furnishing to the Department of Justice on a quarterly basis, a log of all oral and written communications, excluding privileged or public communications, between or among (1) any of the Settling Defendant's officers, directors, or employees involved in the development of the Settling Defendant's plans or strategies relating to E-books, and (2) any person employed by or associated with another Publisher Defendant, relating, in whole or in part, to the distribution or sale in the United States of books sold in any format, including an identification (by name, employer, and job title) of the author and recipients of and all participants in the communication, the date, time, and duration of the communication, the medium of the communication, and a description of the subject matter of the communication (for a collection of communications solely concerning a single business arrangement that is specifically exempted from the reporting requirements of Section IV.C of this Final Judgment, the Settling Defendant may provide a summary of the communications rather than logging each communication individually); and

J.  providing to the Department of Justice annually, on or before the anniversary of the entry of this Final Judgment, a written statement as to the fact and manner of the Settling Defendant's compliance with Sections IV, V, and VII of this Final Judgment.

### VIII. COMPLIANCE INSPECTION

A.  For purposes of determining or securing compliance with this Final Judgment, or of determining whether the Final Judgment should be modified or vacated, and subject to any legally recognized privilege, from time to time duly authorized representatives of the Department of Justice, including consultants and other persons retained by the Department of Justice, shall, upon

written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to Settling Defendants, be permitted:

    1.    access during the Settling Defendants' office hours to inspect and copy, or at the option of the United States, to require Settling Defendants to provide to the United States hard copy or electronic copies of all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of Settling Defendants, relating to any matters contained in this Final Judgment; and

    2.    to interview, either informally or on the record, the Settling Defendants' officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by Settling Defendants.

    B.    Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, Settling Defendants shall submit written reports or respond to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested. Written reports authorized under this paragraph may, in the sole discretion of the United States, require Settling Defendants to conduct, at their cost, an independent audit or analysis relating to any of the matters contained in this Final Judgment.

    C.    No information or documents obtained by the means provided in this Section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.   If at the time information or documents are furnished by a Settling Defendant to the United States, the Settling Defendant represents and identifies in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and the Settling Defendant marks each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the United States shall give the Settling Defendant ten calendar days notice prior to divulging such material in any civil or administrative proceeding.

## IX.   **RETENTION OF JURISDICTION**

This Court retains jurisdiction to enable any party to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## X.   **NO LIMITATION ON GOVERNMENT RIGHTS**

Nothing in this Final Judgment shall limit the right of the United States to investigate and bring actions to prevent or restrain violations of the antitrust laws concerning any past, present, or future conduct, policy, or practice of the Settling Defendants.

## XI.   **EXPIRATION OF FINAL JUDGMENT**

Unless this Court grants an extension, this Final Judgment shall expire five years from the date of its entry.

### XII. PUBLIC INTEREST DETERMINATION

Entry of this Final Judgment is in the public interest. The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any comments thereon and the United States' responses to comments. Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.

Date: September 6, 2012

Court approval subject to procedures set forth in the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16

_____
Hon. Denise L. Cote
United States District Judge