

MICHAEL E. KIPLING
DID: (206) 545-0346
kipling@kiplinglawgroup.com

February 19, 2013

The Honorable Denise L. Cote
United States District Court Judge
Southern District of New York
500 Pearl Street, Room 1610
New York, NY 10007

    Re:    *In re: Electronic Books Antitrust Litigation, No. 11-md-02293-DLC (S.D.N.Y)*

Dear Judge Cote:

    Amazon.com, Inc. submits this letter and the accompanying Declaration of David Zapolsky in response to Apple's February 14 motion to compel. Apple seeks a vague order that would force Amazon to reveal the legal advice it sought and received in early 2010 in order to avoid being swept into the very price-fixing conspiracy that is presently before the Court. Amazon has already produced thousands of non-privileged documents from this period and two senior executives have testified about the general topic of Apple's motion: Amazon's reluctant decision to accept agency terms from the defendant publishers.[1] The Court should deny Apple's motion in its entirety.

    <u>Meetings</u>: Apple specifically challenges Amazon's privilege as to two meetings, January 24 and January 28, 2010. These meetings "were called for the purpose of obtaining legal advice regarding Amazon's response to what appeared to be collusive behavior by five of the largest publishers and Apple." Zapolsky Decl., ¶ 3. By the time those meetings took place, Amazon had learned "information [that] pointed strongly to the existence of an illegal (possibly criminal) price-fixing conspiracy by the five publishers and one or more retailers." Zapolsky Decl., ¶¶ 5–8, 10–12. Amazon's management sought legal advice in large part to avoid the very liability Apple now faces. *Id.*, ¶ 8. In this context, the "legal advice was inseparable from the business issues surrounding agency[.]" *Id.*, ¶ 4. Allowing Apple to inquire about those discussions would undermine the very purpose of the attorney-client privilege. *See Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

---

[1] Grandinetti 207:23–208:12 (Ex. A). Amazon has also provided discovery regarding its strong suspicion that Apple was involved, although the "mechanism" was of less immediate significance to Amazon than the *fact* that it faced simultaneous demands from five publishers for a drastic change in terms that was designed to raise consumer prices.

The Honorable Denise L. Cote            -2-                    February 19, 2013

      Amazon has already provided significant discovery relating to the context of these meetings. Two senior Amazon executives have testified about the impetus of these meetings, when and where they occurred, how long they lasted and who was present. Amazon also allowed testimony about the business decision to turn off the Macmillan "buy buttons" that was made at the January 28 meeting, the rationale behind that decision, and how it was implemented. (No decision was made on January 24.) Grandinetti 311:8–18, 204:24–205:5 (Ex. A); Naggar 125:14–130:11 (Ex. B). But both meetings undeniably involved legal advice and Amazon's witnesses have testified that there was no business discussion that can be separated from the legal discussion. *See* Grandinetti 170:3–25, 173:15–174:3; Naggar 119:5–124:8; Zapolsky Decl., ¶¶ 9, 13–14. There is nothing improper about asserting privilege in this situation. *See, e.g., Pritchard v. County of Erie (In re County of Erie)*, 473 F.3d 413, 419–21 (2d Cir. 2007).

      <u>Documents</u>: Apple blithely asserts that Amazon has wrongly claimed privilege as to "documents," but Apple has never identified, much less conferred regarding, the specific documents as to which Apple claims privilege was wrongly asserted.[2] If Apple identifies such documents, we are willing to meet and confer, but it is impossible to respond meaningfully to Apple's general allegations. In fact, this problem pervades the motion, which fails to identify with specificity either documents or instructions at the depositions. Consequently, Amazon cannot respond with specificity, nor would it be reasonably possible to comply with the vague order requested: "an order compelling … discovery into the rationale behind its business decision to adopt agency agreements[.]"

      Finally, while Amazon takes no position on the merits, we disagree with Apple's argument that Amazon's knowledge of specific provisions in Apple's publisher agreements is "critically important" evidence. Whether or not Apple's MFN provisions were "the key commitment mechanism" among the Defendants may be important, but evidence on that point will be found in *Defendants*' files. A non-party's *suspicions* about Apple's role are not even relevant, let alone critical. *See* Oct. 26, 2012 Transcript 25:16–26:1, 26:25–27:4 (Ex. C). And even if Amazon's internal thinking on the matter were relevant, the attorney-client privilege would still apply.

                                       Sincerely,
                                       KIPLING LAW GROUP PLLC

                                       Michael E. Kipling
                                       Counsel for Amazon.com, Inc.

cc:     Counsel for Apple, Inc.

---

[2] Apple does refer to an "analysis" allegedly prepared for the January 24 meeting (Apple relies on an internal HarperCollins email for this document's purported existence). Amazon has found no such document, nor do the participants in either meeting at issue recall any written presentation. *See* Grandinetti 174:22–175:5; Naggar 117:16–20, 135:25–136:16; Zapolsky Decl., ¶ 15.