UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,           )
                                    )
        Plaintiff,                  )   Civil Action No. 12-CV-2826 (DLC)
                                    )
        v.                          )
                                    )   ECF Case
APPLE, INC., *et al.*,              )
                                    )
        Defendants.                 )
_____)

## RESPONSE BY PLAINTIFF UNITED STATES TO PUBLIC COMMENTS ON THE PROPOSED FINAL JUDGMENT AS TO THE PENGUIN DEFENDANTS

Pursuant to the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16(b)-(h) ("APPA" or "Tunney Act"), the United States hereby responds to the three public comments received regarding the proposed Final Judgment as to Defendants The Penguin Group, a division of Pearson PLC, and Penguin Group (USA), Inc. (collectively, "Penguin"). After careful consideration of the comments submitted, the United States continues to believe that the proposed Final Judgment as to Penguin ("proposed Penguin Final Judgment") will provide an effective and appropriate remedy for the antitrust violations alleged in the Complaint.

The three comments submitted to the United States, along with a copy of this Response to Comments, are posted publicly at http://www.justice.gov/atr/cases/apple/index-1.html, in accordance with 15 U.S.C. § 16(d) and the Court's April 1, 2013 Order (Docket No. 200). The United States will publish this Internet location and this Response to Comments in the Federal Register, *see* 15 U.S.C. § 16(d), and will then, pursuant to the Court's January 7, 2013 Order (Docket No. 169), move for entry of the proposed Penguin Final Judgment by no later than April 19, 2013.

I.    PROCEDURAL HISTORY

On April 11, 2012, the United States filed a civil antitrust Complaint alleging that Apple, Inc. ("Apple") and five of the six largest publishers in the United States ("Publisher Defendants") conspired to raise prices of electronic books ("e-books") in the United States in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.  On the same day, the United States filed a proposed Final Judgment ("Original Final Judgment") as to three of the Publisher Defendants:  Hachette Book Group, Inc., HarperCollins Publishers L.L.C., and Simon & Schuster, Inc. (collectively, "Original Settling Defendants").  After publication of the Original Final Judgment, the United States received 868 public comments.  The United States filed its response to these comments on July 23, 2012 (Docket No. 81) ("Original Response to Comments"), and filed a motion for entry of the Original Final Judgment on August 3, 2012 (Docket No. 88).  On September 5, 2012, this Court issued an Opinion and Order finding that the Original Final Judgment satisfied the requirements of the Tunney Act, *see United States v. Apple, Inc.*, 2012 WL 3865135, at *6-7 (Slip Op. (Docket No. 113) at 16-19) (S.D.N.Y. Sept. 5, 2012), and then entered the Original Final Judgment on September 6, 2012 (Docket No. 119).

On December 18, 2012, the United States reached a settlement with Penguin on substantially the same terms as those contained in the Original Final Judgment, and filed a proposed Final Judgment and a Stipulation signed by the United States and Penguin consenting to the entry of the proposed Final Judgment after compliance with the requirements of the Tunney Act, 15 U.S.C. § 16 (Docket No. 162).  Pursuant to those requirements, the United States filed its Competitive Impact Statement ("CIS") with the Court on December 18, 2012 (Docket

No. 163); the proposed Final Judgment and CIS were published in the Federal Register on December 31, 2012, *see United States v. Apple, Inc., et al.*, 77 Fed. Reg. 77094; and summaries of the terms of the proposed Final Judgment and CIS, together with directions for the submission of written comments relating to the proposed Final Judgment, were published in *The Washington Post* for seven days beginning on December 23, 2012 and ending on December 29, 2012 and in the *New York Post* for seven days beginning on December 27, 2012 and ending on January 4, 2013. The sixty-day period for public comment ended on March 5, 2013. The United States received three comments, which are described below and attached hereto.[1]

## II. THE COMPLAINT & THE PROPOSED FINAL JUDGMENT AS TO PENGUIN

### A. The Publisher Defendants' Conspiracy with Apple

The United States has described the conspiracy among Apple and the Publisher Defendants in detail in a number of previous submissions to the Court, including the Complaint (Docket No. 1), the Original Response to Comments (Docket No. 81), and the CIS (Docket No. 163), and therefore offers only a relatively brief summary here.

Publisher Defendants were unhappy with Amazon.com, Inc.'s ("Amazon's") $9.99 pricing of newly released and bestselling e-books and sought to increase those prices. Compl. ¶¶ 3, 32-34. Because each Publisher Defendant expected that Amazon would resist any unilateral attempt to force it to increase its prices and feared that it would lose sales if its e-books

---

[1] On February 8, 2013, the United States reached a settlement with Defendants Verlagsgruppe Georg von Holtzbrinck GmbH and Holtzbrinck Publishers, LLC d/b/a Macmillan (collectively, "Macmillan"), and filed a proposed Final Judgment as to Macmillan ("proposed Macmillan Final Judgment") and a Stipulation signed by the United States and Macmillan consenting to entry of the proposed Final Judgment after compliance with the Tunney Act (Docket No. 174). The public comment period on the proposed Macmillan Final Judgment will expire on April 28, 2013.

were priced higher than its competitors' e-books, *id*. ¶¶ 35-36, 46, they ultimately agreed to act collectively to raise retail e-book prices. *Id*. ¶¶ 47-50.

Apple's anticipated entry into the e-book business provided a perfect opportunity to coordinate the Publisher Defendants' collective action to raise e-book prices. *Id*. ¶ 51. After two publishers suggested that Apple enter e-book sales under the "agency model," *id*. ¶¶ 52-54, 63, Apple recognized that use of that model by all publishers would give the publishers control over retail e-book prices, allowing them to address their concerns with Amazon's $9.99 pricing, while allowing Apple to shield itself from retail price competition and secure a 30 percent margin on each e-book sale. *Id*. ¶ 56. Apple realized this scheme would be at the cost of "the customer pay[ing] a little more." *Id*.

To achieve this goal, Apple proposed an unusual most favored nation ("MFN") pricing provision that effectively committed the Publisher Defendants' to impose the agency pricing model on all other retailers, *id*. ¶¶ 65-66, and ensured that Apple faced no price competition from other retailers. *Id*. ¶ 65. In January 2010, Apple sent to each Publisher Defendant substantively identical term sheets that Apple told them were devised after "talking to all the other publishers." *Id*. ¶¶ 62-64. Apple kept each Publisher Defendant informed about the status of its negotiations with other Publisher Defendants, which culminated in Apple and all Publisher Defendants executing nearly identical agency agreements (the "Apple Agency Agreements") within a three-day span in January 2010. *Id*. ¶¶ 61, 74.

The purpose of the Apple Agency Agreements was to raise and stabilize e-book prices while insulating Apple from competition. *Id*. ¶ 66. The Apple Agency Agreements included identical pricing tiers, with $12.99 and $14.99 price points for bestsellers. *Id*. ¶ 75. Apple CEO

Steve Jobs urged one Publisher Defendant to "[t]hrow in with Apple and see if we can all make a go of this to create a real mainstream e-books market at $12.99 and $14.99." *Id.* ¶ 71. As a result of the Publisher Defendants' illegal agreement with Apple, consumers have paid higher prices for e-books than they would have paid in a market free of collusion. *Id.* ¶¶ 90-93.

### B. The Proposed Penguin Final Judgment

The language and relief contained in the proposed Penguin Final Judgment is largely identical to the terms included in the Original Final Judgment. Based on reported reductions in the prices of e-book titles offered by HarperCollins, Hachette, and Simon & Schuster,[2] the proposed Penguin Final Judgment likely will lead to lower e-book prices for many Penguin titles. As explained in more detail in the CIS, the requirements and prohibitions included in the proposed Penguin Final Judgment will eliminate Penguin's illegal conduct, prevent recurrence of the same or similar conduct, and establish a robust antitrust compliance program.

The proposed Penguin Final Judgment requires that Penguin terminate its Apple Agency Agreement within seven days of this Court's entry. *See* proposed Penguin Final Judgment § IV.A. It also requires Penguin to terminate any other contracts with e-book retailers that restrict retailer discounting or that contain a price MFN, *see id.* § IV.B, and forbids Penguin, for two years, from entering new contracts that restrict retailers from discounting Penguin's e-books.

---

[2] *See, e.g.,* Scott Nichols, *HarperCollins Offering Discounted eBooks After Price Fixing Settlement*, TechRadar (Sept. 12, 2012), http://www.techradar.com/news/portable-devices/portable-media/harpercollins-offering-discounted-ebooks-after-price-fixing-settlement-1096467 ("Bestselling ebooks from the publisher such as 'The Fallen Angel' and 'Solo' can now be found for $9.99 on Amazon, Barnes and Noble, and other online retailers."); Nate Hoffelder, *Hachette Has Dropped Agency Pricing on eBooks*, The Digital Reader (Dec. 4, 2012), http://www.the-digital-reader.com/2012/12/04/hachette-has-dropped-agency-pricing-on-ebooks/ ("Amazon is discounting the ebooks by $1 to $4 from the list price, and both Barnes & Noble and Apple are making similar discounts"); Jeremy Greenfield, *Simon & Schuster Has a New Deal With Amazon, Other Retailers*, Digital Book World (Dec. 9, 2012), http://www.digitalbookworld.com/2012/looks-like-simon-schuster-has-a-new-deal-with-amazon-other-retailers/ ("Ebook prices were lowered for Simon & Schuster titles over the weekend on sites like Amazon and Nook.com to levels several dollars below what they had been earlier in the week.").

*See id.* §§ V.A & V.B.  These provisions will help ensure that new contracts will not be set under the same collusive conditions that produced the Apple Agency Agreements.  The proposed Penguin Final Judgment permits Penguin, however, in new agreements with e-book retailers, to agree to terms that prevent the retailer from selling Penguin's entire catalog of e-books at a sustained loss.  *See id.* § VI.B.

To prevent a recurrence of the alleged conspiracy, the proposed Penguin Final Judgment prohibits Penguin from entering into new agreements with other publishers under which prices are fixed or coordinated, *see id.* § V.E, and also forbids communications between Penguin and other publishers about competitively sensitive subjects.  *See id.* § V.F.  Banning such communications is critical here, where communications among publishing competitors were a common practice and led directly to the collusive agreement alleged in the Complaint.

As outlined in Section VII, Penguin also must designate an Antitrust Compliance Officer, who is required to distribute copies of the Penguin Final Judgment; ensure training related to the Penguin Final Judgment and the antitrust laws; certify compliance with the Penguin Final Judgment; maintain a log of all communications between Penguin and employees of other Publisher Defendants; and conduct an annual antitrust compliance audit.  This compliance program is necessary considering the extensive communication among competitors' CEOs that led to the Publisher Defendants' conspiracy with Apple.

### III.     STANDARD OF JUDICIAL REVIEW

In its Opinion and Order finding that the Original Final Judgment satisfied the requirements of the Tunney Act, this Court articulated the standard of review under the APPA. *See United States v. Apple, Inc.*, 2012 WL 3865135, at *5-6 (Slip Op. (Docket No. 113) at 12-16) (S.D.N.Y. Sept. 5, 2012).  The United States briefly reiterates that standard here.

Under the Tunney Act, proposed consent judgments in antitrust cases brought by the United States are subject to a sixty-day comment period, after which the court shall determine whether entry of the proposed final judgment "is in the public interest."  15 U.S.C. § 16(e)(1).

When parties come before the court in a Tunney Act proceeding, they have resolved their dispute with respect to a government antitrust complaint.  Accordingly, the court's inquiry is necessarily a limited one as the government is entitled to "broad discretion to settle with the defendant within the reaches of the public interest."  *United States v. Microsoft Corp.*, 56 F.3d 1448, 1461 (D.C. Cir. 1995); *accord United States v. KeySpan Corp.*, 763 F. Supp. 2d 633, 637 (S.D.N.Y. 2011).

To meet this standard, the United States "need only provide a factual basis for concluding that the settlements are reasonably adequate remedies for the alleged harms."  *United States v. SBC Commc'ns, Inc.*, 489 F. Supp. 2d 1, 17 (D.D.C. 2007); *accord KeySpan Corp.*, 763 F. Supp. 2d at 637-38.  The United States "need not prove its underlying allegations in a Tunney Act proceeding," as such a requirement "would fatally undermine the practice of settling cases and would violate the intent of the Tunney Act."  *SBC Commc'ns*, 489 F. Supp. 2d at 20

The Tunney Act requires the court to consider specific factors in determining whether the proposed Final Judgment is in the "public interest."  15 U.S.C. § 16(e)(1).  Courts "cannot look

beyond the complaint in making the public interest determination unless the complaint is drafted so narrowly as to make a mockery of judicial power." *SBC Commc'ns*, 489 F. Supp. 2d at 15.

> Under the statute, the court should consider the following factors:
>
> (a) the competitive impact of such judgment, including termination of alleged violations, provisions for enforcement and modification, duration of relief sought, anticipated effects of alternative remedies actually considered, whether its terms are ambiguous, and any other competitive considerations bearing upon the adequacy of such judgment that the court deems necessary to a determination of whether the consent judgment is in the public interest; and
>
> (b) the impact of entry of such judgment upon competition in the relevant market or markets, upon the public generally and individuals alleging specific injury from the violations set forth in the complaint including consideration of the public benefit, if any, to be derived from a determination of the issues at trial.

15 U.S.C. § 16(e)(1)(A)-(B).  In other words, under the Tunney Act, a court considers, among other things, the relationship between the remedy secured and the specific allegations set forth in the government's complaint, whether the decree is sufficiently clear, whether enforcement mechanisms are sufficient, and whether the decree may positively harm third parties.  *See Microsoft*, 56 F.3d at 1458-62.  With respect to the adequacy of the relief secured by the decree, a court may not "engage in an unrestricted evaluation of what relief would best serve the public." *United States v. BNS, Inc.*, 858 F.2d 456, 462 (9th Cir. 1988) (quoting *United States v. Bechtel Corp.*, 648 F.2d 660, 666 (9th Cir. 1981)); *see also Microsoft*, 56 F.3d at 1460-62; *United States v. Alex. Brown & Sons, Inc.,* 963 F. Supp. 235, 238 (S.D.N.Y. 1997).  Instead, the court should grant due respect to the United States' "prediction as to the effect of proposed remedies, its perception of the market structure, and its view of the nature of the case." *United States v. Archer-Daniels-Midland Co.*, 272 F. Supp. 2d 1, 6 (D.D.C. 2003).

## IV. SUMMARY OF PUBLIC COMMENTS AND THE RESPONSES OF THE UNITED STATES

During the sixty-day comment period, the United States received comments from three individuals or groups, each of which previously submitted comments in response to the Final Judgment as to the Original Settling Defendants:  (1) Bob Kohn; (2) the National Association of College Stores; and (3) Steerads Inc.  The comments, which are similar in substance to each commenter's prior submission, are attached to this response.  As explained in detail below, after consideration of the three comments, the United States continues to believe that the proposed Penguin Final Judgment is in the public interest.

### A. Bob Kohn

Commenter Bob Kohn has already made a number of submissions in connection with this case.[3]  Mr. Kohn's latest submission focuses largely on his claim that the Complaint is misguided and the defendants' conduct was legal.  In the final pages he addresses whether the settlement is within the reaches of the public interest.  His submission provides no grounds on which the Court should find that entry of the proposed Penguin Final Judgment would not be in the public interest.

Mr. Kohn first asserts that, if Amazon priced e-books below their marginal costs, a conspiracy among Apple and the Publisher Defendants to raise retail prices of e-books could not,

---

[3] *See* Comment concerning the proposed Final Judgment as to the Original Settling Defendants (May 30, 2012), *available at* http://www.justice.gov/atr/cases/apple/comments/atc-0143.pdf; Mem. in Supp. of Mot. of Bob Kohn for Leave to Participate as *Amicus Curiae* (Aug. 13, 2012) (Docket No. 97); Br. of Bob Kohn as *Amicus Curiae* (Sept. 4, 2012) (Docket No. 110); Mem. in Supp. of Bob Kohn's Mot. to Stay Final J. Pending Appeal (Sept. 7, 2012) (Docket No. 117); Mem. . . . In Supp. of Mot. by Bob Kohn for Leave to Intervene for the Sole Purpose of Appeal (Sept. 7, 2012) (Docket No. 115); Mem. of Law in Reply to Opp'n of the United States to Mot. by Bob Kohn for Leave to Intervene for the Sole Purpose of Appeal (September 20, 2012) (Docket No. 130).  Most recently, the Second Circuit affirmed this Court's denial of Mr. Kohn's motion to intervene for purposes of appealing the Court's entry of the Original Final Judgment.  *See Bob Kohn v. United States*, No. 12-4017 (2d Cir. Mar. 26, 2013).

as a matter of law, be unlawful.  This is particularly the case, Mr. Kohn asserts, because the method by which Apple and the Publisher Defendants succeeded in increasing e-book prices and eliminating retail price competition was the imposition of lawful agency terms.  Kohn Comment at 12-18.

Mr. Kohn is not correct that firms may, as a matter of law, conspire to undo what they regard to be anticompetitive conduct.  As the United States stated its Original Response to Comments, even if there were evidence to substantiate claims of monopolization or predatory pricing by Amazon, it would not have been acceptable for the Publisher Defendants to conspire with Apple to engage in self help.  As this Court observed in finding that entry of the Original Final Judgment satisfied the requirements of the Tunney Act, "even if Amazon *was* engaged in predatory pricing, this is no excuse for unlawful price-fixing.  Congress 'has not permitted the ago-old cry of ruinous competition and competitive evils to be a defense to price-fixing conspiracies.' . . . The familiar mantra regarding 'two wrongs' would seem to offer guidance in these circumstances." *United States v. Apple, Inc.*, 2012 WL 3865135, at *16 (Slip Op. (Docket No. 113) at 40) (S.D.N.Y. Sept. 5, 2012) (quoting *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 221 (1940)).  *See also FTC v. Ind. Fed'n of Dentists*, 476 U.S. 447, 465 (1986) ("That a particular practice may be unlawful is not, in itself, a sufficient justification for collusion among competitors to prevent it.").[4]

---

[4]  The permissibility of agency relationships in other contexts does not alter this conclusion.  As the United States stated in its Original Response to Comments, "[t]he United States . . . does not object to the agency method of distribution in the e-book industry, only to the collusive use of agency to eliminate competition and thrust higher prices onto consumers."  Original Response to Comments at vi; *see also id.* at 17 ("Of course, publishers that were not parties to the conspiracy face no government challenge whatsoever as to agency agreements independently arrived at with e-book retailers.") & 37-38 ("While agency agreements are not inherently illegal, collusive agreements that prevent price competition are, and the settlement is designed to unwind the effects of agency contracts stemming from a collusive agreement.").

Mr. Kohn next argues, citing *Columbia Broadcasting System, Inc. v. ASCAP*, 620 F.2d 930 (2d Cir. 1980), that the Publisher Defendants' conduct was legal as long as (1) they had to act together to impose agency on Amazon and other e-book retailers and (2) the collusive conduct did not impinge on the Publisher Defendants' right to sell e-books "separately to any buyer at any price." Kohn Comment at 20. Using his test, Mr. Kohn argues that both conditions are met and the Defendants should not have been sued.

Mr. Kohn misreads *CBS v. ASCAP*. That case was a remand of the Supreme Court's decision in *Broadcast Music, Inc. v. Columbia Broadcasting System, Inc.*, 441 U.S. 1 (1979), and concerned joint action by license holders of songs to create a new licensing product – a blanket license that allowed unlimited access to all of their songs. On remand, the Second Circuit found blanket performing rights licenses not to restrain trade because music users had a "fully available" opportunity to bypass the new blanket license and obtain rights to individual songs directly from individual composers, just as they had before the creation of the blanket license. 620 F.2d at 935-36 ("If the opportunity to purchase performing rights to individual songs is fully available, then it is customer preference for the blanket license, and not the license itself, that causes the lack of price competition among songs."). Here, the Complaint alleges that the Publisher Defendants did not act together to create a new, supplemental product, but to raise price. And, in agreeing to raise price, they agreed not to make individual e-books available on the same terms that had existed before they acted jointly. *See* Compl. ¶¶ 3, 66 (alleging that the retail-price MFNs in the agreements created disincentives to reducing prices or permitting discounting); *United States v. Apple, Inc.*, 2012 WL 3865135, at *13 (Slip Op. (Docket No. 113) at 33) (S.D.N.Y. Sept. 5, 2012) ("After defendants' coordinated switch to agency pricing, a

consumer could not find Publisher Defendants' newly-released and bestselling e-books for $9.99 at *any* retailer.").[5]

When Mr. Kohn finally turns away from his underlying concerns that the Defendants' conduct was legal and considers the remedy at issue, he argues that the proposed Penguin Final Judgment "reverses" the "pro-competitive impacts" of "reducing Amazon's monopoly power and monopsony power." Kohn Comment at 23.  In making that claim, Mr. Kohn assumes that the consent decree bars agency contracts and he intimates that the decree will not lead to "efficient pricing" (what he calls marginal cost pricing) of e-books, but rather will "allow[] a predatory-induced market failure to resume for another two years," with harmful consequences. Kohn Comment at 28-29.  However, the proposed Penguin Final Judgment permits Penguin to enter contracts that ensure the "efficient pricing" he desires.  *See* proposed Penguin Final Judgment § VI.B.  Mr. Kohn likely is not aware that after the Court approved the Original Final Judgment, which contained an identical term, at least one of the first three settling publishers entered into an agency contract with an e-book retailer that allowed that retailer to discount e-books only up to the level of its aggregate commission.  This type of arrangement allows a retailer to try to grow its share by competing away much of its commission by reducing prices to consumers.  Moreover, a retailer that embraces this practice will be selling e-books closer to their

---

[5]  Mr. Kohn is correct that the United States alleged in the Complaint that it was not in any individual Publisher Defendant's unilateral self interest to impose agency terms on Amazon or other e-book retailers – and that the Publisher Defendants could not have accomplished their goal of raising retail prices of e-books without conspiring with each other and Apple.  *See, e.g.*, Compl. ¶¶ 5, 35-36, 38, 60, 69.  These allegations support a finding of an agreement under Section 1 of the Sherman Act, 15 U.S.C. § 1.  *See Toys "R" Us, Inc. v FTC*, 221 F.3d 928, 935-36 (7th Cir. 2000) ("inferring" horizontal agreement from facts showing "that the only condition on which each toy manufacturer would agree to TRU's demands was if it could be sure its competitors were doing the same thing").

marginal cost (a goal Mr. Kohn applauds) than they were permitted to under the collusively imposed agency agreements – which granted no pricing discretion to the retailer.[6]

Finally, Mr. Kohn faults the United States for not disclosing as "determinative" materials or documents, pursuant to 15 U.S.C. § 16(b), investigative materials revealing Amazon's pricing practices. Kohn Comment at 30. The "determinative" documents requirement requires submission of a "fairly narrow" set of materials, *United States v. Bleznak*, 153 F.3d 16, 20 (2d Cir. 1998), and does not require provision of the materials sought by Mr. Kohn. The United States' obligation is to provide "factual foundation for [its] decisions such that its conclusions regarding the proposed settlement are reasonable." *United States v. Keyspan Corp.*, 763 F. Supp. 2d 633, 637-38 (S.D.N.Y. 2011) (citation omitted). This Court determined previously that the materials supplied by the United States provided "ample factual foundation for [its] decisions regarding the proposed Final Judgment." *United States v. Apple, Inc.*, 2012 WL 3865135, at *12-13 (Slip Op. (Docket No. 113) at 32-33) (S.D.N.Y. Sept. 5, 2012).

### B. National Association of College Stores

The National Association of College Stores ("NACS") describes itself as a trade association whose members include 3,000 stores serving colleges, universities, or K-12 schools and more than 1,000 companies supplying goods and services to campus stores. The NACS expresses concern about the potential applicability of the proposed Penguin Final Judgment to the sale of e-textbooks. NACS specifically fears that the requirements and prohibitions in the

---

[6] Mr. Kohn is incorrect when he states pricing below marginal costs is "*presumptively* illegal." Kohn Comment at 29 (emphasis in original). The Second Circuit, in *Northeastern Telephone Company v. American Telephone & Telegraph Company*, found only that prices below marginal costs will be "presumed predatory." 651 F.2d 76, 88 (2d Cir. 1981). To succeed on a predatory pricing claim, an antitrust plaintiff must also establish that there is a "dangerous probability" that the defendant will later "recoup[ ] its investment in below-cost prices." *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 224 (1993).

proposed Penguin Final Judgment will apply to Pearson Education or other educational publishing companies owned by Penguin's parent, Pearson Plc.[7]

The NACS is correct that the conspiracy among the Publisher Defendants and Apple challenged in the Complaint concerned the sale of trade e-books, not e-book versions of academic textbooks.  Compl. ¶¶ 27 n.1, 99.  However, none of the Penguin entities subject to the proposed Penguin Final Judgment publish e-textbooks.  It is not necessary to clarify the proposed Penguin Final Judgment, as the NACS suggests, to specifically exclude e-textbooks.[8]

### C. Steerads Inc.

Steerads is a Canadian corporation that develops solutions to "improve online advertisers' return on investment by optimizing user-specific advertisements bids."  Steerads Comment at 2-3.  It states that "the terms and conditions imposed on [Penguin] in [the proposed Final Judgment] are clear, thus enforceable."  *Id*. at 2.  It asserts, however, that the proposed Penguin Final Judgment "provides inadequate relief" in that it fails to include a provision under which the consent decree would have prima facie effect in private litigation.  *Id*. at 3.[9]

---

[7] In a comment filed in response to the proposed Final Judgment as to the Original Settling Defendants, the NACS expressed similar concern about the applicability of that consent decree to the e-textbooks market.  *See* National Association of College Stores' Comments Concerning Proposed E-Book Final Judgment, *available at* http://www.justice.gov/atr/cases/apple/comments/atc-0845.pdf; *see also United States v. Apple, Inc.,* 2012 WL 3865135, at *11 n.12 (Slip Op. (Docket No. 113) at 29 n.12) (S.D.N.Y. Sept. 5, 2012) (discussing concerns raised by the NACS).

[8] Because Defendant Holtzbrinck Publishers, LLC d/b/a Macmillan publishes e-textbooks, the proposed Macmillan Final Judgment expressly excludes "the electronically formatted version of a book marketed solely for use in connection with academic coursework" from the consent decree's definition of "e-book."  *See* Proposed Macmillan Final Judgment (Docket No. 174-1), ¶ II.D.  No such modification is required with respect to the proposed Penguin Final Judgment because the proposed Penguin Final Judgment expressly excludes the Pearson entities that publish e-textbooks.

[9] Steerads notes that it "proposed identical relief as to the Original Judgment."  Steerads Comment at 3.  *See* Public Comments Submitted to the United States by Steerads Inc. Concerning a Proposed Final Judgment and Supporting Stipulation and Competitive Impact Statement filed with the Court in the Above-Captioned Matter, *available at* http://www.justice.gov/atr/cases/apple/comments/atc-0374.pdf.

Steerads does not suggest that the injunctive relief contained in the proposed Penguin Final Judgment fails to adequately end the harm to competition alleged by the United States in the Complaint. It instead seeks additional relief to enhance the likelihood of the recovery of damages in subsequent litigation. The United States, however, deemed it appropriate to avoid the costs and delays associated with litigation by acceding to a consent decree with Penguin that had the same substantive provisions as the consent decree the Court previously approved, including a provision making it clear that the settlement did not constitute a finding of liability that would harm the settling defendant in follow-on private litigation. The Supreme Court has approved such settlements before. *See, e.g., Swift & Co. v. United States*, 276 U.S. 311, 327 (1928) (refusing to vacate injunctive relief in consent judgment that contained recitals in which defendants asserted their innocence); *see also United States v. Morgan Stanley*, 881 F. Supp. 2d 563, 568-69 (S.D.N.Y. 2012) (observing that defendants are encouraged "to settle promptly" by the Tunney Act provision that makes consent decrees entered before testimony is taken not usable "against a defendant in private litigation" (citation omitted)). Indeed, the legislative history of the Tunney Act shows that Congress generally assumed that consent decrees will not include admissions of liability, with Senator Tunney noting in his floor statement that "[e]ssentially the [consent] decree is a device by which the defendant, while refusing to admit guilt, agrees to modify its conduct and in some cases to accept certain remedies designed to correct the violation asserted by the Government." 119 Cong. Rec. 3451. *See also* S. Rep. 93-298, 93 Cong., 1st Sess. 6 (1973) at 5-7; H. Rep. No. 1463, 93 Cong., 2nd Sess. (1974) at 6 ("Ordinarily, defendants do not admit to having violated the antitrust or other laws alleged as violated in complaints that are settled.").

V.     **CONCLUSION**

The United States continues to believe that the proposed Penguin Final Judgment, as drafted, provides an effective and appropriate remedy for the antitrust violations alleged in the Complaint and that it is therefore in the public interest.

Pursuant to the Court's January 7, 2013 Order (Docket No. 169), the United States will move for entry of the proposed Penguin Final Judgment after this Response to Comments is published in the Federal Register (along with the Internet location where the three comments are posted) and by no later than April 19, 2013.

Dated:  April 5, 2013

                              Respectfully submitted,


                                 s/ Mark W. Ryan
                              Mark W. Ryan
                              Lawrence E. Buterman
                              Stephen T. Fairchild
                              Attorneys for the United States
                              United States Department of Justice
                              Antitrust Division
                              450 Fifth Street, NW, Suite 4000
                              Washington, DC 20530
                              (202) 532-4753
                              Mark.W.Ryan@usdoj.gov

CERTIFICATE OF SERVICE

I, Stephen T. Fairchild, hereby certify that on April 5, 2013, I caused a copy of the Response of Plaintiff United States to Public Comments on the Proposed Final Judgment as to the Penguin Defendants to be served by the Electronic Case Filing System, which included the individuals listed below.

For Apple:
Daniel S. Floyd
Gibson, Dunn & Crutcher LLP
333 S. Grand Avenue, Suite 4600
Los Angeles, CA 90070
(213) 229-7148
dfloyd@gibsondunn.com

For Macmillan and Verlagsgruppe Georg Von Holtzbrinck GMBH:
Joel M. Mitnick
Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019
(212) 839-5300
jmitnick@sidley.com

For Penguin U.S.A. and the Penguin Group:
Daniel F. McInnis
Akin Gump Strauss Hauer & Feld, LLP
1333 New Hampshire Avenue NW
Washington, DC 20036
(202) 887-4000
dmcinnis@akingump.com

For Hachette:
Walter B. Stuart, IV
Freshfields Bruckhaus Deringer LLP
601 Lexington Avenue
New York, NY 10022
(212) 277-4000
walter.stuart@freshfields.com

For HarperCollins:
Paul Madison Eckles
Skadden, Arps, Slate, Meagher & Flom
Four Times Square, 42nd Floor
New York, NY 10036
(212) 735-2578
pmeckles@skadden.com

For Simon & Schuster:
Yehudah Lev Buchweitz
Weil, Gotshal & Manges LLP (NYC)
767 Fifth Avenue, 25th Fl.
New York, NY 10153
(212) 310-8000 x8256
yehudah.buchweitz@weil.com

Additionally, courtesy copies of this Competitive Impact Statement have been provided to the following:

For the State of Connecticut:
W. Joseph Nielsen
Assistant Attorney General
Antitrust Division
Office of the Attorney General
55 Elm Street
Hartford, CT 06106
(860) 808-5040
Joseph.Nielsen@ct.gov

For the State of Texas:
Gabriel R. Gervey
Assistant Attorney General
Antitrust Division
Office of the Attorney General of Texas
300 W. 15th Street
Austin, Texas 78701
(512) 463-1262
gabriel.gervey@oag.state.tx.us

For the Private Plaintiffs:
Jeff D. Friedman
Hagens Berman
715 Hearst Ave., Suite 202
Berkeley, CA 94710
(510) 725-3000
jefff@hbsslaw.com

    s/ Stephen T. Fairchild
Stephen T. Fairchild
Attorney for the United States
United States Department of Justice
Antitrust Division
450 Fifth Street, NW, Suite 4000
Washington, DC 20530
(202) 532-4925
stephen.fairchild@usdoj.gov