IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>v.<br><br>APPLE, INC.,<br>HACHETTE BOOK GROUP, INC.,<br>HARPERCOLLINS PUBLISHERS, L.L.C.<br>VERLAGSGRUPPE GEORG VON<br>HOLTZBRINK PUBLISHERS, LLC<br>  d/b/a MACMILLAN,<br>THE PENGUIN GROUP,<br>  A DIVISION OF PEARSON PLC,<br>PENGUIN GROUP (USA), INC. and<br>SIMON & SCHUSTER, INC.,<br><br>  Defendants. | Civil Action No.12-CV-2826 (DLC) |

**BRIEF OF *AMICUS CURIAE* BOB KOHN
IN REPLY TO THE GOVERNMENT'S RESPONSE TO PUBLIC COMMENTS
ON THE PROPOSED FINAL JUDGMENT WITH THE PENGUIN DEFENDANTS**

**INTRODUCTION**

By Order dated August 28, 2012 (ECF #108), this Court, pursuant to 15 U.S.C. §16(f)(3), granted leave to Bob Kohn to participate as amicus curiae in this action. On February 28, 2013, Kohn submitted comments to the Government regarding a proposed Final Judgment with the Penguin defendants ("Penguin Settlement") and such comments were filed with the Court on April 5, 2013 ("Kohn Comments" at http://www.justice.gov/atr/cases/apple/comments1/atc-1000.pdf), together with the Government's response to such comments ("Government Response" at ECF #201). Kohn respectfully submits the following *reply* to the Government Response.

### I. KOHN CONCEDES THAT THE PROPRIETY OF DEFENDANTS' CONDUCT IS IRRELEVANT TO THIS TUNNEY ACT PROCEEDING

In its Response to Public Comments to the Penguin Settlement (4/5/13, ECF #201 at 9), the Government dismissed as irrelevant Kohn's contention that defendants' conduct could not, as a matter of law, have involved any wrongdoing. Kohn, at the outset, concedes that, insofar as it relates to the Court's public interest determination, the Government is correct in this regard. But while the Government dismisses such alleged conduct as irrelevant to this proceeding, it must necessarily concede that—even if the defendants' alleged conduct constituted the most egregious acts of price fixing since the dawn of the Sherman Act—a settlement that is not in the public interest must not be approved by this Court.

### II. THE GOVERNMENT NOW AFFIRMATIVELY ADMITS THAT AMAZON WAS SELLING BELOW MARGINAL COST

In support of its motion for entry of the Penguin Settlement, the Government states: "[T]he proposed Penguin Final Judgment likely will lead to lower e-book prices for many Penguin titles." Memorandum, 4/18/13, ECF #211 at 5. Yet, Kohn's central contention is that the resulting lower e-book prices will, as a matter of law, have a harmful impact upon the relevant

1

market and the public generally. See, Kohn Comments at 10-18, 29-29.

Pivotal to this public interest determination is whether, prior to the adoption of the agency contracts, Amazon was selling e-books at below marginal cost. The Court recognized this when it remarked,

> [W]hile comments complain that Amazon's $9.99 price for newly-re-leased and bestselling e-books was 'predatory,' none of them attempts to show that Amazon's e-book prices as a whole were below marginal cost. Order, 9/5/12, ECF #113 at 39. [1]

As explained in pages 10-18 of Kohn's Comments, if, prior to its adoption of the agency contracts, Amazon was selling e-books at below marginal cost[2], then any decrease in prices caused by the settlement—which the Government admits is its "likely" result—cannot be in the public interest.[3] This is true now matter how collusive or illegal Penguin's conduct was.

In its Response, the Government has now supplied what this Court said none of the comments attempted to show: the admission that Amazon's e-book prices as a whole were below marginal cost. Specifically, in its Response, the Government asserted that the degree to which Amazon may discount under the settlement is limited to the "the level of [the e-retailer's] aggregate commission." Government Response to Public Comments, 4/5/13, ECF #201 at 12. Thus, according to the Government, **the settlement permits Amazon to resume selling at below marginal cost, albeit at prices "closer to their marginal cost" than before**. Id. at 12-

---

[1] Implicit in its statement, the Court placed the burden not on the Government, but on members of the *public* to produce evidence of Amazon's below marginal cost pricing. The Court never explained to the public how this feat could be accomplished by the public without (i) the Court's exercising its powers under Section 16(f) of the Tunney Act, (ii) Amazon's voluntarily agreeing to disclose the information, or (iii) an illegal, physical assault on Amazon's facilities to obtain its relevant contracts and accounting records. A more practical means by which the public and the Court could obtain this information is discussed in Kohn Comments at 30-31, and addressed in Section III below.
[2] The Court's use of the phrase "as a whole" in the context of its public interest determination is discussed in Kohn Comments at 16.
[3] As the Second Circuit recognized in *Northeastern,* selling below marginal cost causes a misallocation of resources. Citing Areeda & Turner, "Predatory Pricing," 88 *Harvard Law Review* 697, 712 (1974-75). See, for example, Kohn Comments at 29. Thus, after the adoption of the agency contracts, any increase in e-book prices back up to the level of Amazon's marginal cost, the economically efficient equilibrium, could not have harmed consumers. Lower prices resulting from the Penguin Settlement reverses those benefits thereby having a harmful impact upon the relevant market and the public generally. Kohn Comments at 10-18 and 28-29.

13.[4]

Surely the inconsistency of the Government's contentions is now obvious: The Government admits in its Response that selling e-books at below marginal cost is "presumed predatory" under *Northeastern* (Response at 13, note 6). Yet, while admitting that the settlement allows Amazon to resume selling e-books at **below**—though "closer to"—their marginal cost, such activity, contends the Government, is not, and never was, presumed predatory (Id. at 12-13).

The agency contracts, which were intrinsically lawful, put an end to Amazon's *below* marginal cost pricing, returning e-book prices back up to their economically efficient level. **Even if the publishers had not colluded, adoption of agency pricing would have resulted in higher e-book prices**, because the agency model forced Amazon to cease selling e-books at below their marginal cost. The restrictions imposed by the Penguin Settlement now allows Amazon to resume selling Penguin trade e-books at prices that are *below* their marginal cost. (Even though they are being sold "closer to marginal cost," they are still *below* marginal cost). Thus, the forced discounting feature of the settlements, regardless of their aggregate limitations, *elucidates* the harm the settlement is causing by *reversing* (albeit *partially*) the market-correcting adjustment in prices following the agency contracts. Reversing such price adjustments, even partially, causes an economically inefficient result that harms consumers and the public generally.

### III.   MISREADING *BROOK GROUP*, THE GOVERNMENT ADMITS THAT IT FAILED TO DISCLOSE DETERMINITIVE DOCUMENTS

In a footnote in its Response (ECF #201 at 13, note 6), the Government says *Northeastern* found only that prices below marginal costs will be "presumed predatory" (citing

---

[4] How the Government could construe this as "a goal Mr. Kohn applauds" is baffling.

651 F.2d 76, 78 (2d Cir. 1981). And added, "To succeed on a predatory pricing claim, an antitrust plaintiff must also establish that there is a 'dangerous probability' that the defendant will later 'recoup[] its investment in below-cost prices.' *Brook Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 224 (1993)." Had Government read the next paragraph, it would have found such second prerequisite for predatory pricing, as well as the U.S. Supreme Court's observation that, in order to recoup its losses, the predator "must obtain **enough market power to set higher than competitive prices**." *Brook Group* at 225. **This was satisfied by the District Court's *factual finding* that Amazon achieved a "90 percent monopoly" of the e-book market. Order, ECF #113 at 34-35**. The existence of the requisite market power ordinarily may be inferred from the predominant share of the market. See, *United States v. Grinnell Corp.*, 384 U.S. 563, 571 (1966) (in which 87% of the market constituted "monopoly power"). Kohn Comments at 17.

While the pivotal question in this public interest determination is whether Amazon was selling below marginal cost, the public harm resulting from the lower e-book prices sought by the settlement does not rely on demonstrating that Amazon engaged in unlawful predatory conduct. It only relies on the fact that Amazon was *selling below marginal cost*—a fact which the Government not only never denied, but has now specifically admitted—activity which is *presumed predatory*, a point of law the Government has specifically conceded. Government Response, ECF #201 at 13, note 6.

If prices below marginal cost will be "presumed predatory," then by admitting that Amazon (which yielded 90% market power) had been selling e-books at below marginal cost, the Government has aligned itself with Kohn's position on the disclosure of determinative documents: it is the Government, not the public, who has the obligation to produce documents

4

that exculpate the predatory presumption. Any materials or documents concerning the Government's "investigation" of Amazon's pricing practices, including its extraordinary conclusion that Amazon's e-book business was "consistently profitable" (Complaint, ECF #1 at ¶30) would thus constitute "either 'smoking guns' or the exculpatory opposite" (*Bleznak*, 153 F.3d 16, 20) on the pivotal question of whether the likely decrease in e-book prices caused by the settlement will benefit or harm the public.

## IV. GOVERNMENT AGAIN URGES THE WRONG STANDARD OF REVIEW

In its Response, the Government did not deny that the standard of review it proposed is not the one followed by the Court of Appeals for the Second Circuit. The proper standard to be followed by the District Court is set forth in the Second Circuit decisions discussed in Kohn Comments at 7-9. This Court may be at liberty to depart from Second Circuit precedent on the applicable standard of review, but the Government should not be allowed with impunity to ignore a public comment on the subject when it has a statutory obligation to provide a response.

## CONCLUSION

The Government admits that the proposed settlement permits Amazon to resume selling e-books *below* their marginal cost, albeit "closer" to their marginal cost than before—an activity the Government also admits is "presumed predatory." Without determinative documents that would exculpate Amazon's below marginal cost pricing practices prior to the agency model, the Court cannot logically find restrictions on agency pricing to be in the public interest. Accordingly, the Penguin Settlement should be modified to remove all restrictions it places on defendants' agency contracts.

Dated: April 29, 2013 Respectfully submitted,

_____
BOB KOHN
California Bar No. 100793
140 E. 28th St.
New York, NY 10016
Tel. +1.408.602.5646
Fax. +1.831.309.7222
eMail: bob@bobkohn.com