UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____
                                    )
UNITED STATES OF AMERICA,           )
                                    )
          Plaintiff,                )
                                    )
     v.                             )     Civil Action No. 12-CV-2826 (DLC)
                                    )
APPLE, INC., et al.,                )
                                    )
          Defendants.               )
_____)


_____
                                    )
THE STATE OF TEXAS;                 )
THE STATE OF CONNECTICUT; et al.,   )
                                    )
          Plaintiffs,               )
                                    )
     v.                             )     Civil Action No. 12-cv-03394 (DLC)
                                    )
PENGUIN GROUP (USA) INC., et al.,   )
                                    )
          Defendants.               )
_____)


**PLAINTIFFS' MOTION IN LIMINE
TO PRECLUDE DR. KEVIN MURPHY FROM OFFERING AT TRIAL
TESTIMONY ON HIS OPINIONS #1-#3**

## INTRODUCTION

Defendant Apple, Inc. plans to present expert testimony from Dr. Kevin Murphy, a well-known professor of economics with substantial testifying experience. But in this case, Dr. Murphy, at Apple's direction, has focused a substantial portion of his analysis on answering a question reflecting a misguided legal standard. Dr. Murphy's application of this standard to his first three opinions is based on faulty legal—and not economic—reasoning, and, as a result of this fundamental error, his testimony on these opinions will not be helpful to this Court and should therefore be excluded.

In short, as explained below, Dr. Murphy concludes that everything Apple did in entering into its Agency Agreements with Publisher Defendants would have been beneficial to Apple even if Apple were merely acting in its "independent business interest." Therefore, according to Dr. Murphy, no inference of conspiracy can properly be drawn. Dr. Murphy's standard mimics precisely what Apple's counsel has told the Court is the appropriate *legal* standard to apply: namely, that Plaintiffs must show that there is no possibility that Apple acted in its individual economic interest.[1] But the fundamental problem with Dr. Murphy's (and Apple's) standard is that it is not relevant to Apple's liability in this case. As the Supreme Court has held in analyzing a conspiracy with facts similar to this one:

> It is of *no consequence*, for purposes of determining whether there has been a combination or conspiracy under s 1 of the Sherman Act, that each party acted in its own lawful interest. Nor is it of consequence for this purpose whether [the challenged conduct was] economically desirable [to one of the conspirators].

*United States v. Gen. Motors Corp.*, 384 U.S. 127, 142 (1966) (emphasis added).[2]

---

[1] Tr. of Telephone Conf., Mar. 13, 2013, at 11:11-15 (argument of Apple Counsel).

[2] In so ruling in *General Motors*, the Supreme Court reversed the decision of the trial court that had found no proof of a conspiracy because it erroneously credited an "independent business interest" argument that is remarkably similar to the standard Dr. Murphy applies. 384 U.S. at 141-42. The Court ultimately held that a horizontal agreement among dealers, coupled with

Were the rule to the contrary, any conspirator would be immunized from the antitrust laws simply by asserting that when it fixed prices, it did so in its own interest.

As a result, Dr. Murphy's testimony is premised on clear legal error, is not relevant to any issue before the Court, and is not grounded in any specialized knowledge that will assist the Court in its role as trier of fact. Moreover, because he is applying an—incorrect—legal standard, Dr. Murphy finds himself merely reciting record evidence and invading the province of the factfinder on matters such as Apple's intent. His testimony should be excluded under Federal Rules of Evidence 401 and 702.

## I. DR. MURPHY'S TESTIMONY ON OPINIONS 1-3 SHOULD BE EXCLUDED BECAUSE IT DOES NOT ASSIST THE COURT

### A. Dr. Murphy's Independent Economic Self-Interest Test

Dr. Murphy offers six principal opinions in his Report, three of which are the subject of this motion.

They are as follows:

1. "An economic evaluation of whether the evidence tends to exclude the possibility that Apple behaved independently and not as part of a conspiracy should consider the economic incentives Apple faced;"

2. "Apple's negotiation process with Publisher Defendants to launch the iBookstore was consistent with its historical practices, consistent with its economic incentives absent conspiracy and reasonably necessary to achieve its business objectives;" and

3. "The challenged provisions in Apple's agreements with publishers were in Apple's self-interest absent any participation in or knowledge of an alleged conspiracy among the publishers." (Expert Report of Dr. Kevin Murphy (Attached hereto as Ex. 1) [hereinafter Murphy Report] at 3-5, ¶¶ 11-14).

Dr. Murphy clearly believes that the "critical question" he is answering is whether specific provisions of the Apple Agency Agreements were in Apple's "unilateral business

---

vertical agreement among those dealers and a supplier, was a *per se* illegal horizontal restraint subjecting all parties to liability.

interest . . . ." (Murphy Dep. (Attached hereto as Ex. 2) 322:13-21.) In his deposition, Dr. Murphy admitted that he was only "doing an analysis of the behavior and conduct of Apple and asking whether that conduct . . . was consistent with or tended to . . . exclude the possibility that [Apple] acted in [its] own economic interest." (Murphy Dep. 18:2-10.)

To make this determination, Dr. Murphy did not engage in any empirical or econometric analysis. Instead, he posed to himself a binary question: did Apple find the terms it agreed to with Publisher Defendants "attractive, or was it part of a conspiracy." (Murphy Dep. 58:20-60:16.) For example, Dr. Murphy makes the unremarkable observation that Apple may have independently desired price caps. He writes that, "[g]iven that Apple had a unilateral incentive to use the caps to limit the publisher's ability to raise prices, one cannot infer a conspiracy from the use of price caps." (Murphy Report at 25, ¶ 66.)

But this statement can only conceivably be true if one ignores Publisher Defendants, their incentives, and whether they were trying to fix the price of e-books. Here, Dr. Murphy "didn't study the publishers" (Murphy Dep. 60:20-62:16), and "did not address" at all in his analysis whether there was a horizontal price-fixing conspiracy among Publisher Defendants, and, concomitantly, whether there was a conspiracy that Apple could facilitate or, in which it could participate. (Murphy Dep. 308:19-309:9; 214:23-215:7.) Thus, Dr. Murphy ignored the possibility that Apple's conduct could be both attractive to it *and* part of a conspiracy with Publisher Defendants. In his deposition, Dr. Murphy admitted that a horizontal price-fixing agreement among Publisher Defendants could, in fact, make Apple "better off." (Murphy Dep. 211:12-212:11.)

4

### B. Dr. Murphy's Testimony Is Based on an Erroneous Legal Standard and Is, as a Result, Irrelevant and Unhelpful

Expert testimony is inadmissible when it is not relevant "to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 591, 597 (1993). When expert testimony conflicts with the governing law, the testimony is irrelevant and should be excluded. *Bailey v. Allgas, Inc.*, 148 F.Supp. 2d 1222, 1242-46 (N.D. Ala. 2000) (excluding testimony concerning the relevant market when expert based his conclusions on the plaintiff's service area and not established Eleventh Circuit case law), *aff'd* 284 F.3d 1237 (11th Cir. 2002). This is a principle with which Dr. Murphy is familiar. *See United States v. Microsoft*, 224 F. Supp. 2d 76, 151 (D.D.C. 2002) (affording "little, if any, weight to" portions of Dr. Murphy's testimony during proceedings on remand, finding "that many of the conclusions reached by Dr. Murphy cannot be reconciled logically with significant portions of the appellate court's opinion").

To begin with, Dr. Murphy assumes that there is no direct evidence of conspiracy in this case. That assumption is critical to the remainder of his testimony because it is well settled that the "tends to exclude" standard has no applicability whatsoever in cases in which there is direct evidence of conspiracy. *See In re Publ'n Paper Antitrust Litig.*, 690 F.3d 51, 63 (2d Cir. 2012). Thus, as Dr. Murphy grudgingly conceded in deposition, if there is direct evidence, his opinions are "much less interesting." (Murphy Dep. 97:17-98:18.) Given the abundance of direct evidence of Apple's participation in the conspiracy at issue in this case, Dr. Murphy's analysis, by its own terms, is of no help to the Court.

The other flaw in Dr. Murphy's core testimony flows from his application and interpretation—at Apple's direction—of the Supreme Court's statement that when determining whether a court may infer a conspiracy, there "must be evidence that tends to exclude the possibility" of independent action. *See, e.g.*, *Monsanto Co. v. Spray-Rite Service Co.*, 465 U.S.

5

752, 764 (1984).  When a plaintiff asserts that a horizontal actor is liable based primarily on parallel conduct, courts examine a series of "plus factors" to determine whether a horizontal agreement may be inferred, and that therefore the *Monsanto* "tends to exclude" test is met.  *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001).

One such plus factor is that if the horizontal competitors were acting in a manner that would be against their economic self-interest (if undertaken unilaterally), it may indicate that the conduct was the result of conspiratorial, as opposed to independent, conduct.  *See, e.g.*, *Apex Oil Co. v. Dimauro*, 822 F.2d 246, 254 (2d Cir. 1987); *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 419 (S.D.N.Y. 2003).

However, when an accused conspirator is in a vertical relationship with its co-conspirators, a query into the vertical conspirator's independent economic self-interest carries no weight because the allegation of conspiracy is necessarily not based on parallel conduct.  There is no allegation here that Apple, the sole distributor in the conspiracy, engaged in parallel conduct with any of its co-conspirator Publisher Defendants.  Thus, there is no inference from parallel conduct to make or to undermine.  *See Fineman v. Armstrong World Indus.*, 980 F.2d 171, 214 n.32 (3d Cir. 1992) (distinguishing horizontal case where finding of action contrary to self-interest helps rule out parallel behavior with case where one firm is in vertical relationship with co-conspirators).

Indeed, one is hard-pressed to imagine when a vertical conspirator would join—let alone orchestrate—a conspiracy where it was *not* in its economic self-interest to do so.  Accordingly, the Second Circuit has held that one relevant factor in determining whether a firm orchestrated a horizontal conspiracy was whether that conspiracy "benefited" the orchestrating firm.  *Ambook Enterprises v. Time Inc.*, 612 F.2d 604, 616 (2d Cir. 1979).

The seminal case *Interstate Circuit v. United States* demonstrates why the independent self-interest factor is of no consequence to Apple here. In *Interstate Circuit*, the Court recognized that "one purpose" of the conspiracy was to protect the movie theater owner who orchestrated a horizontal agreement among movie distributors in order to protect his theater from competing movie theaters. 306 U.S. 208, 224 (1939). In short, the conspiracy was organized precisely *because* it was in the independent interest of the movie theater orchestrator. When the Court looked at whether the conduct was against any firm's independent interest, it did so in examining whether or not it could infer a horizontal agreement among the distributors; not to assess whether the movie theater had joined the conspiracy. *Id*. at 222.

Similarly, in *Toys "R" Us*, the defendant retailer was found to have orchestrated a *per se* illegal boycott of club stores by toy manufacturers in order to "disadvantage . . . its competitors," conduct clearly in its independent interest. *Toys "R" Us v. FTC*, 221 F.3d 928, 936 (7th Cir. 2000). Again, the Court looked at behavior against independent self-interest, but did so only in "inferring horizontal agreement" among toy manufactures who were vertically positioned to Toys "R" Us. *Id*. at 934-36.

Incredibly, Dr. Murphy failed to apply his "independent business interest" test in the one place it would have mattered: to determine whether a horizontal agreement could be inferred among Publisher Defendants. It is difficult to understand how Dr. Murphy's testimony would be helpful on Apple's role in the conspiracy without answering the question of whether there was a horizontal agreement among Publisher Defendants.[3] *See TRU*, 221 F.2d at 934 (*per se* liability where "there was a horizontal agreement" to fix prices among competitors that had a vertical firm "in the center" of that agreement). Had he undertaken to do so, Dr. Murphy would have had

---

[3] Dr. Murphy did not even assume, *arguendo*, the existence of a publisher conspiracy.

7

to deal with a very inconvenient question for Apple: how such an agreement could have been possible without Apple's knowing participation.

### C. Dr. Murphy's Testimony is Inadmissible Because it is Beyond His Specialized Knowledge

Dr. Murphy's first three opinions predominantly consist of applying a legal standard to the record evidence of this case. However, the Court, and not a testifying expert, is the proper authority to identify and apply the applicable law. *United States v. Stewart*, 433 F.3d 273, 311 (2d Cir. 2006) (expert testimony concerning legal principles invades the trial judge's exclusive authority to explain the law to the jury); *United States v. Duncan,* 42 F.3d 97, 101 (2d Cir.1994) (expert testimony may not be used merely to apply law to fact); *U.S. v. Bilzerian*, 926 F.2d 1285, 1294 (2d. Cir. 1991) (use of expert testimony "must be carefully circumscribed to assure that the expert does not usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it").

As befits the application of law to facts, much of Dr. Murphy's first three opinions read like a legal brief or judicial opinion, albeit one applying the wrong legal standard. For example, Dr. Murphy admits that, as an economist, he has "no comparative advantage" in analyzing questions of Apple's knowledge of Publisher Defendants' conspiracy, Apple's intent, or various credibility questions. (Murphy Dep. 98:2-13.)

Yet, that is precisely what Dr. Murphy uses as the basis for his first three opinions. For example, Dr. Murphy opined in his initial report that Apple's conduct in its negotiations "suggest neither anticompetitive effect nor *intent*. He also claimed that they do not suggest Apple's *participation* in or *knowledge* of a conspiracy." (Murphy Report ¶ 40 (emphasis added).) Similarly, Dr. Murphy concludes that Apple followed a "business strategy . . . of negotiating simultaneously, but independently, with the major publishers . . . ." (Murphy Report ¶ 46.)

8

However, "[i]nferences about the intent or motive of parties or others lie outside the bounds of expert testimony." *In re Rezulin Prods. Liability Litig.*, 309 F. Supp. 2d 531, 547 (S.D.N.Y. 2004); *see also Mid-State Fertilizer Co. v. Exch. Nat'l Bank of Chicago,* 877 F.2d 1333, 1340 (7th Cir. 1989) (excluding economist who failed to "draw on the skills of an economist" but instead "examined material produced in discovery and drew inferences from the record"). Accordingly, Dr. Murphy's testimony does not assist the trier of fact and should be excluded.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the motion *in limine* to exclude opinions 1-3 of Dr. Murphy's testimony be granted.

Dated: April 26, 2013

          Respectfully submitted,

          _____
          Mark W. Ryan
          Lawrence E. Buterman
          David Z. Gringer
          Attorneys for the United States
          United States Department of Justice
          Antitrust Division
          450 Fifth Street, NW, Suite 4000
          Washington, DC 20530
          (202) 532-4753
          Mark.W.Ryan@usdoj.gov

          *On Behalf of the United States of America*

          _____
          Gabriel Gervey
          Eric Lipman
          David Ashton
          Assistant Attorneys General
          Office of the Attorney General of Texas
          P.O. Box 12548
          Austin, TX 78711
          (512) 463-1262
          Gabriel.Gervey@texasattorneygeneral.gov

          _____
          W. Joseph Nielsen
          Gary M. Becker
          Assistant Attorneys General
          Office of the Attorney General of Connecticut
          55 Elm Street
          Hartford, CT 06106
          (860) 808-5040
          Joseph.Nielsen@ct.gov

          *On Behalf of the Plaintiff States*