UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
UNITED STATES OF AMERICA,

        Plaintiff,

v.

APPLE INC., *et al.*,

        Defendants.

------------------------------------x

12 Civ. 2826 (DLC)

------------------------------------x
THE STATE OF TEXAS,
THE STATE OF CONNECTICUT, *et al.*,

        Plaintiffs,

v.

PENGUIN GROUP (USA) INC., *et al.*,

        Defendants.

------------------------------------x

12 Civ. 03394 (DLC)

## APPLE INC.'S PROPOSED CONCLUSIONS OF LAW

### Proof of the Existence of a Conspiracy[1]

1.    Section 1 of the Sherman Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade . . . is hereby declared to be illegal." 15 U.S.C. § 1.

---

[1] Of the state plaintiffs' three conspiracy counts, Apple is alleged to be a party only to one of them. States' Second Am. Compl. ¶¶ 126-28.

2. Plaintiffs also bring claims under state law. States' Second Am. Compl. ¶¶ 129-98. These claims parallel the section 1 claim in this case as state courts "overwhelmingly look to federal antitrust decisions to construe their own antitrust statutes." *In re Digital Music Antitrust Litig.*, 592 F. Supp. 2d 435, 447-50 & nn. 19-21 (S.D.N.Y. 2008) (collecting authorities), rev'd on other grounds by *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 327 (2d Cir. 2010).

3. Plaintiffs "must prove an antitrust violation by a preponderance of the evidence." *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1058 (8th Cir. 2000). Plaintiffs must prove "two essential elements": (1) "[t]hat defendants entered into a contract, combination or conspiracy"; and (2) "[t]hat such contract, combination or conspiracy amounted to an unreasonable restraint of trade or commerce among the several States." *Cont'l Cablevision of Ohio, Inc. v. Am. Elec. Power Co.*, 715 F.2d 1115, 1118 (6th Cir. 1983).

4. Plaintiffs "*must first establish* a combination or some form of concerted action." *Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*, 996 F.2d 537, 542 (2d Cir. 1993) (emphasis added). If plaintiffs cannot prove that Apple participated in a conspiracy, then their section 1 claim "must fail" and the Court need not reach an analysis of unreasonableness. *Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 263 (2d Cir. 2001).

5. Plaintiffs are required to introduce "direct or circumstantial evidence that reasonably tends to prove that [Apple] had a *conscious commitment to a common scheme*" with the publishers "designed to achieve [the] unlawful objective" of raising prices

2

throughout the e-book market. *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984) (quotation marks omitted) (emphasis added).

6. Plaintiffs also bear the burden of proving that Apple had a culpable intent, as the "lack of intent by one party . . . precludes a conspiracy to [restrain trade]." *Geneva Pharms. Tech. Corp. v. Barr Labs., Inc.*, 386 F.3d 485, 507 (2d Cir. 2004).

7. The Supreme Court has held that "genuine contracts of agency" are not "violations of the Anti-Trust Act" (per se or otherwise) as a "matter of principle." *United States v. Gen. Elec. Co.*, 272 U.S. 476, 488 (1926); *see also Valuepest.com of Charlotte, Inc. v. Bayer Corp.*, 561 F.3d 282, 294 (4th Cir. 2009) (upholding lawfulness of genuine agency agreements).

8. The Apple agency agreements are genuine contracts of agency, a conclusion plaintiffs do not contest (reserving their right to allege a distinct conspiracy).

9. The Supreme Court has recognized that vertically related firms have "legitimate reasons to exchange information" on pricing, *Monsanto*, 465 US. at 762, and that vertical business relationships are likely to have procompetitive benefits and to promote the purpose of the antitrust laws, *see, e.g., Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 724 (1988) (vertical agreements "ha[ve] real potential to stimulate interbrand competition, the primary concern of antitrust law") (quotation marks omitted).

10. The Supreme Court has "rejected the approach of reliance on rules governing horizontal restraints when defining rules applicable to vertical ones," and no longer treats "vertical agreements a manufacturer makes with its distributors as analogous to a horizontal combination among competing distributors." *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 888 (2007).

3

11. The Supreme Court has overruled its own precedents three times to reduce scrutiny on vertical relationships. *Cont'l T.V., Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 59 (1977) (holding that vertical non-price restrictions are subject to the rule of reason, overruling *United States v. Arnold, Schwinn & Co.*, 388 U.S. 365 (1967)); *State Oil Co. v. Khan*, 522 U.S. 3, 7 (1997) (holding that vertical agreements setting maximum prices are subject to the rule of reason, overruling *Albrecht v. Herald Co.*, 390 U.S. 145 (1968)); *Leegin*, 551 U.S. at 907 (holding that all "[v]ertical price restraints are to be judged according to the rule of reason," overruling *Dr. Miles Med. Co. v. John D. Park & Sons, Co.*, 220 U.S. 373 (1911)).

12. As to Apple, plaintiffs allege a restraint of trade that is vertical in nature.

13. To prove a "hub and spoke" conspiracy, plaintiffs must show that the alleged vertical "hub" of the conspiracy was the party that allegedly implemented and enforced the plan. *Interstate Circuit v. United States*, 306 U.S. 208, 222 (1939) (noting that the defendant organized and implemented the plan); *Toys "R" Us, Inc. v. FTC*, 221 F.3d 928, 933 (7th Cir. 2000) (noting that the defendant communicated messages from manufacturer to competing manufacturer and "served as the central clearinghouse for complaints about breaches in the agreement"); *accord* 14B P. Areeda & H. Hovenkamp, *Antitrust Law* ¶ 1426 & n.47 (3d ed. 2010) (cautioning against application of *Interstate Circuit* and *Toys "R" Us* "to an altogether different set of facts").

### The Evidence Must Tend to Exclude the Possibility of Independent Action

14. "Direct evidence is extremely rare in antitrust cases." *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 226 (4th Cir. 2004). Such evidence must

be a "smoking gun." *Mayor & City Council of Balt., Md. v. Citigroup, Inc.*, 709 F.3d 129, 136 (2d Cir. 2013).

15. Direct evidence in a section 1 conspiracy must be evidence that "is explicit and requires no inferences to establish the proposition or conclusion being asserted." *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 118 (3d Cir. 1999). For example, direct evidence might consist of "a recorded phone call in which two competitors agreed to fix prices at a certain level." *Citigroup*, 709 F.3d at 136.

16. There is no direct evidence against Apple of a conspiracy. The issue of whether Apple conspired with the publishers must be established through circumstantial evidence.

17. To establish a conspiracy by circumstantial evidence, plaintiffs must meet the "stringent standards in *Monsanto*." *Leegin*, 551 U.S. at 903. In *Monsanto*, the Supreme Court held that antitrust law "limits the range of permissible inferences from ambiguous evidence in a § 1 case." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

18. Conduct that is "as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy." *Matsushita*, 475 U.S. at 588; *accord AD/SAT v. Associated Press*, 181 F.3d 216, 235 (2d Cir. 1999).

19. A section 1 plaintiff "must present evidence that '*tends to exclude* the possibility' that the alleged conspirators acted independently." *Matsushita*, 475 U.S. at 588 (quoting *Monsanto*, 465 U.S. at 764) (emphasis added). To prove a conspiracy,

5

plaintiffs must present evidence that "tends to exclude the possibilitiy" that Apple acted independently.

### The Strength of Evidence Required To Establish A Conspiracy

20. It takes "strong" evidence to satisfy *Monsanto*'s "tends to exclude" standard in cases where plaintiffs' theory is implausible and the challenged conduct can reasonably be perceived as procompetitive. *In re Publ'n Paper Antitrust Litig.*, 690 F.3d 51, 63 (2d Cir. 2012).

21. "[I]f the factual context renders [plaintiffs'] claim implausible—if the claim is one that simply makes no economic sense—[plaintiffs] must come forward with more persuasive evidence to support their claims than would otherwise be necessary." *Matsushita*, 475 U.S. at 587.

22. The Supreme Court has emphasized the procompetitive benefits of "market entry for new firms and brands." *Leegin*, 551 U.S. at 891.

23. The Supreme Court has consistently recognized that restricted inferences are necessary in antitrust cases to avoid enforcement that "could deter or penalize perfectly legitimate conduct" and create "'irrational dislocation' in the market." *Monsanto*, 465 U.S. at 763-64; *see also In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 357 (3d Cir. 2004) ("a higher threshold is imposed in antitrust cases to avoid deterring innocent conduct that reflects enhanced, rather than restrained, competition").

24. Because plaintiffs' claims make "no economic sense" and challenge conduct integrally related to market entry, plaintiffs must provide "strong" evidence to support an inference of a conspiracy.

6

## Apple's Conduct Was Driven By Its Independent Business Interests

25. When "[t]he most natural inference from the evidence" is that the defendant had a "legitimate, independent reason" for its actions, no inference of conspiracy is possible under the Supreme Court's case law. *Euromodas, Inc. v. Zanella, Ltd.*, 368 F.3d 11, 20 (1st Cir. 2004) (citing *Matsushita*, 475 U.S. at 588); *see also* 14A Areeda, *supra*, ¶ 1413a ("no conspiracy can be inferred from parallel behavior when" an alleged conspirator "had an 'independent' or 'good business reason' for the challenged act").

26. Mere proof that the defendant had a *plausible motive* to conspire is never sufficient for liability. *Citigroup*, 709 F.3d at 139 ("evidence that the defendant had a motive to enter into an antitrust conspiracy may indicate simply that the defendant[] operate[s] in an oligopolistic market, that is, may simply restate the (legally insufficient) fact that market behavior is interdependent and characterized by conscious parallelism") (quoting *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 322 (3d Cir. 2010)) (quotation marks omitted); *see also* 14A Areeda, *supra*, at ¶ 1411 ("Motivation to enter a conspiracy is never enough to establish a traditional conspiracy").

27. "[I]ndependent business reasons" preclude a conspiracy finding where the defendant acted pursuant to its own business policy and philosophy, including to protect its brand and business reputation. *H.L. Hayden Co. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1014 (2d Cir. 1989); *see also Burlington Coat Factory Warehouse Corp. v. Esprit de Corp.*, 769 F.2d 919, 924 (2d Cir. 1985).

28. Plaintiffs' experts, Professors Gilbert and Baker, do not contest Apple's independent business justifications for its conduct. *See White v. R.M. Packer Co.*, 635 F.3d 571, 581, 585-86 (1st Cir. 2011) (concluding that plaintiff's "antitrust claims fail" where

7

"[p]laintiff's own expert stated that 'no unambiguous conclusion can be gleaned from defendants' pattern of parallel pricing'" and results of analysis were "mixed"); *see also United Air Lines, Inc. v. Austin Travel Corp.*, 867 F.2d 737, 739 (2d Cir. 1989) (affirming grant of summary judgment in section 2 case where "expert conceded that there was no reasonable or realistic possibility that [defendant] could achieve a monopoly").

29. Plaintiffs cannot establish a conspiracy by conceding that the defendant made business decisions justified by valid independent business interests, and arguing only that the defendant's conduct was also plausibly consistent with a conspiracy. *See, e.g., Citigroup*, 709 F.3d at 138 (dismissing conspiracy allegations where defendants' conduct "made perfect business sense" and was "not just *a* rational business decision, but the *only* rational business decision"); *AD/SAT*, 181 F.3d at 241 (concluding summary judgment was warranted because each defendant's conduct was "as consistent with the defendant's legitimate, independent business interest as with an illegal combination in restraint of trade"); *H.L. Hayden*, 879 F.2d at 1014 (affirming grant of summary judgment where the defendant presented evidence that it terminated business relations with plaintiff for "independent business reasons"); *Burlington*, 769 F.2d at 924 (affirming grant of summary judgment and concluding that plaintiff failed to meet *Monsanto's* test where "uncontradicted evidence" showed defendant had an independent business justification).[2]

---

[2] *See also Am. Chiropractic Ass'n Inc. v. Trigon Healthcare Inc.*, 367 F.3d 212, 226-27 (4th Cir. 2004) (finding no conspiracy where evidence in record showed actions were "appropriate and reasonable" and independent); *Ferguson v. Greater Pocatello Chamber of Commerce*, 848 F.2d 976, 981-82 (9th Cir. 1988) (affirming summary judgment where each defendant "presented evidence of facially valid institutional and business reasons for its decision"); *Houser v. Fox Theatres Mgmt. Corp.*, 845 F.2d 1225, 1232-33 (3d Cir. 1988) (affirming summary judgment where defendants' actions were in their own economic interests); *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, [Footnote continued on next page]

[Footnote continued from previous page]
908 (6th Cir. 2009) (dismissing conspiracy allegations where "each defendant had a reasonable, independent economic interest" in its actions); *Kreuzer v. Am. Acad. of Periodontology*, 735 F.2d 1479, 1488 (D.C. Cir. 1984) (holding that if a defendant "offer[s] an innocent explanation of the questioned conduct" and it "is plausible and more logical than a theory of concerted action, then a conspiracy may not be found"); *Merck-Medco Managed Care, LLC v. Rite Aid Corp.*, 201 F.3d 436, 1999 WL 691840, at *15 (4th Cir. 1999) (per curiam) (affirming grant of summary judgment where evidence was equally consistent with decisions that "were independent or were made for legitimate business reasons"); *Miles Distribs. Inc. v. Specialty Constr. Brands, Inc.*, 476 F.3d 442, 450 (7th Cir. 2007) (affirming grant of summary judgment where defendants' actions were "as consistent with permissible competition as with a conspiracy"); *Todorov v. DCH Healthcare Auth.*, 921 F.2d 1438, 1457-58 (11th Cir. 1991) (affirming summary judgment where "record amply supports the procompetitive reasons" defendant offered for its actions); *Wallace v. Bank of Bartlett*, 55 F.3d 1166, 1169-70 (6th Cir. 1995) (affirming grant of summary judgment where defendants' conduct was based on "legitimate interest" and where "[p]laintiff's expert evidence [was] equally consistent with independent action as it [was] with conspiracy"); *Williamson Oil Co. v. Philip Morris USA*, 346 F.3d 1287, 1306-07 (11th Cir. 2003) (affirming grant of summary judgment where defendants' conduct was "readily explained as economically rational, self-interested responses" and where plaintiffs conceded that defendants' conduct "was an exceptionally competitive move"); *Alpha Lyracom Space Commc'ns, Inc. v. Comsat Corp.*, 968 F. Supp. 876, 894 (S.D.N.Y. 1996) (finding no conspiracy despite parallel refusals and evidence that a joint venture met on numerous occasions where defendant presented "ample evidence" of independent business reasons); *Kramer v. Pollock-Krasner Found.*, 890 F. Supp. 250, 256 (S.D.N.Y. 1995) (finding no conspiracy where challenged actions "could equally have been prompted by lawful, independent goals."); *Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC*, No. 03 Civ. 1895, 2007 U.S. Dist. LEXIS 504, at *36 (S.D.N.Y. Jan. 9, 2007) (finding no conspiracy where evidence showed defendants exercised "their independent business judgment"); *Reborn Enters. Inc. v. Fine Child, Inc.*, 590 F. Supp. 1423, 1442 (S.D.N.Y. 1984) ("[I]f a decision . . . was solely based on legitimate business reasons . . . then plaintiff's claim must be dismissed." (quotation marks and brackets omitted)); *Sample, Inc. v. Pendleton Woolen Mills, Inc.*, 704 F. Supp. 498, 501-03 (S.D.N.Y. 1989) (finding no conspiracy where defendant's actions were consistent with "legitimate business concerns"); *U.S. Info Sys. v. IBEW Local Union No. 3*, No. 00 Civ. 4763, 2007 U.S. Dist. LEXIS 56229, at *49-50 (S.D.N.Y. Aug. 3, 2007) (finding no conspiracy where defendants' conduct was equally consistent with own self-interest); *Balaklaw v. Lovell*, 822 F. Supp. 892, 902 (N.D.N.Y. 1993) (finding no conspiracy where defendants "had a legitimate, business reason" for its conduct); *Breakdown Servs., Ltd. v. Now Casting, Inc.*, 550 F. Supp. 2d 1123, 1137 (C.D. Cal. 2007) (finding no conspiracy where defendant "set forth a plausible and justifiable reason for its conduct that is consistent with proper business practice."); *Flash Elecs., Inc. v. Universal Music & Video Distrib. Corp.*, No. CV-01-0979, 2009 WL 7266571, at *1, *10-14 (E.D.N.Y. Oct. 19, 2009) (Report and Recommendation), *adopted in full*, 2010 WL 5390176 (E.D.N.Y. Dec. 22, 2010) (finding
[Footnote continued on next page]

30.     Where the defendant offers "overwhelming evidence that the challenged action was taken unilaterally for sound business reasons," then plaintiffs' conspiracy allegations "cannot stand." *Comfort Trane Air Conditioning Co. v. Trane Co.*, 592 F.2d 1373, 1384 (5th Cir. 1979) (quotation marks omitted).

31.     Courts have overturned trial verdicts where, under *Monsanto*, the evidence was as consistent with the defendant's independent business interest as with a conspiracy. *See Int'l Distrib. Ctrs., Inc. v. Walsh Trucking Co.*, 812 F.2d 786, 794 (2d Cir. 1987) (overturning a jury verdict for the plaintiffs where, "taken as a whole, the evidence pointed with at least as much force toward independent action by the defendants as toward

---

[Footnote continued from previous page]
no conspiracy where defendants had "legitimate business reasons" for its conduct); *Friedman v. Del. Cnty. Mem'l Hosp.*, 672 F. Supp. 171, 188 (E.D. Pa. 1987) (finding no conspiracy where defendant "had legitimate business justifications" for its conduct); *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1022 (N.D. Cal. 2007) (dismissing antitrust conspiracy allegations where defendants "[e]ach ha[d] its own independent reason" for its actions); *LaFlamme v. Societe Air Fr.*, 702 F. Supp. 2d 136, 152 (E.D.N.Y. 2010) (dismissing antitrust conspiracy allegations where change in market conditions plausibly "instigated independent decisions by defendants" to perform challenged action); *Maxim Integrated Prods., Inc. v. Analog Devices, Inc.*, No. C-92-20716, 1994 WL 514024, at *2 (N.D. Cal. Sept. 7, 1994), *rev'd in part on other grounds*, 79 F.3d 1153 (9th Cir. 1996) (unpublished) (finding no conspiracy where defendants "had sound, legitimate business reasons" for their conduct); *Ralph C. Wilson Indus., Inc. v. Am. Broad. Cos.*, 598 F. Supp. 694, 708 (N.D. Cal. 1984) (finding no conspiracy where defendants "submitted overwhelming evidence that their . . . practices were undertaken in the exercise of their independent and sound business judgment."); *Temple v. Circuit City Stores, Inc.*, No. 06 CV 5303, 2007 WL 2790154, at *7 (E.D.N.Y. Sept. 25, 2007) (dismissing antitrust conspiracy allegations where plaintiff alleged defendants acted "for business reasons" and to "protect their own profits" (internal brackets omitted)); *Tominaga v. Shepherd*, 682 F. Supp. 1489, 1496 (C.D. Cal. 1988) (finding no conspiracy where defendant "raised [a] plausible business justification" for its conduct); *Wright v. S. Mono Hosp. Dist.*, 631 F. Supp. 1294, 1321 (E.D. Cal. 1986) (finding no conspiracy where defendants "c[a]me forth with more than sufficient evidence to establish that their acts benefitted their self interests while at the same time advancing legitimate business decisions").

conspiracy, and a jury would have to engage in impermissible speculation to reach the latter conclusion") (quotation marks and alterations omitted); *Lovett v. Gen. Motors Corp.*, 988 F.2d 575, 579, 581 (8th Cir. 1993) (overturning a jury verdict based on the plaintiff's "ambiguous" evidence because of the "strong competing inference" that the defendant acted independently to meet its "legitimate business goals").

32.  Apple's challenged conduct was motivated by legitimate, independent business reasons, and independent conduct is therefore the more natural inference from the evidence rather than conspiracy.

### Whether the Evidence Can Meet The *Monsanto* Standard

33.  Where a defendant has offered "substantial evidence supporting [a] plausible and legitimate explanation of [its] conduct" as Apple has, plaintiffs "may not rest on conclusory assertions of conspiracy" and instead must come forward with strong additional evidence of the defendant's conspiratorial activities. *H.L. Hayden*, 879 F.2d at 1014 (citing *Burlington*, 769 F.2d at 923); *see also Todorov v. DCH Healthcare Auth.*, 921 F.2d 1438, 1456 (11th Cir. 1991) ("when the defendant puts forth a plausible, procompetitive justification for his actions, we will not be quick to infer, from circumstantial evidence, that a violation of the antitrust laws has occurred; the plaintiff must produce more probative evidence that the law has been violated").

34.  For *Monsanto*'s strict standard to be satisfied, the plaintiff must offer compelling facts that clearly tended to exclude the possibility of independent action. *See, e.g., Capital Imaging*, 996 F.2d at 545 (the evidence "strongly suggest[ed]" that the defendant's justifications for its conduct were a complete sham).

11

35. Evidence that a defendant acted in a similar way in entering into separate vertical agreements proves nothing, because "[s]imilar contract terms can reflect similar bargaining power and commercial goals[.]" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 51 (2d Cir. 2007); *see also Ins. Brokerage*, 618 F.3d at 327 ("one cannot plausibly infer" a hub-and-spoke conspiracy from the mere fact that several insurers entered similar commission agreements with an insurance broker).

36. A change in market conditions that makes it necessary for a firm to change its business model is not evidence of a conspiracy. *See Citigroup*, 709 F.3d at 138 (defendants' en masse exit from market in reaction to market conditions was "not just *a* rational business decision, but the *only* rational business decision"); *Travel Agent Comm'n*, 583 F.3d at 898, 908 (holding that a decision by seven airlines to eliminate, within days, the practice of paying base-commissions to travel agencies was based on each airline's "reasonable, independent economic interest" where the market had "changed fundamentally since 1983 due to technological advances in airline ticket purchasing").

37. The use of MFNs to bargain for low prices "is the sort of conduct that the antitrust laws seek to encourage" and therefore do not support a finding of a conspiracy. *Blue Cross & Blue Shield United of Wisc. v. Marshfield Clinic*, 65 F.3d 1406, 1415 (7th Cir. 1995); *see also id.* ("'Most favored nations' clauses are standard devices by which buyers try to bargain for low prices, by getting the seller to agree to treat them as favorably as any of their other customers. . . . It is not price fixing.").

38. "[C]ourts have not found MFN provisions illegal." ABA Section of Antitrust Law, *Antitrust Law Developments* 222 (7th ed. 2012). Further, the particular

12

MFN theory advanced here is novel, has never been examined before, and has not been substantiated by plaintiffs.

39. Communications during contract negotiations are not evidence of a conspiracy, because "the fact that a manufacturer and its distributors are in constant communication about prices and marketing strategy does not alone show that the distributors are not making independent pricing decisions. A manufacturer and its distributors have legitimate reasons to exchange information about the prices and the reception of their products in the market." *Monsanto*, 465 U.S. at 762.

40. No conspiracy can be inferred from parallel conduct where "time [is] of the essence." *Fed. Broad. Sys., Inc. v. Am. Broad. Co.*, 167 F.2d 349, 352 (2d Cir. 1948) (the court could not infer a conspiracy from the fact that the defendants all terminated their respective agreements with the plaintiff on the same day, because time was of the essence).

41. Offering the same terms to multiple contracting parties is a standard negotiation tactic that is not evidence of a conspiracy. *See Ins. Brokerage*, 618 F.3d at 329-30 (no conspiracy can be inferred from the fact that a broker told its insurer-partners the terms it had offered to its other insurer-partners, because that sharing "could be a powerful tool for a broker attempting to negotiate a more favorable agreement with a particular insurer-partner").

42. The evidence does not tend to exclude the possibility of independent conduct and does not permit the inference that Apple engaged in a conspiracy.

### Statements Attributed to Steve Jobs

43. Ambiguous statements from a corporate executive do not allow the court to infer a conspiracy. *See O.S.C. Corp. v. Apple Computer, Inc.*, 792 F.2d 1464, 1468 (9th

13

Cir. 1986) (applying *Monsanto* and finding that a remark "by Apple's President that . . . something was going to be done about price erosion" was insufficient evidence of a conspiracy).

44. The statements by Steve Jobs on which plaintiffs rely do not permit the inference that Apple engaged in a conspiracy.

### The Plausibility of Plaintiffs' Theory

45. Where, as here, plaintiffs' theory is "implausible," and where the defendant's conduct "is consistent with other, equally plausible explanations," the evidence "does not give rise to an inference of conspiracy." *Matsushita*, 475 U.S. at 587, 596-97.

### Nonapplicability of the Per Se Rule

46. Vertical price restraints, including vertical price ceilings, are subject to the rule of reason. *State Oil Co. v. Khan*, 522 U.S. 3, 22 (1997). When price caps are allegedly used to effectuate *per se* unlawful arrangements, the rule of reason must still be employed. *Id.* at 17. MFNs are also evaluated under the rule of reason. *Blue Cross & Blue Shield United of Wisc. v. Marshfield Clinic*, 65 F.3d 1406, 1415 (7th Cir. 1995) (MFNs are "not price-fixing"); *United States v. Blue Cross Blue Shield of Mich.*, 809 F. Supp. 2d 665, 671 (E.D. Mich. 2011).

47. The Supreme Court has stated that "a departure from the rule-of-reason standard must be based upon demonstrable economic effect rather than upon formalistic line drawing." *Leegin*, 551 U.S. at 887 (quotation marks and ellipsis omitted).

48. The *per se* rule is reserved for practices that have "manifestly anticompetitive" effects and "lack . . . any redeeming virtue." *Leegin*, 551 U.S. at 886.

14

49. "The Supreme Court has repeatedly expressed reluctance to adopt per se rules where the economic impact of certain practices is not immediately obvious." *Major League Baseball Props. v. Salvino, Inc.*, 542 F.3d 290, 316 (2d Cir. 2008). Put succinctly, "[i]t is a bad idea to subject a novel way of doing business (or an old way in a new and previously unexamined context . . . ) to per se treatment under antitrust law." *In re Sulfuric Acid Antitrust Litig.*, 703 F.3d 1004, 1011 (7th Cir. 2012).

50. Courts have thus refused to apply the per se rule in markets (like the one for digital books) that are innovative and evolving, because trade restraints "in such markets may produce efficiencies that courts have not previously encountered and thus the Supreme Court had not factored into the per se rule as originally conceived." *United States v. Microsoft Corp.*, 253 F.3d 34, 93 (D.C. Cir. 2001). It is not immediately or manifestly obvious that Apple's challenged conduct is anticompetitive or falls in a category of conduct that is always, or almost always, anticompetitive.

51. Apple's challenged conduct does not lack all redeeming virtue and might plausibly be found to have a net procompetitive effect. Entry that leads to "an eventual fall in . . . price" is "an unequivocally socially beneficial effect"; if "agreements facilitated that entry, their net effect on economic welfare may well [be] positive." *Sulfuric Acid*, 703 F.3d at 1011.

52. A per se analysis is therefore inapplicable to this case.

53. "[F]or the same reasons that per se liability is unwarranted here," Apple cannot be held liable under the "quick look" doctrine. *Texaco, Inc. v. Dagher*, 547 U.S. 1, 7 n.3 (2006).

## The Application of the Rule of Reason

54. The rule of reason "distinguishes between restraints with anticompetitive effect that are harmful to the consumer and restraints stimulating competition that are in the consumer's best interest." *Leegin*, 551 U.S. at 886.

55. The "antitrust laws are designed primarily to protect interbrand competition, from which lower prices can later result." *Leegin*, 551 U.S. at 895.

56. Plaintiffs bear the initial burden under the rule of reason, which entails "showing that the challenged action has had an actual adverse effect on competition *as a whole* in the relevant market." *Capital Imaging*, 996 F.2d at 543 (emphasis added); *see K.M.B. Warehouse Distribs. v. Walker Mfg. Co.*, 61 F.3d 123, 127 (2d Cir. 1995) (same); *Major League Baseball*, 542 F.3d at 317 (same). Without determining the proper definition of the relevant market, it is appropriate to evaluate plaintiffs' claims of anticompetitive effect in the relevant market they have defined: trade e-books sold in the United States.

57. "Supracompetitive pricing entails a restriction in output." *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 233 (1993). That output allegedly "expanded at a slower rate than it [otherwise] would have" is a "counterfactual proposition" that "is difficult to prove in the best of circumstances." *Id.* Plaintiffs have not proven that output was restrained in the alleged relevant market.

58. The Supreme Court has explained that "prices can be increased in the course of promoting procompetitive effects." *Leegin*, 551 U.S. at 895-96.

59. Every critical indicator of market health—lower price, higher output, more selection, higher quality, lower concentration—signals that the trade e-books market has

16

been thriving since agency and consumers have been reaping the benefits. When contracts are challenged under the rule of reason and there is "no showing that the market as a whole has been affected at all by the contract[s]," section 1 has not been violated. *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 31 (1984).

60. Apple's conduct has not violated the rule of reason and is not unreasonable.

### Plaintiffs' Requested Relief

I. The United States

61. The United States "may seek injunctive remedies on behalf of the general public" in an antitrust case. *United States v. Borden Co.*, 347 U.S. 514, 518 (1954).

62. "[W]hether or nor injunctive relief should be granted depends greatly on the dictates of public interest. Protection of the public should be a paramount consideration in determining the propriety of an injunction." *United States v. H.M. Prince Textiles, Inc.*, 262 F. Supp. 383, 389-90 (S.D.N.Y. 1966).

63. Because enjoining Apple's procompetitive conduct would not serve the public interest in any respect, the United States' requests for injunctive relief should be denied.

II. The State Plaintiffs

64. The state plaintiffs are treated as private parties when seeking an injunction pursuant to section 16 of the Clayton Act, 15 U.S.C. § 26. *See California v. Am. Stores Co.*, 495 U.S. 271, 295 (1990); *New York v. Kraft Gen. Foods*, 852 F. Supp. 1030, 1033 (S.D.N.Y. 1993).

65. As private litigants under section 16, the state plaintiffs "must prove threatened loss or damage to [their] own interests in order to obtain relief." *Am. Stores Co.*, 495 U.S. at 295; *see also Cargill, Inc. v. Monfort of Colo.*, 479 U.S. 104, 113 (1986).

66. Because Apple's procompetitive does not threaten any loss or damage to the state plaintiffs, their requests for injunctive relief should be denied.

67. The state plaintiffs's request for treble damages under section 4c of the Clayon Act, 15 U.S.C. § 15c, on behalf of injuries to natural persons, is limited to those damages that arise from violations of the Sherman Act. *See In re Wyo. Tight Sands Antitrust Cases*, 855 F.2d 1286, 1290 n.1 (10th Cir. 1989).

68. Because the conduct of Apple challenged by the state plaintiffs does not give rise to a violation of the Sherman Act, the state plaintiffs' request for treble damages should be denied.

Dated: April 26, 2013

Respectfully submitted,

By: _____

Orin Snyder
Lisa H. Rubin
Gibson, Dunn & Crutcher, LLP
200 Park Avenue, 47th Floor
New York, NY 10166
(212) 351-4000
osnyder@gibsondunn.com
lrubin@gibsondunn.com

Daniel S. Floyd (*Pro Hac Vice*)
Daniel G. Swanson (*Pro Hac Vice*)
Gibson, Dunn & Crutcher, LLP
333 South Grand Avenue
Los Angeles, CA 90071
(213) 229-7000
dfloyd@gibsondunn.com
dswanson@gibsondunn.com

18

Cynthia Richman
Gibson, Dunn & Crutcher, LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500
crichman@gibsondunn.com

Howard E. Heiss
O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY 10036
(212) 326-2000
hheiss@omm.com
*On behalf of Defendant Apple Inc.*