5/17/13

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 1:12-CV-2826 (DLC) |
| APPLE, INC., *et al.*, | ) ECF Case |
| Defendants. | ) |

### [PROPOSED] FINAL JUDGMENT AS TO DEFENDANTS THE PENGUIN GROUP, A DIVISION OF PEARSON PLC, AND PENGUIN GROUP (USA), INC.

WHEREAS, Plaintiff, the United States of America filed its Complaint on April 11, 2012, alleging that Defendants conspired to raise retail prices of E-books in violation of Section 1 of the Sherman Act, as amended, 15 U.S.C. § 1, and Plaintiff and Penguin, by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law;

AND WHEREAS, this Final Judgment does not constitute any admission by Penguin that the law has been violated or of any issue of fact or law, other than that the jurisdictional facts as alleged in the Complaint are true;

AND WHEREAS, Penguin agrees to be bound by the provisions of this Final Judgment pending its approval by the Court;

AND WHEREAS, Plaintiff requires Penguin to agree to undertake certain actions and refrain from certain conduct for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, Penguin has represented to the United States that the actions and conduct restrictions can and will be undertaken and that it will later raise no claim of hardship or difficulty as grounds for asking the Court to modify any of the provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of Penguin, it is ORDERED, ADJUDGED, AND DECREED:

## I. JURISDICTION

This Court has jurisdiction over the subject matter of this action and over Penguin. The Complaint states a claim upon which relief may be granted against Penguin under Section 1 of the Sherman Act, as amended, 15 U.S.C. § 1.

## II. DEFINITIONS

As used in this Final Judgment:

A. "Agency Agreement" means an agreement between an E-book Publisher and an E-book Retailer under which the E-book Publisher Sells E-books to consumers through the E-book Retailer, which under the agreement acts as an agent of the E-book Publisher and is paid a commission in connection with the Sale of one or more of the E-book Publisher's E-books.

B. "Apple" means Apple, Inc., a California corporation with its principal place of business in Cupertino, California, its successors and assigns, and its parents, subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

C. "Department of Justice" means the Antitrust Division of the United States Department of Justice.

D.   "E-book" means an electronically formatted book designed to be read on a computer, a handheld device, or other electronic devices capable of visually displaying E-books. For purposes of this Final Judgment, the term E-book does not include (1) an audio book, even if delivered and stored digitally; (2) a standalone specialized software application or "app" sold through an "app store" rather than through an e-book store (*e.g.*, through Apple's "App Store" rather than through its "iBookstore" or "iTunes") and not designed to be executed or read by or through a dedicated E-book reading device; or (3) a media file containing an electronically formatted book for which most of the value to consumers is derived from audio or video content contained in the file that is not included in the print version of the book.

E.   "E-book Publisher" means any Person that, by virtue of a contract or other relationship with an E-book's author or other rights holder, owns or controls the necessary copyright or other authority (or asserts such ownership or control) over any E-book sufficient to distribute the E-book within the United States to E-book Retailers and to permit such E-book Retailers to Sell the E-book to consumers in the United States.  Publisher Defendants are E-book Publishers.  For purposes of this Final Judgment, E-book Retailers are not E-book Publishers.

F.   "E-book Retailer" means any Person that lawfully Sells (or seeks to lawfully Sell) E-books to consumers in the United States, or through which a Publisher Defendant, under an Agency Agreement, Sells E-books to consumers.  For purposes of this Final Judgment, Publisher Defendants and all other Persons whose primary business is book publishing are not E-book Retailers.

G.   "Hachette" means Hachette Book Group, Inc., a Delaware corporation with its principal place of business in New York, New York, its successors and assigns, and its

subsidiaries, divisions, groups, and partnerships, and their directors, officers, managers, agents, and employees.

H.     "HarperCollins" means HarperCollins Publishers L.L.C., a Delaware limited liability company with its principal place of business in New York, New York, its successors and assigns, and its subsidiaries, divisions, groups, and partnerships, and their directors, officers, managers, agents, and employees.

I.     "Including" means including, but not limited to.

J.     "Macmillan" means (1) Holtzbrinck Publishers, LLC d/b/a Macmillan, a New York limited liability company with its principal place of business in New York, New York; and (2) Verlagsgruppe Georg von Holtzbrinck GmbH, a German corporation with its principal place of business in Stuttgart, Germany, their successors and assigns, and their parents, subsidiaries, divisions, groups, affiliates, and partnerships, and their directors, officers, managers, agents, and employees.

K.     "Penguin" means (1) Penguin Group (USA), Inc., a Delaware corporation with its principal place of business in New York, New York; (2) The Penguin Group, a division of U.K. corporation Pearson plc with its principal place of business in London, England; (3) The Penguin Publishing Company Ltd, a company registered in England and Wales with its principal place of business in London, England; and (4) Dorling Kindersley Holdings Limited, a company registered in England and Wales with its principal place of business in London, England; and each of their respective successors and assigns (expressly including Penguin Random House and any similar joint venture between Penguin and Random House Inc.); each of their respective subsidiaries, divisions, groups, partnerships; and each of their respective directors, officers, managers, agents,

and employees. Where Section IV.A, IV.B, IV.D, or VII imposes an obligation on Penguin to engage in certain conduct by either a date certain or by a specified day after entry of this Final Judgment, any successor or assign whose acquisition of or combination or other relationship with Penguin is consummated after entry of this Final Judgment shall meet each such obligation within thirty days after consummation. The prohibitions of Section V.A of this Final Judgment shall expire for any successor or assign of Penguin on the dates on which such prohibitions would have expired for Penguin had the acquisition, combination, or other relationship not occurred. Where the Final Judgment imposes an obligation on Penguin to engage in or refrain from engaging in certain conduct, that obligation shall apply to Penguin and to any joint venture or other business arrangement established by Penguin and one or more Publisher Defendants.

L. "Penguin Random House" means the joint venture entities, which will operate under the name "Penguin Random House," that will be formed pursuant to the Contribution Agreement, dated October 29, 2012, by and between Pearson plc and Bertelsmann SE & Co. KGaA.

M. "Person" means any natural person, corporation, company, partnership, joint venture, firm, association, proprietorship, agency, board, authority, commission, office, or other business or legal entity, whether private or governmental.

N. "Price MFN" means a term in an agreement between an E-book Publisher and an E-book Retailer under which

1. the Retail Price at which an E-book Retailer or, under an Agency Agreement, an E-book Publisher Sells one or more E-books to consumers depends in any way on the Retail Price, or discounts from the Retail Price, at which any other E-book Retailer or the

E-book Publisher, under an Agency Agreement, through any other E-book Retailer Sells the same E-book(s) to consumers;

        2.    the Wholesale Price at which the E-book Publisher Sells one or more E-books to that E-book Retailer for Sale to consumers depends in any way on the Wholesale Price at which the E-book Publisher Sells the same E-book(s) to any other E-book Retailer for Sale to consumers; or

        3.    the revenue share or commission that E-book Retailer receives from the E-book Publisher in connection with the Sale of one or more E-books to consumers depends in any way on the revenue share or commission that (a) any other E-book Retailer receives from the E-book Publisher in connection with the Sale of the same E-book(s) to consumers, or (b) that E-book Retailer receives from any other E-book Publisher in connection with the Sale of one or more of the other E-book Publisher's E-books.

For purposes of this Final Judgment, it will not constitute a Price MFN under subsection 3 of this definition if Penguin agrees, at the request of an E-book Retailer, to meet more favorable pricing, discounts, or allowances offered to the E-book Retailer by another E-book Publisher for the period during which the other E-book Publisher provides that additional compensation, so long as that agreement is not or does not result from a pre-existing agreement that requires Penguin to meet all requests by the E-book Retailer for more favorable pricing within the terms of the agreement.

O.  "Publisher Defendants" means Hachette, HarperCollins, Macmillan, Penguin, and Simon & Schuster. Where this Final Judgment imposes an obligation on Publisher Defendants to engage in or refrain from engaging in certain conduct, that obligation shall apply to each Publisher Defendant individually and to any joint venture or other business arrangement established by any two or more Publisher Defendants.

P.  "Purchase" means a consumer's acquisition of one or more E-books as a result of a Sale.

Q.  "Retail Price" means the price at which an E-book Retailer or, under an Agency Agreement, an E-book Publisher Sells an E-book to a consumer.

R.  "Sale" means delivery of access to a consumer to read one or more E-books (purchased alone, or in combination with other goods or services) in exchange for payment; "Sell" or "Sold" means to make or to have made a Sale of an E-book to a consumer.

S.  "Simon & Schuster" means Simon & Schuster, Inc., a New York corporation with its principal place of business in New York, New York, its successors and assigns, and its subsidiaries, divisions, groups, and partnerships, and their directors, officers, managers, agents, and employees.

T.  "Wholesale Price" means (1) the net amount, after any discounts or other adjustments (not including promotional allowances subject to Section 2(d) of the Robinson-Patman Act, 15 U.S.C. § 13(d)), that an E-book Retailer pays to an E-book Publisher for an E-book that the E-book Retailer Sells to consumers; or (2) the Retail Price at which an E-book Publisher, under an Agency Agreement, Sells an E-book to consumers through an E-book Retailer

minus the commission or other payment that E-book Publisher pays to the E-book Retailer in connection with or that is reasonably allocated to that Sale.

### III.  APPLICABILITY

This Final Judgment applies to Penguin and all other Persons in active concert or participation with Penguin who receive actual notice of this Final Judgment by personal service or otherwise.

### IV.  REQUIRED CONDUCT

A. Within seven days after entry of this Final Judgment, Penguin shall terminate any agreement with Apple relating to the Sale of E-books that was executed prior to Penguin's stipulation to the entry of this Final Judgment.

B. For each agreement between Penguin and an E-book Retailer other than Apple that (1) restricts, limits, or impedes the E-book Retailer's ability to set, alter, or reduce the Retail Price of any E-book or to offer price discounts or any other form of promotions to encourage consumers to Purchase one or more E-books; or (2) contains a Price MFN, Penguin shall notify the E-book Retailer, by January 8, 2013, that the E-book Retailer may terminate the agreement with thirty-days notice and shall, thirty days after the E-book Retailer provides such notice, release the E-book Retailer from the agreement.  For each such agreement that the E-book Retailer has not terminated within ten days after entry of this Final Judgment, Penguin shall, as soon as permitted under the agreement, take each step required under the agreement to cause the agreement to be terminated and not renewed or extended.

C. Penguin shall notify the Department of Justice in writing at least sixty days in advance of the formation or material modification of any joint venture or other business

8

arrangement relating to the Sale, development, or promotion of E-books in the United States in which Penguin and at least one other E-book Publisher (including another Publisher Defendant) are participants or partial or complete owners. Such notice shall describe the joint venture or other business arrangement, identify all E-book Publishers that are parties to it, and attach the most recent version or draft of the agreement, contract, or other document(s) formalizing the joint venture or other business arrangement. Within thirty days after Penguin provides notification of the joint venture or business arrangement, the Department of Justice may make a written request for additional information. If the Department of Justice makes such a request, Penguin shall not proceed with the planned formation or material modification of the joint venture or business arrangement until thirty days after substantially complying with such additional request(s) for information. The failure of the Department of Justice to request additional information or to bring an action under the antitrust laws to challenge the formation or material modification of the joint venture shall neither give rise to any inference of lawfulness nor limit in any way the right of the United States to investigate the formation, material modification, or any other aspects or activities of the joint venture or business arrangement and to bring actions to prevent or restrain violations of the antitrust laws.

The notification requirements of this Section IV.C shall not apply to ordinary course business arrangements between Penguin and another E-book Publisher (not a Publisher Defendant) that do not relate to the Sale of E-books to consumers, or to business arrangements the primary or predominant purpose or focus of which involves: (i) E-book Publishers co-publishing one or more specifically identified E-book titles or a particular author's E-books; (ii) Penguin licensing to or from another E-book Publisher the publishing rights to one or more specifically

identified E-book titles or a particular author's E-books; (iii) Penguin providing technology services to or receiving technology services from another E-book Publisher (not a Publisher Defendant) or licensing rights in technology to or from another E-book Publisher; or (iv) Penguin distributing E-books published by another E-book Publisher (not a Publisher Defendant). The notification requirements of this Section IV.C shall also not apply to the formation of Penguin Random House, review of which is pending before the Department of Justice.

D. Penguin shall furnish to the Department of Justice (1) by January 8, 2013, one complete copy of each agreement, executed, renewed, or extended on or after January 1, 2012, between Penguin and any E-book Retailer relating to the Sale of E-books, and, (2) thereafter, on a quarterly basis, each such agreement executed, renewed, or extended since Penguin's previous submission of agreements to the Department of Justice.

## V. PROHIBITED CONDUCT

A. For two years, Penguin shall not restrict, limit, or impede an E-book Retailer's ability to set, alter, or reduce the Retail Price of any E-book or to offer price discounts or any other form of promotions to encourage consumers to Purchase one or more E-books, such two-year period to run separately for each E-book Retailer, at Penguin's option, from either:

1. the termination of an agreement between Penguin and the E-book Retailer that restricts, limits, or impedes the E-book Retailer's ability to set, alter, or reduce the Retail Price of any E-book or to offer price discounts or any other form of promotions to encourage consumers to Purchase one or more E-books; or

2. the date on which Penguin notifies the E-book Retailer in writing that Penguin will not enforce any term(s) in its agreement with the E-book Retailer that restrict, limit,

10

or impede the E-book Retailer from setting, altering, or reducing the Retail Price of one or more E-books, or from offering price discounts or any other form of promotions to encourage consumers to Purchase one or more E-books.

Penguin shall notify the Department of Justice of the option it selects for each E-book Retailer within seven days of making its selection.

B.  For two years after Penguin's stipulation to the entry of this Final Judgment, Penguin shall not enter into any agreement with any E-book Retailer that restricts, limits, or impedes the E-book Retailer from setting, altering, or reducing the Retail Price of one or more E-books, or from offering price discounts or any other form of promotions to encourage consumers to Purchase one or more E-books.

C.  Penguin shall not enter into any agreement with an E-book Retailer relating to the Sale of E-books that contains a Price MFN.

D.  Penguin shall not retaliate against, or urge any other E-book Publisher or E-book Retailer to retaliate against, an E-book Retailer for engaging in any activity that Penguin is prohibited by Sections V.A, V.B, and VI.B.2 of this Final Judgment from restricting, limiting, or impeding in any agreement with an E-book Retailer. After the expiration of prohibitions in Sections V.A and V.B of this Final Judgment, this Section V.D shall not prohibit Penguin from unilaterally entering into or enforcing any agreement with an E-book Retailer that restricts, limits, or impedes the E-book Retailer from setting, altering, or reducing the Retail Price of any of Penguin's E-books or from offering price discounts or any other form of promotions to encourage consumers to Purchase any of Penguin's E-books.

E.   Penguin shall not enter into or enforce any agreement, arrangement, understanding, plan, program, combination, or conspiracy with any E-book Publisher (including another Publisher Defendant) to raise, stabilize, fix, set, or coordinate the Retail Price or Wholesale Price of any E-book or fix, set, or coordinate any term or condition relating to the Sale of E-books.

This Section V.E shall not prohibit Penguin from entering into and enforcing agreements relating to the distribution of another E-book Publisher's E-books (not including the E-books of another Publisher Defendant) or to the co-publication with another E-book Publisher of specifically identified E-book titles or a particular author's E-books, or from participating in output-enhancing industry standard-setting activities relating to E-book security or technology.

F.   Penguin (including each officer of each parent of Penguin who exercises direct control over Penguin's business decisions or strategies) shall not convey or otherwise communicate, directly or indirectly (including by communicating indirectly through an E-book Retailer with the intent that the E-book Retailer convey information from the communication to another E-book Publisher or knowledge that it is likely to do so), to any other E-book Publisher (including to an officer of a parent of a Publisher Defendant) any competitively sensitive information, including:

    1.   its business plans or strategies;

    2.   its past, present, or future wholesale or retail prices or pricing strategies for books sold in any format (*e.g.*, print books, E-books, or audio books);

    3.   any terms in its agreement(s) with any retailer of books Sold in any format; or

    4.   any terms in its agreement(s) with any author.

This Section V.F shall not prohibit Penguin from communicating (a) in a manner and through media consistent with common and reasonable industry practice, the cover prices or wholesale or retail prices of books sold in any format to potential purchasers of those books; or (b) information Penguin needs to communicate in connection with (i) its enforcement or assignment of its intellectual property or contract rights, (ii) a contemplated merger, acquisition, or purchase or sale of assets, (iii) its distribution of another E-book Publisher's E-books, or (iv) a business arrangement under which E-book Publishers agree to co-publish, or an E-book Publisher agrees to license to another E-book Publisher the publishing rights to, one or more specifically identified E-book titles or a particular author's E-books.

## VI. **PERMITTED CONDUCT**

A. Nothing in this Final Judgment shall prohibit Penguin unilaterally from compensating a retailer, including an E-book Retailer, for valuable marketing or other promotional services rendered.

B. Notwithstanding Sections V.A and V.B of this Final Judgment, Penguin may enter into Agency Agreements with E-book Retailers under which the aggregate dollar value of the price discounts or any other form of promotions to encourage consumers to Purchase one or more of Penguin's E-books (as opposed to advertising or promotions engaged in by the E-book Retailer not specifically tied or directed to Penguin's E-books) is restricted; *provided that* (1) such agreed restriction shall not interfere with the E-book Retailer's ability to reduce the final price paid by consumers to purchase Penguin's E-books by an aggregate amount equal to the total commissions Penguin pays to the E-book Retailer, over a period of at least one year, in connection with the Sale of Penguin's E-books to consumers; (2) Penguin shall not restrict, limit, or impede the E-book

Retailer's use of the agreed funds to offer price discounts or any other form of promotions to encourage consumers to Purchase one or more E-books; and (3) the method of accounting for the E-book Retailer's promotional activity does not restrict, limit, or impede the E-book Retailer from engaging in any form of retail activity or promotion.

### VII.   ANTITRUST COMPLIANCE

Within thirty days after entry of this Final Judgment, Penguin shall designate its general counsel or chief legal officer, or an employee reporting directly to its general counsel or chief legal officer, as Antitrust Compliance Officer with responsibility for ensuring Penguin's compliance with this Final Judgment. The Antitrust Compliance Officer shall be responsible for the following:

A.   furnishing a copy of this Final Judgment, within thirty days of its entry, to each of Penguin's officers and directors, and to each of Penguin's employees engaged, in whole or in part, in the distribution or Sale of E-books;

B.   furnishing a copy of this Final Judgment in a timely manner to each officer, director, or employee who succeeds to any position identified in Section VII.A of this Final Judgment;

C.   ensuring that each person identified in Sections VII.A and VII.B of this Final Judgment receives at least four hours of training annually on the meaning and requirements of this Final Judgment and the antitrust laws, such training to be delivered by an attorney with relevant experience in the field of antitrust law;

D.       obtaining, within sixty days after entry of this Final Judgment and on each anniversary of the entry of this Final Judgment, from each person identified in Sections VII.A and VII.B of this Final Judgment, and thereafter maintaining, a certification that each such person (a) has read, understands, and agrees to abide by the terms of this Final Judgment; and (b) is not aware of any violation of this Final Judgment or the antitrust laws or has reported any potential violation to the Antitrust Compliance Officer;

E.       conducting an annual antitrust compliance audit covering each person identified in Sections VII.A and VII.B of this Final Judgment, and maintaining all records pertaining to such audits;

F.       communicating annually to Penguin's employees that they may disclose to the Antitrust Compliance Officer, without reprisal, information concerning any potential violation of this Final Judgment or the antitrust laws;

G.       taking appropriate action, within three business days of discovering or receiving credible information concerning an actual or potential violation of this Final Judgment, to terminate or modify Penguin's conduct to assure compliance with this Final Judgment; and, within seven days of taking such corrective actions, providing to the Department of Justice a description of the actual or potential violation of this Final Judgment and the corrective actions taken;

H.       furnishing to the Department of Justice on a quarterly basis electronic copies of any non-privileged communications with any Person containing allegations of Penguin's noncompliance with any provisions of this Final Judgment;

15


  I. maintaining, and furnishing to the Department of Justice on a quarterly basis, a log of all oral and written communications, excluding privileged or public communications, between or among (1) any of Penguin's officers, directors, or employees involved in the development of Penguin's plans or strategies relating to E-books, and (2) any person employed by or associated with another Publisher Defendant, relating, in whole or in part, to the distribution or sale in the United States of books sold in any format, including an identification (by name, employer, and job title) of the author and recipients of and all participants in the communication, the date, time, and duration of the communication, the medium of the communication, and a description of the subject matter of the communication (for a collection of communications solely concerning a single business arrangement that is specifically exempted from the reporting requirements of Section IV.C of this Final Judgment, Penguin may provide a summary of the communications rather than logging each communication individually); and

  J. providing to the Department of Justice annually, on or before the anniversary of the entry of this Final Judgment, a written statement as to the fact and manner of Penguin's compliance with Sections IV, V, and VII of this Final Judgment.

### VIII. COMPLIANCE INSPECTION

  A. For purposes of determining or securing compliance with this Final Judgment, or of determining whether the Final Judgment should be modified or vacated, and subject to any legally recognized privilege, from time to time duly authorized representatives of the Department of Justice, including consultants and other persons retained by the Department of Justice, shall, upon written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to Penguin, be permitted:

    1. access during Penguin's office hours to inspect and copy, or at the option of the United States, to require Penguin to provide to the United States hard copy or electronic copies of all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of Penguin, relating to any matters contained in this Final Judgment; and

    2. to interview, either informally or on the record, Penguin's officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by Penguin.

  B. Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, Penguin shall submit written reports or respond to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested. Written reports authorized under this paragraph may, in the sole discretion of the United States, require Penguin to conduct, at their cost, an independent audit or analysis relating to any of the matters contained in this Final Judgment.

  C. No information or documents obtained by the means provided in this Section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

  D. If at the time information or documents are furnished by Penguin to the United States, Penguin represents and identifies in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal

Rules of Civil Procedure, and Penguin marks each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the United States shall give Penguin ten calendar days notice prior to divulging such material in any civil or administrative proceeding.

### IX. RETENTION OF JURISDICTION

This Court retains jurisdiction to enable any party to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

### X. NO LIMITATION ON GOVERNMENT RIGHTS

Nothing in this Final Judgment shall limit the right of the United States to investigate and bring actions to prevent or restrain violations of the antitrust laws concerning any past, present, or future conduct, policy, or practice of Penguin.

### XI. EXPIRATION OF FINAL JUDGMENT

Unless this Court grants an extension, this Final Judgment shall expire five years from the date of its entry.

### XII. PUBLIC INTEREST DETERMINATION

Entry of this Final Judgment is in the public interest.  The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any comments thereon and the United States' responses to comments.  Based upon the record before

the Court, which includes the Competitive Impact Statement and any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.

Date: May 17, 2013

Court approval subject to procedures set forth in the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16

_____
United States District Judge