# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Orin Snyder
Direct: +1 212.351.2400
Fax: +1 212.351.6335
OSnyder@gibsondunn.com

June 2, 2013

VIA ELECTRONIC MAIL

The Honorable Denise L. Cote
United States District Court for the Southern District of New York
500 Pearl Street, Room 1610
New York, New York 10007-1312

Re:    Re: *United States v. Apple*, 12 Civ. 2826 (DLC), *Texas v. Penguin Group (USA) Inc.*, 12 Civ. 3394 (DLC)

Dear Judge Cote:

We expect plaintiffs will seek to introduce into evidence a February 23, 2011 email from Mr. David Shanks, CEO of Penguin, Inc., to Mike Bryan of Penguin,[1] which plaintiffs claimed in their pre-trial briefs is "direct evidence" that Apple participated in a conspiracy. Pl. Br. 26; Pl. Opp. Br. 8. Mr. Shanks is set to testify on the first few days of trial, and we write to object to admission of the email as inadmissible hearsay. Fed. R. Evid. 801(c).[2]

When plaintiffs designated this email as an exhibit, Penguin was still a party to this case, which might have made the email admissible *against Penguin* as the statement of a party opponent under Rule 801(d)(2)(A)–(D). Now that Penguin is no longer a party, there is no basis for admitting the email against Apple under one of those exclusions: (A) Apple is not the declarant; (B) Apple did not adopt Mr. Shanks's statement; (C) Apple did not authorize Mr. Shanks to make the statement; and (D) Mr. Shanks was never Apple's employee.

Rule 801(d)(2)(E)'s exception for statements against co-conspirators is inapplicable, because plaintiffs cannot show by a preponderance of the evidence: "(1) that there was a conspiracy, (2) that its members included the declarant and the party against whom the statement was offered, and (3) that the statement was made both (a) during the course of and (b) in furtherance of the conspiracy." *United States v. Tracy*, 12 F.3d 1186, 1196 (2d Cir. 1993).

As to the first two prongs, plaintiffs have not established that there was a conspiracy that included Apple and Penguin; they hope to use the Shanks email *to prove* such a conspiracy.

---

[1]  The complete mail reads: "We would never meet with Barnes [& Noble] and all our competitors. The Government would be all over that. We would meet separately with Indigo being the facilitator and go between. That is how we worked with Apple and the government is still looking into that." PX-0542, at PEN-LIT-00199145.

[2]  Apple objected to this email initially on relevance and foundation grounds, and then followed up with a hearsay objection in an email to plaintiffs on April 30, 2013.

GIBSON DUNN

The Honorable Denise L. Cote
June 2, 2013
Page 2

Thus, the statement is "presumptively unreliable, and, for such statements to be admissible, there must be some independent corroboration of the defendant's participation in the conspiracy." *United States v. Saneaux*, 365 F. Supp. 2d 488, 490 (S.D.N.Y. 2005).

In any event, on the third prong, the Shanks email (written in 2011) was not "in furtherance of the conspiracy" alleged in this case—namely, a conspiracy between Apple and Penguin (and the other publishers) to force Amazon onto agency and raise e-book prices. Fed. R. Evid. 801(d)(2)(E)(3). Mr. Shanks made his statement after the alleged conspiracy was completed in response to a suggestion that Penguin and other major publishes set a combined meeting with another company, Indigo, regarding "the success of the physical book format" "*in Canada.*" PX-0542. The email thus relates to a different matter, involving different entities, with a different objective (it had nothing to do with Amazon), *in a different country*.

And *as to Apple*, the email does nothing more than describe one person's after-the-fact view of past conduct. But "mere[] narrative declarations of a past fact" are not "in furtherance of" a conspiracy. *United States v. Goodman*, 29 F.2d 1009, 1013 (2d Cir. 1942); *see also Krulewitch v. United States*, 336 U.S. 440, 443 (1949) (no co-conspirator exclusion if the statement was made "after th[e] objective[] either had failed or been achieved").

Nor may plaintiffs rely on the state-of-mind hearsay exception in Rule 803(3). That exception applies only to evidence of "*the declarant's*" state of mind. *Id.* Plaintiffs thus may not rely on the email to prove that *Apple* had a "conscious commitment" to join a conspiracy. *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984); *see also Geneva Pharms Tech. Corp. v. Barr Labs, Inc.*, 386 F.3d 485, 507 (2d Cir. 2004) ("lack of intent by one party ... precludes a conspiracy to [restrain trade]").

Rule 803(3) also does not apply to statements—like the Shanks email—that describe past events, as opposed to future intentions. *See, e.g., Shepard v. United States*, 290 U.S. 96, 105–06 (1933); *United States v. Harwood*, 998 F.2d 91, 97–98 (2d Cir. 1993).

Finally, plaintiffs may not rely on the residual exception in Rule 807. Mr. Shanks' statement does not have "circumstantial guarantees of trustworthiness." Fed. R. Evid. 807(a)(1). On the contrary, it is precisely the sort of unreliable, after-the-fact, out-of-court statement that the hearsay rule was designed to exclude.

Plaintiffs are free to put Mr. Shanks on the stand and examine him about his business dealings with Apple. But they must rely on live, sworn testimony where the Court can observe the witness and Apple can cross-examine him, rather than an inflammatory, years-old email in the context of an entirely different business deal. Apple respectfully requests that the Court prohibit plaintiffs from offering Mr. Shanks's email into evidence.

# GIBSON DUNN

The Honorable Denise L. Cote
June 2, 2013
Page 3

Respectfully submitted,

Orin Snyder

Cc: All counsel