# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| | Civil Action No. 1:12-CV-2826 |
| v. | |
| APPLE, INC., *et al.*, | **PLAINTIFF UNITED STATES'** |
| | **FINAL JUDGMENT** |
| Defendants. | |
| | and |
| THE STATE OF TEXAS, *et al.*, | **PLAINTIFF STATES'** |
| | **ORDER ENTERING** |
| Plaintiffs, | **PERMANENT INJUNCTION** |
| v. | |
| | Civil Action No. 1:12-CV-3394[1] |
| PENGUIN GROUP (USA) INC., *et al.*, | |
| Defendants. | |

DENISE L. COTE,
UNITED STATES DISTRICT JUDGE

### I. DEFINITIONS

As used in this Final Judgment and Order Entering Permanent Injunction:

A. "Agency Agreement" means an agreement between an E-book Publisher and an E-book Retailer under which the Retailer acts as an agent of the Publisher and is paid a commission (or a portion of the Retail Price) in connection with the sale of one or more of the Publisher's E-books.

---

[1] Pursuant to the agreement of the parties and Court order, the proceedings in *Texas et al. v. Penguin Group (USA) Inc. et al.*, Civ. A. No. 1:12-CV-3394, have been bifurcated. Issues related to non-injunctive relief, including damages and civil penalties, will be addressed in subsequent proceedings.

B.      "Apple" means Apple, Inc.

C.      "E-book" means an electronically formatted book designed to be read on a computer, a handheld device, or other electronic devices capable of visually displaying E-books.

D.      "E-book App" means a software application sold or distributed through Apple's "App Store" relating to the reading, browsing, purchase, sale, recommendation, selection, or cataloging of any book or E-book.

E.      "E-book Publisher" means any Person that, by virtue of a contract or other relationship with an E-book's author or other rights holder, owns or controls the necessary copyright or other authority (or asserts such ownership or control) over any E-book sufficient to distribute the E-book within the United States to E-book Retailers and to permit such E-book Retailers to sell the E-book to consumers in the United States.   Publisher Defendants are E-book Publishers.   For purposes of this Final Judgment, E-book Retailers are not E-book Publishers.

F.      "E-book Retailer" means any Person that lawfully sells (or seeks to lawfully sell) E-books to consumers in the United States, or through which a Publisher Defendant, under an Agency Agreement, sells E-books to consumers.   Apple is an E-book Retailer.   For purposes of this Final Judgment, Publisher Defendants and all other Persons whose primary business is book publishing are not E-book Retailers.

G.      "Effective Date" means the date, under Section VIII.A of this Final Judgment, on which this Final Judgment takes effect.

H.      "External Compliance Monitor" means the person appointed by the Court to perform the duties described in Section VI of this Final Judgment.

2

I. "Final Judgment" means this document:  the Final Judgment in *United States v. Apple, Inc., et al.*, Civil Action No. 1:12-CV-2826, and the Order Entering Permanent Injunction in *The State of Texas, et al. v. Penguin Group (USA) Inc., et al.*, Civil Action No. 1:12-CV-3394.

J. "Hachette" means Hachette Book Group, Inc.

K. "HarperCollins" means HarperCollins Publishers L.L.C.

L. "Macmillan" means Holtzbrinck Publishers, LLC d/b/a Macmillan and Verlagsgruppe Georg von Holtzbrinck GmbH.

M. "Penguin" means Penguin Group (USA), Inc., The Penguin Group, a division of U.K. corporation Pearson plc, The Penguin Publishing Company Ltd, Dorling Kindersley Holdings Limited, and Penguin Random House, a joint venture by and between Pearson plc and Bertelsmann SE & Co. KGaA, and any similar joint venture between Penguin and Random House Inc.

N. "Person" means any natural person, corporation, company, partnership, joint venture, firm, association, proprietorship, agency, board, authority, commission, office, or other business or legal entity, whether private or governmental.

O. "Plaintiff States" means the States and Commonwealths of Alabama, Alaska, Arizona, Arkansas, Colorado, Connecticut, Delaware, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Missouri, Nebraska, New Mexico, New York, North Dakota, Ohio, Pennsylvania, Puerto Rico, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, West Virginia, and Wisconsin and the District of Columbia.

P. "Publisher Defendants" means Hachette, HarperCollins, Macmillan, Penguin, and Simon & Schuster.

Q. "Representative Plaintiff States" means, as of the Effective Date of this Final Judgment, the States of Texas and Connecticut. The Plaintiff States may designate a different Plaintiff State as a substitute Representative Plaintiff State at any time by communicating the change in writing to Apple and the United States.

R. "Retail Price" means the price at which an E-book Retailer or, under an Agency Agreement, an E-book Publisher sells an E-book to a consumer.

S. "Retail Price MFN" means a term in an agreement between an E-book Publisher and an E-book Retailer under which the Retail Price at which an E-book Retailer or, under an Agency Agreement, an E-book Publisher sells one or more E-books to consumers depends in any way on the Retail Price, or discounts from the Retail Price, at which any other E-book Retailer or the E-book Publisher, under an Agency Agreement, through any other E-book Retailer sells the same E-book(s) to consumers.

T. "Simon & Schuster" means Simon & Schuster, Inc.

## II.  APPLICABILITY

This Final Judgment applies to Apple and each of its affiliates, subsidiaries, officers, directors, agents, employees, successors, and assigns, to any successor to any substantial part of the business, and to all other Persons acting in concert with Apple and having actual notice of this Final Judgment.

## III.  PROHIBITED CONDUCT

A. For five years after the Effective Date of this Final Judgment, Apple shall not enforce any Retail Price MFN in any agreement with an E-book Publisher relating to the sale of E-books.

      B.      For five years after the Effective Date of this Final Judgment, Apple shall not enter into any agreement with an E-book Publisher relating to the sale of E-books that contains a Retail Price MFN.

      C.      For five years after the Effective Date of this Final Judgment, Apple shall not enter into any agreement with a Publisher Defendant that restricts, limits, or impedes Apple's ability to set, alter, or reduce the Retail Price of any E-book or to offer price discounts or any other form of promotions to encourage consumers to purchase one or more E-books.

      D.      Apple shall not (1) retaliate against or punish, (2) threaten to retaliate against or punish, or (3) urge another Person to retaliate against or punish any E-book Publisher for refusing to enter into an agreement with Apple relating to the sale of E-books or for the terms on which the E-book Publisher sells E-books through any other E-book Retailer.

      E.      Apple shall not communicate, directly or indirectly, to any E-book Publisher (1) the status of its contractual negotiations with any other E-book Publisher; (2) the actual or proposed contractual terms or business plans or arrangements it has with any other E-book Publisher, or (3) any non-public competitively sensitive information it learns from any other E-book Publisher, including, but not limited to:

          a.      the E-book Publisher's business plans or strategies;

          b.      the E-book Publisher's past, present, or future wholesale or retail prices or pricing strategies for books licensed or sold in any format (*e.g.*, print books, E-books, or audio books);

          c.      any terms in the E-book Publisher's agreement(s) with any retailer of books licensed or sold in any format; or

      d.    any terms in the E-book Publisher's agreement(s) with any author.

Nothing in this Section III.E prohibits Apple from developing and offering to E-book Publishers a standard form contract containing the terms on which Apple would agree to sell the E-book Publishers' E-books.

    F.    Apple shall not enter into or maintain any agreement with any E-book Publisher or supplier of any other form of content (*e.g.*, music, other audio, movies, television shows, or apps) where such agreement likely will increase, fix, or set the price at which other E-book Retailers or retailers of other forms of content can acquire or sell E-books or other forms of content.

Nothing in this Section III.F prohibits Apple from entering into or maintaining an agreement with an E-book Publisher or supplier of any other form of content merely specifying prices that Apple must pay for the content.

    G.    Apple shall not enter into or maintain any agreement with any other E-book Retailer where such agreement likely will increase, fix, stabilize, or set the prices or establish other terms on which Apple or the other E-book Retailer sells E-books to consumers.

## IV.  REQUIRED CONDUCT

    A.    On the Effective Date of this Final Judgment, Apple shall terminate any Agency Agreement with a Publisher Defendant.

    B.    For any E-book App that any Person offered to consumers through Apple's App Store as of July 10, 2013, Apple shall continue to permit such Person to offer that E-book App, or updates to that E-book App, on the same terms and conditions between Apple and such Person or on terms and conditions that are more favorable to such Person.

C.  Apple shall apply the same terms and conditions to the sale or distribution of an E-book App through Apple's App Store as Apple applies to all other apps sold or distributed through Apple's App Store, except that, for two years after the Effective Date of this Final Judgment, Apple shall allow any E-book Retailer to provide a hyperlink to its website or e-bookstore in or through its E-book App without either compensating Apple for any sales of E-books that follow consumers' use of such hyperlink or requiring the E-book Retailer to include functionality in the E-book App (*e.g.*, a "buy button") the use of which might impose an obligation on the E-book Retailer to compensate Apple.

D.  Apple shall furnish to the United States and the Representative Plaintiff States, within ten business days of receiving such information, any information that reasonably suggests to Apple that its suppliers of any form of content (*e.g.*, books, music, other audio, movies, television shows, or apps) have impermissibly coordinated or are impermissibly coordinating on the terms on which they supply or offer their content to Apple or to any other Person.

## V.  ANTITRUST COMPLIANCE

To ensure its compliance with this Final Judgment and the antitrust laws, Apple shall perform the activities enumerated below in Sections V.A through V.J of this Final Judgment. Within thirty days after the Effective Date of this Final Judgment, Apple's Audit Committee, or another committee comprised entirely of outside directors (*i.e.*, directors not also employed by Apple), shall designate a person not employed by Apple as of the Effective Date of the Final Judgment to serve as Antitrust Compliance Officer, who shall report to the Audit Committee or equivalent committee of Apple's Board of Directors and shall be responsible for supervising Apple's performance of the following:

7

  A. furnishing a copy of this Final Judgment, within thirty days of its Effective Date, to each of Apple's officers and directors and to each of Apple's employees engaged, in whole or in part, in activities relating to Apple's iBookstore;

  B. furnishing a copy of this Final Judgment in a timely manner to each officer, director, or employee who succeeds to any position identified in Section V.A of this Final Judgment;

  C. ensuring that each person identified in Sections V.A and V.B of this Final Judgment receives at least four hours of training annually on the meaning and requirements of this Final Judgment and the antitrust laws, such training to be delivered by an attorney with relevant experience in the field of antitrust law;

  D. obtaining, within sixty days after the Effective Date of this Final Judgment and on each anniversary of the Effective Date of this Final Judgment, from each person identified in Sections V.A and V.B of this Final Judgment, and thereafter maintaining, a certification that each such person (a) has read, understands, and agrees to abide by the terms of this Final Judgment; and (b) is not aware of any violation of this Final Judgment or the antitrust laws or has reported any potential violation to the Antitrust Compliance Officer;

  E. conducting, in consultation with the External Compliance Monitor, an annual antitrust compliance audit covering each person identified in Sections V.A and V.B of this Final Judgment, and maintaining all records pertaining to such audits;

  F. communicating annually to Apple's employees that they may disclose to the Antitrust Compliance Officer, without reprisal, information concerning any potential violation of this Final Judgment or the antitrust laws;

8

G.    taking appropriate action, within three business days of discovering or receiving credible information concerning an actual or potential violation of this Final Judgment, to terminate or modify Apple's conduct to assure compliance with this Final Judgment; and, within seven days of discovering or receiving such information, providing to the United States, the Representative Plaintiff States, and the External Compliance Monitor a description of the actual or potential violation of this Final Judgment and the corrective actions taken;

H.    furnishing to the United States, the Representative Plaintiff States, and the External Compliance Monitor on a quarterly basis electronic copies of any non-privileged communications with any Person containing allegations of Apple's noncompliance with any provisions of this Final Judgment or the antitrust laws;

I.    maintaining, and furnishing to the United States, the Representative Plaintiff States, and the External Compliance Monitor on a quarterly basis, a log of all oral and written communications, excluding privileged or public communications, between or among any person identified in Sections V.A or V.B of this Final Judgment and

1.    any person employed by or associated with another E-book Retailer, relating, in whole or in part, to E-books, devices for reading E-books, or E-book Apps; or

2.    employees or representatives of two or more E-book Publishers, relating, in whole or in part, to E-books, devices for reading E-books, or E-book Apps,

including, but not limited to, an identification (by name, employer, and job title) of the author and recipients of and all participants in the communication, the date, time, and duration of the communication, the medium of the communication, and a description of the subject matter of the communication; and

9

J.providing to the United States, the Representative Plaintiff States, and the External Compliance Monitor annually, on or before the anniversary of the Effective Date of this Final Judgment, a written statement as to the fact and manner of Apple's compliance with Sections III and IV of this Final Judgment.

## VI.EXTERNAL COMPLIANCE MONITOR

A.The Court shall appoint an External Compliance Monitor to undertake the responsibilities and duties described in this Section VI.   On or before the Effective Date of this Final Judgment, the United States and the Representative Plaintiff States jointly shall recommend to the Court one or more persons to serve as External Compliance Monitor.

B.The External Compliance Monitor shall have the power and authority to monitor Apple's compliance with the terms of this Final Judgment, to review and evaluate Apple's existing internal antitrust compliance policies and procedures, and to recommend to Apple changes to address any deficiencies in those policies and procedures.

C.The External Compliance Monitor shall conduct an initial review to assess whether Apple's internal antitrust compliance policies and procedures in existence at the time of his or her appointment are reasonably designed to detect and prevent violations of the antitrust laws. Within 180 days of his or her appointment by the Court, the External Compliance Monitor shall provide a written report to Apple, the United States, and the Representative Plaintiff States setting forth his or her assessment of Apple's internal antitrust compliance policies and procedures and, if appropriate, making recommendations reasonably designed to improve Apple's policies and procedures for ensuring antitrust compliance.

   D. The External Compliance Monitor may, at any time prior to the expiration of this Final Judgment, provide one or more additional written reports to Apple, the United States, and the Representative Plaintiff States setting forth additional recommendations reasonably designed to improve Apple's policies and procedures for ensuring antitrust compliance.   The External Compliance Monitor may provide such additional reports on his or her own initiative or at the request of the Court, the United States, or the Representative Plaintiff States.

   E. Apple shall adopt, within 60 days after it receives a report from the External Compliance Monitor concerning its internal antitrust compliance policies and procedures, all recommendations to which it does not object as unduly burdensome, impractical, or costly.   If Apple objects to any recommendation as unduly burdensome, impractical, or costly, it shall propose in writing to the External Compliance Monitor, the United States, and the Representative Plaintiff States, within 30 days after it receives the report, an alternative policy, procedure, or system designed to achieve the same objective or purpose.   If Apple and the External Compliance Monitor fail, after good faith discussions, to agree on an alternative policy or procedure within 30 days of Apple's objection to a recommendation, Apple shall promptly adopt the External Compliance Monitor's initial recommendation or, after consultation with the United States and the Representative Plaintiff States, apply to this Court within 14 days for relief.

   F. The External Compliance Monitor shall file quarterly reports with the United States, the Representative Plaintiff States, and the Court setting forth Apple's efforts to comply with the Final Judgment.   To the extent such reports contain information that the External Compliance Monitor deems confidential, such reports shall not be filed in the public docket of the Court.

G.  If the External Compliance Monitor in the exercise of his or her responsibilities under this Section VI discovers or receives evidence that suggests to the External Compliance Monitor that Apple is violating or has violated this Final Judgment or the antitrust laws, the External Compliance Monitor shall promptly provide that information to the United States and the Representative Plaintiff States.

H.  Apple shall assist the External Compliance Monitor in performance of the responsibilities set forth in this Section VI.   Apple shall take no action to interfere with or to impede the External Compliance Monitor's accomplishment of its responsibilities.   The External Compliance Monitor may, on reasonable notice to Apple:

1.  interview, either informally or on the record, any Apple personnel, who may have counsel present; any such interview to be subject to the reasonable convenience of such personnel and without restraint or interference by Apple;

2.  inspect and copy any documents in the possession, custody, or control of Apple; and

3.  require Apple to provide compilations of documents, data, or other information, and to submit reports to the External Compliance Monitor containing such material, in such form as the External Compliance Monitor may reasonably direct.

I.  Any objections by Apple to actions by the External Compliance Monitor in fulfillment of the External Compliance Monitor's responsibilities must be conveyed in writing to the United States and the Representative Plaintiff States within ten calendar days after the action giving rise to the objection.

12

J.  The External Compliance Monitor may hire, subject to the approval of the United States, after consultation with the Representative Plaintiff States, any consultants, accountants, attorneys, or other persons reasonably necessary to fulfilling the External Compliance Monitor's responsibilities.  The External Compliance Monitor and any persons hired to assist the External Compliance Monitor shall serve at the cost and expense of Apple, on such terms and conditions as the United States, after consultation with the Representative Plaintiff States, approves, including, but not limited to, the execution of customary confidentiality agreements.  The compensation of the External Compliance Monitor and any persons hired to assist the External Compliance Monitor shall be on reasonable and customary terms commensurate with the individuals' experience and responsibilities.  The External Compliance Monitor shall submit a quarterly expense report to the United States and the Representative Plaintiff States.

K.  If the United States, after consultation with the Representative Plaintiff States, or Apple determines that the External Compliance Monitor has ceased to act or failed to act diligently or in a cost-effective manner, it may recommend that the Court appoint a substitute External Compliance Monitor.

## VII.  PLAINTIFFS' ACCESS

A.  For purposes of determining or securing compliance with this Final Judgment, or of determining whether the Final Judgment should be modified or vacated, and subject to any legally recognized privilege, from time to time duly authorized representatives of the United States Department of Justice Antitrust Division or the Representative Plaintiff States, including, but not limited to, consultants and other persons retained by the United States or the Representative Plaintiff States, shall, upon written request of an authorized representative of the Assistant

13

Attorney General in charge of the Antitrust Division or a joint written request by authorized representatives of each Representative Plaintiff State, and on reasonable notice to Apple, be permitted:

    1.    access during regular business hours to inspect and copy, or at the option of the United States or the Representative Plaintiff States, to require Apple to provide to the United States and the Representative Plaintiff States hard copy or electronic copies of all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of Apple, relating to any matters contained in this Final Judgment; and

    2.    to interview, either informally or on the record, Apple's officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by Apple.

    B.    Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division or a joint written request by authorized representatives of each Representative Plaintiff State, Apple shall submit written reports or respond to written interrogatories, under oath, relating to any of the matters contained in this Final Judgment. Written reports authorized under this paragraph may require Apple to conduct, at its cost, an independent audit or analysis relating to any of the matters contained in this Final Judgment.

    C.    No information or documents obtained by the means provided in this Section shall be divulged by the United States or any Plaintiff State to any person other than an authorized representative of the executive branch of the United States, the Attorney General's Office of any Plaintiff State, or the External Compliance Monitor, except in the course of legal proceedings to

which the United States or the relevant Plaintiff State(s) is a party (including, but not limited to, grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D. If at the time information or documents are furnished by Apple to the United States and the Representative Plaintiff States, Apple represents and identifies in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and Apple marks each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the United States and the Representative Plaintiff States shall give Apple ten calendar days notice prior to divulging such material in any civil or administrative proceeding.

## VIII.  ADDITIONAL PROVISIONS

A. This Final Judgment shall take effect 30 days after the date on which it is entered. If the Final Judgment is stayed, all time periods in the Final Judgment will be tolled during the stay.

B. This Court retains jurisdiction to enable the United States, the Representative Plaintiff States, any other Plaintiff State (after consultation with the United States and the Representative Plaintiff States), or Apple to apply to this Court at any time for, or to act *sua sponte* to issue, further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

      C.      Unless this Court grants an extension, this Final Judgment shall expire by its own terms and without further action of this Court ten years after its Effective Date.

**SO ORDERED**:

                                        **DENISE L. COTE**
                                        **UNITED STATES DISTRICT JUDGE**

Dated: