**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x
                    :

UNITED STATES OF AMERICA,          :

           Plaintiff,       :

                   :   Civil Action No. 1:12-cv-02826-DLC

     v.             :

APPLE INC., *et al.*,          :

           Defendants.    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

 

## SETTLING DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF UNITED STATES' PROPOSED FINAL JUDGMENT AND PLAINTIFF STATES' PROPOSED ORDER ENTERING PERMANENT INJUNCTION

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION ............................................................................................................ 1

ARGUMENT ................................................................................................................... 2

I.　Plaintiffs Are Effectively Seeking to Modify the Consent Decrees Without Demonstrating Any Justification. ........................................................................... 4

II.　The Court Should Prevent Plaintiffs From Changing Their Established Legal Position with Respect to the Consent Decrees Under the Doctrine of Judicial Estoppel. ................................................................................................................. 6

　　1.　Plaintiffs' position in the Proposed Order is inconsistent with their position in the consent decrees with respect to the length of the restriction on the Settling Defendants' freedom to contract and their ability to use the agency model. ............................................................................................................ 7

　　2.　Plaintiffs persuaded the Court to accept their position when the Court approved the consent decrees. ................................................................... 7

　　3.　The Proposed Order would "impose an unfair detriment" on the Settling Defendants because it would impose additional onerous and unnecessary restrictions that the Settling Defendants did not agree to when they entered into the consent decrees. ................................................................... 8

CONCLUSION ................................................................................................................ 10

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

Capmark Fin. Grp. Inc. v. Goldman Sachs Credit Partners L.P.,
    491 B.R. 335 (S.D.N.Y. 2013)............................................................................................8

Intellivision v. Microsoft Corp.,
    484 Fed. App'x 616 (2d Cir. 2012) ....................................................................................6

New Hampshire v. Maine,
    532 U.S. 742 (2001)..............................................................................................6, 7, 8

New York v. Microsoft Corp.,
    531 F. Supp. 2d 141 (D.D.C. 2008) ..............................................................................4, 5

Rufo v. Inmates of Suffolk Cnty. Jail,
    502 U.S. 367 (1992)......................................................................................................4, 5

United States v. Apple, Inc.,
    889 F. Supp. 2d 623 (S.D.N.Y. 2012)...........................................................................2, 8

United States v. Baroid Corp.,
    130 F. Supp. 2d 101 (D.D.C. 2001) ...................................................................................5

United States v. Eastman Kodak Co.,
    63 F.3d 95 (2d Cir. 1995)............................................................................................4, 5

United States v. W. Elec. Co.,
    46 F.3d 1198 (D.C. Cir. 1995) ...........................................................................................5

## INTRODUCTION

HarperCollins Publishers L.L.C., Hachette Book Group, Inc., Simon & Schuster, Inc., Holtzbrinck Publishers, LLC d/b/a Macmillan and Verlagsgruppe Georg von Holtzbrinck GmbH and Penguin Random House LLC (successor to Penguin Group (USA), Inc.) (collectively, the "Settling Defendants")[1] oppose the injunctive relief sought against Apple in Sections III.C and IV.A of the United States Department of Justice's (the "DOJ") and Plaintiff States' (collectively, "Plaintiffs") proposed Final Judgment and Order Entering Permanent Injunction ("Proposed Order").[2] Settling Defendants submit this memorandum of law in connection with this Court's continuing jurisdiction over the Final Judgments entered by Your Honor on September 7, 2012 against HarperCollins, Hachette and Simon & Schuster and May 17, 2013 against Penguin. Macmillan's proposed order is not yet final.

Specifically, the Settling Defendants object to Sections III.C and IV.A of the Proposed Order because they would effectively eliminate the use of the agency model for the sale and distribution of e-books for a period of five years. The proposed provisions would have that effect by preventing Apple from entering into any agreements that limit its ability to discount e-books for five years. In other words, the provisions do not impose any limitation on Apple's pricing behavior at all; rather, under the guise of punishing Apple, they effectively punish the Settling Defendants by prohibiting agreements with Apple using an agency model.

---

[1]   This memorandum is submitted jointly by the Settling Defendants solely for the convenience of the Court and in the interests of judicial economy.

[2]   Section III.C would, if entered, prohibit Apple from entering "into any agreement with a Publisher Defendant that restricts, limits, or impedes Apple's ability to set, alter, or reduce the Retail Price of any E-book or to offer any price discounts or any other form of promotions" for five years from the effective date of the Proposed Order. Section IV.A would require Apple to "terminate any Agency agreement with a Publisher Defendant."

In doing so, the Proposed Order directly conflicts with the consent decrees that the Settling Defendants negotiated with Plaintiffs and that were entered as Final Judgments by this Court, which specifically provide that "a Settling Defendant may enter into Agency Agreements with E-book Retailers" with certain enumerated limitations. As a result, the relief sought by Plaintiffs effectively modifies the Settling Defendants' existing Final Judgments and unreasonably and unnecessarily restrains the Settling Defendants' independent business decisions beyond the scope and time provided for in their respective consent decrees. With the Proposed Order, Plaintiffs ignore this Court's recognition that "[t]he Settling Defendants have elected to settle this dispute . . . . They are entitled to the benefits of that choice and the certainty of a final judgment." United States v. Apple, Inc., 889 F. Supp. 2d 623, 643-44 (S.D.N.Y. 2012). In light of this, and for the reasons set forth below, the Settling Defendants respectfully request that the Court modify the injunctive relief proposed in Sections III.C and IV.A of the Proposed Order to conform to the limitations set forth in the Settling Defendants' consent decrees.

## ARGUMENT

Each Settling Defendant entered into a carefully negotiated consent decree with Plaintiffs. For the original three Settling Defendants, the negotiations with Plaintiffs lasted nearly one year. Although the DOJ initially sought to include a five-year prohibition against the agency model—identical to Section III.C in the Proposed Order—the final consent decrees permit the use of the agency model while also expressly allowing for retailer discounting for a period of two years. Once that "cooling off" period has run, each Settling Defendant may negotiate unilaterally with e-book retailers to enter into any distribution arrangement, including

2

an agency model.[3] Plaintiffs have repeatedly disclaimed any objection to the form of the agency model created by the consent decrees, as well as the adequacy of this prohibition. Further, on more than one occasion, Plaintiffs have stated that "[t]his brief cooling-off period will ensure that the effects of the collusion will have evaporated before defendants seek future agency agreements . . . ." United States' Resp. to Public Comments on the Proposed Final J. (Docket No. 81), at vii; see also U.S. Department of Justice's Competitive Impact Statement (Docket No. 5), at 12 ("In light of current industry dynamics, including rapid innovation, a two-year period, in which Settling Defendants must provide pricing discretion to retailers, is sufficient to allow competition to return to the market.").

In faithful compliance with these consent decrees, the Settling Defendants terminated existing contractual arrangements for the sale and distribution of e-books with Apple as well as with other non-party e-book retailers, and negotiated new agreements consistent with the parameters of the consent decrees. These new agreements have proven effective to accomplish the results intended by Plaintiffs—as evidenced by the DOJ's entry into an almost identical consent decree with Macmillan less than six months ago.[4] Plaintiffs themselves have stated that "[w]ith the Publisher Defendant consent decrees now operative, price competition has returned to the marketplace . . . ." Plaintiffs' Memorandum of Law in Support of Proposed Injunction (Docket No. 329), at 11.

---

[3]  At the time the consent decrees were entered, the DOJ expressly noted that it "does not object to the agency method of distribution in the e-book industry, only to the collusive use of agency to eliminate competition and thrust higher prices onto consumers." United States' Resp. to Public Comments on the Proposed Final J. (Docket No. 81), at vi.

[4]  Macmillan voluntarily renegotiated its agency agreements—with one exception—in 2012. Rather than require it to terminate those recently renegotiated agreements, its DOJ consent decree required instead that Macmillan send those agents notices granting them the pricing discretion required by the consent decree.

Despite achieving their stated goal of returning price competition, Plaintiffs now seek to improperly impose additional, unwarranted restrictions on the Settling Defendants, thereby depriving each publisher of the benefit of its bargain with Plaintiffs.

Accordingly, the Proposed Order should be rejected:  (i) as an improper attempt to modify the consent decrees with the Settling Defendants and (ii) under the doctrine of judicial estoppel.

## I.    Plaintiffs Are Effectively Seeking to Modify the Consent Decrees Without Demonstrating Any Justification.

Plaintiffs seek to modify the Court's prior Final Judgments despite an established process for doing so and their admission that they lack grounds to do so.  A consent decree is a final judgment and modification is therefore covered by Federal Rule of Civil Procedure 60(b).  See Rufo v. Inmates of Suffolk Cnty. Jail, 502 U.S. 367, 378 (1992); United States v. Eastman Kodak Co., 63 F.3d 95, 101 (2d Cir. 1995).  A district court may also modify a consent decree "to the extent authorized by the decree itself or by the related order."  New York v. Microsoft Corp., 531 F. Supp. 2d 141, 166 (D.D.C. 2008) (quoting New York v. Microsoft Corp., 231 F. Supp. 2d 203, 257-58 (D.D.C. 2002)).  Under either method, any party seeking to modify a consent decree must seek a court's approval.  While the Proposed Order is not, in form, seeking a modification of the consent decrees, Sections III.C and IV.A, as explained above, only exist to further punish the Settling Defendants.  As a result, these provisions are a thinly veiled motion for reconsideration of the consent decrees, and thus constitute a naked attempt to circumvent the requirements of Rule 60(b).

Plaintiffs do not attempt to argue that they could satisfy the substantive test for modification or termination of a consent decree.  See Eastman Kodak Co., 63 F.3d at 102 (holding that the standard in Rufo applies to the modification or termination of an antitrust

4

consent decree). Any party seeking to unilaterally modify a consent decree must show that "a significant change in facts or law warrants revision of the decree and that the proposed modification is suitably tailored to the changed circumstance." Rufo, 502 U.S. at 393.[5] It is insufficient for the government to argue "only that its modification is in the public interest, [and] not that its modification is warranted by a change in circumstances." United States v. Baroid Corp., 130 F. Supp. 2d 101, 105 (D.D.C. 2001) (denying the DOJ's motion for modification of consent decree). Nor can these changed circumstances be anticipated changes or changes that "should have been anticipated . . . at the time the consent decree was signed." Id.; see also United States v. W. Elec. Co., 46 F.3d 1198, 1203-04 (D.C. Cir. 1995). Ultimately, equitable principles guide a court's determination. See Eastman Kodak, 63 F.3d at 101.

There has been no significant change in fact or law since entering into the consent decrees. Indeed, the DOJ and Macmillan only entered into their consent decree on February 8, 2013. Plaintiffs would even fail to satisfy the requirements of the less rigorous standard from United Shoe. Plaintiffs admit that the consent decrees have accomplished their "intended result," and the DOJ has stated that "consumers are already paying lower prices" for e-books as a result of the consent decrees. Press Release, U.S. Department of Justice, Justice Dep't Reaches Settlement with Macmillan in E-Books Case (Feb. 8, 2013) (on file with author). In light of Plaintiffs' conclusion that competition has already increased over the period of time during which the consent decrees have been in effect, it would be inequitable to allow them to improperly modify those decrees, require renegotiation of agreements already renegotiated with Apple—and

---

[5]   But see Microsoft, 531 F. Supp. 2d at 141. In Eastman Kodak, the Second Circuit held that Rufo applies where a defendant seeks to terminate an antitrust consent decree; however, the Second Circuit has never addressed whether Rufo is the proper standard where the government seeks to modify a decree. In Microsoft, the district court suggested that where a government enforcer moves to modify a consent decree, they may do so under the less exacting standard of whether the modification is necessary to "'accomplish its intended result.'" Microsoft, 531 F. Supp. 2d at 168 (quoting United States v. United Shoe Machinery Corp., 391 U.S. 244, 252 (1968)).

potentially others—less than one year ago in compliance with the prior consent decrees and impose more onerous and extensive restrictions on the Settling Defendants. And, allowing such unilateral changes to negotiated settlements will reduce the incentives of future defendants to enter into negotiated consent decrees.

## II. The Court Should Prevent Plaintiffs From Changing Their Established Legal Position with Respect to the Consent Decrees Under the Doctrine of Judicial Estoppel.

The doctrine of judicial estoppel bars a party to a proceeding from changing an earlier established legal position "'simply because his interests have changed . . . especially if it be to the prejudice of the party who has acquiesced to the position formerly taken by him.'" Intellivision v. Microsoft Corp., 484 Fed. App'x 616, 618-19 (2d Cir. 2012) (quoting New Hampshire v. Maine, 532 U.S. 742, 749 (2001)). A court's acceptance of a consent decree estops a party from taking a position contrary to the position it took to facilitate that acceptance. See New Hampshire, 532 U.S. at 752. Judicial estoppel is intended "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment," and because judicial estoppel is designed "to prevent improper use of judicial machinery," it is "an equitable doctrine invoked by a court at its discretion." Id. at 749-50 (internal citations omitted).

In evaluating whether to apply judicial estoppel, courts generally look for the existence of three factors: (1) that a party's new position is "clearly inconsistent" with its earlier position, (2) that the party seeking to assert this new position previously persuaded a court to accept its earlier

position and (3) that the party "would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." See id. at 750-51.[6] All three factors are present here.

> 1.   Plaintiffs' position in the Proposed Order is inconsistent with their position in the consent decrees with respect to the length of the restriction on the Settling Defendants' freedom to contract and their ability to use the agency model.

Plaintiffs' new position in the Proposed Order is inconsistent with their earlier position in the consent decrees with the Settling Defendants. As the DOJ stated in its Response to Tunney Act comments:

> Some critical comments simply misunderstand the decree. They assert that the United States is imposing a business model on the industry by prohibiting agency agreements. The United States, however, does not object to the agency method of distribution in the e-book industry . . . . [E]ven the settling publishers here can resume agency, if they act unilaterally, after only two years. This brief cooling-off period will ensure that the effects of collusion will have evaporated before defendants seek future agency agreements, if any.

United States' Resp. to Public Comments on the Proposed Final J. (Docket No. 81), at vi-vii.

In contrast, as explained above, the Proposed Order ensures that no publisher could fully return to the agency model for a full five years because Apple—owner of one of the three main platforms for the sale of e-books—will be prohibited from entering into any agency agreements. Such an outcome is inconsistent with the positions Plaintiffs took with this Court and in public.

> 2.   Plaintiffs persuaded the Court to accept their position when the Court approved the consent decrees.

When this Court accepted the proposed consent decrees, it relied on Plaintiffs' representations regarding the effectiveness of the two year restriction,[7] stating:

---

[6]   The Supreme Court has made clear that these factors do not constitute "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel," and that "[a]dditional considerations may inform the doctrine's application in specific factual contexts." New Hampshire, 532 U.S. at 751.

[7]   "Judicial estoppel does not require that a court expressly assume a party's position in formulating its opinion or issue a final decision on the merits. It is enough that the court accept the accuracy of a party's representation

*(cont'd)*

> The two year limitation on retail price restraints and the five year limitation on Price MFNs appear wholly appropriate given the Settling Defendants' alleged abuse of such provisions in the Agency Agreements, the Government's recognition that such terms are not intrinsically unlawful, and the nascent state of competition in the e-books industry. The Government reasonably describes these time-limited provisions as providing a "cooling-off period" for the e-books industry that will allow it to return to a competitive state free from the impact of defendants' collusive behavior. The time limits on these provisions suggest that they will not unduly dictate the ultimate contours of competition within the e-books industry as it develops over time . . . . The decree is directed narrowly towards undoing the price-fixing conspiracy, ensuring that price-fixing does not immediately reemerge, and ensuring compliance. Based on the factual allegations in the Complaint and CIS, it is reasonable to conclude that these remedies will result in a return to the pre-conspiracy status quo.

Apple, 889 F. Supp. 2d at 632-33.

Plaintiffs' current arguments in support of the Proposed Order essentially render their previous statements upon which this Court relied meaningless.

3.  The Proposed Order would "impose an unfair detriment" on the Settling Defendants because it would impose additional onerous and unnecessary restrictions that the Settling Defendants did not agree to when they entered into the consent decrees.

The Settling Defendants' consent decrees represent highly negotiated compromise positions reflecting many considerations, including each party's litigation risk calculations. As a result, any material modification to the restrictions placed on the Settling Defendants by these consent decrees would impose an unfair detriment on the Settling Defendants. During these negotiations, Plaintiffs induced publishers to enter these agreements on the condition that publishers could continue to use the agency model consistent with the terms of the consent decrees and would be free, in two years, to enter into any type of distribution contract that each

---

*(cont'd from previous page)*
and that the court 'might have' made a different decision had the party not taken that position." Capmark Fin. Grp. Inc. v. Goldman Sachs Credit Partners L.P., 491 B.R. 335, 353 (S.D.N.Y. 2013) (citing New Hampshire, 532 U.S. at 752).

believed was unilaterally in its best interest.[8]  Moreover, Plaintiffs repeatedly disclaimed any intention to act as a "'regulator' of the e-books industry."  United States' Resp. to Public Comments on the Proposed Final J. (Docket No. 81), at 25.  After the entry of these consent decrees, each Settling Defendant separately entered into agreements with Apple and other e-book retailers under the agency model, subject to the pricing restrictions set forth in each publisher's consent decree.[9]

In direct contravention of the Settling Defendants' understanding at the time they entered into their consent decrees, and their new agency agreements with e-book retailers, the Proposed Order would forbid one of the few major retailers in the e-book market—and thereby effectively forbid the settling publishers—from using an agency model for five years.  As a result, the Proposed Order would not only deprive the Settling Defendants of the primary benefit of the bargain reached in their consent decree negotiations—continued use of the agency model and freedom of contract after two years—but it would undo all of the Settling Defendants' efforts pursuant to their consent decrees, impose significant additional burdens in renegotiating settled contracts and create an unnecessary and unfair disruption to their respective businesses. Plaintiffs are attempting to impose a specific business model on the publishing industry, despite their express and repeated representations that they would play no such role.[10]

---

[8]  Of particular note, Plaintiffs recognized the legitimate business value of the agency model to publishers and noted how the consent decrees would "allow a Settling Defendant to prevent a retailer selling its entire catalogue at a sustained loss."  U.S. Department of Justice's Competitive Impact Statement (Docket No. 5), at 15.

[9]  Macmillan's proposed order is not yet final but Macmillan has already granted its distributors the price discretion required by its proposed order.  Penguin Random House LLC is in the midst of negotiating new agreements as a result of the merger between Publisher Defendant Penguin and non-party Random House, Inc.

[10]  "[The consent decrees] do not dictate a particular business model, such as agency or wholesale . . . ."  U.S. Department of Justice's Competitive Impact Statement (Docket No. 5), at 12.

## CONCLUSION

For the foregoing reasons, the Settling Defendants respectfully request that Your Honor

deny Plaintiffs any injunctive relief sought that is inconsistent with the Final Judgments against

the Settling Defendants that Your Honor previously approved and entered.

Dated: August 7, 2013                              Respectfully submitted,


                                            /s/ Shepard Goldfein
                                            Shepard Goldfein (shepard.goldfein@skadden.com)
                                            Clifford H. Aronson (clifford.aronson@skadden.com)
                                            Paul M. Eckles (paul.eckles@skadden.com)
                                            **SKADDEN, ARPS, SLATE, MEAGHER**
                                            **& FLOM LLP**
                                            Four Times Square
                                            New York, New York 10036-6522
                                            Telephone:  (212) 735-3000
                                            Facsimile:  (212) 735-2000
                                            shepard.goldfein@skadden.com
                                            clifford.aronson@skadden.com
                                            paul.eckles@skadden.com


                                            C. Scott Lent
                                            **ARNOLD & PORTER LLP**
                                            399 Park Avenue
                                            New York, New York 10022-4690
                                            Telephone: (212) 715-1000
                                            Facsimile: (212) 715-1399
                                            scott.lent@aporter.com


                                            *Attorneys for HarperCollins Publishers L.L.C.*


Walter B. Stuart                          James W. Quinn
Samuel J. Rubin                           Yehudah L. Buchweitz
**FRESHFIELDS BRUCKHAUS**                 **WEIL, GOTSHAL, & MANGES LLP**
**DERGINER US LLP**                       767 Fifth Avenue
1 Lexington Avenue                        New York, New York 10153-0119
New York, New York  10022                 Telephone:  (212) 310-8000
Telephone:  (212) 277-4000                Facsimile:  (212) 310-8007
Facsimile:  (212) 277-4001                james.quinn@weil.com
walter.stuart@freshfields.com             yehudah.buchweitz@weil.com
samuel.rubin@freshfields.com


10

Richard S. Snyder
**FRESHFIELDS BRUCKHAUS
DERINGER US LLP**
701 Pennsylvania Ave, Suite 600
Washington, D.C. 20004
Telephone: (202) 777-4500
Facsimile: (202) 777-4555
richard.snyder@freshfields.com

*Attorneys for Hachette Book Group, Inc.
and Hachette Digital, Inc.*

Martha E. Gifford
**LAW OFFICE OF MARTHA E. GIFFORD**
137 Montague Street #220
Brooklyn, New York 11201
Telephone: (718) 858-7571
giffordlaw@mac.com

*Attorneys for Simon & Schuster, Inc. and Simon &
Schuster Digital Sales, Inc.*


Saul P. Morgenstern
Amanda C. Croushore
**KAYE SCHOLER LLP**
425 Park Avenue
New York, New York 10022
Telephone: (212) 836-8000
Facsimile: (212) 836-8689
saul.morgenstern@kayescholer.com

Daniel F. McInnis
David A. Donohoe
Allison Sheedy
**AKIN GUMP STRAUSS HAUER &
FELD LLP**
1333 New Hampshire Avenue, N.W.
Washington, DC 20036
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
dmcinnis@akingump.com
ddonohoe@akingump.com
asheedy@akingump.com

*Attorneys for Penguin Random House LLC*

Joel M. Mitnick
Alexandra Shear
**SIDLEY AUSTIN LLP**
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
jmitnick@sidley.com
ashear@sidley.com

*Attorneys for Holtzbrinck Publishers, LLC d/b/a
Macmillan*

11