# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Orin Snyder
Direct: +1 212.351.2400
Fax: +1 212.351.6335
OSnyder@gibsondunn.com

August 8, 2013

VIA ELECTRONIC MAIL

The Honorable Denise C. Cote
United States District Judge
United States District Court for the Southern District of New York

Re: *United States v. Apple Inc.*, 12 Civ. 2826 (DLC), *Texas v. Penguin Group (USA) Inc.*, 12 Civ. 3394 (DLC)

Dear Judge Cote:

Apple respectfully submits its response to this Court's August 5, 2013 Order, and sets forth a list of examples, without prejudice to arguments it may raise on appeal, of evidence that was "improperly admitted, excluded, or disregarded" before or at trial. Along with the other categories of legal errors, these evidentiary issues demonstrate that Apple has a substantial possibility of prevailing on appeal.

1. The Court excluded live testimony from Madeline McIntosh of Random House (Trial Tr. 1620:1-1632:11, 1636:6-1638:24), thereby denying Apple the ability to rebut evidence offered by the Government at trial. Trial Tr. 793:6-797:1, 800:12-802:10, 807:9-809:16 (Naggar); Trial Tr. 823:20-828:5, 845:08-848:02 (Porco). Nor could Ms. McIntosh respond to the cross-examination of Keith Moerer regarding his communications with Ms. McIntosh. In addition, the Court disregarded Ms. McIntosh's testimony that Random House moved to agency based on its discussions with Barnes & Noble, not because of any actions by Apple related to a Random House e-book app. McIntosh Decl. ¶¶ 23-27; Opinion ("Op.") 101.

2. The Court disregarded Theresa Horner's unrebutted testimony that Barnes & Noble was the first retailer to propose agency and pursued agency with publishers for the same independent business reasons as Apple, both prior to and during Apple's negotiations, and without Apple's knowledge. Trial Tr. 2167:19-2168:19, 2172:5-9, 2178:2-2179:7, 2181:17-2184:1, 2203:23-2205:2 (Horner); Horner Decl. ¶¶ 15-18; DX-055; Op. 115, 121, 137-138.

3. The Court found that publisher call records were evidence of conspiracy (Op. 74, 119), and a "departure from the ordinary pattern of calls among them." Op. 31 n.14. The Court disregarded that the records introduced at trial were limited to December 2009 and January 2010, and so there was no evidence of the ordinary pattern of calls from another comparable period. At the same time, the Court disregarded the unrebutted testimony of David Young that similar calls took place in other time frames. Trial Tr. 1429:20-1430:2, 1432:3-13 (Young).

# GIBSON DUNN

4. The Court made specific findings of what transpired at a dinner held on January 20, 2010 involving representatives of Apple and Macmillan, and that prompted by discussions at these dinners, Apple solicited two publishers to call Macmillan about the proposed agreements on January 21, 2010. Op. 70-72. The Court disregarded contemporaneous emails and related testimony describing the issues discussed at the January 20, 2010 dinner and in the calls, all directly inconsistent with the Court's factual findings. DX-205, DX-208; Trial Tr. 1119:23-1120:20, 1132:10-1133:6, 1175:16-1185:2 (Sargent); Trial Tr. 1882:12-1883:1, 1183:14-1885:6 (Cue).

5. The Court excluded testimony from Dr. Burtis regarding agency's procompetitive effects, including its linkage to declining prices in the relevant market, and its effect on entry by independent and self-publishers, and regarding the losses in Amazon's e-books business (May 23, 2013 Hrg. Tr. 29:10-32:5; Trial Tr. 2290:1-22; 2302:17-2303:3; 2304:23-2305:14; 2307:7-2308:15, 2309:21-2313:7; 2315:9-17). By contrast, the Court allowed scientifically unreliable testimony from Dr. Ashenfelter. May 23, 2013 Hrg. Tr. 39:1-40:25.

6. The Court excluded testimony of Dr. Murphy concerning the non-conspiratorial economic motivations of Apple and the publishers in taking certain actions and agreeing to certain contract terms, including the MFN. May 23, 2013 Hrg. Tr. 32:9-35:23; Trial Tr. 2402:11-2403:20, 2406:12-2407:3 (Murphy). By contrast, the Court allowed ungrounded and unreliable testimony from Dr. Gilbert concerning the publishers' economic motivations in negotiating with Apple. May 23, 2013 Hrg. Tr. 32:9-035:24, 35:25-38:25.

7. In making its findings concerning the purpose and effect of the MFN on publisher actions, the Court disregarded the testimony of Dr. Klein demonstrating that, as an economic matter, Apple's MFN did not compel or have any significant impact on any action of a publisher to seek an agency agreement from Amazon. Trial Tr. 2122:17-2130:3 (Klein).

8. The Court disregarded serious credibility issues with the Google and Amazon witnesses, Apple's direct competitors, concerning purported statements by publishers that Apple's agreements required agency with other retailers. Op. 101-02; see, e.g., Trial Tr. 874:02-875:04, 875:06-25, 879:04-17, 880:11-881:05, 891:11-21, 892:18-897:09, 904:4-907:16 (Turvey). The Court also disregarded other credibility issues with the testimony of Amazon witnesses. See, e.g., Trial Tr. 657:6-659:9, 691:4-693:18 (Grandinetti).

9. The Court made several material findings concerning Amazon's business strategies and decisions, including Amazon's e-book pricing strategies and ultimate decision to sign agency agreements (Op. 14, 67-68, 84, 87-93, 118-119, 134), but excluded from discovery, and therefore the trial, evidence of Amazon's internal business deliberations underlying those strategies and decisions, and evidence of Amazon's pricing algorithms. Denial of this discovery and exclusion of this evidence materially prejudiced Apple's ability to address these issues at trial and rebut the Government's evidence.

GIBSON DUNN

Respectfully submitted,

Orin Snyder

cc: All Counsel