

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Orin Snyder
Direct: +1 212.351.2400
Fax: +1 212.351.6335
OSnyder@gibsondunn.com

August 23, 2013

VIA ELECTRONIC MAIL

*Denied.*
*/s/ Denise Cote*
*8/26/13*



The Honorable Denise L. Cote
United States District Court, Southern District of New York

Re:   *United States v. Apple Inc.*, 12 Civ. 2826; *Texas v. Penguin Group Inc.*, 12 Civ. 3394

Dear Judge Cote:

Apple writes to request that this Court order plaintiffs to withdraw the 12-page brief they filed this morning and instead "submit [a] letter concerning [their] positions on the scope of the injunction," as this Court ordered on August 13. Plaintiffs' brief is wholly improper—it violates the parties' August 12 agreement and the Court's August 13 order; and it is predicated on arguments plaintiffs abandoned at trial and materials never admitted into evidence, and that accordingly go far beyond the issues adjudicated by this Court.

On August 13, after the August 9 hearing on the judgment and injunction in which the Court directed the parties to meet and confer on the injunction, the Court entered an order, approving a joint proposal by the parties that (if no agreement was reached) each side "submit *letters* concerning their respective positions on the scope of the injunction." Apple participated in good faith in the meet-and-confer process, providing plaintiffs with two discussion drafts, engaging in three telephonic meetings, and discussing virtually every provision in the proposed judgment and injunction. At the end of that process, Apple complied with the Court's order and direction from the August 9 hearing by this morning submitting to the Court a two-page letter conforming with the Court's rules. That letter set forth Apple's position, and attached as exhibits (A) a proposed form of judgment and injunction, and (B) a letter detailing Apple's past and planned future compliance activities.

By contrast, plaintiffs did not submit a focused letter. Instead, they filed a 12-page broadside masquerading as a brief repeating their prior arguments and largely ignoring this Court's core guidance. They also attached 72 pages of documents—many simply pulled off the internet, and none in the trial record. The brief does not address the Court's expressed concerns, but rather is a transparent effort to again attack the credibility of Apple and its counsel, and obtain an injunction wildly out of proportion to the issues and evidence in this case, in order to punish Apple for defending itself at trial.

Indeed, plaintiffs devote much of their brief to seeking to justify an injunction directed at Apple's unilateral dealings with Amazon (and other e-book retailers) in its App Store (Br. at 8-11), an issue that plaintiffs *did not pursue at trial*. *See* ECF 330 at 13-17. Plaintiffs are seeking a remedy that would give Amazon a significant competitive advantage over Apple—an advantage it is neither entitled to nor deserves. This is plainly improper and highly

GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

counterproductive. Now—after the trial is over and this Court has ruled—is not the time to adjudicate a whole new array of legal and factual issues based on evidence that is outside the record and which largely post-dates the events at issue. Apple's treatment of Apps used for the consumption of digital content[1] on Apple devices is outside the scope and time frame of this Court's decision and, accordingly, outside the scope of any injunction that might conceivably be entered in this case, especially when this Court specifically ruled that its July 10 opinion's "findings arise from the specific events that unfolded in the trade e-book market as 2009 became 2010. It does not seek to paint with a broader brush." Op. at 158.

Notwithstanding the Court's comments at the hearing, and without regard to Apple's substantial showing of its past and future compliance efforts, plaintiffs continue to press for an external monitor. Br. at 5-8. In light of the statements in and tone of plaintiffs' brief, Apple feels compelled to reiterate that its commitment to legal compliance, including antitrust compliance, is unconditional and steadfast. Plaintiffs suggest that Apple's zealous advocacy is justification alone for an onerous monitor and government oversight. But although Apple has fundamental, but respectful, disagreements on both the factual and legal foundations of the decision in this case, that does not mean that the outcome of this case, and the underlying facts, will not be incorporated into Apple's compliance training, which is intended to address legal obligations. It is well-recognized that the antitrust laws are not a broad mandate to regulate competition; indeed, if misapplied, the antitrust laws can deter competition and harm consumers. *See, e.g., Pacific Bell Telephone v. linkLine Commc'ns Inc.,* 555 U.S. 438 (2009). Apple's defense of the case, and its good faith exercise of its appeal rights, will help settle important legal issues under the antitrust laws, and should not be a basis to impose external monitoring or other unnecessary, intrusive, and punitive provisions when Apple has committed to very substantial antitrust compliance.

The parties have been litigating long enough to understand what it means to file letters setting forth their positions. There is simply no excuse for plaintiffs' disregard of the Court's order, and their inclusion of non-record material on issues not adjudicated by this Court in this case. Apple therefore respectfully requests that the Court order plaintiffs to withdraw their brief and file a conforming document, or at a minimum that Apple be given a chance to respond in full.

---

[1] Apple currently does not receive any compensation for the sale of *physical* goods by third parties through links in approved Apps. This was not made clear at the August 9 hearing, largely because these issues have never been part of the case, and the App Store, with 850,000 Apps, is complex. Apple's policy—where users can enjoy content in the App, when purchased outside the App at the third-party website, with no payment to Apple, applies to all *digital* content. As the Court noted (8/9/13 Tr. at 59), a person using an Apple device can easily browse, price compare, and shop, choosing between several E-Book retailers, including Apple, purchase on-line and instantly begin reading. Plaintiffs' attempt to modify this consistent practice through an injunction has no basis in the record, or in common sense. Instead, it introduces needless regulation and complexity to an evolving marketplace.

GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Respectfully submitted,

Orin Snyder


cc: All Counsel

Brussels · Century City · Dallas · Denver · Dubai · Hong Kong · London · Los Angeles · Munich · New York
Orange County · Palo Alto · Paris · San Francisco · São Paulo · Singapore · Washington, D.C.