GIBSON DUNN

RECEIVED
AUG 23 2013
CHAMBERS OF
DENISE COTE

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Orin Snyder
Direct: +1 212.351.2400
Fax: +1 212.351.6335
OSnyder@gibsondunn.com

August 23, 2013

DVF
8/26/13

VIA ELECTRONIC MAIL

The Honorable Denise L. Cote
United States District Court, Southern District of New York

USDC SDNY
DOCUMENT
ELECTRONICALLY

Re:   *United States v. Apple Inc.*, 12 Civ. 2826; *Texas v. Penguin Group Inc.*, 12 Civ. 3394  8/26/13

Dear Judge Cote:

Pursuant to this Court's August 12 order, Apple submits its position on the scope of the injunction. Although Apple maintains its opposition to plaintiffs' request for an injunction, and hereby reserves all of its appellate rights regarding the judgment and any injunction the Court may order, Apple has sought to craft an injunction proposal (attached as Exhibit A) faithful to the objectives this Court articulated during the August 9 hearing.

*First*, Apple's proposal tracks and implements precisely the Court's suggested requirement that Apple engage in staggered and independent renegotiations with defendant publishers starting in two years. *See* Ex. A at IV.B, III.E. Apple's proposal also addresses the Court's stated concerns regarding the App Store; although Apple has no intention to do so, the proposal forbids Apple from using its App Store to "(1) retaliate against or punish, (2) threaten to retaliate against or punish, or (3) urge another Person to retaliate against or punish any E-book Publisher" that refuses to agree to Apple's terms. *See* Ex. A at III.D.

*Second*, Apple's proposed injunction expressly addresses the Court's other statements regarding the App Store. *See* Tr. 55:17-24, 62:1-8, 63:5-8. Apple's App Store policy is to treat all app developers the same way, and the proposed injunction includes a provision that Apple will (with some flexibility) apply "the same terms and conditions to the sale or distribution of an E-book App through Apple's App Store as Apple applies to all other apps" sold through the App Store. *See* Ex. A at IV.C. Anything more would frustrate the Court's stated preference of "adequately protect[ing] price competition without touching, in any way, Apple's flexibility in its management of the app store." Tr. 63:9-11; *see also id.* at 61:16-17 (Court "ha[s] no desire to regulate the app store").

*Third*, Apple expressly addresses the Court's statements about an external monitor. *See* Tr. 66:11-23. The Court preferred "that Apple adopt a vigorous in-house antitrust enforcement program and convince the plaintiffs, and this Court, that there is no need for a monitor." *Id.* at 66:12-15. Apple has bolstered and improved its compliance programs, including the hiring of two seasoned antitrust lawyers with extensive experience at both the DOJ and the FTC, since the events in question. Apple's proposed decree has a strong antitrust compliance program (Ex. A at V.A-I), and attached as Appendix B is a letter Apple has written to the DOJ detailing its compliance activities (including antitrust compliance), both past and future. Apple will devote even greater resources to antitrust compliance going forward.

GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Notwithstanding this unconditional commitment, plaintiffs insist on imposing an external monitor on Apple in addition to a new employee devoted solely to antitrust compliance. This is unreasonable and unjustified and exceeds the bounds of even criminal price-fixing cases. It reflects plaintiffs' continued effort to use this civil injunction to inflict punishment, which is impermissible. *United States v. Nat'l Lead Co.*, 332 U.S. 319, 338 (1947).

There is also nothing inconsistent between Apple's commitment to a strong program and culture of compliance and its defense of this action, including on appeal. Apple has a steadfast commitment to operating ethically and within the law, and the lessons from all of its experience, including from this lawsuit, have been and will be incorporated in advising its employees, regardless of the outcome of Apple's appeal. This will allow Apple to continue to be one of the world's most innovative companies, while acting consistently with both the letter and spirit of the antitrust laws.

Despite the proposed injunction provisions discussed above (among others), plaintiffs also insist on requirements that go far beyond the issues and trial record in this case, including the requirement that Apple permit "hyperlinks" to other E-book retailer websites in E-book retailer apps without charge. But plaintiffs abandoned this issue at trial, there is no evidence supporting their position, and requiring such hyperlinks is unnecessary in that Apple allows E-book retailer apps that permit the reading of any material purchased from other E-book retailer websites (also accessible on Apple devices).[1]

Accordingly, Apple submits that this proposed form of injunction fully implements the Court's stated goals for an injunctive remedy. While Apple believes that many of plaintiffs' proposed provisions are unnecessary and still run the risk of stifling Apple's ability to compete, it has attempted in good faith to listen carefully to the Court's concerns and address those concerns in a forthright manner, even while it pursues what it believes to be strong arguments on appeal. As the Court noted in its July 10 ruling, the circumstances underlying this lawsuit were unusual, involving a two-month period of extraordinary technological change and business conflict, and the Court did not intend with its ruling to paint with "a broader brush." Op. 158. As the Court recognized, too much judicial intervention and unnecessary regulation can just as easily harm, rather than benefit, consumers, particularly in technology markets that are "changing rapidly and significantly." Tr. 53:6-15. Thus, any injunction in this case should avoid imposing restrictions that are "broader or in place longer than necessary" or that would "discourage[] innovation and dynamic change." *Id.* at 65:2-5; *see also Lorain Journal Co. v. United States*, 342 U.S. 143, 156 (1951); U.S. Dep't of Justice Antitrust Div., *Antitrust Division Policy Guide to Merger Remedies* 3-4 (2011); ECF No. 330, at 4-5 (Apple's opposition to plaintiffs' initial proposed injunction).

---

[1] DOJ has indicated that it intends to provide the Court with four documents produced in discovery, but not introduced at trial or part of the record or findings in this case. Apple objects. Plaintiffs had a full opportunity to build their factual record, and it is wholly improper to now rely on cherry-picked and misleading materials, after trial, without a fair opportunity for Apple to respond.

Brussels · Century City · Dallas · Denver · Dubai · Hong Kong · London · Los Angeles · Munich · New York
Orange County · Palo Alto · Paris · San Francisco · São Paulo · Singapore · Washington, D.C.

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Respectfully submitted,

Orin Snyder

*Orin Snyder /cld*

cc: All Counsel

Brussels • Century City • Dallas • Denver • Dubai • Hong Kong • London • Los Angeles • Munich • New York
Orange County • Palo Alto • Paris • San Francisco • São Paulo • Singapore • Washington, D.C.