UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY
DATE: 9/5/13

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>APPLE, INC., *et al.*,<br><br>Defendants. | Civil Action No. 1:12-CV-2826<br><br>**PLAINTIFF UNITED STATES'**<br>**FINAL JUDGMENT**<br><br>and<br><br>**PLAINTIFF STATES'**<br>**ORDER ENTERING**<br>**PERMANENT INJUNCTION** |
| THE STATE OF TEXAS, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>PENGUIN GROUP (USA) INC., *et al.*,<br><br>Defendants. | Civil Action No. 1:12-CV-3394[1] |

DENISE COTE,
UNITED STATES DISTRICT JUDGE

### I. DEFINITIONS

As used in this Final Judgment and Order Entering Permanent Injunction:

A.  "Agency Agreement" means an agreement between an E-book Publisher and an

E-book Retailer under which the Retailer acts as an agent of the Publisher and is paid a

---

[1] Pursuant to the agreement of the parties and Court order, the proceedings in *Texas et al. v. Penguin Group (USA) Inc. et al.*, Civ. A. No. 1:12-CV-3394, have been bifurcated.  Issues related to non-injunctive relief, including damages and civil penalties, will be addressed in subsequent proceedings.

commission (or a portion of the Retail Price) in connection with the sale of one or more of the Publisher's E-books.

  B. "Apple" means Apple, Inc.

  C. "E-book" means an electronically formatted book designed to be read on a computer, a handheld device, or other electronic devices capable of visually displaying E-books.

  D. "E-book App" means a software application sold or distributed through Apple's "App Store" relating to the reading, browsing, purchase, sale, recommendation, selection, or cataloging of any book or E-book.

  E. "E-book Publisher" means any Person that, by virtue of a contract or other relationship with an E-book's author or other rights holder, owns or controls the necessary copyright or other authority (or asserts such ownership or control) over any E-book sufficient to distribute the E-book within the United States to E-book Retailers and to permit such E-book Retailers to sell the E-book to consumers in the United States. Publisher Defendants are E-book Publishers. For purposes of this Final Judgment, E-book Retailers are not E-book Publishers.

  F. "E-book Retailer" means any Person that lawfully sells (or seeks to lawfully sell) E-books to consumers in the United States, or through which a Publisher Defendant, under an Agency Agreement, sells E-books to consumers. Apple is an E-book Retailer. For purposes of this Final Judgment, Publisher Defendants and all other Persons whose primary business is book publishing are not E-book Retailers.

  G. "Effective Date" means the date, under Section VIII.A of this Final Judgment, on which this Final Judgment takes effect.

  H.  "External Compliance Monitor" means the person appointed by the Court to perform the duties described in Section VI of this Final Judgment.

  I.  "Final Judgment" means this document: the Final Judgment in *United States v. Apple, Inc., et al.*, Civil Action No. 1:12-CV-2826, and the Order Entering Permanent Injunction in *The State of Texas, et al. v. Penguin Group (USA) Inc., et al.*, Civil Action No. 1:12-CV-3394.

  J.  "Hachette" means Hachette Book Group, Inc.

  K.  "HarperCollins" means HarperCollins Publishers L.L.C.

  L.  "Macmillan" means Holtzbrinck Publishers, LLC d/b/a Macmillan and Verlagsgruppe Georg von Holtzbrinck GmbH.

  M.  "Penguin" means Penguin Group (USA), Inc., The Penguin Group, a division of U.K. corporation Pearson plc, The Penguin Publishing Company Ltd, Dorling Kindersley Holdings Limited, and Penguin Random House, a joint venture by and between Pearson plc and Bertelsmann SE & Co. KGaA, and any similar joint venture between Penguin and Random House Inc.

  N.  "Person" means any natural person, corporation, company, partnership, joint venture, firm, association, proprietorship, agency, board, authority, commission, office, or other business or legal entity, whether private or governmental.

  O.  "Plaintiff States" means the States and Commonwealths of Alabama, Alaska, Arizona, Arkansas, Colorado, Connecticut, Delaware, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Missouri, Nebraska, New Mexico, New York, North Dakota, Ohio, Pennsylvania, Puerto Rico, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, West Virginia, and Wisconsin and the District of Columbia.

  P. "Publisher Defendants" means Hachette, HarperCollins, Macmillan, Penguin, and Simon & Schuster.

  Q. "Representative Plaintiff States" means, as of the Effective Date of this Final Judgment, the States of Texas and Connecticut.   The Plaintiff States may designate a different Plaintiff State as a substitute Representative Plaintiff State at any time by communicating the change in writing to Apple and the United States.

  R. "Retail Price" means the price at which an E-book Retailer or, under an Agency Agreement, an E-book Publisher sells an E-book to a consumer.

  S. "Retail Price MFN" means a term in an agreement between an E-book Publisher and an E-book Retailer under which the Retail Price at which an E-book Retailer or, under an Agency Agreement, an E-book Publisher sells one or more E-books to consumers depends in any way on the Retail Price, or discounts from the Retail Price, at which any other E-book Retailer or the E-book Publisher, under an Agency Agreement, through any other E-book Retailer sells the same E-book(s) to consumers.

  T. "Simon & Schuster" means Simon & Schuster, Inc.

## II.  APPLICABILITY

This Final Judgment applies to Apple and each of its affiliates, subsidiaries, officers, directors, agents, employees, successors, and assigns, to any successor to any substantial part of the business, and to all other Persons acting in concert with Apple and having actual notice of this Final Judgment.

## III. PROHIBITED CONDUCT

A. Apple shall not enforce any Retail Price MFN in any agreement with an E-book Publisher relating to the sale of E-books.

B. Apple shall not enter into any agreement with an E-book Publisher relating to the sale of E-books that contains a Retail Price MFN.

C. Apple shall not enter into or maintain any agreement with a Publisher Defendant that restricts, limits, or impedes Apple's ability to set, alter, or reduce the Retail Price of any E-book or to offer price discounts or any other form of promotions to encourage consumers to purchase one or more E-books. The prohibitions in this Section III.C shall expire, for agreements between Apple and a Publisher Defendant, on the following dates:

　　1. For agreements between Apple and Hachette: 24 months after the Effective Date of this Final Judgment;

　　2. For agreements between Apple and Harper Collins: 30 months after the Effective Date of this Final Judgment;

　　3. For agreements between Apple and Simon & Schuster: 36 months after the Effective Date of this Final Judgment;

　　4. For agreements between Apple and Penguin: 42 months after the Effective Date of this Final Judgment; and

　　5. For agreements between Apple and Macmillan: 48 months after the Effective Date of this Final Judgment.

D. Apple shall not (1) retaliate against or punish, (2) threaten to retaliate against or punish, or (3) urge another Person to retaliate against or punish any E-book Publisher for refusing

to enter into an agreement with Apple relating to the sale of E-books or for the terms on which the E-book Publisher sells E-books through any other E-book Retailer. This provision does not require Apple to enter into an agreement with an E-book Publisher or E-book Retailer, or seek to prevent Apple from negotiating terms of agreement in good faith.

    E.    Apple shall not communicate, directly or indirectly, to any E-book Publisher (1) the status of its contractual negotiations with any other E-book Publisher; (2) the actual or proposed contractual terms or business plans or arrangements it has with any other E-book Publisher, or (3) any non-public competitively sensitive information it learns from any other E-book Publisher, including, but not limited to:

    a.    the E-book Publisher's business plans or strategies;

    b.    the E-book Publisher's past, present, or future pricing strategies or wholesale prices for E-books or audio books;

    c,    the E-book Publisher's future retail prices for E-books or audio books;

    d.    any terms in the E-book Publisher's agreement(s) with any retailer of books licensed or sold in any format; or

    e.    any terms in the E-book Publisher's agreement(s) with any author.

Nothing in this Section III.E prohibits Apple from developing and offering to E-book Publishers a standard form contract containing the terms on which Apple would agree to sell the E-book Publishers' E-books, and so informing an E-book Publisher that it is a standard from; nor shall this prohibit Apple from publicly communicating the retail price of E-books available on the iBookstore.

F.     Apple shall not enter into or maintain any agreement with an E-book Publisher where such agreement likely will increase, fix, or set the price at which other E-book Retailers can acquire or sell E-books.

Nothing in this Section III.F prohibits Apple from entering into or maintaining an agreement with an E-book Publisher merely specifying prices that Apple must pay for the E-book Publisher's E-books.

G.     Apple shall not enter into or maintain any agreement with any other E-book Retailer where such agreement likely will increase, fix, stabilize, or set the prices or establish other terms on which Apple or the other E-book Retailer sells E-books to consumers.

## IV. REQUIRED CONDUCT

A.     On or before the Effective Date of this Final Judgment, Apple shall either modify any Agency Agreement with a Publisher Defendant to comply with Section III.C of this Final Judgment or terminate any Agency Agreement with a Publisher Defendant that does not comply with Section III.C of this Final Judgment.

B.     Apple shall apply the same terms and conditions to the sale or distribution of an E-book App through Apple's App Store as Apple applies to all other apps sold or distributed through Apple's App Store.

This provision does not prevent Apple from introducing new categories of apps with different terms and conditions or from changing its App Store terms and conditions and applying them in a reasonable manner so long as Apple does not discriminate against E-book Apps.

C.     Apple shall furnish to the United States and the Representative Plaintiff States, within ten business days of receiving such information, any information that reasonably suggests

to Apple that any E-book Publisher has impermissibly coordinated or is impermissibly coordinating the terms on which it supplies or offers its E-books to Apple or to any other Person.

## V. ANTITRUST COMPLIANCE

To ensure its compliance with this Final Judgment and the antitrust laws, Apple shall perform the activities enumerated below in Sections V.A through V.J of this Final Judgment. Within thirty days after the Effective Date of this Final Judgment, Apple's Audit Committee, or another committee comprised entirely of outside directors (*i.e.*, directors not also employed by Apple), shall designate a person not employed by Apple as of the Effective Date of the Final Judgment to serve as Antitrust Compliance Officer, who shall report to the Audit Committee or equivalent committee of Apple's Board of Directors and shall be responsible, on a full-time basis until the expiration of this Final Judgment, for supervising Apple's antitrust compliance efforts and performance of the following:

    A.    furnishing a copy of this Final Judgment, within thirty days of its Effective Date, to each member of Apple's Board of Directors, to its Chief Executive Officer, to each of its Senior Vice-Presidents, and to each of Apple's employees engaged, in whole or in part, in activities relating to Apple's iBookstore;

    B.    furnishing a copy of this Final Judgment in a timely manner to each officer, director, or employee who succeeds to any position identified in Section V.A of this Final Judgment;

    C.    ensuring that each person identified in Sections V.A and V.B of this Final Judgment, and appropriate employees in Apple iTunes and App Store businesses, receives comprehensive and effective training annually on the meaning and requirements of this Final

8

Judgment and the antitrust laws, such training to be delivered by an attorney with relevant experience in the field of antitrust law;

  D. obtaining, within sixty days after the Effective Date of this Final Judgment and on each anniversary of the Effective Date of this Final Judgment, from each person identified in Sections V.A and V.B of this Final Judgment, and thereafter maintaining, a certification that each such person (a) has read, understands, and agrees to abide by the terms of this Final Judgment; and (b) is not aware of any violation of this Final Judgment or the antitrust laws or has reported any potential violation to the Antitrust Compliance Officer;

  E. conducting, in consultation with the External Compliance Monitor, an annual antitrust compliance audit covering each person identified in Sections V.A and V.B of this Final Judgment, and maintaining all records pertaining to such audits;

  F. communicating annually to Apple's employees that they may disclose to the Antitrust Compliance Officer, without reprisal, information concerning any potential violation of this Final Judgment or the antitrust laws;

  G. taking appropriate action, within three business days of discovering or receiving credible information concerning an actual or potential violation of this Final Judgment, to terminate or modify Apple's conduct to assure compliance with this Final Judgment; and, within seven days of discovering or receiving such information, providing to the United States and the Representative Plaintiff States a description of the actual or potential violation of this Final Judgment and the corrective actions taken;

  H. furnishing to the United States and the Representative Plaintiff States on a quarterly basis electronic copies of any non-privileged communications with any Person containing

9

allegations of Apple's noncompliance with any provisions of this Final Judgment or violations of the antitrust laws;

    I.    maintaining, and furnishing to the United States, the Representative Plaintiff States, and the External Compliance Monitor on a quarterly basis, a log of all oral and written communications, excluding privileged or public communications, between or among any person identified in Sections V.A or V.B of this Final Judgment and

    1.    any person employed by or associated with another E-book Retailer, relating, in whole or in part, to E-books or devices for reading E-books, but excluding any communications primarily involving the App Store; or

    2.    employees or representatives of two or more E-book Publishers, relating, in whole or in part, to E-books, devices for reading E-books, or E-book Apps,

including, but not limited to, an identification (by name, employer, and job title) of the author and recipients of and all participants in the communication, the date, time, and duration of the communication, the medium of the communication, and a description of the subject matter of the communication; and

    J.    providing to the United States and the Representative Plaintiff States annually, on or before the anniversary of the Effective Date of this Final Judgment, a written statement as to the fact and manner of Apple's compliance with Sections III, IV, and V of this Final Judgment.

## VI.   EXTERNAL COMPLIANCE MONITOR

    A.    The Court shall appoint an External Compliance Monitor to undertake the responsibilities and duties described in this Section VI.  The appointment shall be for a period of two years, provided that the appointment does not expire before Apple has completed two years of

the annual training required by Section V.C, and provided that the Court may *sua sponte* or on application of the United States or any Plaintiff State extend the appointment by one or more one-year periods. Promptly upon entry of this Final Judgment, but before its Effective Date, the United States and the Representative Plaintiff States will meet and confer with Apple to determine if the parties can agree on a recommended External Compliance Monitor. Apple may at any time suggest to the United States and the Representative Plaintiff States candidates for the position of External Compliance Monitor. On or before the Effective Date of this Final Judgment, the United States and the Representative Plaintiff States jointly shall recommend to the Court one or more persons to serve as External Compliance Monitor. Apple will have five days to object to the Court by letter to the recommended appointment. Apple is responsible for the reasonable expenses incurred by candidates for appointment as External Compliance Monitor in connection with any travel undertaken for interviews of the candidates by the United States or the Court.

        B.     The External Compliance Monitor shall have the power and authority to review and evaluate Apple's existing internal antitrust compliance policies and procedures and the training program required by Section V.C of this Final Judgment, and to recommend to Apple changes to address any perceived deficiencies in those policies, procedures, and training.

        C.     The External Compliance Monitor shall conduct a review to assess whether Apple's internal antitrust compliance policies and procedures, as they exist 90 days after his or her appointment, are reasonably designed to detect and prevent violations of the antitrust laws. The External Compliance Monitor shall also conduct a review to assess whether Apple's training program, required by Section V.C of this Final Judgment, as it exists 90 days after his or her appointment, is sufficiently comprehensive and effective. Within 180 days of his or her

appointment by the Court, and at six month intervals thereafter throughout the appointment, the External Compliance Monitor shall provide a written report to Apple, the United States, the Representative Plaintiff States, and the Court setting forth his or her assessment of Apple's internal antitrust compliance policies, procedures, and training and, if appropriate, making recommendations reasonably designed to improve Apple's policies, procedures, and training for ensuring antitrust compliance.

   D. The External Compliance Monitor may, at any time prior to the expiration of this Final Judgment, provide one or more additional written reports to Apple, the United States, the Representative Plaintiff States, and the Court setting forth additional recommendations reasonably designed to improve Apple's policies, procedures, and training for ensuring antitrust compliance. The External Compliance Monitor may provide such additional reports on his or her own initiative or at the request of the Court, the United States, or the Representative Plaintiff States.

   E. If Apple objects to any recommendation, it shall propose in writing to the External Compliance Monitor, the United States, and the Representative Plaintiff States, within 30 days after it receives the report, an alternative policy, procedure, or system designed to achieve the same objective or purpose. If Apple and the External Compliance Monitor fail, after good faith discussions, to agree on an alternative policy or procedure within 30 days of Apple's objections to a recommendation, Apple shall, after consultation with the United States and the Representative Plaintiff States, apply to this Court within 14 days for relief.

   F. If the External Compliance Monitor in the exercise of his or her responsibilities under this Section VI discovers or receives evidence that suggests to the External Compliance Monitor that Apple is violating or has violated this Final Judgment or the antitrust laws, the

12

External Compliance Monitor shall promptly provide that information to the United States and the Representative Plaintiff States.  The External Compliance Monitor shall take no further action, including seeking information from Apple pursuant to Section VI.G of this Final Judgment, to investigate any such potential violation of the Final Judgment or the antitrust laws.

G. Apple shall assist the External Compliance Monitor in performance of the responsibilities set forth in this Section VI.  Apple shall take no action to interfere with or to impede the External Compliance Monitor's accomplishment of its responsibilities.  The External Compliance Monitor may, in connection with the exercise of his or her responsibilities under this Section VI, and on reasonable notice to Apple:

1. interview, either informally or on the record, any Apple personnel, who may have counsel present; any such interview to be subject to the reasonable convenience of such personnel and without restraint or interference by Apple;

2. inspect and copy any documents in the possession, custody, or control of Apple; and

3. require Apple to provide compilations of documents, data, or other information, and to submit reports to the External Compliance Monitor containing such material, in such form as the External Compliance Monitor may reasonably direct.

H. Any objections by Apple to actions by the External Compliance Monitor in fulfillment of the External Compliance Monitor's responsibilities must be conveyed in writing to the United States and the Representative Plaintiff States within ten calendar days after the action giving rise to the objection.

      I.      The External Compliance Monitor may hire, subject to the approval of the United States, after consultation with the Representative Plaintiff States, any persons reasonably necessary to fulfilling the External Compliance Monitor's responsibilities.  The External Compliance Monitor and any persons hired to assist the External Compliance Monitor shall serve at the cost and expense of Apple, on such terms and conditions as the United States, after consultation with the Representative Plaintiff States, approves, including, but not limited to, the execution of customary confidentiality agreements.  The compensation of the External Compliance Monitor and any persons hired to assist the External Compliance Monitor shall be on reasonable and customary terms commensurate with the individuals' experience and responsibilities and consistent with reasonable expense guidelines.  The External Compliance Monitor shall submit a quarterly expense report to the United States and the Representative Plaintiff States.

      J.      If the United States, after consultation with the Representative Plaintiff States, or Apple determines that the External Compliance Monitor has ceased to act or failed to act diligently or in a cost-effective manner, it may recommend that the Court appoint a substitute External Compliance Monitor.

## VII.  PLAINTIFFS' ACCESS

      A.      For purposes of determining or securing compliance with this Final Judgment, or of determining whether the Final Judgment should be modified or vacated, and subject to any legally recognized privilege, from time to time duly authorized representatives of the United States Department of Justice Antitrust Division or the Representative Plaintiff States, including, but not limited to, consultants and other persons retained by the United States or the Representative

Plaintiff States, shall, upon written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division or a joint written request by authorized representatives of each Representative Plaintiff State, and on reasonable notice to Apple, be permitted:

    1. access during regular business hours to inspect and copy, or at the option of the United States or the Representative Plaintiff States, to require Apple to provide to the United States and the Representative Plaintiff States hard copy or electronic copies of all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of Apple, relating to any matters contained in this Final Judgment; and

    2. to interview, either informally or on the record, Apple's officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by Apple.

    B. Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division or a joint written request by authorized representatives of each Representative Plaintiff State, Apple shall submit written reports or respond to written interrogatories, under oath, relating to any of the matters contained in this Final Judgment. Written reports authorized under this paragraph may require Apple to conduct, at its cost, an independent audit or analysis relating to any of the matters contained in this Final Judgment.

C.  No information or documents obtained by the means provided in this Section shall be divulged by the United States or any Plaintiff State to any person other than an authorized representative of the executive branch of the United States, the Attorney General's Office of any Plaintiff State, or the External Compliance Monitor, except in the course of legal proceedings to which the United States or the relevant Plaintiff State(s) is a party (including, but not limited to, grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.  If at the time information or documents are furnished by Apple to the United States and the Representative Plaintiff States, Apple represents and identifies in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and Apple marks each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the United States and the Representative Plaintiff States shall give Apple ten calendar days notice prior to divulging such material in any civil or administrative proceeding.

## VIII.  ADDITIONAL PROVISIONS

A.  This Final Judgment shall take effect 30 days after the date on which it is entered. If the Final Judgment is stayed, all time periods in the Final Judgment will be tolled during the stay.

B.  This Court retains jurisdiction to enable the United States, the Representative Plaintiff States, any other Plaintiff State (after consultation with the United States and the Representative Plaintiff States), or Apple to apply to this Court at any time for, or to act *sua sponte* to issue, further orders and directions as may be necessary or appropriate to carry out or construe

this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

    C.    This Final Judgment shall expire by its own terms and without further action of this Court five years after its Effective Date, provided that, at any time prior to its expiration, the Court may *sua sponte* or on the application of the United States or any Plaintiff State extend the Final Judgment by one or more one-year periods, if necessary to ensure effective relief.

**SO ORDERED**:

                                                    _____
                                                    **DENISE COTE**
                                                    **UNITED STATES DISTRICT JUDGE**

Dated: September 5, 2013