**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                             :

UNITED STATES OF AMERICA,         :

         Plaintiff,        :

      v.         :    12 Civ. 2826 (DLC)

APPLE INC.,         :

         Defendant.        :

                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                      :

THE STATE OF TEXAS,         :
THE STATE OF CONNECTICUT, *et al.*,   :

         Plaintiffs,        :

      v.         :    12 Civ. 3394 (DLC)

PENGUIN GROUP (USA) INC., *et al.*,   :

         Defendants.        :

                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANT APPLE INC.'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION BY ORDER TO SHOW CAUSE**
**FOR A STAY OF THE INJUNCTION PENDING APPEAL**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ...................................................................................................................... 2

LEGAL STANDARD ............................................................................................................... 6

ARGUMENT ........................................................................................................................... 8

I.      Apple Has a Substantial Possibility of Success on Appeal from the Court's
        Injunction and Modifications ...................................................................................... 8

        A.      This Court Lacked Jurisdiction to Modify the Injunction During Apple's
                Appeal ............................................................................................................... 8

        B.      The Injunction Is Not Authorized by Federal Rule of Civil Procedure 53 and
                Violates the Constitutional Separation of Powers. ........................................... 9

        C.      The Injunction Deprives Apple of Its Right to a "Disinterested Prosecutor" ........... 14

II.     Apple Will Suffer Irreparable Harm Absent a Stay ..................................................... 15

        A.      The Injunction Irreparably Interferes with Apple's Business Operations ................. 16

        B.      The Risk of Disclosing Privileged or Confidential Information Is an
                Irreparable Injury ............................................................................................. 19

        C.      The Significant and Unrecoverable Costs Being Imposed on Apple Warrant a
                Stay ................................................................................................................... 19

III.    A Stay of the Injunction Will Not Harm Plaintiffs or the Public Interest ......................... 20

CONCLUSION ......................................................................................................................... 21

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## Cases

*ACORN v. United States*,
   618 F.3d 125 (2d Cir. 2010) ........................................................... 6

*Barclays Capital Inc. v. Theflyonthewall.com, Inc.*,
   650 F.3d 876 (2d Cir. 2011) ........................................................... 6

*Benjamin v. Fraser*,
   343 F.3d 35 (2d Cir. 2003) ........................................................... 11, 12

*Berger v. United States*,
   295 U.S. 78 (1935) ........................................................... 14

*Bordelon v. Chi. Sch. Reform Bd. of Trs.*,
   8 F. Supp. 2d 779 (N.D. Ill. 1998) ........................................................... 18

*Brenntag Int'l Chems., Inc. v. Bank of India*,
   175 F.3d 245 (2d Cir. 1999) ........................................................... 7, 19

*Buckley v. Valeo*,
   424 U.S. 1 (1976) ........................................................... 13

*City of N.Y. v. Mickalis Pawn Shop, LLC*,
   645 F.3d 114 (2d Cir. 2011) ........................................................... 12

*Cobell v. Norton*,
   334 F.3d 1128 (D.C. Cir. 2003) ........................................................... 1, 9, 10, 12, 13, 14

*Freedom Holdings, Inc. v. Spitzer*,
   408 F.3d 112 (2d Cir. 2005) ........................................................... 18

*Griggs v. Provident Consumer Disc. Co.*,
   459 U.S. 56 (1982) ........................................................... 8

*Grutter v. Bollinger*,
   247 F.3d 631 (6th Cir. 2001) ........................................................... 7

*Hedges v. Obama*,
   724 F.3d 170 (2d Cir. 2013) ........................................................... 6

*Hilton v. Braunskill*,
   481 U.S. 770 (1987) ........................................................... 7

# TABLE OF AUTHORITIES *(cont.)*

**Page(s)**

*Ideal Toy Corp. v. Sayco Doll Corp.*,
    302 F.2d 623 (2d Cir. 1962) ............................................................. 9

*In re Adelphia Commc'ns Corp.*,
    361 B.R. 337 (S.D.N.Y. 2007) .......................................................... 16

*In re Peterson*,
    253 U.S. 300 (1920) ........................................................................ 11

*In re Prof'ls Direct Ins. Co.*,
    578 F.3d 432 (6th Cir. 2009) ........................................................... 19

*In re von Bulow*,
    828 F.2d 94 (2d Cir. 1987) .............................................................. 19

*Int'l Ass'n of Machinists v. E. Air Lines, Inc.*,
    847 F.2d 1014 (2d Cir. 1988) .......................................................... 8, 9

*Juan F. v. Weicker*,
    37 F.3d 874 (2d Cir. 1994) .............................................................. 12

*Kidder, Peabody & Co. v. Maxus Energy Corp.*,
    925 F.2d 556 (2d Cir. 1991) ............................................................. 9

*La Buy v. Howes Leather Co.*,
    352 U.S. 249 (1957) ........................................................................ 11

*LaRouche v. Kezer*,
    20 F.3d 68 (2d Cir. 1994) ................................................................. 7

*Missouri v. Jenkins*,
    515 U.S. 70 (1995) .......................................................................... 13

*Mitchell v. Cuomo*,
    748 F.2d 804 (2d Cir. 1984) ............................................................ 18

*Morrison v. Olson*,
    487 U.S. 654 (1988) ........................................................................ 13

*Muskrat v. United States*,
    219 U.S. 346 (1911) ........................................................................ 13

*Nken v. Holder*,
    556 U.S. 418 (2009) ........................................................................ 6, 7

*People ex rel. Clancy v. Superior Court*,
    39 Cal. 3d 740 (1986) ..................................................................... 14

## <u>TABLE OF AUTHORITIES</u> *(cont.)*

**Page(s)**

*Philip Morris USA, Inc. v. Scott*,
    131 S. Ct. 1 (2010) ................................................................................................ 19

*Reed v. Rhodes*,
    691 F.2d 266 (6th Cir. 1982) ............................................................................... 12

*Register.com, Inc. v. Verio, Inc.*,
    356 F.3d 393 (2d Cir. 2004) ................................................................................ 18

*RoDa Drilling Co. v. Siegal*,
    552 F.3d 1203 (10th Cir. 2009) ........................................................................... 17

*Salinger v. Colting*,
    607 F.3d 68 (2d Cir. 2010) .................................................................................. 18

*Thapa v. Gonzales*,
    460 F.3d 323 (2d Cir. 2006) .................................................................................. 7

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*,
    60 F.3d 27 (2d Cir. 1995) .................................................................................... 18

*United States v. AU Optronics Corp.*,
    No. 3:09-00110 (N.D. Cal. Oct. 2, 2012) ............................................................ 11

*United States v. Grinnell Corp.*,
    86 S. Ct. 231 (1965) .............................................................................................. 6

*United States v. ITT Cont'l Baking Co.*,
    420 U.S. 223 (1975) ............................................................................................ 12

*United States v. Nat'l Lead Co.*,
    332 U.S. 319 (1947) .............................................................................................. 6

*United States v. Philip Morris USA Inc.*,
    566 F.3d 1095 (D.C. Cir. 2009) .......................................................................... 12

*United States v. Visa U.S.A., Inc.*,
    No. 98-cv-7076 (S.D.N.Y. Feb. 7, 2002) .............................................................. 6

*Wisdom Imp. Sales Co. v. Labatt Brewing Co.*,
    339 F.3d 101 (2d Cir. 2003) ................................................................................ 17

*Young v. U.S. ex rel. Vuitton et Fils S.A.*,
    481 U.S. 787 (1987) ...................................................................................... 13, 14

# **TABLE OF AUTHORITIES** *(cont.)*

**Page(s)**

## **Statutes**

28 U.S.C. § 455 ................................................................................ 15

## **Other Authorities**

11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 2948
 (1973) .......................................................................................... 18

Vikramaditya Khanna & Timothy L. Dickinson, *The Corporate Monitor: The New
 Corporate Czar?*, 105 Mich. L. Rev. 1713 (2007) .................................. 12

## **Rules**

Fed. R. Civ. P. 53 ................................................................. 5, 8, 9, 10, 15

Fed. R. Civ. P. 53(a) ......................................................................... 11

Fed. R. Civ. P. 53(a)(1)(C) ........................................................... 10, 11

Fed. R. Civ. P. 53(a)(2) ...................................................................... 15

Fed. R. Civ. P. 53(b)(3) ...................................................................... 15

Fed. R. Civ. P. 62 .............................................................................. 1

Fed. R. Civ. P. 62(c) .......................................................................... 9

## **Constitution**

U.S. Const. art. III, § 1 ................................................................. 13, 14

Defendant Apple Inc. respectfully moves this Court pursuant to Federal Rule of Civil Procedure 62 for a stay of Section VI of the permanent injunction.

## PRELIMINARY STATEMENT

The "external compliance monitor" appointed by the Court, Michael Bromwich, is conducting a roving investigation that is interfering with Apple's business operations, risking the public disclosure of privileged and confidential information, and imposing substantial and rapidly escalating costs on Apple that it will never be able to recover if it prevails on its pending appeal of this Court's Final Judgment and the injunction.

The injunction, especially as it is being interpreted and implemented by Mr. Bromwich as the Court's agent, is flatly unconstitutional, and will be reversed on appeal. Neither the Federal Rules of Civil Procedure nor Article III of the Constitution authorizes the appointment of such a monitor. Indeed, the Department of Justice itself has successfully argued in another case that courts may not grant monitors broad investigatory powers like those exercised by Mr. Bromwich. *See Cobell v. Norton*, 334 F.3d 1128, 1140 (D.C. Cir. 2003). The significant interference with Apple's business operations, and the unrecoverable costs being imposed on Apple, constitute clear irreparable injury. Even if Apple prevails on appeal, the two-year monitorship will be (at least nearly) completed by that point, and all the very real costs imposed on Apple and the harm and disruption to its business from Mr. Bromwich's invasive investigation will have inflicted damage that neither Apple nor the Court will be able to undo. The likelihood of success by Apple on appeal, combined with the irreparable injury Apple is suffering from Mr. Bromwich's unwarranted inquisition of the company's high-level executives and board of directors, warrant a stay of the monitor provision of the injunction while Apple's appeal is heard by the Second Circuit.

## BACKGROUND

The Court stated that it was designing the injunction entered on September 6, 2013 "to rest as lightly as possible on the way Apple runs its business," and did not "charge[ the monitor] with assessing Apple's compliance generally with the terms of the final judgment."  Dkt. 371 (Aug. 27, 2013 Hr'g Tr.) at 8-9, 17.  While plaintiffs had asked for a monitor with expansive powers to review Apple's antitrust compliance for a period of ten years (*see* Dkt. 329 Ex.1 at 10, 16), the Court provided for a much more limited two-year monitorship.  The Court authorized a monitor solely to review and report on Apple's antitrust compliance and training programs as they exist 90 days after the monitor's appointment.  Dkt. 374 § VI.  The monitor was also directed to make a report 180 days after appointment, which would be provided to Apple, the United States, the plaintiff states, and the Court.  *Id*. § VI.C.  To facilitate these reviews, the injunction authorized the appointed monitor to interview Apple personnel "who may have counsel present" "subject to the[ir] reasonable convenience."  *Id*. § VI.G.1.  While the injunction requires Apple to pay all fees associated with carrying out the monitorship, the fees must be "reasonable and customary."  *Id.* § VI.I.

On October 3, 2013, Apple noticed its appeals from the judgment and the injunction in the DOJ and states' actions.  Dkt. 379 at 1.  Apple did not seek an immediate stay of the injunction because the company intended to revise and enhance its antitrust compliance and training programs irrespective of any court order to do so.  On October 16, 2013, in a brief order that did not cite any authority for the appointment, the Court appointed Michael Bromwich (who

has no antitrust experience) as the external monitor and Barry Nigro of Fried Frank (who does) to assist him.  Dkt. 384.[1]

Immediately upon appointment, Mr. Bromwich began pushing far beyond the boundaries of his ostensibly narrow mandate, launching a broad and amorphous inquisition, at Apple's expense, that bears little relation to the underlying issues in this litigation.  The costs of his monitorship are piling up, and Mr. Bromwich's intrusion on Apple's business continues unabated—all while an appeal of the injunction is pending.

For example, although under the injunction Apple had 90 days to revise its programs, Mr. Bromwich pressed for immediate interviews with the very top executives at the company, such as CEO Tim Cook, and including others who have no involvement whatsoever in the day-to-day operation of the business unit at issue—such as lead designer Jony Ive and board member Al Gore.  Boutrous Decl. Ex. B at 5, Ex. I at 1.  Apple explained to Mr. Bromwich that his request "to begin interviewing Apple's entire board and its executive team, as well as additional senior executives on November 18 is premature, not authorized by the Final Judgment, and would not only be disruptive to Apple's business operations but also directly contrary to Judge Cote's intent."  *Id.* Ex. A at 2; *see also id.* Ex. A at 3 ("It makes no sense and would be extremely disruptive, to schedule those interviews before Apple has completed its internal assessment and developed its new antitrust training program").

Nevertheless, in an effort to adhere to the Court's injunction, Apple sought to accommodate Mr. Bromwich by arranging interviews with several high-level executives who were responsible for the compliance and training measures.  *Id.* Exs. C, F.  In response to

---

[1]  Apple objected to Mr. Bromwich's appointment due to his lack of antitrust experience, and suggested the Court simply appoint Mr. Nigro alone.  Boutrous Decl. ¶ 3.

Apple's offer to provide Mr. Bromwich with significant access to the individuals most relevant to his premature inquiry—which was not even authorized by the Final Judgment—Mr. Bromwich accused the company of not taking "its obligations and [Mr. Bromwich's] responsibilities under the Final Judgment very seriously." *Id.* Ex. B at 2.  And when faced with the fact that some of the executives and directors he wished to interview could not upend their schedules to accommodate his travel preferences, Mr. Bromwich demanded that Apple "[b]e prepared to support any representations concerning [the] availability [of those individuals] with *detailed copies of their schedules for [the] entire week*" in which he planned to conduct interviews. *Id.* (emphasis added).

Apple offered to arrange interviews on November 18 with the Chief Compliance Officer and Head of Global Security (Tom Moyer), and the Associate General Counsel and Legal Liaison to the Audit and Finance Committee (Gene Levoff), and promised more interviews in the coming weeks.  *See id.* Ex. F at 1.  While Mr. Bromwich accepted this offer (*id.*), he pushed for more interviews.  When he learned that Apple General Counsel Bruce Sewell was attending the *Apple v. Samsung* trial during the week of November 18, Mr. Bromwich proposed to "stop by the courthouse and meet him."  *Id.* Ex. H.  And he again sought to interview the new Antitrust Compliance Officer, even though the day of the interviews was her first day on the job.  *Id.*[2]

Not satisfied with the bevy of interviews Apple agreed to arrange even before his review of the compliance and training programs is scheduled to commence, Mr. Bromwich continued his demand for more interviews and access, contending this investigatory activity was authorized

---

[2]  Pursuant to the Final Judgment, Apple has hired an Antitrust Compliance Officer who is working with the company to enhance and expand antitrust compliance and training.  *See* Dkt. 374 § V; Levoff Decl. ¶ 3.  Apple does not seek a stay of the provision of the injunction that requires and sets forth the duties of its Antitrust Compliance Officer.

by the Court in his *ex parte* pre-appointment interview.   *Id.* Ex. K.   Mr. Bromwich even contacted Apple's Board of Directors directly in an explicit effort to develop a relationship "that is *unfiltered through outside counsel.*"   *Id.* Ex. J at 5 (emphasis added).

Mr. Bromwich's investigation has already resulted in substantial, and unrecoverable, cost to Apple.  He proposed an hourly rate for himself of $1,100 and an hourly rate of $1,025 for Mr. Nigro of Fried Frank (Boutrous Decl. Ex. O at 2-3), plus a 15% "administrative fee"—something never before seen by Apple (*id.* Ex. O at 2, Ex. N at 2-3).  Emphasizing his goal of "generat[ing] profits," Mr. Bromwich defended his approach and refused Apple's request that he provide a budget and work plan or adopt a fee structure comparable to many major law firms working on Apple matters.  *Id.* Ex. N at 3-4.  In his first two weeks of work, before any documents were exchanged, interviews scheduled, or meaningful travel conducted, Mr. Bromwich's invoice totaled $138,432.40.  *Id.* Ex. O at 3.

While no party filed a request seeking amendment of the monitor provisions, in the midst of Apple's attempts to resolve its disputes with Mr. Bromwich and the Department of Justice concerning the nature, scope, timing and cost of his activities, this Court abruptly proposed several amendments to the injunction, which would give the monitor even *greater* powers. Invoking Rule 53 of the Federal Rules of Civil Procedure, the Court's proposed amendments would allow the monitor to interview Apple personnel *ex parte* (Dkt. 410 ¶ 3), and deliver *ex parte* oral briefings every month to the Court (*id.* ¶ 4).  The amendments also would require the monitor to "make reasonable efforts to preserve all materials materially related to his duties," and would allow the Court to "order such materials publicly filed when in the interest of justice." *Id.* ¶ 5.  And the amendments ordered the monitor "to proceed with all reasonable diligence."  *Id.* ¶ 1.  This Court issued an order sustaining only one of Apple's objections (Dkt. 411) to these

proposals—ruling that "the Court will not receive *ex parte* briefings or reports from the Monitor about his work" (Dkt. 413).[3]

Despite Apple's repeated objections, Mr. Bromwich has pushed forward, and continues to press for interviews with and *ex parte* access to Apple Board members and executives.  *See, e.g.*, Boutrous Decl. ¶ 5.  These unauthorized and unconstitutional investigatory efforts are extraordinarily intrusive, disruptive, and costly, and are causing irreparable harm to Apple.

## LEGAL STANDARD

This Court has "judicial discretion" (*Nken v. Holder*, 556 U.S. 418, 433 (2009)) to grant Apple a stay of the permanent injunction.  *See, e.g.*, *Hedges v. Obama*, 724 F.3d 170, 188 (2d Cir. 2013) (granting stay of permanent injunction pending appeal); *Barclays Capital Inc. v. Theflyonthewall.com, Inc.*, 650 F.3d 876, 890 (2d Cir. 2011) (same); *ACORN v. United States*, 618 F.3d 125, 133 (2d Cir. 2010) (same); *United States v. Visa U.S.A., Inc.*, No. 98-cv-7076, Dkt. 247 at 1 (S.D.N.Y. Feb. 7, 2002) (same in antitrust case); *see also*, *e.g.*, *United States v. Grinnell Corp.*, 86 S. Ct. 231 (1965) (Fortas, J., in chambers) (staying judgment in Sherman Act case); *United States v. Nat'l Lead Co.*, 332 U.S. 319, 324 (1947) (noting that stay under the Sherman Act injunction had been granted).

A motion for a stay "is a motion, not to [the court's] inclination, but to its judgment; and its judgment is to be guided by sound legal principles."  *Nken*, 556 U.S. at 434 (quotation marks

---

[3] Apple has fully complied with section VI.H of the injunction in its objections to the monitorship.  *See* Boutrous Decl. Ex. Q.  Apple served a letter on the Department of Justice and plaintiff states on October 31, 2013, outlining its objections to the timing, scope, and financial terms of the monitor's engagement.  *See* Boutrous Decl. Ex. R.  Apple has reiterated these concerns, including in a teleconference on November 4, 2013 (Boutrous Decl. ¶ 4); in its objections filed with the Court on November 27, 2013 (Dkt. 411); in a letter on December 6, 2013 (Boutrous Decl. Ex. Q); and again in a teleconference on December 9, 2013 (Boutrous Decl. ¶ 4).

omitted).   Accordingly, in determining whether to issue a stay pending appeal, this Court examines four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).   The four factors operate as a "sliding scale," where "the necessary level or degree of possibility of success will vary according to the court's assessment of the other stay factors."   *Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006) (internal quotation marks omitted).

In order to warrant a stay, Apple must show only that it has "a substantial possibility, although *less than a likelihood*, of success on appeal."   *LaRouche v. Kezer*, 20 F.3d 68, 72 (2d Cir. 1994) (emphasis added) (internal quotations omitted).   Indeed, where, as here, "the balance of hardships tips decidedly in [Apple's] favor," Apple need only show "some possibility of success."   *Thapa*, 460 F.3d at 335; *see also Grutter v. Bollinger*, 247 F.3d 631, 633 (6th Cir. 2001) (movant need only "show, at a minimum, serious questions going to the merits") (internal quotation marks omitted).

A party establishes irreparable harm where, "but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied."   *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999).   And while "the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest," "[t]hese factors merge when the Government is the opposing party," as in this case.   *Nken*, 556 U.S. at 435.

## ARGUMENT

## I.   APPLE HAS A SUBSTANTIAL POSSIBILITY OF SUCCESS ON APPEAL FROM THE COURT'S INJUNCTION AND MODIFICATIONS

The Court's imposition of an external monitor on Apple wielding inquisitorial powers, who has a financial incentive to engage in the most extensive and time-consuming investigation possible, and who claims authority to interview Apple personnel without counsel present and potentially divulge that information to the public, violates the constitutional separation of powers and Apple's due process right to a disinterested prosecutor.  Neither Rule 53, concerning "special masters," nor any other rule or source of authority permits appointment of such a monitor in the first place.  In addition, the Court lacked jurisdiction to modify the injunction once Apple noticed its appeal.  There is at the very least a substantial possibility that Apple will succeed on appeal of the Court's injunction and orders modifying the injunction.

### A.   This Court Lacked Jurisdiction to Modify the Injunction During Apple's Appeal

The first reason Apple will prevail on appeal is that the Court's amendments materially modified the injunction entered on September 5, 2013.  Because the appeal of the original injunction is currently pending (Dkt. 379 at 1), this Court lacks jurisdiction to further modify the Final Judgment.

The filing of a notice of appeal "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."  *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (per curiam).  Once a party notices an appeal, the district court may take actions "only in aid of the appeal or to correct clerical errors, and may not adjudicate substantial rights directly involved in the appeal."  *Int'l Ass'n of Machinists v. E. Air Lines, Inc.*, 847 F.2d 1014, 1017 (2d Cir. 1988) (internal quotation marks omitted).

The Court's limited jurisdiction under Federal Rule of Civil Procedure 62(c) allows the Court to modify the injunction only where necessary "to preserve the status quo pending appeal" (*id.* at 1018; *see also Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556, 564-65 (2d Cir. 1991)) in order to protect the appellate court's exercise of exclusive jurisdiction.  *Ideal Toy Corp. v. Sayco Doll Corp.*, 302 F.2d 623, 625 (2d Cir. 1962).

Here, however, the Court's modifications drastically modify the status quo, and serve to add additional errors to the injunction on appeal.  The Final Judgment created a monitorship of limited scope and duration (*see* Dkt. 374 § VI), designed to tread "as lightly as possible on the way Apple runs its business" (Dkt. 371 [Aug. 27, 2013 Hr'g Tr.] at 8-9).  The Final Judgment therefore allowed Apple personnel to "have counsel present" while being interviewed.  Dkt. 374 § VI.G.1.  The Court's amendments remove that critical protection, allowing Mr. Bromwich to interview Apple personnel *ex parte* (Dkt. 410 ¶ 3), and the Court to disclose the information gained therefrom and any of his other work materials to the public (*id.* ¶ 5).  These substantive changes expand the monitor's role and are therefore prohibited while the Final Judgment is on appeal.

## B.    The Injunction Is Not Authorized by Federal Rule of Civil Procedure 53 and Violates the Constitutional Separation of Powers.

Apple is likely to succeed on appeal from the injunction and the Court's modifications thereof, because the investigation the injunction authorizes, especially in light of Mr. Bromwich's interpretation of the scope of his authority and his conduct to date, far exceeds what is permitted under Rule 53 and violates the separation of powers.

Indeed, when the government was faced with a similar monitorship in another case, the Department of Justice took the *opposite* position it takes here and prevailed, arguing that a monitor may not be given broad investigative authority.  *See Cobell*, 334 F.3d at 1140.  *Cobell*

involved a one-year monitorship imposed on the Department of Interior with the parties' consent. The court "authorized the Monitor to engage in ex parte communications, and required the [defendant] to 'facilitate and assist' the Monitor, to 'provide him with access to any offices or employees to gather information,' and to pay his hourly fees and expenses." *Id.* at 1141 (alterations omitted). The *government* objected to the monitor's appointment unless the court placed certain conditions on the scope of his powers. The district court, however, appointed him without regard to some of those conditions.

On appeal, the Department of Justice argued that the court had no authority to give the monitor "far-ranging investigative powers" or "require it to pay for his services," and that the monitor should be disqualified because of his "wide-ranging *ex parte* contacts with [Department of Interior] employees, including both oral discussions and the receipt of documents." Appellants' Brief, No. 02-5374, 2003 WL 25585726 (D.C. Cir. Mar. 14, 2003). The D.C. Circuit agreed with the government, explaining that the monitor "became something like a party himself" because instead of resolving disputes that were brought to him, he "was charged with an investigative, quasi-inquisitorial, quasi-prosecutorial role." 334 F.3d at 1142. The court held that "it was surely impermissible to invest the Court Monitor with wide-ranging extrajudicial duties over the Government's objection." *Id.* For these same reasons, the monitorship imposed by this Court is improper.

The Court acknowledged for the first time in its order proposing modifications to the injunction that its authority to appoint a monitor is governed by Rule 53 (Dkt. 410), which provides in relevant part that a court "may appoint a master only to: … address … posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district" (Fed. R. Civ. P. 53(a)(1)(C)). Rule 53 authorizes district courts

10

to appoint a special master only to the extent necessary to "aid judges in the performance of specific *judicial duties*." *La Buy v. Howes Leather Co.*, 352 U.S. 249, 256 (1957) (emphasis added); *see also In re Peterson*, 253 U.S. 300, 312-13 (1920).  As a result, appointment under Rule 53(a) gives a master (or monitor) the authority only to address issues that would otherwise be addressed "by an available district judge or magistrate judge."  Fed. R. Civ. P. 53(a)(1)(C); *see La Buy*, 352 U.S. at 256.

Compliance monitorships arising out of litigated antitrust cases are extremely rare.  Indeed, Apple knows of only one such case—*United States v. AU Optronics Corp.,* No. 3:09-00110, (N.D. Cal. Oct. 2, 2012)—a *criminal* case involving allegations of naked price fixing with no conceivable pro-competitive effects.  No. 3:09-00110, Dkt. 976 at 1-7, 17-18.  There the defendant's alleged "standard operating procedure ha[d] been collusion," it "had never known any other way of doing business [or] operated lawfully," and the company had "no antitrust compliance program whatsoever."  No. 3:09-00110, Dkt. 948 at 53-54.  To the extent they can ever even arguably be imposed by a federal court, monitorships should be reserved for only these very worst antitrust violators.  They should not be imposed in a civil antitrust case such as this one that concerns only a six-week course of conduct that was critical for Apple, "an esteemed company" (Dkt. 326 at 158), to enter into a nascent and rapidly evolving e-books market.

Where a monitorship is appropriate, the "judicial duties" that may be delegated to a monitor include "the ability to convene and to regulate hearings, to rule on the admissibility of evidence, to subpoena and swear witnesses, and to hold non-cooperating witnesses in contempt." *Benjamin v. Fraser*, 343 F.3d 35, 45-46 (2d Cir. 2003), *overruled on other grounds by Caiozzo v. Koreman*, 581 F.3d 63 (2d Cir. 2009)).  These "quasi-judicial" functions are properly delegated to "quasi-judicial officers," such as special masters and possibly monitors, in their exercise of the

judicial power delegated to them by Article III judges.  *Id.* at 45; *see also Reed v. Rhodes*, 691 F.2d 266, 269 (6th Cir. 1982) (special masters act "in a quasi-judicial capacity"); *Cobell*, 334 F.3d at 1139 ("Special Master-Monitor … was serving as a judicial officer").

To be sure, monitors may be given additional authority when they are appointed as part of a negotiated consent decree before judgment between a private party and a government enforcement agency, as is generally the case.  *See* Vikramaditya Khanna & Timothy L. Dickinson, *The Corporate Monitor: The New Corporate Czar?*, 105 Mich. L. Rev. 1713, 1716 (2007).  In those instances, the monitorships "should be construed basically as contracts.'" *Juan F. v. Weicker*, 37 F.3d 874, 879 (2d Cir. 1994) (quoting *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 236-37 (1975)).  Indeed, the parties may agree to terms that otherwise would violate the defendant's constitutional rights.  *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 146 (2d Cir. 2011).

But absent such an agreement, monitors may not engage in "'wide-ranging extrajudicial duties'" to fill "'an investigative, quasi-inquisitorial, quasi-prosecutorial role that is unknown to our adversarial legal system.'" *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1149 (D.C. Cir. 2009) (per curiam) (quoting *Cobell*, 334 F.3d at 1142).  Here, Apple opposed the monitorship in a civil antitrust case as improper and unnecessary, reserved its right to challenge the appointment, and appealed the Final Judgment (*see* Dkt. 331 at 9-13; Dkt. 379); and the Court appointed Mr. Bromwich over Apple's objections (Boutrous Decl. ¶ 3).  As a result, "the district court must confine itself (and its agents) to its accustomed judicial role."  *Cobell*, 334 F.3d at 1142.

The injunction and Mr. Bromwich's authority go well beyond what is granted by Article III and are flatly unconstitutional.  Article III vests federal courts with only "[t]he judicial

power."  U.S. Const. art. III, § 1; *see also Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 816 (1987) (Scalia, J., concurring in the judgment) (judicial power is "the only kind of power that federal judges may exercise by virtue of their Article III commissions"); *Muskrat v. United States*, 219 U.S. 346, 355 (1911) ("The power conferred on [federal courts] is exclusively judicial, and it cannot be required or authorized to exercise any other") (internal quotation marks omitted).   As a result, courts may not exercise "executive or administrative duties of a nonjudicial nature."  *Morrison v. Olson*, 487 U.S. 654, 677 (1988) (quoting *Buckley v. Valeo*, 424 U.S. 1, 123 (1976) (per curiam)); *see also Missouri v. Jenkins*, 515 U.S. 70, 132 (1995) (Thomas, J., concurring) ("There simply are certain things that courts, in order to remain courts, cannot and should not do").

The injunction purports to give Mr. Bromwich the power to conduct investigations and interviews with Apple personnel, but this is not a judicial function and therefore cannot be delegated by the Court.   The injunction, especially as modified and as interpreted by Mr. Bromwich, improperly gives the monitor investigative powers generally reserved to prosecutors. *See Cobell*, 334 F.3d at 1141-42.   In fact, the injunction gives the monitor the same powers provided to the Department of Justice and the State Attorneys General (*compare* Dkt. 374 § VII.A.1-2 (plaintiffs permitted "access … to inspect and copy" documents, and "to interview … Apple's officers, employees, or agents"), *with id.* § VI.G.1-3 (monitor may interview witnesses and demand documents)), plus *additional* power not given even to the government entities, such as interviewing witnesses *ex parte*.   *Compare* Dkt. 410 ¶ 3 (monitor may "communicate with a party … on an *ex parte* basis") *with* Dkt. 374 § VII.A.2 (Apple personnel may have counsel present during interviews) *and id.* § VII.C ("No information or documents obtained by [the plaintiffs] … shall be divulged … to any person other than an authorized representative of the

executive branch of the United States, the Attorney General's Office of any Plaintiff State, or the External Compliance Monitor, except in the course of legal proceedings").

Broad investigations conducted with a general purpose of sniffing out wrongdoing are executive functions far outside "[t]he judicial power." U.S. Const. art. III, § 1. Apple thus has at least a substantial possibility of demonstrating on appeal that the Court erred in appointing a monitor to "act[] as an internal investigator" who "report[s] ... to the district court." *Cobell*, 334 F.3d at 1141.

### C.   The Injunction Deprives Apple of Its Right to a "Disinterested Prosecutor"

The injunction is also likely to be reversed on appeal because it deprives Apple of its right to a "disinterested prosecutor" without "a personal interest, financial or otherwise." *Young*, 481 U.S. at 808 (internal quotation marks omitted). Due process demands a "disinterested prosecutor with the unique responsibility to serve the public, rather than a private client" (or himself). *Young*, 481 U.S. at 814-15 (Blackmun, J., concurring).

Mr. Bromwich is being paid for investigating Apple and Apple alone (*see* Dkt. 410 ¶ 8; Dkt. 374 § VI.I), and it is *Apple's adversaries*, including the plaintiff states, that have the authority to approve the expenses that he intends to charge. *See* Dkt. 374 § VI.I. This creates a potential incentive for Mr. Bromwich to run as broad and intrusive an investigation as possible, and deprives Apple of its due process right to a neutral prosecutor. *See Young*, 481 U.S. at 804-05; *Berger v. United States*, 295 U.S. 78, 88 (1935); *People ex rel. Clancy v. Superior Court*, 39 Cal. 3d 740, 746 (1986).

This lucrative engagement also creates a personal incentive—or at least the appearance of such—for Mr. Bromwich to prolong the term of the monitorship as long as possible. For example, with the exception of broad statements about training, Mr. Bromwich has not offered

14

any concrete or constructive advice on developing good compliance programs (Boutrous Decl. ¶ 6), the only communication that would promote efficiency at this stage of the monitorship. And there is no incentive for Mr. Bromwich to act efficiently. The Final Judgment provides that his initial appointment shall "be for a period of two years," but permits the Court "*sua sponte* [to] extend the appointment by one or more one-year periods." Dkt. 374 § VI.A.

The monitorship also violates Federal Rule of Civil Procedure 53(a)(2), which requires that a special master (whether designated as a "master" or "monitor") "must not have a relationship to the parties, attorneys, action, or court that would require disqualification by a judge under 28 U.S.C. § 455, unless the parties, with the court's approval, consent to the appointment after the master discloses any potential grounds for disqualification." *Id.* To ensure a monitor who fails to meet this requirement is not appointed, Rule 53 allows a court to issue an order appointing a special master "*only after*: (A) the master files an affidavit disclosing whether there is any ground for disqualification under 28 U.S.C. § 455; and (B) if a ground is disclosed, the parties, with the court's approval, waive the disqualification." Fed. R. Civ. P. 53(b)(3) (emphasis added). To Apple's knowledge, Mr. Bromwich never filed such an affidavit with the Court, thus making his appointment facially invalid. And given his direct financial stake in the matter, this arrangement could not possibly satisfy 28 U.S.C. § 455's judicial disqualification standards.

## II.     APPLE WILL SUFFER IRREPARABLE HARM ABSENT A STAY

The injunction, particularly as modified and as illustrated by the monitor's recent conduct, is already causing irreparable harm to Apple. And because, absent a stay, the monitorship will likely be complete prior to a decision by the Second Circuit, Apple will have no ability to obtain effective relief on appeal. *In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 347-

48 (S.D.N.Y. 2007) ("where the denial of a stay pending appeal risks mooting any appeal of significant claims of error, the irreparable harm requirement is satisfied") (emphasis omitted). The irreparable injury flowing to Apple as a result of the injunction is substantial, and warrants a stay during the pendency of Apple's appeal.

### A.    The Injunction Irreparably Interferes with Apple's Business Operations

Mr. Bromwich's inappropriate demand for access to Apple's senior leadership—including officers, directors, and employees who have little or nothing to do with antitrust compliance or the iBooks Store—has already inflicted significant and irreparable harm by interfering with Apple's ability to manage its business.   Mr. Bromwich has consistently demanded that Apple's senior leaders meet with him on his schedule and on short notice—sometimes as short as two days.  *E.g.*, Boutrous Decl. Ex. B at 2-5, Ex S.  When some of those leaders—responsible for the day-to-day management of one of the largest companies in the world—have been unable to accommodate Mr. Bromwich's strict timetable, he has demanded "detailed copies of their schedules" (*Id.* Ex. B at 2), and even asked to meet Apple's General Counsel Bruce Sewell "at the courthouse" where Mr. Sewell was attending the high-stakes *Apple v. Samsung* trial (*id.* at Ex. H).

Rather than rein in this deeply intrusive conduct, the Court proposed amendments to the permanent injunction that explicitly authorize Mr. Bromwich to "meet with a party or a party's agent on an *ex parte* basis" (Dkt. 410 ¶ 3) and to retain any of Apple's documents he deems "materially related to his duties" (*Id.* ¶ 5).  Mr. Bromwich has maximized this authority to its fullest—contacting Apple's directors directly in a purported effort to build a relationship between Apple's leaders and the "monitoring team" that is "unfiltered through outside counsel."

Boutrous Decl. Ex. J at 5.  Even after Apple's objections, he has continued with this effort to communicate directly with Apple officials during his investigation.  Boutrous Decl. ¶ 5.

At a bare minimum, Apple officers, directors, and management are being harmed by the time-consuming distraction of Mr. Bromwich's roving investigation.  These individuals are subjected to Mr. Bromwich's indiscriminate demands for interviews and information—even where, like director Al Gore, they are not directly involved in the company's antitrust compliance efforts.  At worst, Mr. Bromwich's inquisitorial zeal for communication with Apple's employees "unfiltered through outside counsel" fosters an atmosphere of suspicion that is antithetical to the efficient operation of a major corporation.  In either case, Mr. Bromwich's investigation significantly interferes with the ability of Apple's managers to lead the company.

Where, as here, an activity interferes with the effective management of a business, courts recognize that it imposes real but unquantifiable harms.  "Conduct that unnecessarily frustrates efforts to obtain or preserve the right to participate in the management of a company may … constitute irreparable harm."  *Wisdom Imp. Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 114-115 (2d Cir. 2003).  Barriers to "unfettered" management of a property or business "result[] in delays, missed opportunities, and, most importantly, unquantifiable damages."  *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1211 (10th Cir. 2009).  The effect is particularly severe where a business's "income potential depends upon active management," which is indisputably true of a leading innovator in the rapidly evolving technology sector.  *Id.*  Time that Apple's leaders spend preparing for and sitting for interviews with Mr. Bromwich—as well as upending their schedules on short notice to accommodate his requests—is time they cannot spend investigating new business opportunities, promoting efficiency in their operations, or participating in the development of new technology.

Because Mr. Bromwich's significant interference with Apple's management affects the company's ability to identify and exploit new business opportunities by distracting its most senior personnel, it creates exactly the sort of business harm the Second Circuit has identified as irreparable. "[L]oss of ... business opportunities," like loss of goodwill and harm to a business's reputation, cannot be translated "with any precision [into an] amount of monetary loss" and therefore irreparably harms a company. *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004). So too do "anticipated loss of market share growth" and interference with the development and marketing of new and innovative products, which are both natural and foreseeable effects of Mr. Bromwich's overzealous romp through Apple's executive suite. *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005); *see also Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 37 (2d Cir. 1995) ("We have … found irreparable harm in the loss of a relatively unique product.").

Indeed, because Mr. Bromwich's conduct risks violating Apple's constitutional rights, this alone warrants a stay. "'When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.'" *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984) (quoting 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 2948, at 440 (1973)); *see also Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010) (explaining that "loss of First Amendment Freedoms" necessarily "constitutes irreparable injury") (internal quotations omitted); *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 8 F. Supp. 2d 779, 789 (N.D. Ill. 1998) (finding a due process violation constituted irreparable harm).

There is no doubt that Mr. Bromwich's inquiry will continue to disrupt Apple's business operations and harm the company, though the quantity of the harm inflicted by Mr. Bromwich will be "very difficult," or impossible, "to quantify," *Tom Doherty Assocs.*, 60 F.3d at 38, and it

cannot be remedied after the fact. This interference with Apple's business operations thus constitutes irreparable harm warranting a stay.

**B.    The Risk of Disclosing Privileged or Confidential Information Is an Irreparable Injury**

The monitor's authority to conduct witness interviews and investigations on an *ex parte* basis also risks disclosure of privileged or confidential materials and communications. Mr. Bromwich's attempts to contact Apple personnel directly, "unfiltered by outside counsel" (Boutrous Decl. Ex. J at 5), risk revealing privileged or confidential materials or communications to Mr. Bromwich, who would then be free to disclose that information in his reports to plaintiffs and the Court.

Erroneously disclosing such protected information is itself irreparable harm. *See In re von Bulow*, 828 F.2d 94, 98-99 (2d Cir. 1987) (explaining that once confidential communications have been disclosed, an appeal is "often an exercise in futility"); *In re Prof'ls Direct Ins. Co.*, 578 F.3d 432, 438 (6th Cir. 2009) ("an erroneous forced disclosure of confidential information could not be adequately remedied on direct appeal because a court cannot restore confidentiality to documents after they are disclosed").

**C.    The Significant and Unrecoverable Costs Being Imposed on Apple Warrant a Stay**

Because the costs of the monitor's efforts are not recoverable if Apple prevails on appeal, that monetary injury constitutes irreparable harm warranting a stay. *See, e.g., Brenntag Int'l Chems.*, 175 F.3d at 249-50 (noting that irreparable injury includes monetary obligations owed by insolvent parties); *see also Philip Morris USA, Inc. v. Scott*, 131 S. Ct. 1, 4 (2010) (Scalia, J., in chambers) ("Normally the mere payment of money is not considered irreparable, but that is

because money can usually be recovered from the person to whom it is paid.  If expenditures cannot be recouped, the resulting loss may be irreparable.") (internal citations omitted).

Here, the injunction requires Apple to pay all costs and expenses associated with the monitorship.  Dkt. 374 § VI.I.  The rates Mr. Bromwich is charging are higher than any Apple has encountered in its known past matters (Boutrous Decl. Ex. O at 1), and exceed what Apple understands Mr. Bromwich has ever previously quoted (*see id*. Ex. O at 2).

For just the first two weeks of work, before the 90-day deadline triggering his review of Apple's compliance and training programs before any documents were exchanged, interviews scheduled, or meaningful travel conducted, Mr. Bromwich charged Apple $138,432.40.  *See id.* Ex. O at 3.  This number will surely skyrocket once Mr. Bromwich begins billing Apple for actual interviews, travel, and review of documents, which will result in millions of dollars of unrecoverable costs that Apple never should have incurred if, as Apple submits is likely to occur, the Court's Final Judgment is overturned on appeal.

## III.   A STAY OF THE INJUNCTION WILL NOT HARM PLAINTIFFS OR THE PUBLIC INTEREST

By contrast, plaintiffs have no basis on which to claim that a stay of the injunction will harm them or the public interest.  Plaintiffs *admit* that the public interest has already been vindicated through the publisher defendants' consent decrees.  Although Apple believes its entry into the e-books market unleashed rather than restricted competition and will be making that argument on appeal, plaintiffs themselves declare that there is now "revitalized price competition among e-book retailers" as a result of the publisher consent decrees.  Dkt. 329 at 11.  They further note "the ongoing effective relief consumers are currently enjoying under the Publisher Defendant consent decrees" (*id.* at 6) and conclude that "[w]ith the Publisher Defendant consent decrees now operative, *price competition has returned to the marketplace*."  *Id.* at 11 (emphasis

added).  In light of their unambiguous recognition that competition is flourishing *independently* of the injunction that Apple now seeks to stay, any claims of harm to the public interest are baseless.

Moreover, even though Apple is appealing this Court's July 10 decision and the Final Judgment in their entireties, Apple does not seek to stay provisions of the Final Judgment other than the external compliance monitorship—leaving in effect restrictions on Apple's contracts with publishers and the enhancements to Apple's compliance undertaken by the company during the pendency of the appeal.  Apple has already renegotiated its agreements with the publisher defendants pursuant to the Final Judgment (Dkt. 374 §§ III, IV), and hired an outside law firm to assist Apple in enhancing its compliance programs (Levoff Decl. ¶ 3).  And Apple has already distributed the Final Judgment to all relevant personnel, confirmed that they have read and understood the terms, and held three live trainings for employees on the meaning of the Final Judgment.  *Id.* ¶ 4.  These safeguards are more than sufficient to protect the public interest.

## CONCLUSION

For these reasons, this Court should stay Section VI of the injunction pending appeal.

Dated:  December 12, 2013

Respectfully submitted,

Theodore J. Boutrous, Jr.
Daniel G. Swanson
Gibson, Dunn & Crutcher, LLP
333 South Grand Avenue
Los Angeles, CA  90071
(213) 229-7000
tboutrous@gibsondunn.com

21

Cynthia Richman
Gibson, Dunn & Crutcher, LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036
(202) 955-8500

*On behalf of Defendant Apple Inc.*