# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

_____
   )
UNITED STATES OF AMERICA,   )
   )
      Plaintiff,   )
   )
       v.   )   Civil Action No. 12-cv-2826 (DLC)
   )
APPLE, INC., *et al.*,   )
   )
      Defendants.   )
_____)


_____
   )
THE STATE OF TEXAS, *et al.*,   )
   )
      Plaintiffs,   )
   )
       v.   )   Civil Action No. 12-cv-03394 (DLC)
   )
PENGUIN GROUP (USA) INC., *et al.*,   )
   )
      Defendants.   )
_____)


**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO APPLE INC.'S MOTION TO SHOW CAUSE FOR A STAY OF THE INJUNCTION PENDING APPEAL**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ........................................................................................................ 1

BACKGROUND .......................................................................................................... 3

ARGUMENT .............................................................................................................. 6

I.     APPLE IS NOT LIKELY TO SUCCEED ON APPEAL ..................................... 6

    A.   The Court Exercised Properly Its Discretion In Appointing An External Monitor ............ 7

    B.   Mr. Bromwich Has Acted Appropriately Within The Scope Of His Authority ............... 11

    C.   Apple's Rule 53 And Constitutional Arguments Will Not Succeed On Appeal .............. 12

       1.   Apple waived its due process and Rule 53 arguments ................................... 13

       2.   Apple's "disinterested prosecutor" claim is without merit ............................ 14

       3.   The Monitor's duties do not violate Rule 53 ................................................ 16

       4.   The Monitor's duties do not violate the separation of powers ...................... 16

II.    APPLE HAS FAILED TO ESTABLISH THAT IT WILL SUFFER IRREPARABLE
     HARM ABSENT A STAY ................................................................................. 18

    A.   Demands For Interviews Do Not Constitute Irreparable Harm ........................................ 20

    B.   "*Ex Parte*" Does Not Mean Un-Counseled ...................................................... 21

    C.   Paying Fees Is Not Irreparable Harm.............................................................. 22

III.   STAYING SECTION VI WOULD HARM THE PUBLIC INTEREST ......................... 23

CONCLUSION ......................................................................................................... 24

## TABLE OF AUTHORITIES

**CASES**

*Abrahamson v. Bd. of Educ.*, 374 F.3d 66 (2d Cir. 2004) ............................................................ 7

*Allianz Ins. Co. v. Lerner*, 416 F.3d 109 (2d Cir. 2005) ............................................................ 14

*Berger v. United States*, 295 U.S. 78 (1935) ............................................................................. 15

*Cephas v. Nash*, 328 F.3d 98 (2d Cir. 2003) ............................................................................. 14

*CFTC v. BP Prods. N. Am. Inc.*, No. 06-CV-350, 2007 WL 3407430
    (N.D. Ill. Oct. 25, 2007) ........................................................................................................ 15

*CFTC v. Kim*, No. 11-CV-1013, 2011 WL 1642772 (S.D.N.Y. Apr. 15, 2011) ........................... 8

*CFTC v. Schor*, 478 U.S. 833 (1986) ......................................................................................... 16

*Cobell v. Norton*, 334 F.3d 1128 (D.C. Cir. 2003) ........................................................... 8, 16, 17

*E.E.O.C. v. Local 638, Local 28 of Sheet Metal Workers' Int'l Ass'n,* 532 F.2d 821 (2d Cir.
    1976) (*Sheet Metal Workers I*) ............................................................................................. 8

*Ford Motor Co. v. United States*, 405 U.S. 562 (1972) .................................................... 7, 9, 23

*Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112 (2d Cir. 2005) ............................................... 22

*FTC v. Nat'l Lead Co.*, 352 U.S. 419 (1957) ............................................................................... 8

*Gesualdi v. Laws Constr. Corp.*, 759 F. Supp. 2d 432 (S.D.N.Y. 2011),
    *vacated in part on other grounds*, 485 F. App'x 450 (2d Cir. 2012) ................................. 20-21

*Glatt v. Fox Searchlight Pictures Inc.*, No. 11 Civ. 6784, 2013 WL
    5405696 (S.D.N.Y. Sept. 17, 2013) ..................................................................................... 23

*Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60 (2d Cir. 2007) ............................... 19

*Greene v. United States*, 13 F.3d 577 (2d Cir. 1994) .............................................................. 13

*Griggs v. Provident Consumer Disc. Co*, 459 U.S. 56 (1982) .................................................. 13

*Gurary v. Nu-Tech Bio-Med, Inc.*, 303 F.3d 212 (2d Cir. 2002) .............................................. 14

*Hayes v. City Univ. of N.Y.*, 503 F. Supp. 946 (S.D.N.Y. 1980) ............................................... 20

*Hilton v. Braunskill*, 481 U.S. 770 (1987) ................................................................................... 7

*Hirschfeld v. Bd. of Elections*, 984 F.2d 35 (2d Cir. 1993) ................................................... 18-19

*Illinois Tool Works Inc. v. Independent Ink, Inc.*, 547 U.S. 28 (2006) ......................................... 7

*In re Peterson*, 253 U.S. 300 (1920) ........................................................................................... 8

*In re Bogdanovich*, No. 00 Civ. 2266, 2000 WL 1708163 (S.D.N.Y.
    Nov. 14, 2000) ................................................................................................................. 22-23

*In re N.Y. Skyline, Inc.*, No. 09-10181, 2013 WL 5487938 (Bankr. S.D.N.Y.
    Oct. 2, 2013) ................................................................................................................... 19, 21

*In re The Reserve Fund Sec. & Derivative Litig.*, 673 F. Supp. 2d 182 (S.D.N.Y. 2009)............. 8

*In re World Trade Center Disaster Site Litig.*, 503 F.3d 167 (2d Cir. 2007) ............................... 7

*Int'l Salt Co. v. United States*, 332 U.S. 392 (1947)....................................................................... 7

*Local 28 of Sheet Metal Workers' Int'l Ass'n v. E.E.O.C.*, 478 U.S. 421 (1986)
    (*Sheet Metal Workers II*)........................................................................................................ 8

*Mick Haig Prods. E.K. v. Does 1-670*, 687 F.3d 649  (5th Cir. 2012) ................................... 13-14

*Missouri v. Jenkins*, 515 U.S. 70 (1995)....................................................................................... 18

*Morrison v. Olson*, 487 U.S. 654 (1988), .................................................................................... 18

*Muskrat v. United States*, 219 U.S. 346 (1911) ........................................................................... 18

*Nat'l Soc. of Prof'l Eng'rs v. United States*, 435 U.S. 679 (1978) ........................................ 7, 23

*Nken v. Holder*, 556 U.S. 418 (2009) ............................................................................................ 6

*Otter Tail Power Co. v. United States*, 410 U.S. 366 (1973)....................................................7-8

*People ex rel. Clancy v. Superior Court*, 39 Cal. 3d 740, 746 (1986)......................................... 15

*Powell v. Ward*, 487 F. Supp. 917 (S.D.N.Y. 1980), *aff'd* 643 F. 2d 924 (2d Cir. 1981) ............. 8

*Purdue Pharm. L.P. v. Endo Pharms. Inc.*, No. 00 Civ. 8029, 2004 WL
    306591 (S.D.N.Y. Feb. 17, 2004)........................................................................................ 20

*Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393 (2d Cir. 2004)................................................... 21

*RoDa Drilling Co. v. Siegal*, 552 F.3d 1203 (10th Cir. 2009)..................................................... 21

*Ruiz v. Estelle*, 679 F.2d 1115, *amended in part*, and *vacated in part on other grounds*,
    688 F.2d 266 (5th Cir. 1982) ................................................................................. 10, 16, 17

*S.E.C. v. Citigroup Global Markets Inc.*, 673 F.3d 158 (2d Cir. 2012)......................................... 7

*Salinger v. Colting*, 607 F.3d 68 (2d Cir. 2010) ......................................................................... 21

*SEC v. WorldCom, Inc.*, 452 F. Supp. 2d 531 (S.D.N.Y. 2006)................................................... 19

*Thomas v. Arn*, 474 U.S. 140 (1985) ........................................................................................... 14

*Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27 (2d Cir. 1995)............. 21

*U.S. v. Apple Inc.*, 12-CV-2826, __ F. Supp. 2d __, 2013 WL 3454986
    (S.D.N.Y. July 10, 2013) ........................................................................................................ 3

*United States v. AU Optronics Corp.*, No. 3:09-00110, (N.D. Cal. Oct. 2, 2012)........................ 9

*United States v. E. I. du Pont de Nemours & Co.*, 366 U.S. 316 (1961) ................................. 7, 23

*United States v. Int'l Bhd. Of Teamsters*, No. 88 CIV 4486, 2001 WL
    422824 (S.D.N.Y. Apr. 24, 2001)......................................................................................... 19

*United States v. Microsoft*, 231 F. Supp. 2d 144 (D.D.C. 2002) ................................................. 8

*United States v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 1 (D.D.C. 2006)  ...................... 11, 17

*United States v. Philip Morris USA Inc.*, 566 F.3d 1095 (D.C. Cir. 2009) ................................ 17

*United States v. Sasso*, 215 F.3d 283, 288 (2d Cir. 2000) ............................................................ 8

*Wisdom Import Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 114 (2d Cir. 2003) ................. 21

*Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987)............................................. 15, 18

**STATUTES**

28 U.S.C. § 455 ........................................................................................................................ 15

## INTRODUCTION

Apple is an adjudicated price fixer that operated with a "blatant and aggressive disregard [] for the requirements of the law." Aug. 27, 2013 Tr. at 17:1-6. As this Court found, millions of consumers in this country were harmed because Apple personnel, including "Apple lawyers and its highest level executives," "used their considerable skills to orchestrate a price-fixing scheme that significantly raised the price of e-books." *Id.* Apple's failure to demonstrate any concern for the danger of obvious collusion by its business partners, the utter lack of candor of its senior executives when under oath, and its failure to offer genuine safeguards against future antitrust violations, left the Court with no option but to appoint an external monitor. *See* Aug. 9, 2013 Tr. at 66:1-23; Aug. 27, 2013 Tr. at 17:7-21. The monitor was tasked with evaluating Apple's internal antitrust compliance policies, procedures and training, with the hope that Apple would "change its culture to one that includes a commitment to understand and abide by the requirements of the law." Aug. 27, 2013 Tr. at 17:22-20:11.

As part of performing his duties, the monitor here, Michael Bromwich, has requested to interview Apple's top executives and Board members. As Mr. Bromwich has explained, such interviews (which are explicitly authorized under Section VI.G.1 of the Final Judgment) are standard procedure in monitorships, and are crucial in assessing whether the tone at the top of the company exemplifies a commitment to compliance. *See* Bromwich Decl. ¶¶ 11, 16. Here, where senior executives and revered leaders of the company not only devised but carried out the illegal scheme, such interviews take on a heightened importance. *Id.* at ¶ 17.

Stripped of its blustery rhetoric and personal attacks, Apple's motion is about its desire to shield its highest-level executives and Board members from the perceived inconvenience of having to sit for these interviews. There is nothing improper about Mr. Bromwich's request to

interview the people with ultimate responsibility for overseeing Apple's compliance with the law, nor is there anything remarkable about any action that Mr. Bromwich has undertaken in connection with his role as External Compliance Monitor.  What is remarkable, and wholly unbelievable, is Apple's argument that Mr. Bromwich's requests for one-hour interviews of its Board members and senior executives will result in a "loss of market share growth" and "interference with the development and marketing of new and innovative products."  Stay Mem. at 18.  Apple's obstinance in the face of its adjudicated antitrust liability raises serious doubts about its commitment to devoting the time and effort necessary to ensure "that the government need never again expend its resources to bring Apple into court for violations of the country's antitrust laws."  Aug. 27, 2013 Tr. at 17:10-14.

        In its motion to stay Section VI of the Final Judgment, Apple makes no serious effort to show that this Court's appointment of the Monitor was in error or that his actions, if not stayed, will irreparably harm the company.  Indeed, Apple's "success on the merits" claims are based largely on mischaracterizations of the Court's orders, and on baseless arguments (premised on glaring misreadings of caselaw) that, in any event, were waived when Apple did not timely raise them.  As for the "harm" Apple articulates it is suffering, if Apple has any concerns with Mr. Bromwich's conduct there is a procedure available to Apple for bringing such concerns to the Court's attention.  Apple's refusal to avail itself of that procedure, while telling, certainly does not amount to irreparable harm warranting a stay.  And Apple's efforts to thwart Mr. Bromwich from carrying out his responsibilities only highlight the critical need for his monitorship to continue uninterrupted.

## BACKGROUND

On July 10, 2013, following a three-week trial, this Court found that "Apple played a central role in facilitating and executing [a] conspiracy" among five of the six largest book publishers in the United States "to eliminate retail price competition in order to raise e-book prices." *U.S. v. Apple Inc.*, No. 12-CV-2826, __ F. Supp. 2d __, 2013 WL 3454986, at *2 (S.D.N.Y. July 10, 2013). The Court held that Apple's conduct violated Section 1 of the Sherman Act under both "*per se*" and "rule of reason" analyses. In its opinion, the Court noted that several Apple witnesses, including Apple's highest-level executive to testify at trial, were "noteworthy for their lack of credibility," and that the Court's findings were informed by, *inter alia*, those credibility determinations. *Id.* at *53 & n.66; *see also id.* at *16 n.19, *25 n.38, *30 n.47, *33 n.52, and *34 n.53. That same day, the Court entered an order setting forth a timetable for the parties to make submissions and arguments relating to a proposed injunction. July 10, 2013 Order (ECF No. 238). The Court also ordered Apple, the Plaintiff States and Class Plaintiffs to submit joint or separate proposals for the completion of discovery and a schedule for a trial on damages. *Id.*

On July 19, 2013, Plaintiffs served Apple with a proposed injunction that contained provisions for the appointment of an External Compliance Monitor. On August 2, 2013, Apple submitted its Memorandum of Law in Response to Plaintiff United States' Proposed Final Judgment and Plaintiff States' Proposed Order Entering Permanent Injunction. (ECF No. 330). In its memorandum, Apple objected to the appointment of an External Compliance Monitor on the grounds that it was costly, burdensome, unnecessary and punitive. *Id.* at 9-13. Apple did not, however, claim that the Court did not have legal authority to impose a monitor. Indeed, neither in the multiple meet-and-confer sessions that took place prior to the entry of the Final

Judgment nor in the multiple oral arguments the Court held where the imposition of the monitor was discussed, did Apple *ever* raise the arguments it makes now.  On August 8, 2013, Apple filed its Scheduling Proposal, in which its stay arguments were limited to the Plaintiff States' and Class Plaintiffs' remaining damages action.  Defendant Apple Inc.'s Scheduling Proposal (ECF No. 338).

On August 9, the Court held a conference in which it addressed and denied Apple's application for a stay.  With respect to an injunction, the Court made clear that its preference was not to appoint an external compliance monitor, but rather that "Apple adopt a vigorous in-house antitrust enforcement program and convince the plaintiffs, and this Court, that there is no need for a monitor."  Aug. 9, 2013 Tr. at 66:11-17.  The Court provided Apple with a further opportunity to meet and confer with Plaintiffs regarding an injunction, and make additional submissions to the Court.

On August 27, 2013, the Court conducted a hearing to discuss the terms of the Final Judgment.  During the hearing, the Court noted that the record at trial "demonstrated a blatant and aggressive disregard at Apple for the requirements of the law," and that the conduct "included Apple lawyers and its highest level executives."  Aug. 27, 2013 Tr. at 17:1-6.  The Court also stated that, despite several opportunities, Apple had not demonstrated that it has taken the lessons of the litigation seriously and shown that a monitor was unnecessary.  *Id.* at 17:7-16. Accordingly, the Court held that an external monitor should be appointed to evaluate Apple's antitrust compliance policies, procedures and training.  *Id.* at 17:7-20:11.  On September 5, 2013, after further meetings among the parties to agree on the language of the proposed injunction, the Court entered the Final Judgment.  (ECF No. 374).  The Final Judgment provided, *inter alia*, that the External Compliance Monitor, in connection with the exercise of his responsibilities, could

"interview, either informally or on the record, any Apple personnel, who may have counsel present," Final Judgment § VI.G.1, and set forth a process for Apple to seek redress in the event it believed the monitor was not acting appropriately, Final Judgment §§ VI.H, VI.J.

In accordance with the Court's direction, Plaintiffs proposed to the Court two candidates for the position of monitor.  While Apple raised issues with respect to the proposed candidates, Stay Mem. at 3 n.1, it did not challenge the Court's authority to appoint a monitor.  On October 16, 2013, the Court appointed Mr. Bromwich to act as the External Compliance Monitor and, consistent with Mr. Bromwich's application, appointed Bernard Nigro to assist Mr. Bromwich in discharging his responsibilities.  October 16, 2013 Order (ECF No. 384).  Mr. Bromwich, as set forth in his accompanying declaration, is a former Inspector General for the Department of Justice, who has been doing oversight work of various kinds for approximately 20 years, in both the private and public sectors.  Bromwich Decl. ¶¶ 3-4.

Despite statements to Plaintiffs and the Court that it intended to be a model for antitrust compliance, Apple has, since Mr. Bromwich's appointment, taken an adversarial posture and engaged in efforts to prevent him from carrying out his responsibilities.  (A detailed recitation of the interactions between Mr. Bromwich and Apple can be found in Mr. Bromwich's declaration and accompanying exhibits).  Apple's obstruction has required Mr. Bromwich to devote a substantial amount of his time engaging with Apple on scheduling disputes and responding to baseless objections.

On November 21, the Court provided notice of a proposed amendment to the October 16 Order appointing Mr. Bromwich and solicited objections from the parties concerning the proposal.  (ECF No. 410).  The Court's proposed amendment included authorization for Mr. Bromwich to "communicate with a party or a party's agency on an *ex parte* basis if

reasonably necessary to carry out his duties." *Id.*  Apple objected to the proposed amendment (ECF No. 411), and the Court did not enter the proposed amendment.

On December 12, 2013, Apple filed the instant motion.  It was the first time that Apple requested a stay of the section of the Final Judgment appointing an external compliance monitor. The following day, this Court conducted a conference to discuss Apple's motion and set a briefing schedule.  During the conference, the Court made clear that it had not, as Apple asserts repeatedly in its papers, ever modified the Final Judgment.  Dec. 13, 2013 Tr. at 7:4-11 ("the underlying injunction has not been modified.").  The Court also clarified that its use of the term "*ex parte*" in its orders was not, as Apple had been suggesting in its papers, referring to uncounseled interviews, but rather to conversations between the monitor and one party (*i.e.*, Plaintiffs or Apple) without the other party being present.  *Id.* at 7:13-24.  In light of the Court's clarifications, the Court gave Apple the opportunity to amend its submission.  Apple inexplicably chose not to do so—despite the fact that the Court's clarifications effectively moot the non-waived bases of Apple's current application.

## ARGUMENT

### I.    APPLE IS NOT LIKELY TO SUCCEED ON APPEAL

As the Supreme Court has made clear, a stay is not a matter of right, but "is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case.  The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion."  *Nken v. Holder*, 556 U.S. 418, 433-34 (2009) (citations and internal quotation marks omitted).  In determining whether to issue a stay pending appeal, the Second Circuit considers "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably

injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *S.E.C. v. Citigroup Global Markets Inc.*, 673 F.3d 158, 162 (2d Cir. 2012) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *In re World Trade Center Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007). Because Apple is seeking to stay only Section VI of the Final Judgment, likely success on the merits here means that Apple must show that this Court abused its discretion in appointing a monitor. *See Abrahamson v. Bd. of Educ.*, 374 F.3d 66, 76 (2d Cir. 2004) (fashioning of equitable relief reviewed for abuse of discretion). Apple has not made—and cannot make—such a showing.

### A.   The Court Exercised Properly Its Discretion In Appointing An External Monitor

Remedies in Sherman Act cases should end the unlawful conduct, prevent its recurrence, and undo its anticompetitive consequences. *See Nat'l Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679, 697 (1978); *United States v. E. I. du Pont de Nemours & Co.*, 366 U.S. 316, 326 (1961); *Int'l Salt Co. v. United States*, 332 U.S. 392, 400-01 (1947), *abrogated on other grounds by Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28 (2006). To accomplish these goals, the "District Court is clothed with large discretion to fit the decree to the special needs of the individual case." *Ford Motor Co. v. United States*, 405 U.S. 562, 573 (1972) (internal quotation marks omitted). Once the government has successfully established a Sherman Act violation, "all doubts as to the remedy are to be resolved in its favor." *DuPont*, 366 U.S. at 334. "When the purpose to restrain trade appears from a clear violation of law, it is not necessary that all of the untraveled roads to that end be left open and that only the worn one be closed." *Int'l Salt*, 332 U.S. at 400. Thus, those caught violating antitrust laws "must expect some fencing in." *Otter*

*Tail Power Co. v. United States*, 410 U.S. 366, 381 (1973) (quoting *FTC v. Nat'l Lead Co.*, 352 U.S. 419, 431 (1957)).

The Court's power to require a monitor to assist in ensuring compliance with its order is clear.  "Courts have . . . inherent power to provide themselves with appropriate instruments required for the performance of their duties," including "appoint[ing] persons unconnected with the court to aid judges in the performance of specific judicial duties."  *In re Peterson*, 253 U.S. 300, 312 (1920); *see also Powell v. Ward*, 487 F. Supp. 917, 935 (S.D.N.Y. 1980), *aff'd*, 643 F. 2d 924 (2d Cir. 1981) ("Courts have inherent authority to appoint nonjudicial officers to aid in carrying out their judicial functions.").  This authority extends to appointing administrators to aid in remedying violations of the law.  *Local 28 of Sheet Metal Workers' Int'l Ass'n v. E.E.O.C.*, 478 U.S. 421, 481-82 (1986) (*Sheet Metal Workers II*); *see also E.E.O.C. v. Local 638, Local 28 of Sheet Metal Workers' Int'l Ass'n,* 532 F.2d 821, 829 (2d Cir. 1976) (*Sheet Metal Workers I*).  Courts have long used this authority to appoint special masters or monitors to investigate and enforce compliance with court orders and decrees.  *See Cobell v. Norton*, 334 F.3d 1128, 1142 (D.C. Cir. 2003) (collecting cases).

As explained in detail in Plaintiffs' August 2, 2013 Memorandum of Law in Support of Proposed Injunction at 12-14 (ECF No. 329), Courts have exercised their authority to appoint external monitors in a wide variety of contexts.[1]  For example, the Final Judgment in *United States v. Microsoft* required the appointment of a three-person, independent technical committee "to assist in enforcement of and compliance with" the Final Judgment in that case.  231 F. Supp. 2d 144, 196 (D.D.C. 2002) (internal quotation marks omitted).  The *Microsoft* technical

---

[1]  *See, e.g.*, *United States v. Sasso*, 215 F.3d 283, 288 (2d Cir. 2000) (monitoring union to prevent future labor racketeering); *CFTC v. Kim*, No. 11-CV-1013, 2011 WL 1642772 (S.D.N.Y. Apr. 15, 2011) (monitoring collection of restitution payments for investment fraud); *In re The Reserve Fund Sec. & Derivative Litig.*, 673 F. Supp. 2d 182, 210 (S.D.N.Y. 2009) (monitoring distributions from insolvent money market fund).

committee was "empowered broadly to monitor Microsoft's compliance with its obligations under the Final Judgment." *Id.* (internal quotation marks and alterations omitted). And after its conviction for price-fixing, AU Optronics was ordered to hire, at its expense, an "independent monitor . . . to monitor [its] compliance programs." *United States v. AU Optronics Corp.*, No. 3:09-00110, (N.D. Cal. Oct. 2, 2012), ECF No. 976 at 3.[2]

The appointment of a monitor in this case was within this Court's "large discretion to fit the decree to the special needs of the individual case." *Ford*, 405 U.S. at 573. The Final Judgment requires Apple to take certain actions to ensure compliance with the antitrust laws, including the development of effective antitrust training, auditing and reporting programs. Final Judgment § V. This Court determined that, based upon Apple's unlawful conduct, the repeated instances of incredible testimony offered by Apple executives, and Apple's continued insistence that its conduct needed no correction, a monitor was required to ensure that Apple's antitrust compliance policies and the mandated training program are "reasonably designed to detect and prevent violations of antitrust laws." Final Judgment § VI.C.

The Court limited the Monitor's authority to reviewing, evaluating, reporting on, and recommending changes to Apple's antitrust compliance policies and procedures and training program. Final Judgment § VI. To complete his tasks, the Monitor may inspect documents and request reports, but only on reasonable notice. *Id*. at § VI.G.2-3. And the Monitor may interview, at their "reasonable convenience," "any Apple personnel, who may have counsel present."[3] *Id.* at § VI.G.1.

---

[2]  Apple attempts to distinguish *AU Optronics* on the facts, or because it was a criminal case, or because of the length of the price-fixing conspiracy in question. But none of that supports Apple's argument that this Court lacks authority to appoint a monitor at all.

[3]  Apple complains repeatedly about the Monitor's supposed authority to conduct interviews without counsel present, citing a proposed amendment to the Court's order appointing Mr. Bromwich. Stay Mem. at 5, 6, 9, 13, 16, 19. Apple misunderstands the facts. First, the Court never entered the proposed amendment. Dec. 13, 2013 Tr. at

Contrary to Apple's claim, the Final Judgment does <u>not</u> "give[] the monitor investigative powers generally reserved to prosecutors." Stay Mem. at 13. Rather than authorizing the Monitor to engage in "[b]road investigations conducted with a general purpose of sniffing out wrongdoing," *id.* at 14, the Final Judgment forbids the Monitor from investigating any "potential violation of the Final Judgment or the antitrust laws," even if he "discovers or receives evidence that suggests" such unlawful acts while exercising his monitoring responsibilities. Final Judgment § VI.F. Instead, the "Monitor shall promptly provide that information to the United States and the Representative Plaintiff States"—expressly reserving the prosecutorial function for the executive branch. *Id.* Apple's claim that Section VI vests the Monitor with prosecutorial powers seems based entirely on the Monitor's ability to interview Apple employees and access its documents. *See* Stay Mem. at 1, 3-6, 8-14. But just because prosecutors conduct interviews and review documents does not mean that anyone doing so must be a prosecutor—those activities are just as necessary for monitors to carry out their duties. *See Ruiz v. Estelle*, 679 F.2d 1115, 1162, *amended in part*, *vacated in part on other grounds*, 688 F.2d 266 (5th Cir. 1982) (monitor was properly granted "sweeping powers" including "unlimited access" to defendants' premises and records, the power to conduct "confidential interviews," and to require written reports).

Likewise, the Monitor may not adjudicate liability or direct Apple's conduct. Although he may recommend changes to Apple's compliance policies and procedures and training program to address any deficiency he perceives, Final Judgment § VI.B, he may not direct Apple to adopt recommendations with which it disagrees, *id.* at § VI.D-E. Rather, Apple may object to

7:4-11. Second, there has never been any proposal from the Court, the Monitor, or any party that the Monitor be permitted to demand un-counseled interviews. Rather, the proposed amendment used "ex parte" in "the ordinary meaning of '*ex parte*,' *i.e.*, that DOJ and/or the Plaintiff States need not be present during any communication between the Monitor and Apple, and that Apple need not be present for any communication between Monitor and DOJ and/or the Plaintiff States." Dec. 13, 2013 Order (ECF No. 416) at 3.

10

the Monitor's recommendations, propose alternatives, and ultimately apply to the Court for a decision.  *Id.* at § VI.E; *cf. United States v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 1, 936 (D.D.C. 2006) (court may not authorize a monitor to "adjudicate liability" or direct changes in Defendant's conduct).

The Monitor's authority is thus narrowly tailored and limited, and consistent with established law.

### B.    Mr. Bromwich Has Acted Appropriately Within The Scope Of His Authority

Implicitly recognizing that its motion is doomed by the facial validity of Section VI, Apple repeatedly seeks to conflate the Final Judgment, the Court's proposed (but not entered) amendment to the order appointing Mr. Bromwich, and Mr. Bromwich's alleged actions to gerrymander some sort of "as applied" challenge to the Monitor's existence.  *See* Stay Mem. at 1, 3, 5-6, 8, 9, 13, 15, 16-17.  Apple cites no authority, though, for its proposition that Section VI could be rendered "flatly unconstitutional" by the manner in which "it is being interpreted and implemented by Mr. Bromwich."  *Id.* at 1.  And since the remedy Apple seeks is not the restriction of Mr. Bromwich's activities, but rather a stay of Section VI pending appeal, its attempted conflation is improper.

To the extent Apple wishes to challenge Mr. Bromwich's actions rather than Section VI itself, the Final Judgment spells out the procedure for Apple to lodge its objections with the United States and Representative Plaintiff States, Final Judgment § VI.H, and ultimately with the Court, *id.* at § VI.J.  *See also* Dec. 2, 2013 Order (ECF No. 413) at 4 ("in the event timely objection [regarding the Monitor] is made by Apple to the Department of Justice and the Plaintiff States, and the parties are unable to resolve the issue, any party may seek a conference with the Court through a letter no longer than two pages.  The Court will promptly schedule a conference

11

to give all parties, and if appropriate the Monitor, an opportunity to be heard on the matter."); Final Judgment § VIII.B (authorizing Apple to apply to the Court for "further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment [or] to modify any of its provisions").  To date, Apple has raised certain objections with the United States and Representative Plaintiff States, but has not properly raised them with the Court in accordance with Section VI.H. of the Final Judgment and the Court's December 2, 2013 Order. Apple offers no authority in support of its suggestion that its failure to present objections to the Court prior to filing its notice of appeal should be excused "because the company intended to revise and enhance its antitrust compliance and training programs irrespective of any court order to do so."  Stay Mem. at 2.

In any event, even if this motion were an appropriate procedural vehicle to challenge Mr. Bromwich's actions, Apple's complaints are entirely without merit.  As noted above, *see supra* pp. 1, 5, Mr. Bromwich's requests for interviews with senior executives and Board members are explicitly contemplated by the Final Judgment, standard practice in monitorships, and wholly necessary where company senior executives participated in the conduct that gave rise to the underlying liability.

### C.    Apple's Rule 53 And Constitutional Arguments Will Not Succeed On Appeal

Apple belatedly argues that the Monitor's appointment violates Apple's due process right to a "disinterested prosecutor" and exceeds the Court's authority under Federal Rule of Civil Procedure 53.  These arguments are largely based on obvious and troubling misreadings of the caselaw, and are entirely without merit.  However, the Court need not address Apple's liberal interpretation of the term "precedent," as Apple waived these meritless arguments when it

noticed its appeal before raising them to this Court.  And Apple cannot succeed on appeal by recasting its waived arguments as involving the separation of powers.

### 1.     Apple waived its due process and Rule 53 arguments

Apple waived its Rule 53 and due process arguments by passing up numerous opportunities to make them prior to noticing its appeal, and Apple offers no reasonable excuse for not making them earlier.  Accordingly, the Second Circuit is unlikely to consider these arguments on appeal.

On July 19, 2013, Plaintiffs served on Apple a proposed injunction, which Apple opposed in an August 2, 2013 brief.  After a hearing on the scope of the Final Judgment, the Court directed the parties to confer further.  Plaintiffs filed a revised proposed injunction on August 23; Apple opposed it in writing the same day.  The Court held a second hearing on August 27, and a third by telephone on September 5, after which it entered the Final Judgment.  Apple noticed its appeal a month later.  Throughout these months of written and oral consideration of the remedy, Apple never claimed that any proposed injunction must be, but was not, authorized by Rule 53, nor that any injunction violated its right to a "disinterested prosecutor."  Instead, Apple waited until November 27, 2013 to assert these arguments, four months after Plaintiffs filed the first proposed injunction, and nearly two months after Apple's appeal divested the district court of jurisdiction to amend the injunction substantively.  *See Griggs v. Provident Consumer Disc. Co*, 459 U.S. 56, 58 (1982) (per curiam).

These arguments are unlikely to succeed, or even be considered, on appeal.  "[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal," *Greene v. United States*, 13 F.3d 577, 586 (2d Cir. 1994), or after the district court no longer has authority to act upon it, *see, e.g.*, *Mick Haig Prods. E.K. v. Does 1-670*, 687 F.3d 649, 652 (5th Cir. 2012) (appellant waived arguments raised "for the first time on appeal

13

. . . [or] for the first time in his untimely motion in the district court to stay sanctions pending

appeal, which was filed after this appeal was initiated").  The Second Circuit is unlikely to

exercise its discretion to consider these waived arguments.  The circumstances normally "do not

militate in favor of an exercise of [that] discretion" where, as here, the arguments in question

were timely available to the party, who nevertheless "proffer[s] no reason for [its] failure to raise

the arguments below."  *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 114 (2d Cir. 2005) (internal

quotation marks omitted).  While a showing of "manifest injustice" can prompt the Second

Circuit to consider waived arguments, *Gurary v. Nu-Tech Bio-Med, Inc.*, 303 F.3d 212, 225 (2d

Cir. 2002), Apple has shown nothing of the kind.

Even if Apple were to seek to avoid the consequences of its waiver by improperly

conflating Mr. Bromwich's actions with the Final Judgment itself, its failure to press its rights

under Sections VI.H and VI.J of the Final Judgment, thus leaving this Court with no opportunity

to address the propriety of Mr. Bromwich's actions, would leave Apple in the same position.

The court of appeals is unlikely to vacate or modify the Final Judgment because of complaints

about the Monitor's conduct that Apple never properly presented to the district court.  *See, e.g.*,

*Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) ("As a rule, a party's failure to object to any

purported error or omission in a magistrate judge's report waives further judicial review of the

point."); *Thomas v. Arn*, 474 U.S. 140 (1985) (precluding appellate review of an issue not

contained in objections to a magistrate's report "prevents a litigant from 'sandbagging' the

district judge by failing to object and then appealing").

### 2.     Apple's "disinterested prosecutor" claim is without merit

Even if this Court were inclined to examine the "substance" of Apple's arguments, they

do not suggest *any* likelihood of success on appeal.  Apple argues that Section VI deprives it of

its "due process" right to a "disinterested prosecutor."  Stay Mem. at 14.  But Section VI.F

expressly forbids the Monitor from engaging in prosecutorial activity.[4]  And Apple's claim that

the Monitor is not sufficiently "disinterested" boils down to the unremarkable observation that he

is paid by the hour.  Stay Mem. at 14-15.  Private counsel, consultants, expert witnesses, court

appointed monitors and special masters, and numerous other workers generally bill for their

time.  *See, e.g.*, *CFTC v. BP Prods. N. Am. Inc.*, No. 06-CV-350, 2007 WL 3407430, at *19

(N.D. Ill. Oct. 25, 2007) (directing that court monitor and staff be compensated at their "typical

hourly rates or a reasonable fee determined by the Monitor" in matter involving city hiring

practices).  Apple offers no basis for its claim that it is unconstitutional for monitors or special

masters to be paid an hourly rate for their time.[5]  Indeed, Apple itself has proposed that the

Monitor and his staff be paid on an hourly basis, just at lower rates than they usually charge.

Moreover, the Final Judgment requires Mr. Bromwich to act efficiently.  Apple may

object to any of the Monitor's actions.  Final Judgment § VI.H; Dec. 2, 2013 Order (ECF No.

413) at 4.  And if *either* the United States (in consultation with Representative Plaintiff States) *or*

Apple determines that Mr. Bromwich has failed to act "diligently or in a cost-effective manner,"

it may recommend that the Court substitute a new Monitor.  Final Judgment § VI.J.  Apple has

not done so.

---

[4]  Apple also does not identify any relationship of Mr. Bromwich to the parties, attorneys, action, or Court that would require his disqualification—nor does, to Plaintiffs' knowledge, one exist.  Apple provides no support for its position that Mr. Bromwich was required to file an affidavit under Rule 53, nor explain why it failed to raise any concern it had with a Rule 53 affidavit or the applicability of 28 U.S.C. § 455 in a timely fashion.  *See also* Bromwich Decl. n.1.

[5]  Apple cites three cases as support, but all three deal with an improper interest in outcomes of cases and say nothing about any impropriety in merely being paid for one's time.  *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987), held that counsel for a private party benefiting from a court order should not have been appointed as special prosecutor to prosecute criminal contempt of that order.  In doing so, the Court recognized the authority of a court to appoint a representative to prosecute criminally violations of its orders.  *Id.* at 800-01.  *People ex rel. Clancy v. Superior Court*, 39 Cal. 3d 740, 746 (1985) involved an attorney "representing the government" who had a financial stake in the outcome of the case, as he received double the fees if the city won.  No such conflict of interest is alleged here.  In *Berger v. United States*, 295 U.S. 78, 88 (1935), meanwhile, the Supreme Court reversed a criminal conviction for a prosecutor's "improper methods calculated to produce a wrongful conviction."

### 3.    The Monitor's duties do not violate Rule 53

Apple argues that the Monitor's appointment violates Rule 53 because his authority extends beyond that necessary "to address issues that would otherwise be addressed by an available . . . judge." Stay Mem. at 10-11. But the only purported "extrajudicial duty" Apple identifies is the Monitor's authority to review documents and conduct interviews of Apple personnel, *id.* at 13, which is necessary if the Monitor is to report on Apple's antitrust compliance, policies and training programs. District courts have long appointed special masters or monitors with broad powers to aid in remedying violations of the law. *See supra* pp. 8-9. And monitors may have "sweeping powers" to investigate, conduct interviews, and require written reports, far beyond the narrowly-tailored investigatory authority given the Monitor here. *Ruiz*, 679 F.2d at 1162. A monitor does not overstep his bounds even if, in exercising investigatory authority, he "assumes one of the plaintiffs' traditional roles," so long as he "performs [his] duties objectively." *Id.* at 1161-62. Apple makes no credible allegations that Mr. Bromwich either has assumed a plaintiff role or has failed to act objectively.

### 4.    The Monitor's duties do not violate the separation of powers

Finally, seeking to resuscitate waived arguments, Apple reformulates its objections to Section VI as grounded in the separation of powers.[6] In so doing, Apple relies heavily on *Cobell v. Norton*, 334 F.3d 1128 (D.C. Cir. 2003), addressing the appointment of a monitor to oversee certain actions of the Department of Interior, and the government's objections to the *Cobell* monitor. Stay Mem. at 1, 9-10, 12-14. Apple, however, misreads the separation of powers concern at issue in *Cobell*. It was not, as Apple suggests, that the Court had attempted to give the monitor the power of the executive branch by granting the monitor the authority to conduct

---

[6] A separation of powers claim cannot be waived. *CFTC v. Schor*, 478 U.S. 833, 850-51 (1986).

interviews and review documents.[7]  Rather, the question in *Cobell* was "the propriety of a federal court authorizing its agent to interfere with the affairs of another branch of the federal government."  334 F.3d. at 1142.  The Department there accordingly raised a straightforward separation of powers concern:  "interference with the internal deliberations of a Department of the Government of the United States."  *Id.* at 1140.  The D.C. Circuit held that "the district court's appointment of the Monitor entailed a license to intrude into the internal affairs of the Department [of the Interior]."  *Id.* at 1143.  Because Apple is not a branch of the federal government, no such separation of powers concerns arise here.

Apple also egregiously misreads the D.C. Circuit's decision in *United States v. Philip Morris USA Inc.*, 566 F.3d 1095 (D.C. Cir. 2009).  Stay Mem. at 12.  In its holding in that case, the D.C. Circuit nowhere addressed the proper scope of a court-appointed monitor's authority. Rather, it merely quoted language from *Cobell* while describing the district court's decision.[8] 566 F.3d at 1149-50.  Accordingly, the D.C. Circuit's decision in *Philip Morris* has no bearing on Apple's motion.

Finally, Apple argues that "courts may not exercise executive or administrative duties of a nonjudicial nature" and claims that the Monitor's powers go "well beyond what is granted by Article III."  Stay Mem. at 12-13.  But this recasting of its Rule 53 argument does not help Apple.  The Monitor's authority to conduct interviews and review documents enables him to aid

---

[7]  Indeed, in an extensive discussion of *Ruiz*, a case notably absent from Apple's brief, the *Cobell* Court endorsed the ability of a district court to appoint monitors "to monitor implementation of the relief ordered," including the grant of "unlimited access to the defendants' premises and records as well as the power to conduct confidential interviews with staff members and inmates."  334 F.3d at 1142-43 (internal quotation marks omitted).

[8]  The district court had expressly recognized its authority to appoint a monitor "to oversee and monitor implementation of a decree," but found that the proposed monitorship went much further, including the power to determine violations, direct changes in the defendants' actions, and order removal of the defendants' employees. *Philip Morris*, 449 F. Supp. 2d at 936.  In contrast, as discussed above, the Monitor here is not authorized to adjudicate liability or to direct Apple's conduct, but only to make recommendations, which this Court will ultimately adjudicate.  Final Judgment §§ VI.D-E.

the Court in minimizing the likelihood of a recurrence of Apple's illegal conduct.  Such authority

is routinely granted to monitors aiding a court in remedying violations of the law.  *See supra* p.

16.  The Supreme Court has affirmed the appointment of "an administrator to supervise . . .

compliance with the court's orders" with far greater administrative powers than those granted

here.  *Sheet Metal Workers II*, 478 U.S. at 481-82 (affirming court appointed administrator with

"broad powers to oversee [union's] membership practices" including overseeing membership

selection board even though it may "substantially interfere with . . . membership operations");

*see also Sheet Metal Workers I*, 532 F.2d at 829-30 (administrator had "extensive supervisory

power" over defendants).  Apple offers not one iota of support for claiming it is unconstitutional

for an Article III judge, or his or her representative, to monitor and enforce a defendant's

compliance with that court's order.[9]  To the contrary, "[t]he ability to punish disobedience to

judicial orders is regarded as essential to ensuring that the Judiciary has a means to vindicate its

own authority without complete dependence on other Branches."  *Young*, 481 U.S. at 796.

## II.   APPLE HAS FAILED TO ESTABLISH THAT IT WILL SUFFER IRREPARABLE HARM ABSENT A STAY

Any assertion that Apple will suffer irreparable harm absent a stay is belied by the fact

that Apple waited over three months from the entry of the Final Judgment and over two months

from the appointment of the External Compliance Monitor before filing its stay motion.  *See,*

*e.g.*, *Hirschfeld v. Bd. of Elections*, 984 F.2d 35, 39 (2d Cir. 1993) (finding a delay in requesting

---

[9]  Again, Apple is remarkably cavalier in its interpretation of case law.  Stay Mem. at 11-13.  To be sure, *Morrison v. Olson*, 487 U.S. 654 (1988), *Missouri v. Jenkins*, 515 U.S. 70 (1995), and *Muskrat v. United States*, 219 U.S. 346 (1911), establish that the judicial power is limited in scope.  But they say nothing about whether that limited scope encompasses the narrow range of actions authorized by Section VI.  *Morrison* held that the power granted to a special court with authority over independent counsel did not trespass on the executive branch, and that a court may exercise certain powers even if it "is not a power that could be considered typically 'judicial.'"  487 U.S. at 682.  In *Jenkins*, the Court ruled that unconstitutional racial discrimination in one school district did not warrant a remedy across districts.  515 U.S. at 89-90.  Moreover, as Justice Thomas recognized in his concurrence, the case did not involve the separation of powers among branches of the federal government.  515 U.S. at 132.  Finally, *Muskrat* addressed only Article III's "case or controversy" requirement, holding that a lawsuit designed solely to test the constitutionality of a statute is not justiciable.  219 U.S. at 355.

an injunction stay "undermines the Board's argument that absent a stay irreparable harm would result"); *United States v. Int'l Bhd. Of Teamsters*, No. 88 CIV 4486, 2001 WL 422824, at *3 (S.D.N.Y. Apr. 24, 2001) (holding that "inexplicable . . . delay in applying [for stay] suggests a lack of irreparable harm"); *SEC v. WorldCom, Inc.*, 452 F. Supp. 2d 531, 531-32 (S.D.N.Y. 2006) (holding that delay in seeking stay pending appeal precluded movant from satisfying irreparable harm prong).  Couching the harm as the "injunction, particularly as modified and as illustrated by the monitor's recent conduct," Stay Mem. at 15, does not help Apple.  First, as the Court made clear on December 13, the injunction was never modified.  Dec 13, 2013 Tr. at 7:4-11; Dec. 13, 2013 Order (ECF No. 416) at 3.  Second, given that Apple can address any complaints it has concerning how the External Compliance Monitor is carrying out his responsibilities by presenting those objections to the Court for resolution, *see* Final Judgment § VI.H; Dec. 2, 2013 Order (ECF No. 413) at 3, by definition any "harm" it is suffering from "the monitor's recent conduct," Stay Mem. at 15, is not irreparable.  *See Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (to satisfy irreparable harm requirement applicant must show that it will suffer an "actual and imminent" injury that "cannot be remedied" absent the stay).

As shown below, Apple's articulated claims of irreparable harm do not withstand the barest hint of scrutiny or come close to carrying the heavy burden Apple must bear as it seeks a stay after its anticompetitive conduct was clearly established at trial.  *See, e.g.*, *In re N.Y. Skyline, Inc.*, No. 09-10181, 2013 WL 5487938, at *7 (Bankr. S.D.N.Y. Oct. 2, 2013) ("The requirement of irreparable harm is 'applied more stringently after trial, on motions for stays pending appeal. . . .  After judgment is entered, the propriety of the injury . . . has been judicially determined, and its imposition without further delay is surely more acceptable than prior to

19

judgment."); *Purdue Pharm. L.P. v. Endo Pharms. Inc.*, No. 00 Civ. 8029, 2004 WL 306591, at *2 (S.D.N.Y. Feb. 17, 2004) (same); *Hayes v. City Univ. of N.Y.*, 503 F. Supp. 946, 964 (S.D.N.Y. 1980) (same).

### A. Demands For Interviews Do Not Constitute Irreparable Harm

Apple's primary argument is that the Monitor's requests for interviews of its executives will "interfere[] with the effective management of [its] business" and thus inflict on it "unquantifiable harms." Stay Mem. at 17. But Apple fails to establish that interviews by the Monitor are or will be an imminent threat to any specific business interest.

First, Apple has not identified any actions by Mr. Bromwich that have caused harm—let alone irreparable harm—to its business.[10] Second, if Apple does believe that a particular interview or series of interviews would cause irreparable harm, it may seek relief through procedures set forth in the Final Judgment. Final Judgment § VI.H; Dec. 2, 2013 Order (ECF No. 413) at 4. Apple has not taken advantage of these objection rights, nor shown that these procedures are insufficient to prevent any undue harm during the pendency of this appeal.

Apple is not irreparably harmed simply because its executives must spend an occasional hour meeting with Mr. Bromwich. Apple speculates that executive interviews could constitute a time-consuming distraction and argues that "[a]ctivity that interferes with the effective management of a business . . . imposes real but unquantifiable harms." Stay Mem. at 17. But as this Court explained in *Gesualdi v. Laws Constr. Corp.*, simply stating that a judgment will cause "incalculable" losses (or in this case, "unquantifiable harms") is "unhelpful . . . as irreparable injury must be neither remote nor speculative, but actual and imminent." 759 F. Supp. 2d 432,

---

[10] Mr. Bromwich has consistently deferred to Apple's scheduling preferences. *See* Bromwich Decl. ¶ 16; Boutrous Decl., Ex. I at 4. To date, he has interviewed Apple personnel for a total of thirteen hours, only two of which were spent with either a senior executive (the company's general counsel) or a Board member. Bromwich Decl. ¶ 54.

449 (S.D.N.Y. 2011) (internal citations omitted), *aff'd in part and vacated in part on other grounds*, 485 F. App'x 450, 454 (2d Cir. 2012).

Moreover, Apple cites no case law to support the argument that minor time demands on a defendant's employees constitute irreparable harm.[11]  Indeed, even "[a] partial or temporary disruption of business is not irreparable harm."  *In re N.Y. Skyline*, 2013 WL 5487938, at *8 (listing cases).

Finally, Apple's claim that its "constitutional rights" incantation "alone warrants a stay," Stay Mem. at 18, fares no better.  First, Apple does not raise a viable constitutional claim.  *See supra* pp. 14-18.  Second, as the Second Circuit explained immediately following the language Apple quotes:  "After *eBay,* however, courts must not simply presume irreparable harm.  *See eBay*, 547 U.S. at 393, 126 S.Ct. 1837.  Rather, plaintiffs must show that, on the facts of their case, the failure to issue an injunction would actually cause irreparable harm."  *Salinger v. Colting*, 607 F.3d 68, 82 (2d Cir. 2010).  Apple has not done so.

## B.      *"Ex Parte"* Does Not Mean Un-Counseled

Notwithstanding the Final Judgment's clear guarantee that "Apple personnel . . . may have counsel present" during any interview with the Monitor, Final Judgment § VI.G.1, Apple's argument that Section VI exposes it to a "risk[]" of "disclosure of privileged or confidential materials and communications" is premised entirely on its mistaken belief that "*ex parte*" means

---

[11]  Once again, Apple cites cases that do not plausibly support its argument.  Stay Mem. at 17-18.  Its cases say nothing about whether mere time demands on a company's employees, resulting in some undefined disruption, constitute irreparable harm.  Rather, they describe the kinds of actual harms to a business interest that can be irreparable.  *See, e.g., Wisdom Import Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 115 (2d Cir. 2003) (plaintiff denied "minority rights of corporate governance" including "minority veto"); *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1211 (10th Cir. 2009) (plaintiff "deprived of control" of real property and forced to "manage its properties through an intermediary"); *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004) (plaintiff threatened with "loss of [its] relationships with customers and co-brand partners," causing "loss of reputation, good will, and business opportunities"); *Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 38 (2d Cir. 1995) (plaintiff threatened with loss of an entire "unique product line" that was either "essential to the life of the business" or "increase[d] business of the plaintiff beyond sales of that product").

"without counsel present."  Stay Mem. at 19.  As this Court has made clear, "the term *ex parte*, as used in the Court's proposal with respect to communications between the Monitor and Apple did not mean 'un-counseled,' but rather carried the ordinary meaning of '*ex parte*,' *i.e.*, that DOJ and/or the Plaintiff States need not be present during any communication between the Monitor and Apple, and that Apple need not be present during any communication between the Monitor and DOJ and/or the Plaintiff States."  Dec. 13, 2013 Order (ECF No. 416) at 3.  With that clarification, Apple's claim that Section VI could cause it irreparable harm as a result of un-counseled disclosures must fail.

### C.      Paying Fees Is Not Irreparable Harm

Finally, Apple claims that the fees it will pay to the Monitor will cause it irreparable harm, arguing that the Monitor has already imposed excessive fees.  But, if Apple has an objection to the fees Mr. Bromwich is charging, there is a procedure available to Apple for seeking the Court's assistance in resolving its concerns.  *See* Final Judgment § VI.H; Dec. 2, 2013 Order (ECF No. 413) at 3-4.  Apple has not yet properly raised its fee objections with this Court.  *See supra* pp. 12, 15.[12]  Accordingly, any harm Apple believes it may suffer certainly cannot be considered irreparable.

In any event, the cost of complying with a court order is not the kind of harm that a stay pending appeal is supposed to prevent.  *See, e.g.*, *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114-15 (2d Cir. 2005) (declining to preliminarily enjoin state law because "ordinary compliance costs are typically insufficient to constitute irreparable harm"); *In re Bogdanovich*, No. 00 Civ. 2266, 2000 WL 1708163, at *6 (S.D.N.Y. Nov. 14, 2000) (debtors failed to establish

---

[12] Apple has, consistent with Section VI.H. of the Final Judgment and the Court's December 2 Order, written to Plaintiffs raising objections to Mr. Bromwich's fees.  In an effort to resolve the fee dispute, the United States contacted Apple and relayed that Mr. Bromwich is willing to adjust the current fee structure and hourly rates—and that the United States would like to work with Apple to resolve this matter.  To date, Apple has not indicated an interest in engaging in those discussions.

irreparable harm from attorneys' fees incurred as a result of bankruptcy court decision lifting automatic stay of state court litigation); *Glatt v. Fox Searchlight Pictures Inc.*, No. 11 Civ. 6784, 2013 WL 5405696, at *4 (S.D.N.Y. Sept. 17, 2013) (litigation costs, including costs of notice to class members, do not rise to the level of irreparable injury).  This Court has already considered, and rejected, arguments by Apple that the costs of continued proceedings constitute irreparable harm to the company that warrant the imposition of a stay.  *See* Aug. 9, 2013 Tr. at 10:22-11:6.

## III.    STAYING SECTION VI WOULD HARM THE PUBLIC INTEREST

A movant seeking a stay pending appeal bears a larger burden where, as here, the action to be stayed is in the public interest.  Apple claims that the Court should stay Section VI of the Final Judgment because the remaining provisions suffice to protect the public interest during Apple's appeal.  Stay Mem. at 20-21.  But this Court found that the public interest required more than just restoring the competition lost to the defendants' price-fixing conspiracy.  The Court also deemed it necessary to prevent "a recurrence of [that antitrust] violation" or one like it. *Nat'l Soc'y of Prof'l Eng'rs*, 435 U.S. at 697-98; *Ford*, 405 U.S. at 573; *du Pont*, 366 U.S. at 326.  And the fact that "Apple lawyers and its highest level executives" orchestrated a price-fixing scheme and exhibited "a blatant and aggressive disregard [] for the requirements of the law," Aug. 27, 2013 Tr. at 17:1-6, compelled a finding that Apple needs help to "change its culture," *id*. at 20:1-4.  The Monitor was imposed to bring Apple that help.  The public's interest in preventing further antitrust violations by Apple requires that there be no delay in providing Apple the help it needs to develop "a commitment to understand and abide by the requirements of the law."  Aug. 27, 2013 Tr. at 20:1-4.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully submit that this Court should deny

Apple's application for a stay of Section VI of the injunction pending appeal.


Dated:  December 30, 2013

Respectfully submitted,


Mark W. Ryan
Lawrence E. Buterman
Daniel McCuaig
United States Department of Justice
Antitrust Division
450 Fifth Street, NW, Suite 4000
Washington, DC 20530
(202) 532-4753
Mark.W.Ryan@usdoj.gov

*On Behalf of the United States of America*


Eric Lipman
Gabriel Gervey
David Ashton
Assistant Attorneys General
Office of the Attorney General of Texas
P.O. Box 12548
Austin, TX 78711
(512) 463-1579
Eric.Lipman@texasattorneygeneral.gov

24

W. Joseph Nielsen
Gary M. Becker
Assistant Attorneys General
Office of the Attorney General of
Connecticut
55 Elm Street
Hartford, CT 06106
(860) 808-5040
Joseph.Nielsen@ct.gov

*On Behalf of the Plaintiff States*