# EXHIBIT A

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel 213.229.7000
www.gibsondunn.com

Theodore J. Boutrous Jr.
Direct: +1 213.229.7804
Fax: +1 213.229.6804
TBoutrous@gibsondunn.com

October 31, 2013

VIA E-MAIL

J. Robert Kramer, II, Esq.
United States Department of Justice
950 Pennsylvania Avenue, NW, Suite 3220
Washington, D.C. 20530

Gabriel R. Gervey, Esq.
Office of the Texas Attorney General
P.O. Box 12548
Austin, TX 78711

Re:   *United States v. Apple Inc. et al.*, 12-cv-2826 (DLC);
      *State of Texas, et al. v. Penguin Group (USA) Inc., et al.*, 12-cv-3394 (DLC)

Dear Bob and Gabriel:

      Pursuant to Section VI.H of the Final Judgment, we write to provide the United States and Plaintiff States with notice of Apple's objections to certain actions by the External Compliance Monitor. As set forth in detail in Apple's letter to the External Compliance Monitor (attached hereto as Attachment 1), Apple objects to the timing and scope of requests by the External Compliance Monitor to interview Apple's entire Board of Directors, its executive team, and additional senior executives. *See* Final Judgment at § VI.C (ordering the monitor to "conduct a review . . . [of] Apple's internal antitrust compliance policies and procedures" and "Apple's training program" "*as they exist 90 days after his or her appointment*") (emphasis added). Apple also objects to the financial terms of the External Compliance Monitor's engagement, which the Final Judgment requires be "reasonable and customary" and approved by the Plaintiffs. Final Judgment at § VI.I. The External Compliance Monitor has proposed fees that are well above typical hourly fees paid to law firm partners, as well as an additional administrative fee, and has not indicated a willingness to agree to Apple's standard expense policy. *See* Email Exchange between Michael Bromwich and Kyle Andeer, October 23-26, 2013 (attached hereto as Attachment 2). Apple does not believe the proposed fee structure is reasonable and customary, whether for a monitor or a lawyer.

Beijing • Brussels • Century City • Dallas • Denver • Dubai • Hong Kong • London • Los Angeles • Munich
New York • Orange County • Palo Alto • Paris • San Francisco • São Paulo • Singapore • Washington, D.C.

GIBSON DUNN

October 31, 2013
Page 2

We are available to discuss these issues with you at your convenience.

Sincerely,

/s Theodore J. Boutrous, Jr.

Theodore J. Boutrous, Jr.

Attachments

cc: John R. Read, Esq.
     Lawrence J. Buterman, Esq.

# ATTACHMENT 1

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel 213.229.7000
www.gibsondunn.com

Theodore J. Boutrous Jr.
Direct: +1 213.229.7804
Fax: +1 213.229.6804
TBoutrous@gibsondunn.com

October 31, 2013

VIA E-MAIL

Michael R. Bromwich
The Bromwich Group LLC
901 New York Avenue, NW 5th Floor
Washington, D.C. 20001

Re:   External Antitrust Compliance Monitoring

Dear Michael:

It was a pleasure meeting you last week, and Apple looks forward to working with you to achieve our shared objective of developing a comprehensive and effective antitrust training program consistent with Judge Cote's Final Judgment. Apple is fully committed to ensuring that its antitrust training program, and its policies and procedures related thereto, are both robust and effective.

I am writing to follow up on three issues arising from our discussion last week and your recent correspondence (letter of October 23, 2013[1] and e-mails on October 26 and 29, 2013). First, Apple believes that the timing and scope of your requests are inconsistent with the letter and spirit of the Final Judgment. Judge Cote was very clear that the injunction should be narrowly tailored to address the antitrust violation she found in this case and sought to avoid unnecessarily burdening Apple or limiting its ability to innovate and do business in this dynamic industry. *See* Hearing Transcript, *United States v. Apple Inc., et al.*, No. 1:12-CV-2826, at 8-9 (Aug. 27, 2013) ("I want this injunction to rest as lightly as possible on the way Apple runs its business.") (hereinafter "Aug. 27, 2013 Hearing Tr.").[2] Notably in this regard, the Final Judgment provides that the External Compliance Monitor's review of Apple's internal antitrust compliance policies and procedures and antitrust training program is not to commence until "90 days after his or her appointment." Final Judgment at § VI.C. Second, Apple also has concerns over the financial terms of your engagement, which the Final Judgment requires be "reasonable and customary" and approved by the

---

[1] As you are aware, Apple received a letter from you, in draft form, on October 23, 2013, which was not finalized until October 26, 2013.

[2] *See also* Aug. 27, 2013 Hearing Tr. at 27 ("I'm trying to think about, as I've indicated, where the real risks are and to minimize the burdens on Apple.")

Beijing • Brussels • Century City • Dallas • Denver • Dubai • Hong Kong • London • Los Angeles • Munich
New York • Orange County • Palo Alto • Paris • San Francisco • São Paulo • Singapore • Washington, D.C.

**GIBSON DUNN**

October 31, 2013
Page 2

Department of Justice ("DOJ"). Third, we also need to ensure that the confidentiality of any information Apple may share with you during the course of your activities as monitor is appropriately protected.

Apple is hopeful that these issues can be resolved quickly so that we can move forward together to achieve the objectives of the Final Judgment. Each of these issues is discussed in more detail below.

1.  **Timing and Scope of Monitor's Responsibilities**

As you mentioned at the outset of our introductory meeting, the Final Judgment defines the scope of your responsibilities in a manner that is clear and straightforward. The monitor's primary responsibility is to "conduct a review . . . [of] Apple's internal antitrust compliance policies and procedures, *as they exist 90 days after his or her appointment*" and to "also conduct a review to assess whether Apple's training program, required by Section V.C of this Final Judgment, *as it exists 90 days after his or her appointment*, is sufficiently comprehensive and effective." Final Judgment at § VI.C (emphasis added).

During the August 27 hearing Judge Cote explained, "I don't think that the [Monitor] should conduct a review or assessment of the current policies. I would expect that Apple would revise its current policy substantially and procedures and create an effective training program. That will require some time. So I think this should be revised to have the [Monitor] doing an assessment in three months from appointment and *beginning to engage Apple in a discussion at that point*." Aug. 27, 2013 Hearing Tr. at 20-21(emphasis added).

Apple is in the process of revising and enhancing its compliance training programs to ensure that they are robust, comprehensive, effective, and compliant with the terms of the Final Judgment. In this regard, Apple will soon be bringing on board its new Antitrust Compliance Officer, as directed by the Final Judgment, and adding new lawyers with antitrust compliance expertise in the legal department. In light of the express language of the Final Judgment, as well as Judge Cote's elaboration at the August 27 hearing, the time period for your review of Apple's antitrust policies and procedures and training program does not commence until January 14, 2013 (90 days from the date of appointment).

Accordingly, your request to begin interviewing Apple's entire board and its executive team, as well as additional senior executives on November 18 is premature, not authorized by the Final Judgment, and would not only be disruptive to Apple's business operations but also directly contrary to Judge Cote's intent. We fully understand and expect that there will be a need to conduct interviews with certain personnel at some point once Apple's new training programs are up and running. And you have Apple's assurance that it will be a most willing partner in facilitating those meetings. Furthermore, there will be ample opportunity over the course of your engagement to determine whether Apple's new training program is consistent with the Judge's Order and is effective in its impact.

October 31, 2013
Page 3

However, it makes no sense, and would be extremely disruptive, to schedule those interviews before Apple has completed its internal assessment and developed its new antitrust training program.

2.   **Financial Terms and Fiduciary Responsibilities**

The Final Judgment requires the monitor to operate on "reasonable and customary" terms" that are "consistent with reasonable expense guidelines." Final Judgment at § VI.I. Apple has already raised concerns regarding your hourly fees, the administrative fee you seek to impose in addition to those fees, the need for additional personnel, and finally, adherence to a defined expense policy. Apple does not believe your proposed fee structure is reasonable and customary, whether for a monitor or a lawyer, and respectfully objects to it. Moreover, your dictate that we simply accept these fees and costs at face value without any support or explanation is inconsistent with the company's fiduciary responsibilities to its shareholders, and to the customary practices of Apple and other companies in conducting business or legal activities. And, while the Final Judgment requires DOJ and Plaintiff States to approve your fee and expense structure (*see* Final Judgment at § VI.I), it appears from your correspondence you have not secured such approval but instead have simply submitted your proposed approach to DOJ and it has not acted upon it.

3.   **Confidentiality**

To protect the confidentiality of any information Apple may share with you during the monitorship, we have attached a non-disclosure agreement for your signature that is consistent with Apple's standard confidentiality agreements and the Stipulated Protective Order in this matter. Apple also reserves its right to assert attorney-client privilege and work product protections as appropriate throughout this process. Finally, Apple again requests that, consistent with its policies, you, the Bromwich Group, Goodwin Procter, and Fried Frank refrain from using Apple's name in any marketing materials or media communications like the press release Goodwin Procter issued announcing your appointment and containing a direct quote from you.

\* \* \* \* \*

Concurrent with this response, Apple has submitted to DOJ and Plaintiff States a notice of its objections, all of which are described above. Please direct any future communications on these issues to me. As we work to resolve these issues, Apple will continue to focus its efforts on its internal assessment and enhancement of its antitrust policies and procedures and the training program mandated by the Final Judgment. As you know, Apple has retained seasoned antitrust practitioners and former government officials at the law firm of Simpson Thacher to aid it in this process. We appreciate an honest and open

GIBSON DUNN

October 31, 2013
Page 4

dialogue on these issues, and look forward to working with you to establish antitrust training programs that are comprehensive and effective in satisfaction of the Final Judgment.

Very truly yours,

s/ Theodore J. Boutrous, Jr.

Theodore J. Boutrous, Jr.

Enclosure

GIBSON DUNN

# ATTACHMENT 2

**Subject:**                              Monitoring Letter

On Oct 26, 2013, at 8:47 AM, Michael Bromwich <michael.bromwich@bromwichgroup.com> wrote:

Dear Kyle,

Thanks very much for your response to my cover note and our draft letter. Unfortunately, I think you may have misconceived its purpose.  It was not to begin a negotiation about fees, rates, and expenses, nor was it meant to provide you with an opportunity to provide us with guidelines that are applicable to providers of legal services where Apple is the client -- but that are inapplicable to firms providing independent monitoring services.  It was to give you an opportunity to modify or revise the confidentiality provision.  In light of your response, it probably makes sense to execute any enhancements to the confidentiality agreement separately.  I have attached a signed copy of the monitoring letter.  The only change is the date.

Without responding to each item in your note, I wanted to clarify the following:

1. Administrative fees are completely standard for consulting firms.  The Bromwich Group is not a law firm and does not practice law.  The normal range for the administrative/management fees for consulting firms is between 10% and 25%.  Therefore, the 15% is at the low end of the range.

2.  We will add additional personnel, whether from Fried Frank or elsewhere, only as necessary and appropriate.  We will keep you informed if we add personnel performing significant substantive responsibilities but not if we use a lawyer to do a discrete research project or a legal assistant to provide support.  We will do this as a courtesy and we do not intend to provide a rationale.  It will be because we need additional assistance.

3. On expenses, please advise whether your lawyers from Gibson Dunn working on this matter, your Wilmer lawyers working on the Samsung matter in the ND of California, and other lawyers working on high-end litigation and corporate matters follow these expense guidelines without exception.  If they do, we will seriously consider doing so.  We are happy to receive from you a list of Apple's preferred hotels.

4.  We are serving as an independent compliance monitor pursuant to a Court order, not as counsel to Apple subject to its direction and control.  Accordingly, we will not be providing a budget. You are incorrect in stating that this is standard practice in monitorships.  We will do everything we reasonably can to keep fees and expenses to a minimum.  We plan to provide you each month with a statement of the number of hours spent by each timekeeper on this matter but not to provide descriptions of the amount of time spent on specific tasks.  We will maintain such records and will share them with the Department of Justice, the Plaintiff States, and the Court if requested to do so.

5. We will submit our invoices directly to you, or to someone you designate.  We will be happy to execute W-9s.

6.  My consulting firm did not issue a press release.  Goodwin Procter posted an item on its web site without my advance knowledge or consent to clarify that the firm itself would not be involved in the monitorship.

We very much look forward to your responses to the various substantive matters we discussed on Tuesday and to your confirming the particulars of our initial visit to Cupertino the week of November 18.

Best regards.


*MRB*


On Fri, Oct 25, 2013 at 10:45 PM, Kyle Andeer <kandeer@apple.com> wrote:

Dear Michael,

Thank you for sharing your draft letter  It is very helpful in that it tees up a number of different issues that make sense to address at the outset of our relationship.  As you noted, the treatment of confidential information is one of several issues that will require additional research and thought.  Although the disclosure of such information is highly unlikely given the narrow scope of the External Compliance Monitor's responsibilities, we agree that this is an issue we should seek to address at the outset.  It likely makes sense for us to execute one of our "customary confidentiality agreements" as contemplated in the Final Judgment.  Final Judgment at § VI.I, U.S. v. Apple, Inc., No. 1:12-CV-2826 (S.D.N.Y. Sept. 5, 2013).  We will provide a full response on these and other issues in the next week, as well as a retention obligations agreement and confidentiality agreements to address this point.

I do want to raise concerns with the compensation and expense terms outlined in your letter which are in tension with the terms of the Final Judgment which require the External Monitor to operate on "reasonable and customary terms" that are "consistent with reasonable expense guidelines." Final Judgment at § VI.I, U.S. v. Apple, Inc., No. 1:12-CV-2826 (S.D.N.Y. Sept. 5, 2013).   From our perspective they do not reflect the competitive realities of the marketplace.  We expect that your firm – like all of Apple's legal service providers – will comply with Apple's Outside Service Provider Policy ("OSP") (attached) and its standard expense policy (also attached).

1.  Administrative Fee.  You request that the Bromwich Group be paid a "management/ administrative fee" of 15% of all billable hours.  As you will note in the attached policies, Apple does not pay any of its legal vendors a "management/administrative fee."

2.  Hourly Rates.  You have requested that Apple pay you $1,100 per hour and Mr. Nigro $1,025 per hour.  These rates are very high, particularly when compared to the average rate Apple pays a law firm partner ($565 per hour).  Even if one looks at the top 25%, the average rate per partner is $801 per hour.  Apple is prepared to  compensate you at $800 per hour and Mr. Nigro at a rate of $700 per hour.  With the foregoing principles in mind, we also ask that you provide the hourly rate for Maria Cirincione.

3.  Additional Personnel.  Pursuant to Apple's Outside Service Provider Policy, the Bromwich Group (and Fried Frank) should notify Apple before adding new timekeepers to its team and provide a rational for the additional resources. As you appreciate, this is a standard requirement that ensures costs do not spiral out of control.

4. Expense policy.  Apple expects that you will adhere to its standard expense policy (attached) Apple will pay for coach airfare, lodging at Apple preferred hotels, and per diems of $15 for breakfast, $25 for lunch and $30 for dinner.  The policy also outlines our guidelines on telephone and copying charges.  Apple will not reimburse for data storage and information technology services.  This is consistent with these policies is in keeping with the "reasonable expense guidelines" language in Section VI.I of the Final Judgment.

5. Budget and Invoicing.  The Bromwich Group should submit an expected budget for its services for the coming year.  As you know this is standard practice in any engagement, including in monitorships.  In addition, Apple expects that your invoices will describe time spent on tasks and a description of those tasks.  Apple reserves the right to challenge fees that are excessive, outside the scope your responsibilities, and/or unjustified pursuant to Sections VI.I. and VI.J. of the Final Judgment.

6. Billing.  Apple requires firms to submit invoices - within 30 days of service - via an electronic portal.  We can set up a meeting with our eBilling team as soon as you are ready.  Apple will also require a signed W9 in order to pay invoices for your firm.

7. Marketing.  Apple does not allow the firms it works with to market their representation of Apple (see OSP at 6).  We noted that your firm, Goodwin Proctor, your consulting practice, The Bromwich Group, and Mr. Nigro's firm, Fried Frank all issued press releases announcing your appointments.  We ask that you please refrain from using Apple's name in any marketing materials or media communications.

The requests in your letter do not reflect market realities.  That raises significant concerns on our part.  We sincerely hope that you will reflect on these points and that we can work out these issues without going to the Department of Justice and the courts.  Please let me know if you would like to discuss.

Best regards,

Kyle


On Oct 23, 2013, at 3:58 PM, Michael Bromwich <michael.bromwich@bromwichgroup.com> wrote:


Dear Kyle,

I have attached a draft letter that sets forth our duties and responsibilities as the external antitrust compliance monitor under the Final Judgment, and touches on other matters relevant to our monitoring work, including information about fees, expenses, and confidentiality.  This letter is specifically tailored to the provision of monitoring services under the Final Judgment.  Accordingly, it is different in various ways from the engagement letter that would be appropriate if Apple were a client of a law firm or my consulting firm.

Before I provided a signed version of the letter, I wanted to make sure it should be addressed to you rather than someone else at Apple, and give you the opportunity to suggest any revisions to Section 10 of the letter dealing with confidentiality.  I realize this may be a sensitive issue and I wanted to make sure the language I have crafted is acceptable.  I am willing to consider reasonable modifications.

Please confirm that you should be the recipient of this letter (or provide an alternative addressee) and suggest any reasonable changes to the confidentiality language as promptly as you can.

Thanks very much.

*MRB*
<Apple Monitoring Letter -- 10-23.doc>


<Apple -- 10-26 Letter.pdf>

_____
Confidentiality Notice: The information contained in this e-mail and any attachments may be legally privileged and confidential. If you are not an intended recipient, you are hereby notified that any dissemination, distribution or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify the sender and permanently delete the e-mail and any attachments immediately. You should not retain, copy or use this e-mail or any attachment for any purpose, nor disclose all or any part of the contents to any other person. Thank you.