**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                    :
UNITED STATES OF AMERICA,                                           :
                                                                    :
                            Plaintiff,                              :
                                                                    :
            v.                                                      :
                                                                    :      12 Civ. 2826 (DLC)
APPLE INC.,                                                         :
                                                                    :
                            Defendant.                              :
                                                                    :
                                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                    :
THE STATE OF TEXAS,                                                 :
THE STATE OF CONNECTICUT, *et al.*,                                 :
                                                                    :
                            Plaintiffs,                             :
                                                                    :
            v.                                                      :
                                                                    :      12 Civ. 3394 (DLC)
PENGUIN GROUP (USA) INC., *et al.*,                                 :
                                                                    :
                            Defendants.                             :
                                                                    :
                                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY IN SUPPORT OF DEFENDANT APPLE INC.'S MOTION BY**
**ORDER TO SHOW CAUSE FOR A STAY OF THE INJUNCTION PENDING APPEAL**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT ................................................................................................................ 2

    I.    Apple Has A Substantial Possibility Of Success On Appeal From The Injunction ............................................................................................................ 2

           A.    Mr. Bromwich's Declaration Against Apple Requires That He Be Removed As Monitor And Shows Apple Will Prevail On The Merits ...................................................................................................... 2

           B.    Apple's Other Objections Are Likely To Succeed ................................... 5

    II.    Apple Has Not Waived Its Objections To The Monitorship .................................... 12

    III.   Apple Continues To Suffer Irreparable Harm As A Result Of The Injunction ........ 14

    IV.  Staying The Injunction Would Not Harm The Public Interest................................. 15

CONCLUSION ............................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Benjamin v. Fraser*,
    343 F.3d 35 (2d Cir. 2003) ................................................................................ 10

*Caperton v. A.T. Massey Coal Co., Inc.*,
    556 U.S. 868 (2009) ......................................................................................... 3

*CFTC v. Schor*,
    478 U.S. 833 (1986) ......................................................................................... 12

*Chase Manhattan Bank v. Affiliated FM Ins. Co.*,
    343 F.3d 120 (2d Cir. 2003) ............................................................................ 5

*City of N.Y. v. Mickalis Pawn Shop, LLC*,
    645 F.3d 114 (2d Cir. 2011) ............................................................................ 7

*Cobell v. Norton*,
    334 F.3d 1128 (D.C. Cir. 2003) ................................................... 1, 2, 7, 10, 11, 12

*Freedom Holdings, Inc. v. Spitzer*,
    408 F.3d 112 (2d Cir. 2005) ............................................................................ 14

*Green v. United States*,
    13 F.3d 577 (2d Cir. 1994) .............................................................................. 13

*In re Bogdanovich*,
    No. 00 Civ. 2266, 2000 WL 1708163 (S.D.N.Y. Nov. 14, 2000) .......................... 14

*In re Peterson*,
    253 U.S. 300 (1920) ......................................................................................... 10, 11

*Juan F. v. Weicker*,
    37 F.3d 874 (2d Cir. 1994) .............................................................................. 6

*La Buy v. Howes Leather Co.*,
    352 U.S. 249 (1957) ......................................................................................... 3

*Liljeberg v. Health Servs. Acquisition Corp.*,
    486 U.S. 847 (1988) ......................................................................................... 3

*Lister v. Commr's Court*,
    566 F.2d 490 (5th Cir. 1978) ........................................................................... 2, 3

## **TABLE OF AUTHORITIES** *(cont.)*

**Page(s)**

*Local 28 of Sheet Metal Workers' Int'l Ass'n v. E.E.O.C.*,
   478 U.S. 421 (1986) ............................................................................................... 11

*McKusick v. City of Melbourne*,
   96 F.3d 478 (11th Cir. 1996) ............................................................................... 14

*People ex rel. Clancy v. Superior Court*,
   39 Cal.3d 740 (1985) ............................................................................................ 9

*Powell v. Ward*,
   487 F. Supp. 917 (S.D.N.Y. 1980) ............................................................... 10, 11

*Reed v. Rhodes*,
   691 F.2d 266 (6th Cir. 1982) .......................................................................... 3, 10

*Ruiz v. Estelle*,
   679 F.2d 1115 (5th Cir. 1982) ................................................................... 2, 10, 11

*Samnorwood Indep. Sch. Dist. v. Tex. Educ. Agency*,
   533 F.3d 258 (5th Cir. 2008) ............................................................................... 14

*Sentis Group, Inc. v. Shell Oil Co.*,
   559 F.3d 888 (8th Cir. 2009) ................................................................................. 5

*United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Props.*
   *Meriden Square, Inc.*,
   30 F.3d 298 (2d Cir. 1994) ................................................................................. 13

*United States ex rel. O'Keefe v. McDonnell Douglas Corp.*,
   132 F.3d 1252 (8th Cir. 1998) ............................................................................... 8

*United States v. ITT Cont'l Baking Co.*,
   420 U.S. 223 (1975) ............................................................................................... 6

*United States v. Microsoft*,
   231 F. Supp. 2d 144 (D.D.C. 2002) ...................................................................... 6

*United States v. Philip Morris USA Inc.*,
   566 F.3d 1095 (D.C. Cir. 2009) .......................................................................... 12

*United States v. Talao*,
   222 F.3d 1133 (9th Cir. 2000) ............................................................................... 8

*United States v. Vulcan Society, Inc.*,
   No. 07-cv-2067, 2010 WL 2160057 (E.D.N.Y. May 26, 2010) .......................... 12

## TABLE OF AUTHORITIES *(cont.)*

**Page(s)**

*Weeks v. Indep. Sch. Dist. No. I-89 of Okla. Cnty., OK., Bd. of Educ.*,
  230 F.3d 1201 (10th Cir. 2000) ............................................................... 8

*Weibrecht v. S. Ill. Transfer, Inc.*,
  241 F.3d 875 (7th Cir. 2001) ................................................................. 8

*Young v. U.S. ex rel. Vuitton et Fils S.A.*,
  481 U.S. 787 (1987) ........................................................................ 8, 9

**Statutes**

28 U.S.C. § 455 ........................................................................... 3, 4, 13

**Rules**

Fed. R. Civ. P. 53 ............................................................................ 3, 12

**Other Authorities**

Harry Jaffe, Washingtonian,
  "Why DC's Best Cops aren't Protecting You" (Jan. 1, 2007) ................................... 6

Sam Wood, Philadelphia Inquirer,
  "Ramsey's shrewd move may save Philadelphia millions" (Dec. 30, 2013) ........................ 6

## PRELIMINARY STATEMENT

Plaintiffs fundamentally misunderstand the legal and constitutional limits on a court-imposed monitor. If there were any doubt about this, plaintiffs removed it by completely endorsing Mr. Bromwich's conduct and filing a declaration, signed by the monitor himself, in opposition to a motion by the entity being monitored. Mr. Bromwich's now-open opposition to Apple and collaboration with plaintiffs prevent him from legally and constitutionally serving as this Court's agent under Rule 53. As an "advocate for the plaintiffs" (*Cobell v. Norton*, 334 F.3d 1128, 1143 (D.C. Cir. 2003) (internal quotation marks omitted)), acting like an Executive Branch official, Mr. Bromwich cannot impartially fulfill the role this Court gave him in the Final Judgment; he must therefore be disqualified (*see* Dkt. 425) and a stay should be granted.

Whereas this Court intended "to rest as lightly as possible on the way Apple runs its business" (Dkt. 371 at 8-9), Mr. Bromwich thinks he has a license to "crawl into [the] company," and as a result continues to demand that Apple "take down barriers" to his access (Boutrous Reply Decl. ¶ 15) so he can set up shop in Apple's boardroom and executive offices in Cupertino for two years in order to monitor and change the corporate culture. Plaintiffs fully endorse Mr. Bromwich's misguided view (Opp. 16), but in doing so describe the monitor plaintiffs *sought*, not the much more limited monitor this Court actually *imposed*. Although a company may *consent* to a much broader monitorship (as Mr. Bromwich's previous subjects apparently have), such a monitorship cannot be imposed on a company over its objection.

Apple has objected to the proceedings at every step and attempted to resolve its objections by meeting and conferring with plaintiffs, and its objections have all been properly preserved. Moreover, many of Apple's objections could not have been anticipated before the monitorship was established: Apple's objections necessarily developed and evolved as Mr.

Bromwich began and pressed ahead with his invalid and unconstitutional expansion of the Final Judgment. And, in any event, as plaintiffs concede, Apple's "separation of powers claim cannot be waived." Opp. 16 n.6.

Apple has complied with every aspect of the Final Judgment, and is working diligently to implement all the required compliance and training programs. Andeer Decl. ¶¶ 2-3; Reilly Decl. ¶ 3; Boutrous Reply Decl. ¶ 15. Nevertheless, plaintiffs continue to disparage Apple, and argue that Apple is "an adjudicated price fixer." Opp. 1. This refrain simply begs the question: Apple is appealing this Court's price-fixing findings and Apple should not be harmed by a monitor acting far outside his legal and constitutional authority in a way that could not be repaired if Apple prevails on appeal. The stay should be granted.

## ARGUMENT

## I.     Apple Has A Substantial Possibility Of Success On Appeal From The Injunction

The Court's Final Judgment as interpreted and implemented by Mr. Bromwich to date, including his filing a declaration against Apple in this litigation, violates Rule 53, Apple's due process rights, and the constitutional separation of powers.

### A.      Mr. Bromwich's Declaration Against Apple Requires That He Be Removed As Monitor And Shows Apple Will Prevail On The Merits

Plaintiffs are incorrect to assert that Mr. Bromwich has not "assumed a plaintiff role or has failed to act objectively." Opp. 15 n.4, 16. Indeed, Mr. Bromwich is literally plaintiffs' star witness in opposition to a stay, and therefore Apple's litigation adversary. As an "'advocate' for the plaintiffs," he cannot serve as an agent of the Court. *Cobell*, 334 F.3d at 1143 (2003) (quoting *Ruiz v. Estelle*, 679 F.2d 1115, 1162 (5th Cir. 1982)); *see also Lister v. Commr's Court*, 566 F.2d 490, 493 (5th Cir. 1978) ("Having served as a witness for one side in the case, the [special master] was accordingly disqualified"). Apple's strong likelihood of success on this

issue warrants a stay of the monitorship while the Court considers Apple's objections and, if the Court denies the objections, an appeal.

Plaintiffs do not dispute, and the Court has acknowledged (Dkt. 410), that Rule 53 governs Mr. Bromwich's appointment.  Rule 53(a) limits a monitor's authority to issues that would otherwise be addressed "by an available district judge or magistrate judge."  Fed. R. Civ. P. 53(a)(1)(C); *see La Buy v. Howes Leather Co.*, 352 U.S. 249, 256 (1957); *Reed v. Rhodes*, 691 F.2d 266, 269 (6th Cir. 1982) (special masters act "in a quasi-judicial capacity").  Plaintiffs concede that the Court may appoint a monitor only to aid the Court in performing specific judicial functions, and that a monitor must perform his duties objectively.  *See* Opp. 8.

A judge must be disqualified if his impartiality "might reasonably be questioned," if he "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding," or if he has a financial interest in the proceedings. 28 U.S.C. § 455(a), (b)(1), (b)(4).  Indeed, this section and due process require recusal when there is "*even the appearance* of partiality."  *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860 (1988) (internal quotation marks omitted) (emphasis added); *see also Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 878 (2009) (due process).

These same standards apply to Mr. Bromwich, as Rule 53 requires that a special master disqualify himself under any circumstances in which a judge would need to disqualify himself. Fed. R. Civ. P. 53(a)(2); *id.* advisory committee note ("Masters are subject to the Code of Conduct for United States Judges"); *Lister*, 566 F.2d at 493.

There can be no question that Mr. Bromwich must be disqualified under the foregoing standards.  His submission of a lengthy declaration (inaccurately) testifying about disputed evidentiary facts in support of plaintiffs' opposition to Apple's motion for a stay is grossly

inappropriate behavior for someone appointed by the Court purportedly to serve as the Court's agent in carrying out its judgment and judicial functions.   He produced to plaintiffs communications from Apple to Mr. Bromwich that plaintiffs were not copied on (the exhibits), and surely collaborated and discussed his declaration *ex parte* with plaintiffs before filing it, which raises a host of questions, including the nature of those conversations, whether plaintiffs assisted with the declaration, whether Apple is being charged for his time spent drafting the declaration—all of which would be plainly inappropriate.   By literally becoming a witness testifying for the plaintiffs in a contested proceeding against Apple, Mr. Bromwich has now made it clear that that he "has a personal bias or prejudice concerning a party, [and] personal knowledge of disputed evidentiary facts concerning the proceeding."  28 U.S.C. § 455(b)(1).

Indeed, Mr. Bromwich's declaration proves Apple's point—that he is not disinterested, that he has taken an adversarial, rather than judicial, stance towards Apple, that he has a false conception of his mandate, and that he is relying on conversations with the Court and plaintiffs to define the scope of his authority rather than the Final Judgment itself and this Court's statements on the record explaining it.   In 75 paragraphs, attaching over 40 exhibits, Mr. Bromwich complains about the number of interviews that were scheduled and that he was not readily given access to Apple's top executives and board members long before the January 14 date that triggers his principal activity.   Bromwich Decl. ¶¶ 32, 42-43, 45, 54.   In doing so, he misstates numerous facts about his discussions with Apple (Boutrous Reply Decl. ¶¶ 2-6, 13) and relies on his subjective interpretation of the facts in his efforts to explain his motivation (*e.g.*, *id.* ¶ 5).  Mr. Bromwich's declaration portrays the antithesis of a person who should be permitted to serve in this matter as a judicial officer.

If the judge presiding over a case filed a declaration *on behalf of one of the parties in the*

*litigation*, the judge's impartiality in the case would most certainly be questioned. *Cf. Sentis Group, Inc. v. Shell Oil Co.*, 559 F.3d 888, 904 (8th Cir. 2009) (reassignment required where judge had exhibited a "high degree of antagonism" toward a party). So too if the judge had a financial interest in the proceedings and, for example, were paid more for each witness who testified or for each day of trial proceedings (as Mr. Bromwich effectively is here), the judge would be forced to disqualify himself. *Cf. Chase Manhattan Bank v. Affiliated FM Ins. Co.*, 343 F.3d 120, 128 (2d Cir. 2003) (financial interest requires disqualification). Rule 53(a)(2) and due process thus require Mr. Bromwich's disqualification, and Apple is likely to prevail on this issue before this Court and the Second Circuit.

### B.    Apple's Other Objections Are Likely To Succeed

Apple's other objections to Mr. Bromwich's roving investigation are likely to succeed, either before this Court or on appeal, and the monitorship should therefore be stayed while those objections are fully and finally adjudicated.

1. Mr. Bromwich continues to confirm the basis for Apple's objections to his overbroad and intrusive investigation. During an interview with board member and chairman of the Audit and Finance Committee, Dr. Ronald Sugar, Mr. Bromwich sought to establish a direct relationship with Dr. Sugar and described his duty as "crawl[ing] into [the] company," and demanded that Apple "take down barriers" to his access. Boutrous Reply Decl. ¶ 15.

Mr. Bromwich has attempted to justify such a broad mandate by pointing to the powers possessed by compliance monitors, who are charged with ensuring broad compliance with the law. Bromwich Decl. ¶ 11. Plaintiffs, likewise, describe Mr. Bromwich's mandate to "report on Apple's antitrust *compliance*, policies and training programs." Opp. 16 (emphasis added). But Mr. Bromwich's mandate is not to ensure compliance with the law or the Final Judgment, or to

change Apple's "culture" or "tone." Opp. 1; Bromwich Decl. ¶ 16. The Final Judgment limits his authority to reviewing specifically "Apple's existing internal antitrust training compliance policies and procedures and the training program required by" the Final Judgment "as they exist 90 days after his … appointment." Dkt. 374 § VI.B, C. The Court explained on the record that the injunction was "to rest as lightly as possible on the way Apple runs its business," and that the Court was *not* "charging [the monitor] with assessing Apple's compliance generally with the terms of the final judgment." Dkt. 371 at 8-9, 17. In short, the Final Judgment does not give him authority to monitor general adherence to the law or to ferret out wrongdoing. *Id.* § VI.F.

As a result, plaintiffs' and Mr. Bromwich's reference to other monitorships, including Mr. Bromwich's previous engagements, is inapposite. Mr. Bromwich cites three other matters in which he has served as monitor,[1] but he does not explain the scope of those engagements, and he certainly does not show that his role in those cases survived a judicial challenge. In fact, all of the engagements appear to flow from negotiated *consent decrees*, which are fundamentally different from a *court-imposed* monitorship.

Monitorships that result from consent decrees, such as the monitorship in *United States v. Microsoft Corp.*, 231 F. Supp. 2d 144 (D.D.C. 2002), highlighted by plaintiffs (Opp. 8-9), "'should be construed basically as contracts.'" *Juan F. v. Weicker*, 37 F.3d 874, 878 (2d Cir. 1994) (quoting *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 236-37 (1975)). A party

---

[1] Contrary to his claim that these monitorships were without controversy (Bromwich Decl. ¶ 8), those involved in Mr. Bromwich's previous investigations have raised objections similar to Apple's here. *See*, *e.g.*, Sam Wood, *Philadelphia Inquirer*, "Ramsey's shrewd move may save Philadelphia millions" (Dec. 30, 2013) (former Washington D.C. Chief of police monitored by Mr. Bromwich explaining that "It's just absolutely incredible the kind of money being spent on these things. When monitors are getting that kind of money it can reduce the incentive to declare the department in full compliance and move on. It can become unnecessarily protracted."); Harry Jaffe, *Washingtonian*, "Why DC's Best Cops aren't Protecting You" (Jan. 1, 2007) (police-union chief Kristopher Baumann stating in regard to the $3 million paid to Bromwich that "It just benefits Fried Frank and its consultants").

may agree to let a monitor inspect every aspect of its business or consent to interaction without counsel present.  *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 146 (2d Cir. 2011).

By contrast, a monitor imposed over a party's objection cannot strong-arm that party into agreeing to be investigated, for all the reasons discussed in Apple's motion.  Mot. 9-15.  Plaintiffs ignore this distinction.  Here, Apple opposed the monitorship as improper and unnecessary, reserved its right to challenge the appointment, appealed the Final Judgment, objected to Mr. Bromwich's appointment, and objected to the manner in which Mr. Bromwich is carrying out his duties.  *See* Dkt. 331 at 9-13; Dkt. 379; Dkt. 419 ¶ 3.  The Court and its agents are therefore confined to judicial functions.  *Cobell*, 334 F.3d at 1142.

Mr. Bromwich asserts that his "request for limited preliminary background interviews to learn about corporate structure, process, culture, and tone" are not evidence of an investigation at all, let alone a "roving" or "amorphous" one.  Bromwich Decl. ¶ 55; Opp. 10.  Not only is it beyond his mandate to delve into Apple's "culture" and "tone," but his "limited" preliminary interviews are anything but, as set forth in Apple's motion.  *See* Mot. 3, 16-17.  Indeed, Mr. Bromwich stated that his interviews thus far were only the first of multiple rounds of interviews with Apple's executives and board members.  Boutrous Reply Decl. ¶ 2; Andeer Decl. ¶ 5.

Moreover, Mr. Bromwich in his interviews has strayed far from his mandate under the Final Judgment to review Apple's antitrust compliance and training programs as they exist 90 days after his appointment.  Dkt. 374 § VI.B, C.  For example, in his interview with Dr. Sugar, Mr. Bromwich asked Dr. Sugar to identify (over Apple's counsel's objection) the most significant compliance problems at the time Dr. Sugar joined Apple's Audit Committee.  Boutrous Reply Decl. ¶ 16.  Mr. Bromwich also suggested in his first meeting with Apple that he was entitled to obtain *privileged* information, and that producing such information to him would

not constitute a waiver of privilege because he was acting as an arm of the Court.  Boutrous Reply Decl. ¶ 2.  By contrast, Mr. Bromwich has to date refused to offer any concrete guidance as to what an effective antitrust compliance program would look like.  Andeer Decl. ¶ 4.

Plaintiffs' claim that Mr. Bromwich has not sought to contact Apple personnel directly rather than through counsel is simply false.  Indeed, he sent a letter directly to Apple CEO Tim Cook, and sought to establish a direct line of communication with the chair of the Apple Board's Audit Committee and Apple's Antitrust Compliance Officer.  Boutrous Reply Decl. ¶¶ 13, 15.  The Court's *sua sponte* proposed amendments (Dkt. 410) appeared to be granting exactly the powers that Mr. Bromwich was seeking to assert over Apple's objection, but the Court's withdrawal of the proposed amendments and clarification in the December 13, 2013 conference[2] make clear that he has no such authority.  The Court's clarification, however, has not "moot[ed]" this issue, as plaintiffs claim (Opp. 6), because despite direction from the Court, Mr. Bromwich continues to seek to justify direct, uncounseled interaction with Apple personnel by reference to his having interviewed senior executives "directly" in past monitorships, in none of which the "monitored entity hired outside counsel."  Bromwich Decl. ¶¶ 11, 27 n.6.

2. Mr. Bromwich's support of plaintiffs' opposition also demonstrates that Apple is being deprived of its right to a "disinterested prosecutor" without "a personal interest, financial or otherwise."  *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 808 (1987) (internal quotation marks omitted).  Plaintiffs attempt to factually distinguish *Young* and the other cases

---

[2]  While the Court suggested in its December 2, 2013 order that Apple was interpreting the proposed amendments incorrectly, Apple's interpretation was entirely reasonable in light of Mr. Bromwich's behavior and because "*ex parte*" has been used to refer broadly to any contact between opposing counsel and a represented party outside the presence of its counsel.  *See, e.g.*, *Weibrecht v. S. Ill. Transfer, Inc.*, 241 F.3d 875, 880 (7th Cir. 2001); *United States v. Talao*, 222 F.3d 1133, 1136 (9th Cir. 2000); *Weeks v. Indep. Sch. Dist. No. I-89 of Okla. Cnty., OK., Bd. of Educ.*, 230 F.3d 1201, 1211 (10th Cir. 2000); *United States ex rel. O'Keefe v. McDonnell Douglas Corp.*, 132 F.3d 1252, 1254 (8th Cir. 1998).

on which Apple relies (Opp. at 15 n.5), but they do not dispute the constitutional mandate established in those cases that every defendant be given a fair and disinterested prosecutor.

For example, the private prosecutor in *Young* was biased both because his client stood to gain from a finding of contempt, and also because regardless of the outcome, the lawyer had an unfair opportunity to gain information or use the prosecution as a bargaining chip in other cases. *See* 481 U.S. at 806.   *Young* teaches that *any* private interest that detracts from the impartial public service of a prosecutor is grounds for disqualification.  And the private plaintiff in *People ex rel. Clancy v. Superior Court*, 39 Cal.3d 740, 746-48 (1985), stood only to gain an increase in the amount of his compensation if he prevailed—just as Mr. Bromwich stands to gain from continuing compensation if he successfully expands and extends his monitorship.

Plaintiffs' attempt to "boil[] down" Apple's argument to the mere fact that Mr. Bromwich is paid by the hour is completely disingenuous.  Opp. 15.  Apple objects to far more than the fact that Mr. Bromwich charges an hourly rate.  He acknowledges no limits on the scope of his work and he refuses to accede to any.  Apple objects to Mr. Bromwich's submission of a declaration in support of Apple's adversaries, his communications and collaboration with the government in an effort to expand his mandate and oppose this motion, his financial demands, and his adversarial, inquisitorial, and prosecutorial conduct toward Apple since his appointment.  Boutrous Reply Decl. Ex. B.  What these facts "boil down" to is an unmistakable appearance of bias.

With respect to the rates Mr. Bromwich is charging, Apple respectfully submits that serving as a court-imposed monitor is a form of public service and should not be treated as a profit-making enterprise governed by standards that apply when companies consensually retain lawyers of their choice in the private sector.  *See* Boutrous Reply Decl. Ex. D.  Thus, even more appropriate benchmarks than private sector billing rates are the salaries of public officials who

perform the kind of functions that have been assigned to Mr. Bromwich, such as judges and Department of Justice officials.  The compensation structure that Mr. Bromwich demanded would result in fees that vastly exceed those amounts, making them neither reasonable nor customary, and creating improper personal incentives, or at least the appearance thereof.

3. Mr. Bromwich's support of plaintiffs in opposition to Apple's motion also highlights the injunction's and Mr. Bromwich's violation of the separation of powers.

In appointing a monitor, this Court can delegate only the powers that it possesses, and therefore can appoint a special master or monitor to perform only "quasi-judicial" functions. *Benjamin v. Fraser*, 343 F.3d 35, 45-46 (2d Cir. 2003), *overruled on other grounds by Caiozzo v. Koreman*, 581 F.3d 63 (2d Cir. 2009); *see also Reed*, 691 F.2d at 269 (special masters act "in a quasi-judicial capacity"); *Cobell*, 334 F.3d at 1139 ("Special Master-Monitor … was serving as a judicial officer").  Plaintiffs acknowledge that monitors may aid the Court only in the performance of its *judicial* duties.  *See* Opp. 8 (courts may appoint "'persons unconnected with the court to aid judges in the performance of specific *judicial* duties'") (quoting *In re Peterson*, 253 U.S. 300, 312 (1920)) (emphasis added); *id.* ("'Courts have inherent authority to appoint nonjudicial officers to aid in carrying out their *judicial* functions'") (quoting *Powell v. Ward*, 487 F. Supp. 917, 935 (S.D.N.Y. 1980)) (emphasis added).

Plaintiffs are incorrect in their remarkable assertion that Mr. Bromwich's conduct can be defended on the theory that a "monitor does not overstep his bounds even if, in exercising investigatory authority, he 'assumes one of the plaintiffs' traditional roles,' so long as he 'performs [his] duties objectively.'"  Opp. 16 (quoting *Ruiz*, 679 F.2d at 1162).  A monitor, appointed by the Court, does not have "investigatory authority," for all the reasons Apple has articulated (Mot. 9-14); and even plaintiffs acknowledge that a monitor must "perform[] [his]

duties objectively" (Opp. 16), which Mr. Bromwich—now a witness for the prosecution—has not done here (*see supra* pp. 2-5). And while plaintiffs defend Mr. Bromwich's conduct because he is only *investigating* Apple's conduct and reporting to plaintiffs (Opp. 10), that only proves Apple's point: He is acting like an FBI agent—an Executive Branch official—not a judge.

Plaintiffs identify no limit to the potential authority of a court-appointed monitor, in stark contrast with even the cases they cite. *Peterson*, 253 U.S. at 312, and *Powell*, 487 F. Supp. at 935, hold that a court may delegate some of its judicial functions to an appointed agent, but do not suggest that a court may invest a monitor with *investigative* powers the court itself lacks. Likewise, the Court affirmed the appointment of a monitor in the *Sheet Metal Workers* cases, but there the monitor's authority was strictly limited in scope to ensuring that the defendant complied with a specific requirement of the court's order—to admit non-white members to its union. *Local 28 of Sheet Metal Workers' Int'l Ass'n v. E.E.O.C.*, 478 U.S. 421, 482 (1986). By contrast, and as the D.C. Circuit made clear in *Cobell*, unconstrained, "roving" investigative authority exceeds even the furthest "limits of the mandate a district court may permissibly give its agent." *Cobell*, 334 F.3d at 1142-43 (quoting *Ruiz*, 679 F.2d at 1162).

Plaintiffs attempt to distinguish *Cobell* because the party being investigated was the Department of Interior—an executive agency. *See* Opp. 16-17.[3] But nowhere in *Cobell* did the court of appeals limit its separation of powers holding to executive agency defendants. The court cited several cases to illustrate "the practice of a federal district court appointing a special master

---

[3] Rather than *Cobell*, plaintiffs rely on *Ruiz*, which they claim authorizes monitors with "'sweeping powers' to investigate, conduct interviews, and require written reports." Opp. 16 (quoting *Ruiz*, 679 F.2d at 1162). But *Ruiz* is a 30-year old civil rights case, and was premised expressly on the fact "that, because he is the court's agent, he can and should perform his duties objectively" (679 F.2d at 1161-62), which Mr. Bromwich has not. In fact, *Ruiz reversed* the monitor's authority to "submit to the district court 'reports based upon his own observations and investigations in the absence of a formal hearing before him,'" because doing so "not only transcends the powers traditionally given masters by court of equity, but denies the parties due process." *Id.* at 1162-63.

pursuant to Rule 53 to supervise implementation of a court order, especially a remedial order requiring major structural reform of a state institution" but explicitly "[p]ut[] aside the question whether those cases shed any light whatsoever upon the propriety of a federal court authorizing its agent to interfere with the affairs of another branch of the federal government." *Id.* at 1142. Instead, the court concluded that the "case goes far beyond the practice that has grown up under Rule 53," focusing on the fact that the monitor was acting more like a party in carrying out his broad, investigative powers. *Ibid.* Indeed, in affirming the denial of the government's proposed monitorship overseeing a *private business*, the same court explained that "[i]n *Cobell*, we held that the district court lacked authority to appoint a monitor charged with 'wide-ranging extrajudicial duties' to fill 'an investigative, quasi-inquisitorial, quasi-prosecutorial role that is unknown to our adversarial legal system.'" *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1149 (D.C. Cir. 2009) (quoting *Cobell*, 334 F.3d at 1142).[4]

## II.    Apple Has Not Waived Its Objections To The Monitorship

Plaintiffs' repeated assertion that Apple "has not taken advantage of [its] objection rights" (Opp. 20) outlined in the Final Judgment and that as a result the Second Circuit will not even "consider" Apple's arguments on appeal (Opp. 13) is simply wrong.  As even plaintiffs concede, "A separation of powers claim cannot be waived."  Opp. 16 n.6 (citing *CFTC v. Schor*, 478 U.S. 833, 850-51 (1986)); *see also*, *e.g.*, *United Food & Commercial Workers Union, Local*

---

[4]    Plaintiffs have no answer to the lack of a proper Rule 53 affidavit.  Rule 53 allows appointment "only after: (A) the master files an affidavit disclosing whether there is any ground for disqualification under 28 U.S.C. § 455; and (B) if a ground is disclosed, the parties, with the court's approval, waive the disqualification."  Fed. R. Civ. P. 53(b)(3); *see also id.* advisory committee's note ("The affidavit required by Rule 53(b)(3) provides an important source of information about possible grounds for disqualification"); *see*, *e.g.*, *United States v. Vulcan Society, Inc.*, No. 07-cv-2067, 2010 WL 2160057, at *4 (E.D.N.Y. May 26, 2010) ("Prior to being appointed, the Special Master must file an affidavit disclosing whether there is any ground for disqualification").  Rather than file this required affidavit, Mr. Bromwich had these issues vetted in secret before the Court and plaintiffs.  Bromwich Decl. 3 n.1.

*919, AFL-CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994). And in any event, Apple has objected repeatedly at every stage of the proceedings as they have developed, and has met and conferred with plaintiffs on numerous occasions in an attempt to resolve its concerns while at the same time seeking to cooperate and comply with the terms of the injunction.  Plaintiffs' claim that Apple was required to raise each of its objections to the monitor when plaintiffs first moved for an injunction (Opp. 13-14) misconstrues the nature of Apple's objections, which are not to a fixed money judgment, but rather concern the manner in which Mr. Bromwich is interpreting his duties under the injunction since it has been entered.

Apple has consistently and repeatedly made the very objections it describes in its stay motion (Mot. 6 n.3 (detailing history of objections)), and has "conveyed" those objections "in writing to the United States and the Representative Plaintiff States," as the Final Judgment requires.  Dkt. 374 § VI.H.  Apple objected on the record to the Final Judgment even before it was issued (Dkt. 331); it objected to Mr. Bromwich's appointment (Dkt. 419 ¶ 3); and it explicitly and promptly raised its objections to Mr. Bromwich's conduct since his appointment with plaintiffs, Mr. Bromwich himself, and, ultimately, the Court.  *See* Dkt. 411; Andeer Decl. ¶ 5; Boutrous Reply Decl. ¶ 12; Dkt. 419 Exs. B, I, R; *id.* ¶ 4; Dkt. 425.  It repeated these objections to plaintiffs after the Court's December 2 order.  *See* Boutrous Reply Decl. Exs. A, B; Dkt. 419 Ex. Q; *id.* ¶ 4.  And it has made concrete proposals for moving forward in the event a stay is not granted, which plaintiffs have rejected.  Boutrous Reply Decl. Ex. C.  Over and over again, Apple has raised objections and met and conferred with the plaintiffs, with no meaningful response to Apple's proposals.  The suggestion that Apple intends to "'raise[] these arguments for the first time on appeal'" is nonsensical.  Opp. 13 (quoting *Green v. United States*, 13 F.3d 577, 586 (2d Cir. 1994)).

Plaintiffs' argument is really that Apple should have objected *sooner*—before the Court entered the Final Judgment, or before Apple noticed its appeal on October 3, 2013. But Apple's objections turn primarily on the way in which the injunction is being implemented, not the terms of the injunction as it was ordered. Apple's objections are forming the record for any appeal, which is still being created as Mr. Bromwich continues to act improperly. As a result, Apple has not "waived" any of its objections by conferring with plaintiffs. *See, e.g.*, *McKusick v. City of Melbourne*, 96 F.3d 478 (11th Cir. 1996) (reviewing as-applied challenge to state-court injunction); *Samnorwood Indep. Sch. Dist. v. Tex. Educ. Agency*, 533 F.3d 258, 264 (5th Cir. 2008) (reviewing as-applied challenge to desegregation order).[5]

## III.   Apple Continues To Suffer Irreparable Harm As A Result Of The Injunction

Absent a stay, Apple will be forced to pay Mr. Bromwich potentially millions of dollars in fees, but unable to recover them even if Apple prevails on appeal. This is not simply the "ordinary" "cost of complying with a court order" (Opp. 22): Mr. Bromwich's fees are an *additional* (and unreasonable) expense on top of the cost of compliance, which is wholly unlike the costs found not to be irreparable in cases cited by plaintiffs. *See* Opp. 22-23; *see also Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 115 (2d Cir. 2005) (escrow costs do not constitute irreparable harm); *In re Bogdanovich*, No. 00 Civ. 2266, 2000 WL 1708163, at *6 (S.D.N.Y. Nov. 14, 2000) (cost of litigating suit did not constitute irreparable harm).

Plaintiffs also suggest that "an occasional hour meeting with Mr. Bromwich" could not possibly amount to a "time-consuming distraction" for Apple's leadership. Opp. at 20. But Mr.

---

[5]   Moreover, even if Apple had failed to raise its objections before this Court, the Second Circuit could still consider those objections. *See, e.g.*, *Shakhnes v. Berlin*, 689 F.3d 244, 249 n.9 (2d Cir. 2012) (no waiver of "pure issues of law" the resolution of which is "necessary to remedy the obvious injustice ... that would result if [the defendant] were forced to comply with an impermissible injunction").

Bromwich's interview demands, which he has made on short notice, require the directors and senior executives to discuss Apple's operations with a judicial officer who reports to the plaintiffs and the Court on issues related to ongoing litigation.  He has made clear that this is only "Round 1" of his effort to interview the top executives in the company and its board. Boutrous Reply Decl. ¶ 2.  This is a time-consuming and intrusive process that interferes with the company's business operations.  Dkt. 419 Ex. B; Boutrous Reply Decl. ¶ 14.

Plaintiffs are also wrong to suggest that Apple's harm is not irreparable because this Court might eventually halt Mr. Bromwich's activities.   Opp. 19.   Merely stopping Mr. Bromwich's intrusion into Apple's affairs at some later date will *not* remedy the injuries Apple suffers in the meantime.  And if this Court overrules Apple's objections, Apple's appeal of this aspect of the injunction will be defeated because, absent a stay, Mr. Bromwich's activities will have been completed—and the irreparable damage will have already been done—by the time Apple secures reversal of this Court's Final Judgment on appeal.

## IV.    Staying The Injunction Would Not Harm The Public Interest

As Apple has demonstrated, the public interest will be protected if a stay of the monitor provision is granted pending appeal.  Mot. 20-21.  Apple is working hard to comply with all aspects of the Final Judgment, including revising and enhancing its compliance and training programs.  Andeer Decl. ¶¶ 2-3; Reilly Decl. ¶¶ 2-3; Boutrous Reply Decl. ¶ 15.  While plaintiffs again misperceive the scope of the monitor's mandate, suggesting that Mr. Bromwich is charged with changing Apple's "culture" (Opp. 23), that of course is not part of his very limited mandate of reviewing Apple's post-January 14 antitrust compliance and training programs.

CONCLUSION

For the foregoing reasons, and those stated in Apple's motion, the stay should be granted.

Dated:  January 7, 2014                                Respectfully submitted,

_____/s/_____

Theodore J. Boutrous, Jr.
Daniel G. Swanson
Gibson, Dunn & Crutcher, LLP
333 South Grand Avenue
Los Angeles, CA  90071
(213) 229-7000
tboutrous@gibsondunn.com

Cynthia Richman
Gibson, Dunn & Crutcher, LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036
(202) 955-8500

*On behalf of Defendant Apple Inc.*

16