E59BUSAC                         Oral Argument

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4                    Plaintiff,

5              v.                          12 CV 2826 (DLC)(MHD)

6    APPLE, INC., et al,

7                    Defendants.

8    ------------------------------x
                                          New York, N.Y.
9                                         May 9, 2014
                                          12:34 p.m.
10
     Before:
11
                      HON. MICHAEL H. DOLINGER,
12
                                          Magistrate Judge
13
                            APPEARANCES
14
     U.S. DEPARTMENT OF JUSTICE
15   ANTITRUST DIVISION
          Attorneys for Plaintiff United States
16   LAWRENCE E. BUTERMAN

17   NEW YORK STATE DEPARTMENT OF LAW
          Attorneys for Plaintiff States
18   ROBERT HUBBARD

19   SIMPSON THACHER & BARTLETT LLP
          Attorneys for Defendant Apple, Inc.
20   MATTHEW J. REILLY
     SARA Y. RAZI
21
     GIBSON, DUNN & CRUTCHER, LLP
22        Attorneys for Defendant Apple, Inc.
     LAWRENCE ZWEIFACH
23
     ALSO PRESENT:
24        MICHAEL BROMWICH, Monitor
          DOUGLAS VETTER, Apple, Inc.
25

1          (In open court)

2          THE COURT:  Please be seated.  Greetings, all.

3          We had a communication I believe earlier this week

4   that there was a desire for a get-together and that was

5   followed by some letters from the Department of Justice, from

6   Simpson Thacher, and from the Bromwich group discussing, along

7   with the company exhibits, discussing some unhappy thoughts

8   that apparently Apple is having with the way the monitor is

9   carrying on his tasks.  So in deference to the parties' wish

10  for a conference and so we are here.

11         First then, just as a housekeeping matter, while I

12  certainly appreciate being gifted not merely with the

13  articulate letters from various parties, but also with the

14  substantial number of exhibits, it would behoove counsel before

15  they go and fax said exhibits to look at my chamber's rule

16  which has some page limits on faxing.  We try to be flexible.

17  If a party or other interested person wishes to exceed the

18  limit, then a simple way of dealing with that is to call

19  chambers and ask permission to do so.  So, again, this is for

20  future reference.

21         In any case, I understand that Apple is, in effect,

22  the moving party asking for certain rulings from the Court.

23  And being aware that I've read the papers, I'm more than

24  happy-- if you want to add anything to what you've got.

25         MR. REILLY:  Thank you, your Honor.  Matt Reilly,

1  Simpson Thacher, on behalf of Apple.

2          So I'd like to address -- and I do appreciate that you

3  read the papers that we submitted and probably the exhibits

4  that were too long, and we apologize for that.

5          THE COURT:  That's quite all right.  There's a certain

6  flow to them, a certain rhythm.  That's okay.

7          MR. REILLY:  I want to address some of the allegations

8  or statements made in the DOJ letter just to make sure that you

9  hear from us on some of those issues.

10         So there are several things in there.  The first was

11  that Apple has taken its time over the last several months

12  since the final judgment was entered into not complying with

13  the final judgment.  Rather than revising and enhancing their

14  antitrust policies and procedures, they have been trying to

15  obstruct or challenge the monitor.

16         In fact, since the final judgment was entered into,

17  Apple has dedicated hundreds of hours internally and also with

18  outside counsel putting together world-class antitrust training

19  policies and procedures.  Mr. Bromwich has seen the rollout

20  plan that will talk about antitrust chapter in an eBook, live

21  training tailored for various groups.  It talks about antitrust

22  web page, online antitrust training.  All of these have been

23  added or enhanced since the final judgment.

24         Apple takes its obligations under the final judgment

25  very seriously.  There has never been an allegation, even a

E59BUSAC                          Oral Argument

1    sense that Apple has not been doing all this work; that even

2    though the judgment requires comprehensive and effective

3    antitrust training and procedures and compliance, they will

4    have world-class antitrust training and compliance.

5           It seems every time we exercise our rights to object

6    under the final judgment, which I think is fairly clear in the

7    final judgment, and also was stated by the DOJ appellate

8    attorney in the Second Circuit hearing, that it really ends up

9    getting accused of being obstreperous, of not cooperating, of

10   being obstructionist.  It's just not the case.

11          Mr. Bromwich and a team of two attorneys just came

12   book from Cupertino about two weeks ago, interviewed ten

13   individuals, including Tim Cook, the CEO, Eddie Cue on the

14   executive team.  He has now interviewed 22 witnesses.  He's

15   received 1,100 pages of documents and an eBook that's not

16   included in that on business conduct.

17          I've sat through all these interviews and I've read

18   all the materials.  Just based solely on me sitting through the

19   interviews and the materials, I now have a full understanding

20   of what antitrust risks Apple faces, how they get their

21   training, what lawyers are embedded in their group, who the

22   antitrust in-house folks are that they can go to on a regular

23   basis and do, what the training looks like, how comprehensive

24   the training is.  Everything.  After this last visit I had a

25   perfect understanding, I've got all access that Mr. Bromwich

1    has.

2          And so really the two issues for you today -- and I

3    know you read the letter.  The first is our plan going forward.

4    Shortly after that visit at Cupertino, a three-day visit, it

5    was expressed to us in our meeting that he wanted to interview

6    a lot more people and he wanted to watch some training.

7          We have agreed under the rollout over the next several

8    months to give him the materials as they finalize, send him a

9    videotape, with two camera angles of it, of iTunes' antitrust

10   training.  We'll continue to communicate with him and do that.

11         Our sense is that so much has been done.  This

12   injunction has a very limited scope.  The DOJ admitted, said

13   it's very limited in the Court of Appeals.  Judge Cote said the

14   injunction should sit lightly on Apple.  And to date the amount

15   of money that has been spent, over $700,000 for four and a half

16   months, you cannot fairly say that is financial intimidation as

17   the DOJ did in their letter.

18         So we are cooperating with them.  We will continue to

19   cooperate with the monitor.  We need some guidance about what

20   is appropriate.  We have the right to object, we're doing that

21   today, and it doesn't mean that we haven't been cooperating

22   fully with the monitor to date.

23         Let me just say one thing about the report and then

24   I'll sit down because I know you read it.  The DOJ has taken

25   the position that we have no right to say what's in the report.

1    We have no say in what the independent monitor wants to write

2    in their report.  That may be true, but the final judgment says

3    exactly what should be in the report.  The final judgment says

4    it should set forth the monitor's internal -- assessment of

5    Apple's internal antitrust compliance policies, procedures and

6    training --

7              THE COURT:  You are quoting, by the way, from which

8    paragraph?

9              MR. REILLY:  VI.C, your Honor, of the ECM's report.

10   I'm sorry, VI.C, as in cat -- I can't do Roman numerals --

11   "setting forth his or her assessment of Apple's internal

12   antitrust compliance policies, procedures and training.  And if

13   appropriate, making recommendations reasonably designed to

14   improve Apple's policies, procedures, and training for ensuring

15   antitrust compliance."

16             Mr. Bromwich submitted a declaration to Judge Cote

17   that rehashed the dispute-- that talked about the dispute of

18   Apple's corporation for the first couple of months of the

19   monitorship, and the report is supposed to cover these

20   materials.

21             Half of the report was all basically a rehash of that

22   declaration that he submitted to Judge Cote.  He billed for

23   that declaration.  He's billing for this portion of the report.

24   We respectfully suggest, your Honor, and claim that the first

25   half of his report that talks about the witness he wants to

1   talk about, his appointment, Judge Cote's findings from the

2   bench, all that stuff is not consistent with what the final

3   judgment says the report should have.

4           So we asked-- we objected to the invoice for March and

5   so that's before you today as well as the work plan over the

6   next several months that we would like your guidance on.

7           Thank you.

8           THE COURT:  Can I ask you one ministerial question?

9           MR. REILLY:  Yes.

10          THE COURT:  I have looked at the invoice.

11          MR. REILLY:  Yes.

12          THE COURT:  And I think-- oh, I'm sorry, I had it now

13   in front of me, the corrected one.  Okay.  Not a problem.

14          MR. REILLY:  Thank you.

15          MR. BUTERMAN:  Lawrence Buterman for the United

16   States, your Honor, on behalf of the United States and the

17   plaintiff states.

18          I want to begin by just picking up on something that

19   Mr. Reilly said.  When discussing the tasks that Mr. Bromwich

20   has proposed to engage in going forward, Mr. Reilly said "our

21   sense is that these are not the best use of time."  "Our

22   sense."

23          And the reality is, your Honor, that what Mr. Reilly

24   thinks is the best use of Apple's time at this juncture is

25   flatly irrelevant.  Apple lost that right.  Apple fought hard

1   to keep a monitor out.  And we understand why Apple didn't want

2   a monitor, because it didn't want somebody from the outside to

3   come into the company and work with them to reform their

4   antitrust policies, to reform their training, to do interviews

5   in order to gain an understanding of how the company interacts.

6   They fought hard and they lost.

7          And now, now that they've lost, your Honor,

8   unfortunately what they're doing is they're using every tool in

9   their arsenal in order to keep Mr. Bromwich from performing his

10  duties.  And, frankly, we don't object and we don't use the

11  word "obstructionist" every single time Apple raises an issue.

12         In fact, I'd like to say that the relationship between

13  the plaintiffs and Mr. Reilly and Mr. Vetter I think over the

14  last couple of months has been very, very productive.  It began

15  at the conference before your Honor two months ago.  And

16  subsequent to that we had a number of very positive

17  conversations as a result of which agreements were reached, but

18  we have a real problem with what's going on now.

19         Financial intimidation is when Apple refuses to pay

20  because it doesn't like what's going on.  And you can slice it

21  any way you want.  Apple doesn't like the first half of the

22  report that Mr. Bromwich put together.  Coincidentally that's

23  the half of the report where it relays all of the activities

24  that Apple engaged in over several months, which Judge Cote

25  said back in January were aimed at slowing down, if not

1  stonewalling, the final judgment process.

2          Now, the fact that Apple now is embarrassed-- rightly

3  so-- of the conduct that it engaged in in no way means that it

4  doesn't have a place in this formal report here.

5          Mr. Bromwich's independence is critical here.  And

6  Mr. Bromwich put it better than I could.  Not Apple, not the

7  Department of Justice, not the plaintiff states, no one has a

8  say into what goes into Mr. Bromwich's report.

9          Now, frankly, your Honor, I actually hesitate to

10 engage in the substance of whether Mr. Bromwich was correct to

11 put in a statement of facts into his report, which is what

12 we're talking about here.  But it's clear that it was totally

13 appropriate for him to do so.

14         What Mr. Bromwich is tasked to do is to evaluate

15 Apple's antitrust compliance and training protocols and

16 policies.  How can the facts surrounding Apple's willingness to

17 work with Mr. Bromwich be irrelevant to that process such that

18 they should be excluded?  To the contrary.  The fact is that

19 Mr. Bromwich had to put that information in and he had to put

20 it in for a number of reasons, probably most of which was to

21 explain why we are where we are.

22         In January, when we were before Judge Cote,

23 Mr. Boutrous told Judge Cote that Apple would have its revised

24 antitrust policies done by January 13th.

25         Your Honor, I don't know the answer.  I thought now

1   that it had been moved to June.  However, through Mr. Reilly's

2   letter, I now have some belief that it actually may be later in

3   the summer before those policies are rolled out.  The reason

4   for the delay is because Apple has been devoting its time to

5   keeping Mr. Bromwich from doing his job rather than working

6   with Mr. Bromwich.

7           Now, your Honor, if Apple doesn't want to pay

8   Mr. Reilly 50 percent of his bills because they don't like half

9   of the argument that he makes today, that's their prerogative,

10  but they have no right to say that they're not paying 50

11  percent of Mr. Bromwich's bills just because they don't like

12  half of the report.

13          Now, on this issue of these activities that Mr. Reilly

14  in his letter relayed and that he has raised some concerns

15  about, frankly, we're at a little bit of a loss on these.  As

16  we pointed out in our letter, these tasks that Mr. Bromwich has

17  indicated he would like to engage in seem to make perfect sense

18  to the United States and to the plaintiff states.

19          Mr. Bromwich is tasked with working with Apple in

20  order to revise its antitrust training programs.  He is asking

21  to see Apple's antitrust training programs.  Frankly, if

22  Mr. Bromwich had not made that request, I think that there

23  could be a point where someone would question whether he was

24  doing his job effectively.

25          And certainly, your Honor, given the history of

E59BUSAC                              Oral Argument

1   documented conduct in this matter and in others, we, frankly,

2   believe that the request to interview the senior executives of

3   the company make complete and utter sense.  And, frankly, your

4   Honor, it's specifically provided for in the final judgment

5   itself.

6           And the last thing I'll say, we appreciate the effort

7   that Mr. Reilly, Ms. Razi, the Simpson firm and Mr. Vetter have

8   put towards working with the monitor in recent months.  We're

9   very disappointed at this set of events, but we were pleased

10  with the work that they had done.

11          However, your Honor, let's not get ahead of ourselves.

12  There's been seven months that this monitorship has been in

13  place.  There have been a total of, I believe, 22 people

14  interviewed in those seven months and Apple has produced to the

15  monitor a sum total of 1,100 pages of documents.

16          We at the United States, at the Department of Justice,

17  we choose our words carefully and we don't use words like

18  "frivolous" unless there's a real reason to use them.  And in

19  our letter we note that these objections are frivolous.  Your

20  Honor, we stand by that.

21          And, frankly, at this juncture we agree with

22  Mr. Reilly that there needs to be some guidance from this Court

23  because, frankly, it is the only thing that we believe will get

24  Apple to start complying with the monitorship, to get back to

25  complying with the monitorship.

E59BUSAC                          Oral Argument

1           And because of that, we ask, your Honor, that Apple be
2   ordered to pay its bills in its entirety, to pay them at once.
3   And we've made a request for costs given the nature of the
4   objections that Apple has raised and the total lack of merit
5   that we see in them.
6           Thank you.
7           THE COURT:  Thank you.
8           MR. REILLY:  Thank you, your Honor.
9           MR. BROMWICH:  I'd like to be heard at some point,
10  your Honor, if I can.  I'm happy to go after Mr. Reilly.
11          THE COURT:  Let's exhaust the arguments of the main
12  combatants.
13          MR. REILLY:  It still seems to be the plaintiffs'
14  position that Apple has no say in what the monitor does, people
15  he interviews, documents he receives.  We're following strictly
16  the language in the final judgment; that the monitor must act
17  diligently, reasonably, in a cost-effective manner and we have
18  a right to object.  And the final judgment also says precisely
19  what should be covered in the final report.  And the first half
20  of his report did not pertain and was not relevant to the
21  language in there.
22          DOJ's position or plaintiffs' position seems to be
23  just pay it, don't object, always say yes, you have no rights
24  there.  And the rights that we're talking about for Apple are
25  clearly delineated in the final judgment and were expressed at

1    the Second Circuit oral argument saying that the monitor can

2    make no demands if Apple disagrees a request, it may object

3    first to the plaintiffs and then to the district court.  It's

4    the district court who ultimately determines what documents, if

5    any, are turned over and what interviews, if any, may go

6    forward.

7              THE COURT:  By the way, you were reading from what?

8              MR. REILLY:  It's from the Second Circuit argument on

9    February 4, 2013, page 26-27, last four lines, first four

10   lines.

11             THE COURT:  Whose dep prose were you reading?

12             MR. REILLY:  It was the Department of Justice,

13   appellate attorney Ms. Tessier.  That came from the DOJ and

14   we're exercising our right here, your Honor.  We have a right,

15   Apple has a right, for the monitor to act diligently,

16   reasonably and cost-effective.

17             And the 1,100 pages to me is a very impressive amount

18   of papers that pertain to antitrust training compliance.  This

19   isn't a toxic oil spill liability case where you expect

20   millions of pages of documents.  I don't know any company --

21   and I do a lot of work with companies on antitrust training

22   compliance -- who has many more materials than that.

23             The last point is Mr. Buterman is claiming that the

24   delay in the rollout of this world-class antitrust training and

25   compliance program is because of our disputes with the monitor.

E59BUSAC                    Oral Argument

1    It's just not true.  They've done a lot of live training

2    already.  They're revising materials.  They gave draft

3    materials to Mr. Bromwich and his team in March.  He gave

4    comments and recommendations.  They took on all of those

5    recommendations.  They're rolling it out to online training

6    live training.  It just takes a lot of time.

7            They have literally dedicated, as I said, hundreds of

8    internal hours and some Simpson Thacher efforts to develop

9    these world-class programs.  Even though the judgment only

10   requires they be comprehensive and objective, these are world

11   class.  Mr. Bromwich has had 22 interviews with two board

12   members, three executive team members, several businesspeople.

13           At some point under diligently, reasonably

14   cost-effective, with this roll-up online in full speed over the

15   next couple of months, we just don't see the need.  We don't

16   see the need.  We don't think it's reasonable, cost-effective

17   and diligent to have more interviews now going forward.  We'll

18   give him the materials.  He's not going to be on the shelf for

19   months.  We will communicate with him.  He can look at the

20   videotape of the live training.

21           It's just that at some point Apple is exercising their

22   right to say it's not reasonable, diligent and cost-effective

23   and that's why we're here today.  It's not personal.  It's not

24   frivolous.  Apple feels strongly about this.  I believe based

25   on the language in the final judgment, they have the right

E59BUSAC                       Oral Argument

1   position here.

2              THE COURT:  Thank you.

3              MR. BUTERMAN:  Your Honor, just a quick last couple of

4   words.

5              Apple certainly has the right to object and we've

6   never in any way suggested that Apple doesn't have the right to

7   object under the terms of the final judgment consistent with

8   the procedures set forth by the district court.  What Apple

9   doesn't have a right to do is to use its threats of nonpayment

10  and its checkbook as a means for accomplishing what it can't do

11  and what it couldn't do in the court.

12             It has repeatedly raised these type of objections to

13  the scope.  They've been dealt with by the district court and

14  they were resolved by the district court.  Frankly, we believe

15  that we had resolved them with Apple about a month and a half

16  ago, so we were very surprised to see this letter of May 5th.

17             Now, the other thing that Apple can't do, and we found

18  very troubling -- and it hasn't been talked about very much

19  today, but it's certainly present in Apple's letter -- is that

20  Apple cannot tell Mr. Bromwich I'm going to pay you 50 percent

21  for your report and, by the way, if you spend any time, a

22  minute of your time, trying to fight me on that, I'm not paying

23  for that either.

24             It creates a vicious cycle here, your Honor.  And

25  we're going to be back here again regardless of the outcome

1    because Mr. Bromwich has spent time.  He's come up to New York

2    for purposes of this hearing.  And so Apple can't tell

3    Mr. Bromwich, This is what we want to do, this is what we want

4    you to do, and then effectively try to muzzle him from

5    objecting.

6            Now, the last point, your Honor, going back to what

7    Mr. Reilly said about the activities, I'd just point out that

8    Mr. Reilly did not say, nor could he say, that any of the

9    activities that he's raised in his letter-- interviews with

10   the board members, interviews with other employees at Apple,

11   review of training programs, review of orientations for new

12   employees, and reviews of certain activities of the antitrust

13   compliance officer-- he can't say that any of those are outside

14   the scope.

15           The most that Mr. Reilly can say is, Well,

16   collectively we don't think that this is the way that we should

17   go.  And I still go back to what I said, your Honor.  That's a

18   decision that has to be left to Mr. Bromwich.  If Mr. Reilly

19   and Apple has a specific objection to a specific interview

20   because it's outside the scope, they can raise that kind of

21   objection.  But, frankly, this sort of blanket "We don't want

22   him to do anything more," that's been dealt with already, it's

23   been rejected, and it should be rejected again.

24           Thank you.

25           THE COURT:  Okay.  Mr. Bromwich.

E59BUSAC                          Oral Argument

1              MR. BROMWICH:  Thank you, your Honor.  It's good to

2    see you, but truthfully it's not good to be here.  We shouldn't

3    be here.  We really shouldn't.  The right that Apple has to

4    object is under VI.H of the final judgment and it states "any

5    objection by Apple to actions by the external compliance

6    monitor."

7              We're here in large part not because Apple objects to

8    the fact that we wrote the report.  We're commanded

9    specifically to write that report and subsequent reports by the

10   final judgment.  They're objecting to our discretionary

11   decisions about what to put in the report.  There can be

12   nothing more chilling to someone in my position to have the

13   contents of a report challenged and for payment to be declined

14   because the monitored entity isn't happy with what's in the

15   report.

16             The fact is that that report was the first time that

17   with our own voice we were able to recount the events that

18   explained what happened during the early months of

19   monitorship.

20             Mr. Reilly has suggested that was repetitive of some

21   of the things in the declaration, but we weren't parties to the

22   litigation.  We did not appear before Judge Cote.  We did not

23   appear before the Second Circuit.  We were not parties to the

24   litigation.  And, indeed, one of Mr. Zweifch's partners in the

25   Second Circuit suggested the appropriate place to lay out the

E59BUSAC                        Oral Argument

1    facts, some of which were in the declaration, was in a report

2    to be filed with the Court.

3           So that's what we did here.  We laid out what we

4    thought was the framework for our work –– which Mr. Reilly has

5    objected to –– the circumstances of beginning our work, the

6    specific things that we accomplished, and then the many

7    obstacles that we faced.

8           We think that we would have been omitting a

9    significant part of what happened the first few months if we

10   had failed to do that, if we had pretended it away, or if we

11   had minimized it.  The fact is that we were only able to offer

12   in about half of the report a substantive review of the

13   antitrust compliance program of Apple because in the face of a

14   Court order which required them to turn over documents by

15   February 26th, we scrambled to get on top of those materials

16   in a time frame that was, frankly, unfair to us.  We had to

17   master the materials in a very brief period of time when Apple

18   and the plaintiffs knew that we were determined to file the

19   report, as dictated by the final judgment, no later than April

20   14th, 2014.

21          And so it could have been a report that contained

22   nothing except the accounts of the obstacles we faced.  And we

23   worked extraordinarily hard to make sure that we had

24   substantive things to say and that a very substantial portion

25   of the report contained those substantive comments and

1   analysis.

2           So I don't want to suggest to you that things are all

3   bad.  We have had a honeymoon.  I hope the honeymoon is not

4   over, but I'm very troubled about the objections to our invoice

5   in particular.  Again, in bold letters and italics, the size of

6   the bills are emphasized.

7           Well, the invoice for March was a large invoice

8   because we were trying to do two very significant and central

9   things:  Number one, to master Apple's antitrust compliance

10  program and understand it in order to comment on it

11  substantively in our report; and, number two, we had to write

12  the report, which we have no choice but to do.  So that's the

13  reason the invoice was so large.

14          Now, when I hear complaints about the size of our

15  overall invoices to date, I hear what Apple has to say, but I

16  think it's important for you to know that conservatively at

17  least 25 percent of the fees that we have billed to date have

18  been incurred because of needless skirmishing, responding to

19  needless objections and dealing with challenges to our work

20  that, frankly, should not have been made.

21          So if Apple wants the bills to go down and stay down,

22  my advice is that they cooperate with us a little more, fight

23  with us a little less, and challenge us a little less.  Not to

24  take away their right to object, but I think things would go

25  far more smoothly and things would be handled far more

1   inexpensively if they were a little bit more careful about the

2   challenges they made.

3            Finally, on the point of our future activities, we

4   shouldn't be here on that.  Those are not ripe for you to

5   decide.  We had a single meeting on May 1st where Mr. Reilly

6   had mentioned in a phone call two days earlier that he wanted

7   to come to you to ask for guidance on what should be the scope

8   of our activities going forward.

9            I suggested that we have an in-person meeting.  We had

10  an in-person meeting which has now been characterized as a

11  formal meet-and-confer.  It was part of the normal

12  give-and-take between a monitor entity and monitor.  I provided

13  my thoughts about what we would like to do next, what I thought

14  was appropriate to do over the next several months, and the

15  next thing I know there are objections filed with respect to

16  future plans that have not been finalized.

17           Your Honor, we shouldn't be here.  We should be able

18  to resolve these disagreements by ourselves.  But I do want to

19  say I have a very small staff.  I've got three other people

20  working with me, all three of whom are affiliated with other

21  institutions and have other work to do.  And the threat of

22  nonpayment is a strong deterrent for me getting them to

23  continue to assist me.

24           I am not suggesting that that's the goal; I am

25  suggesting that that's the result.

1    THE COURT:  By the way, is there any understanding as

2  to the time frame from the service of an invoice to when

3  payment is due?

4    MR. BROMWICH:  I don't recall.  I think it's 30 days,

5  but I'm not sure.

6    THE COURT:  Okay.

7    MR. BROMWICH:  Mr. Reilly, do you know?

8    MR. REILLY:  I do not.

9    THE COURT:  Okay.

10    MR. BROMWICH:  Do you have any other questions, your

11  Honor?

12    THE COURT:  Not at this point.

13    MR. BROMWICH:  Thank you.

14    MR. REILLY:  May I, your Honor?

15    THE COURT:  By all means.

16    MR. REILLY:  When we received Mr. Bromwich's e-mail on

17  Thursday, the whole sense of an independent monitor, as he

18  said, I agree with everything in the plaintiff's letter and of

19  course took an adversarial position against Apple.  And of

20  course the plaintiffs and I --

21    THE COURT:  It's a little hard to point the proverbial

22  bony finger of indignation at the monitor for responding to

23  what can only be described as fairly strenuous-- whether

24  justified or not-- accusations about him.  That seems,

25  contextually speaking, a little bit unfair to tax him with

E59BUSAC                          Oral Argument

1    taking what you refer to as an adversarial position.

2              MR. REILLY:  That letter by Mr. Bromwich supported

3    every position of the plaintiffs, active plaintiffs.  And it's

4    an adversarial proceeding; hopefully respectful, but

5    adversarial.  We view that letter as being adversarial.

6    Whether you requested it -- or if you could hear from him

7    today, which you did, in a sense, of course, that cost a lot of

8    money, I'm sure, when we see the invoice.

9              That's a real vicious cycle that Mr. Buterman

10   mentioned.  It's like if we don't say yes to everything, even

11   though we have the rights under the final judgment for

12   diligent, reasonable and cost-effective work, what happens is

13   then he spends time because we objected to something, it

14   increases the bills, and that is a vicious cycle.

15             I understand why he says it's important for Judge Cote

16   to -- to read her own words, statements from the bench, read

17   stuff from her own findings, talk about some of the disputes

18   from Apple.  That was fully briefed in an affidavit in detail,

19   even in Mr. Bromwich's affidavit, and Apple paid for that.

20             The report in the final judgment has to be limited to

21   what Judge Cote put out there:  Antitrust training and

22   compliance, the evaluation of that.  And the whole half of the

23   report, that cost Apple a lot of money, that the Court already

24   knew, that was redundant, it's just not reasonable, diligent or

25   cost-effective.

1          And Apple has cooperated a lot with the monitor, has

2    paid a lot of money to the monitor.  To say that we have to

3    object less, we object when we think it's right to object.  And

4    that's what we've done and, unfortunately, we're going to

5    continue to do so.  We do want guidance from this Court, but

6    Apple cannot be in a position from an injunction that it's

7    supposed to rest lightly with a very limited role and just say

8    take it.  You can object, but it's going to increase the costs,

9    so object less.  We object when we think it's reasonable and

10   fair.

11          MR. ZWEIFACH:  Your Honor, may I be heard very

12   briefly?  I'm not going to retread what you've heard already.

13   I just want to respond to one point we've heard today.

14          Mr. Buterman mentioned that the issue of the scope of

15   the monitorship was resolved by the district court.  We've been

16   talking about the determinations the district court made with

17   regard to the scope of the work, the monitor, and the final

18   judgment.

19          There's an important piece of the equation that's

20   missing that I think is critical to determining not only what's

21   appropriate for Mr. Bromwich to have done in the past, but in

22   addition in determining what would be appropriate in the

23   future.  And that is the very, very substantial narrowing that

24   the Second Circuit ordered of the scope of the monitorship in

25   connection with the application for a stay.  That application

1   for a stay of the monitorship was denied.  Apple did not

2   achieve the relief that it sought in terms of the stay, but

3   what it did achieve were some major concessions by counsel for

4   the government.

5          And on that score what we'd like to do, your Honor, is

6   provide to you a copy of the oral argument before the Second

7   Circuit so you could see some of the statements made by counsel

8   for the government during the course of that argument in

9   response to very pointed questions from the panel of the Second

10  Circuit.

11         It became clear during that argument that this

12  monitorship is not a compliance monitorship of the type that we

13  see negotiated on a regular basis by the government and in

14  private parties when they're negotiating a nonprosecution

15  agreement, for example.

16         This is not a monitorship where the job of the monitor

17  is to determine whether there is compliance with a company's

18  compliance policies.  The monitor in this case is not supposed

19  to be making fact determinations as to whether Apple is

20  complying with its own compliance policies.

21         What became clear during oral argument and the Second

22  Circuit's ruling is that the scope of the monitorship here is

23  very narrow:  Number one, to make sure that Apple puts in place

24  an appropriate and effective compliance plan, number one; and,

25  number two, to make sure that there is training that has taken

E59BUSAC                          Oral Argument

1   place, make sure that the compliance plan and its policies are

2   effectively communicated to employees.

3            Now, if you'll look at the letter that the government

4   submitted, I'm talking about the May 7th letter, I'd like to

5   direct the Court's attention to page 3 of that letter for a

6   moment.  In page 3, under Section B, it's entitled "Apple's

7   inchoate objections to the monitor's 'work plan.'"  The third

8   paragraph begins to discuss certain scope issues.  If you read

9   up from about five lines from the bottom, there's a sentence

10  that begins "while Apple..." and this addresses Apple's

11  objection to repeated interviews of senior executives and Board

12  members.

13           And I'd like to read that because Mr. Buterman said

14  earlier that the government chooses its words carefully, so I

15  think we ought to focus on those words.  "While Apple may wish

16  that its most senior executives and Board members be shielded

17  from interviews that address antitrust compliance and training

18  at Apple, plaintiffs submit such interviews are crucial because

19  of both:  Number one, Judge Cote's finding that 'Apple's

20  lawyers and its highest-level executives' evinced 'a blatant

21  and aggressive disregard' for the requirements of the law in

22  connection with the e-books conspiracy; and, two, recent public

23  reports noting that senior executives at Apple engaged in other

24  *per se* antitrust violations, such as entering into employee

25  nonsolicitation agreements."

1              Your Honor, this type of statement, of a suggestion of

2      the type of interviews and the type of issues that the monitor

3      should be focusing on, fall into the category of what we have

4      argued in our brief on appeal of being inherently factual

5      investigative work by the compliance monitor that cannot, in

6      our view, reasonably be related to the task that the monitor is

7      supposed to engage in as narrowed by the Second Circuit.

8              The brief that we filed before the Second Circuit--

9      and I'd be happy to provide you with a copy if you're

10     interested-- challenges the appointment of the monitorship

11     because it's outside the bounds of Rule 53 or the Rules of

12     Civil Procedure, it violates separation of powers and the due

13     process clause.  And, in addition, because of the fact that

14     Judge Cote, we believe, abused her discretion in denying our

15     application to remove the monitor in this case.

16             But one of the core objections and arguments that we

17     make in that brief is that although the work of the monitor is

18     labeled by the government and the monitor himself to all be

19     related to making sure an effective compliance plan is put in

20     place, there's an endless amount of, in effect, fact-finding

21     being engaged in at Apple.

22             And the citation to "other *per se* antitrust

23     violations, such as entering into employee nonsolicitation

24     agreements" I think begins to raise a red flag that what the

25     government believes the monitor should be doing -- and the

1  monitor apparently believes he should be doing too, because he

2  says he completely agrees with everything in the government's

3  letter -- is that this is a fact-finding mission all under

4  the --

5          THE COURT:  Well, obviously.

6          MR. ZWEIFACH:  Pardon?

7          THE COURT:  Obviously the monitorship involves

8  fact-finding.  It couldn't be otherwise.  The monitor is tasked

9  with determining the nature and propriety of the compliance

10  program and the training program that Apple develops.

11         So I'm not sure what your point is unless you're

12  suggesting that somehow the monitor has already strayed into or

13  maybe is about to stray into impermissible territory which, as

14  I understand it from what the Second Circuit said, would be a

15  determination as to whether Apple now is complying with the

16  antitrust laws as distinguished from those two other subjects.

17         But the fact that there's fact-finding is perfectly

18  inevitable given the fact you have a monitor.  The monitor is

19  there to do more than write legal briefs.  He's supposed to

20  determine facts.

21         MR. ZWEIFACH:  Well, it all depends on what we mean by

22  fact-finding.  If we mean by fact-finding that there's a

23  determination made as to whether an effective compliance plan

24  is being put in place and whether the provisions seem

25  appropriate for the businesses that Apple has, fine, we agree

E59BUSAC                        Oral Argument

1    with that.

2              If what we mean here is that there should be a

3    determination, for example, as to -- by the monitor as to

4    whether, in fact, anyone at Apple was involved in employee

5    nonsolicitation agreements, whether that might be a risk that

6    Apple is facing and, therefore, the compliance plan has to be

7    changed to cover that risk, we say that under the label and

8    under the rubric --

9              THE COURT:  Has anyone proposed that a compliance

10   plan-- which I take it is not finalized-- should be changed to

11   encompass noncompete agreements--

12             MR. ZWEIFACH:  Your Honor --

13             THE COURT:  -- or are we just kind of making this up

14   as we go along here?

15             MR. ZWEIFACH:  We're not making anything up as we're

16   going along.  One of our problems is that because of the fact

17   that in our view the work plan and the work that the monitor is

18   supposed to be doing to determine whether Apple's compliance

19   plan is ultimately going to be effective has all been left up

20   in the air.  If there's anything inchoate, it's the work plan

21   to determine whether there's going to be an effective

22   compliance plan and whether there's appropriate training being

23   given to employees.

24             THE COURT:  I thought Apple's objection, as reflected

25   in its letter to me, was not that it's all up in the air, but

1    that the monitor has indicated an intention to interview

2    everyone under the sun and you think it's too broad.

3         MR. ZWEIFACH:  Yes, and Mr. Reilly will address that.

4    My point is simply there's also a scope issue.  And there's a

5    scope issue that we've objected to, we continue to object to,

6    and in our view --

7         THE COURT:  What is the scope issue?

8         MR. ZWEIFACH:  The scope issue is having an open-ended

9    investigation, in our view, where there are numerous interviews

10   taking place, where there are no parameters set as to whether

11   the interviews are tied in to the immediate task of the

12   monitors, and Mr.--

13        THE COURT:  I'm sorry, but you have an order, which

14   you happily cited from the Second Circuit, confirming the scope

15   and limits of the monitor's responsibility.  What more do you

16   want?  And I should add I didn't detect anything of this sort

17   in your letter to the Court, but now that you're raising it,

18   what is it you want?

19        MR. ZWEIFACH:  We want the monitor and his activities

20   to remain within the scope of the final judgment as narrowed by

21   the Second Circuit.

22        THE COURT:  Has anyone suggested otherwise?

23        MR. ZWEIFACH:  Certainly, your Honor, the letter --

24        THE COURT:  I mean, you have an order from the Second

25   Circuit.  What more do you want from the Court?

E59BUSAC                    Oral Argument

1            MR. ZWEIFACH:  Well, your Honor, as Mr. Reilly said,

2    we need some guidance.  What we don't want to do is continue to

3    come back every time there's an interview and we think an

4    interview is going to stray or we think there's an additional

5    interview that's taking place where we think it's either

6    superfluous or aimed at what we think is a factual

7    investigation where, if findings are made, they have to be

8    reported by the plaintiffs, our adversaries in this case.

9            So what we want is to make sure that we don't have to

10   keep coming in and raise objections on a sporadic basis every

11   time we have a disagreement as to the scope of the work that

12   the monitors engage in.

13           And I'll let Mr. Reilly take it from there.

14           MR. REILLY:  Good afternoon, your Honor.

15           THE COURT:  Again, hi.

16           MR. REILLY:  You're right, the letter came under my

17   name, your Honor, not under Gibson and we're not going to

18   rehash.  We've already gone through it.  But the March invoice

19   in the meeting for an hour last week where it was expressed

20   that he intends before the next report is due to interview

21   every board member, every executive team member, many more

22   businesspeople in the iTunes business and elsewhere, talk to

23   people around the help line, watch a new employee orientation,

24   it's that's what's before you today.  We need that guidance of

25   what we think has been an extraordinary amount of work.

1    Twenty-two employees before the training is fully rode out,

2    including the top person in the company, is an amazing amount

3    of work.  It's a lot of work.

4            As I said, I sat through all of it and I have a really

5    good understanding of exactly what Apple is doing, what their

6    training looks like, whether it's effective, what issues

7    businesspeople face, who they go to when there's a question,

8    who they goes to when there's an antitrust issue.

9            THE COURT:  By the way, roughly how long have these

10   interviews been, since you had to sit through them all?

11           MR. REILLY:  Last time each one was an hour and a

12   half.  I think there are nine hour-and-a-half interviews, one

13   hour with Mr. Cook, and then two meetings:  One with the new

14   antitrust compliance officer for about an hour and one with

15   Mr. Vetter for about an hour.  That's a rough estimate.

16           THE COURT:  Okay.  So these are not like all-day

17   affairs or multi-day affairs.

18           MR. REILLY:  No, no.  Not at all.

19           THE COURT:  Okay.  Good.

20           MR. REILLY:  But I think every question that

21   Mr. Bromwich had at those interviews were answered.

22           THE COURT:  Good.

23           MR. REILLY:  At least recently I've never cut an

24   interview short.

25           THE COURT:  Okay.

E59BUSAC                           Oral Argument

1          MR. REILLY:  Your Honor, may I be heard?

2          THE COURT:  Anything else?

3          MR. REILLY:  I apologize.

4          THE COURT:  No need to apologize.  You're doing your

5     job.

6          MR. REILLY:  Thank you.

7          MR. BUTERMAN:  Mr. Zweifch's argument -- which in many

8     respects conflicted with things that Mr. Reilly said --

9     highlights a very important problem that we are facing here,

10    which is that Apple has two very capable law firms working for

11    it on this matter and it's playing one side against the other.

12    Sometimes it's a good cop/bad cop, but sometimes it's like what

13    just happened here, which is Mr. Zweifach, to my knowledge, did

14    not participate in the interviews.  I know Mr. Reilly and his

15    firm did.  He's talking about Mr. Bromwich and making

16    suggestions that Mr. Bromwich went outside the scope during

17    those interviews.

18         Now, we, the Department of Justice, have never heard a

19    complaint from Mr. Reilly or Simpson or any attorney that ever

20    attended any single interview that Mr. Bromwich has asked a

21    question that's gone outside the scope of the final judgment.

22    And so we don't know where that comes from.

23         Now, with respect to the issue of the scope of the

24    final judgment as narrowed by the Second Circuit, to use

25    Mr. Zweifch's words, your Honor, we think that the order from

E59BUSAC                         Oral Argument

the Second Circuit speaks for itself.  And we think that for

these purposes it's actually -- what took place in the Second

Circuit is largely irrelevant because, again, the enumerated

tasks that we're here to discuss -- speaking to executives,

reviewing antitrust training, something that Mr. Zweifach said

was squarely within the scope of the judgment -- well, those

are the tasks that Mr. Bromwich has proposed to do.

        And what I haven't heard from Mr. Zweifach, Mr. Reilly

or anyone, is a suggestion that somehow the Second Circuit's

decision impacts in any way the enumerated tasks that

Mr. Bromwich intends to engage in.

        Now, the last point that I want to address is

Mr. Zweifch's reference to page 3 of our letter.  Your Honor,

in no way-- I mean -- I'll address it.  In no way was anybody

suggesting -- and I don't think it's even a fair reading of

this letter and that paragraph to suggest that Mr. Bromwich is

engaged in some sort of fact-finding mission with respect to

nonsolicitation agreements.  Mr. Zweifach is aware that the

facts regarding Apple's senior executive's involvement in the

nonsolicitation agreements has already been dealt with and

established.

        All that we were saying in the letter is that you have

to recognize the way that this company operates and how its

senior executives have operated when analyzing how the company

moving forward is going to reform its antitrust training and

E59BUSAC                          Oral Argument

 1   compliance policies and programs.  In no way are we suggesting

 2   that Mr. Bromwich should engage in any type of work relating to

 3   nonsolicitation agreements.  And certainly, your Honor, there

 4   is absolutely no suggestion that Mr. Bromwich has ever touched

 5   upon any of those matters.

 6          Thank you.

 7          MR. REILLY:  We almost got through this hearing, your

 8   Honor, without the DOJ talking about the conduct of the senior

 9   executives.  The nonsolicitation agreement, the DOJ settled

10   that with Apple almost four years ago.  Almost four years ago

11   they settled that and it's coming in a letter to you a couple

12   of days ago.

13          Apple is an ethical company.  I've worked with a lot

14   of companies.  From the top down, they do business the right

15   way.  I was hoping to get through this appearance without a

16   reference to the blatant disregard for the antitrust laws.  So

17   I just wanted that to be stated in the record, that Apple is a

18   very ethical company and does business the right way.  A

19   company of that size that has allegations against them -- every

20   company does -- in no way does it reflect on the integrity of

21   any of the officials or top officials of the board.

22          And I just want to mention one thing.  The quoting

23   from Judge Cote in the nonsolicitation thing, that's the

24   problem that we have.  We're looking at the four corners of the

25   final judgment.  Mr. Bromwich in the first meeting we had said

1     I'm following the four corners of the final judgment.  By

2     talking about statements made and findings by Judge Cote,

3     settlements made with DOJ four years ago or recent press

4     because of our litigation, because of things like that, that we

5     read the final judgment differently, we can do more, we can

6     interview the entire board, the entire executive team.  It's

7     not appropriate.  He should be limited to the final judgment,

8     the four corners, rather than looking at findings of Judge Cote

9     and settlements from the DOJ four years ago.

10          MR. ZWEIFACH:  Just one point, your Honor.  I just

11    have to respond to something Mr. Buterman said.  I'm sorry.

12          THE COURT:  The irrepressible impulse.  Go right

13    ahead.

14          MR. ZWEIFACH:  This is not the first time we've heard

15    a theme from the government that there are two law firms

16    involved with Apple in this case, they're going off in

17    different directions.  The first time Mr. Buterman raised that

18    I think is, again, on page 3, in footnote 2, of his letter,

19    where he begins to talk about Apple's appellate brief and says

20    "It is important to note that Apple's brief contains several

21    material misrepresentations of the facts surrounding the

22    interactions with the monitor that Simpson Thacher attorneys --

23    who have been dealing with Mr. Bromwich and plaintiffs on these

24    issues -- know to be inaccurate.  That the appellate brief was

25    written by another law firm does not excuse such behavior."

E59BUSAC                         Oral Argument

 1              Your Honor, first of all, it's interesting that

 2     Mr. Buterman has raised the issue of misrepresentations without

 3     telling us what they are or without asking your Honor to rule

 4     on it.  I'm not sure why that would be done.  But so that

 5     there's no claim that we made concessions here today, let me

 6     just say that we stand by the statements we made in our brief

 7     and Simpson Thacher stands by them too.

 8              THE COURT:  Okay.  I will take judicial notice of the

 9     fact that Apple has a world-class set of attorneys representing

10     it and I have every reason to believe they are utterly ethical

11     and believe in everything they have said in their briefs.

12              Anything else?

13              MR. BUTERMAN:  Yes, your Honor, just a couple of

14     points.  Simpson Thacher, of course, didn't sign that brief.

15     And we will respond in due course when our response is due in

16     the Second Circuit.

17              THE COURT:  I get the impression we have started to

18     wander a little bit off the reservation here in terms of what's

19     in front of us today.

20              MR. BUTERMAN:  Yes, your Honor, and I just have to

21     make two small clarifications and then I'll sit down and be

22     done.

23              Obviously, as Mr. Reilly said, Mr. Reilly hoped that

24     the words "blatant disregard," that we'd get through a hearing

25     without hearing it.  Obviously that came from Mr. Zweifach, who

1   raised the issue.  The Department of Justice was done speaking

2   and would not have addressed it had Mr. Zweifach not done that.

3          I'll also note that Mr. Reilly's objection to the

4   United States quoting from language from Judge Cote is ironic

5   given the fact that just earlier Mr. Reilly was quoting from

6   the Second Circuit.

7          So that's all I have to say, your Honor.

8          MR. REILLY:  I don't have any objection to any quotes

9   in court.  I just don't want quotes outside of the final

10  judgment dictating the interpretation of the final judgment.

11         THE COURT:  Okay.  Anything else?

12         MR. BUTERMAN:  Fortunately, no, your Honor.

13         MR. REILLY:  No, your Honor.

14         MR. BROMWICH:  No, your Honor, unless you have

15  questions.

16         THE COURT:  Let me just briefly touch on a couple of

17  the issues that have been raised both by the letters and today

18  in oral argument.

19         Before doing so, I'd just note, with interest if not

20  puzzlement, that the impulse that lawyers here have to edit

21  each other's work, Apple would like to edit the monitor's

22  report.  They'd also like to edit the Department of Justice

23  letter.  The Department of Justice apparently would like to

24  edit the Apple appellate brief.  Enough.

25         First of all, with respect to the scope of the

E59BUSAC                         Oral Argument

monitor's task as we have discussed today, that is adequately

defined by the Second Circuit's order.  I have had nothing

presented to me either in the letters or in any other form

suggesting that the monitor has deviated from his defined task

as specified by the Second Circuit.

        With respect to the March invoice, et cetera, that is

the fees charged by the monitor to Apple for that which was

done in the month of March, to the extent that Apple wants to

object, it is of course -- as I think everyone has conceded --

Apple's right to object.  And there is a procedure that it must

go through, including conferring with the Department of Justice

and then coming to the Court to voice whatever objections it

may have.

        That right is essentially untrammeled except to the

extent it may be cabined by the requirements of Rule 11 of the

Federal Rules of Civil Procedure and case law addressing the

obligations of counsel not to present frivolous or groundless

arguments or to make arguments for an improper purpose.

        As far as the validity or merits of Apple's argument,

obviously when it makes objection, that objection will be

passed upon by the Court.

        In this instance, to the extent that Apple is

criticizing the monitor and saying it shouldn't have to pay for

the time spent on at least part of the report, I find that

objection to be utterly and completely groundless.

1      The report is an appropriate document.  It is

2   necessary for the monitor to be able to set forth the context

3   for the substance that he presents.  And whatever went on

4   procedurally and otherwise that led to, shall we say, at least

5   some delays in the monitor being able to grapple with the

6   substance of what Apple was proposing to do in compliance with

7   the judgment, that has to be and is appropriately explained in

8   the report.

9      Apple's request insofar as it's premised on this

10  objection, its request not to have to pay the full invoice is

11  emphatically denied.

12     I note there was another argument proffered by

13  Apple -- although it has not been mentioned today, but it

14  appears in one part of their letter -- suggesting that there is

15  some inadequacy in the time records of the monitor.  I've

16  reviewed the time records.  They are entirely appropriate.

17  They are detailed; they are specific.  They leave no doubt that

18  the time that has been spent by the monitor and his staff has

19  been appropriately spent in dealing with whatever the tasks

20  were that had to be done during that month.

21     With respect to Apple's request that the Court in some

22  way limit what the monitor is going to do going forward, number

23  one, to the extent that there is an absence of specifics, other

24  than a comment made today that there should be no more

25  interviews, it seems to me, first of all, we have absolutely no

1    record on which to deem that to be an appropriate request.

2              Number two, inherent in a monitorship of this sort is

3    some fairly broad discretion on the part of the monitor in

4    conducting the inquiries that he has been assigned by the

5    Court.  Indeed, I note a comment made by Apple's counsel that

6    he wishes that Apple were not put in a position to have to

7    continually run to the Court.

8              The short answer is Apple does not have to continually

9    run to the Court.  It is apparent that the monitor must be able

10   as his investigation proceeds-- and, yes, there will be

11   fact-finding inevitably-- to determine step by step what

12   additional information he requires and how best to achieve and

13   obtain that information.  Obviously he should work, and

14   necessarily has to work, in consultation with Apple since Apple

15   will, in large measure or complete measure be the source of

16   that information.

17             It is certainly true, as Judge Cote indicated in one

18   of her orders, that the monitorship is designed to not impose

19   undue burdens on Apple's ability to conduct its business, but

20   the conducting of interviews, including numerous interviews,

21   whether they span an hour or an hour and a half, two hours or

22   even longer, can hardly be said to demonstrate any failure by

23   the monitor to comply with that general point.

24             The comment-- which, again, has been invoked by Apple

25   several times-- about using a light touch is a reflection of

E59BUSAC                        Oral Argument

1    the fact that the monitor's scope of responsibilities is

2    limited, and specifically limited so that it does not include

3    an investigation of whether Apple is now complying with the

4    antitrust laws.  But to the extent that the monitor has very

5    specific tasks to perform and specific issues to deal with, he

6    must be given some fairly broad discretion in deciding how to

7    proceed.

8            As I said before, obviously Apple has a right under

9    the judgment and orders of the Court to object where it deems

10   it appropriate to object.  And we will deal -- if there are

11   future objections, we will deal with them properly and

12   appropriately once they've been vetted also by the Department

13   of Justice.

14           Another matter again relating to fees, which may be

15   necessary to deal with at this point so as to avoid future

16   disagreements, there is a suggestion in Apple's letter to the

17   Court that it ought not be the case that if the monitor gets

18   into a disagreement with Apple, including over fees, that the

19   monitor should be able to bill for the time spent in resolving

20   those disputes.

21           The short answer to that is the monitor is

22   appropriately compensated where the monitor takes a position in

23   a dispute of that sort that has at least some colorable basis.

24   Indeed, if you want an analogy, the courts, including the

25   Second Circuit, have long said that in the context of the

E59BUSAC                        Oral Argument

1   statutory fees awards, the party that seeks the fees is usually

2   entitled to fees, as the cliche goes, fees on fees; that is,

3   fees expended in an effort to obtain the underlying award

4   fees.

5            So that, at least, is a clarification that you could

6   at least now put into your plans as you decide what you want to

7   do on Apple's end in terms of objections and the like.

8            Let me just go through my notes briefly to see if

9   there are any other matters that we need deal with at this

10  time.

11           (Pause)

12           THE COURT:  I think we've covered what I've had to

13  say.

14           Are there any other issues we need to deal with at

15  this time?

16           MR. REILLY:  I don't have any, your Honor.

17           MR. BUTERMAN:  Not that we're aware of, your Honor.

18           THE COURT:  Okay.  Thank you, all.

19           (Adjourned)

20

21

22

23

24

25