UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE ELECTONIC BOOKS ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 11-md-02293 (DLC)<br>ECF Case<br><br><u>CLASS ACTION</u> |

**CLASS MEMBER DIANNE YOUNG ERWIN'S OBJECTION
TO PROPOSED SETTLEMENT**

Class member Dianne Young Erwin objects to the proposed Apple e-books settlement as follows:

## PRELIMINARY STATEMENT

By way of a brief procedural history, "Plaintiffs the United States of America ("DOJ") and thirty-three states and U.S. territories … filed these antitrust suits on April 11, 2012, alleging that defendant Apple Inc. ("Apple") and five book publishing companies conspired to raise, fix, and stabilize the retail price for newly released and bestselling trade e-books in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1 … and various state laws." Opinion and Order, *United States v. Apple Inc.*, Case No. 12-cv-02826 (S.D.N.Y. July 10, 2013), ECF No. 326 ("Liability Finding") at 4. The DOJ and State Attorneys General went to trial against Apple on these claims between June 3 to 20, 2013, and obtained a victory culminating in the Liability Finding against Apple.

The rigorous and detailed Liability Finding is owing to the hard work of this Court and the collective talents of the DOJ and State Attorneys General. The Liability Finding formed a solid, factual bedrock for this litigation that substantially reduced the risk of a bad outcome for the injured consumers and, by extension, for class counsel. This is not to say class counsel got a completely free ride. Among other things, class counsel obtained a recent class certification order in favor of the class and also defeated Apple in an important matter pertaining to its expert opinions. *See* Opinion and Order Granting Class Certification and Denying Motion to Exclude Expert Opinion (Dkt. #471) (March 28, 2014); *see also* Opinion and Order Granting, in Part, Plaintiffs' Motion to Exclude Apple's Expert Opinions (Dkt. #586) (March 28, 2014). Class counsel also prepared for trial in this class action that was scheduled to start on August 25, 2014, but that did not take place due to the settlement (memorialized in the Memorandum of

Understanding on June 16, 2014 and the Apple Settlement Agreement on July 10, 2014). Notwithstanding the work performed by class counsel, it is fair to say that this is primarily government-driven litigation where the government succeeded in winning a substantial trial victory against Apple that paved the way for a likely $674 million recovery should this case be allowed to proceed to a damages trial.

This is a complex and unusual proposed settlement. It is similar in certain respects to a high-low settlement agreement whereby, in general, a plaintiff and defendant agree that if the plaintiff wins then the plaintiff agrees in advance to take the "high" settlement amount and if the plaintiff loses then the plaintiff agrees to take the "low" amount. *See, eg., Bath Junkie Branson, LLC v. Bath Junkie, Inc.*, 528 F.3d 556, 562 n.5 (8th Cir. 2008) ("A 'high low' settlement is an agreement that the plaintiff will recover no less than a certain amount and no more than a certain amount no matter what the jury actually awards"). It is superficially different because this proposed settlement is not triggered by the outcome of a trial but an appeal of the Liability Finding against Apple. It is substantively different because the proposed settlement puts a ceiling on the plaintiffs' damages without providing a corresponding floor. Under the proposed settlement, if the plaintiffs lose the appeal of the Liability Finding they get nothing – precisely what they would get if they lose the appeal in the absence of the settlement. Most important, unlike a high-low agreement, the proposed settlement provides a middle outcome (the "Remand Scenario" addressed below) whereby a remand for a new trial results in the consumers being forced to accept an incredibly meager $50 million, which corresponds to between $0.07 and $0.09 per non-Best Seller E-books and $0.32 to $0.81 per Best Seller E-book. Class Notice at 7.

The relief available under the proposed settlement depends upon the outcome of the pending appeal of the Liability Finding. The Class Notice summarizes that relief as follows:

- The Apple Settlement, if approved, provides for three possible outcomes, depending on what happens in Apple's appeal of the Court's July 10, 2013 decision that Apple violated the antitrust laws ("Liability Finding").

- First, if the Liability Finding is upheld on appeal, Apple will pay $400 million to Eligible Consumers.

- Second, if the Liability Finding is sent back to the District Court for a new trial or for reconsideration of whether Apple violated the antitrust laws, Apple will pay $50 million to Eligible Consumers.

- Third, if the Liability Finding is reversed and the case dismissed, Apple will make no payments to Eligible Consumers.

Class Notice at para. 12. In addition, class counsel and the Attorneys General negotiated a separate fund to pay their attorneys' fees:

- The Apple Settlement also provides for payment to Class Counsel for attorneys' fees and expenses and payment to the Attorneys General for attorney fees, expenses and payment for release of enforcement claims. Payments to Plaintiff States and to Class Counsel are also subject to three possible outcomes, depending what happens in the appeal of the Liability Finding.

- First, if the Liability Finding is upheld on appeal, Apple will pay $20 million to Plaintiff States and $30 million to Class Counsel for attorneys' fees and expenses.

- Second, if the Liability Finding is sent back to the District Court for a new trial or for reconsideration of whether Apple violated the antitrust laws, Apple will pay $10 million to Plaintiff States and $10 million to Class Counsel for attorneys' fees and expenses.

- Third, if the Liability finding is reversed and the case is dismissed, Apple will make no payments to Plaintiff States or to Class Counsel. Funds to pay these amounts do not come out of the money that will be used to pay Eligible Consumers.

Class Notice at para. 12. As the Court explained in its Preliminary Approval Order:

> The amount provided to eligible consumers under the Settlement Agreement is contingent upon whether this Court's Liability Finding against Apple is ultimately affirmed on appeal. If it is, Apple is to pay $400 million to eligible consumers and $50 million

> in attorneys' fees to plaintiffs' counsel. If the Liability Finding is vacated or reversed and remanded for reconsideration or retrial on the merits (the "Remand Scenario"), Apple will pay $50 million to consumers and $20 million in attorneys' fees. If the Liability Finding is reversed, Apple will pay nothing.

Memorandum Opinion and Order at 3 (Dkt #651) (August 1, 2014) (the "Preliminary Approval Order").

## ARGUMENT

**The Proposed Settlement Is Not Fair, Adequate and Reasonable.**

Under Rule 23(3)(2) of the Federal Rules of Civil Procedure, a proposed class action settlement may only be approved if it is shown to be "fair, adequate and reasonable." "The [C]ourt must review the negotiating process leading up to the settlement for procedural fairness, to ensure that the settlement resulted from an arm's-length, good faith negotiation between experienced and skilled litigators." *Charron v. Weiner*, 731 F.3d 241, 247 (2d Cir. 2013) (citations omitted), *cert. denied*, 134 S. Ct. 1941 (2014). "In class-action settlements, the adversarial process—or what the parties here refer to as their 'hard-fought' negotiations—extends only to the amount the defendant will pay, not the manner in which that amount is allocated between the class representatives, class counsel, and unnamed class members. For the economic reality [is] that a settling defendant is concerned only with its total liability, and thus a settlement's allocation between the class payment and the attorneys' fees is of little or no interest to the defense…. And that means the courts must carefully scrutinize whether [class counsel's and the named representatives'] fiduciary obligations have been met." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 717-18 (6th Cir. 2013) (internal quotations omitted).

The Court must also analyze substantive fairness considering the following nine factors (the "*Grinnell* factors"):

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). While satisfying *Grinnell*-type factors is necessary, doing so is not sufficient by itself to demonstrate settlement fairness. *See, e.g., Pampers, supra; Bluetooth, infra.*

"In reviewing a proposed settlement, a court should not apply any presumption that the settlement is fair and reasonable." Am. Law Institute, *Principles of the Law of Aggregate Litig.* § 3.05(c) (2010). "The burden of proving the fairness of the settlement is on the proponents." *Pampers*, 724 F.3d at 718 (compiling cases and authorities). An actual showing is required, beyond a court's "complete confidence in the ability and integrity of counsel." *Day v. Persels & Assocs., LLC*, 729 F.3d 1309, 1315 (11th Cir. 2013). The proponents of this settlement have not satisfied their burden of proving fairness, and objection is made on that basis.

**The Affirmed Scenario**

The Affirmed Scenario occurs if the Liability Finding against Apple is affirmed. Under the proposed settlement, the consumers receive $400 million, class counsel receives $30 million and the Attorneys General receive $20 million. In the absence of a settlement, the likely outcome is Apple would ultimately pay $674 million (treble damages minus the $166 million already paid by the other settling defendants). Thus, the consumers are worse off. But not nearly as worse off as in the Remand Scenario, addressed below.

**The Remand Scenario**

The Remand Scenario occurs in the event the Liability Finding is sent back to this Court for a new trial or for reconsideration of whether Apple violated antitrust laws. (Apple's appeal has requested remand before a different district judge as alternative relief. Apple Opening Brief at 63, No. 13-3741(L) (2d Cir.)). Under the proposed settlement, the consumers receive $50 million under this scenario, class counsel receives $10 million and the Attorneys General receive $10 million. In the absence of a settlement, the consumers could be able to re-litigate the case and could still recover on a retrial the same $674 million. There is such an incredible gap between $50 million and $674 million that this cannot be considered to be a fair trade for the consumers giving up the right to re-try this case against Apple and to roll the dice on what has been described as a very strong liability case with recoverable damages of $674 million after reductions for the prior Publisher settlement.

Class counsel seeks to justify this scenario on the basis that they believe it is unlikely to occur. "Plaintiffs emphasize that they 'strongly believe' that the Remand Scenario is unlikely to occur. Class counsel repeated this justification in a letter of July 30." Preliminary Approval Order at 4. The unfairness of this scenario appears to be conceded and the only defense of this scenario is that it is unlikely to occur. Class counsel's prediction that this outcome won't happen cannot save this settlement. Class counsel could just have easily have opined that they "strongly believe" the Affirmed Scenario will not occur and the Remand Scenario would occur. It's just class counsel's hopeful guess that the Remand Scenario won't happen (and the opposite of Apple's hopeful guess). The existence of the Remand Scenario and the possibility that it may occur taints the fairness of the entire settlement and the settlement should not be approved for this reason alone.

The problem is especially pernicious because class counsel are shunting almost the entire risk of the Remand Scenario on the consumers, while still seeking to collect their full lodestar. If the Remand Scenario is so unlikely, then the risk should be shared equally: if the consumers are required to surrender 87.5% of their Affirmed Scenario benefit in the case of the Remand Scenario, the attorneys should also be required to surrender 87.5% of their Affirmed Scenario benefit. That they instead hedge their bets at the expense of the consumers demonstrates that they believe the risk greater than they self-servingly represent.

**The Nothing Scenario**

The Nothing Scenario occurs in the event the Liability Finding is reversed and the case is dismissed. Under the settlement, the class gets nothing. In the absence of the settlement, the class gets nothing. This scenario is equal under both the settlement and the absence of a settlement, but the settlement as a whole must take into account the complete absence of compensation in the event of a loss for the consumers. Most settlements compensate the plaintiffs for the risk of losing, they do not leave the plaintiffs with nothing in the event plaintiffs lose the case. As discussed above, this is the "high" without the "low." This fact actually simplifies the analysis of the Affirmed and Remand Scenarios, which must therefore stand or fall - independently - based upon the simple comparison of whether those options are for the consumers better or worse that no settlement at all.

**The Proponents Have Not Satisfied Their Burden Of Proof On Adequacy.**

Rule 23(a)(4) of the Federal Rules of Civil Procedure requires that in a class action, "the interests of the class" must be "fairly and adequately protect[ed.]" The existence of adequate Rule 23(a)(4) representatives has been held to be a Constitutional requirement. *Hansberry v. Lee*, 311 U.S. 32, 44-45 (1940); *see also, e.g., Nat'l Ass'n for Mental Health, Inc. v. Califano,*

717 F.2d 1451, 1457 (D.C. Cir. 1983); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 796 (3d Cir.), *cert. denied*, 516 U.S. 824 (1995).

Rule 23(a)(4) requires that class representatives protect the unnamed members of the class from the possibly competing interests of class counsel. *See In re Monster Worldwide, Inc. Secs. Litig.*, 251 F.R.D. 132, 135-36 (S.D.N.Y. July 14, 2008) (a "willing pawn of counsel" is not an adequate class representative); *see also Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014); *Redman v. RadioShack Corp.*, -- F.3d --, 2014 WL 4654477 (7th Cir. Sep. 19, 2014); *but see In re Ivan F. Boesky Sec. Litig.*, 948 F.2d 1358, 1366 (2d Cir. 1991); *Hayes v. Harmony Gold*, 509 Fed. Appx. 21 (2nd Cir.) (not selected for publication in the Federal Reporter), *cert. denied*, 134 S. Ct. 310 (2013).

It is unclear the extent to which the class representatives, Anthony Petru, Thomas Friedman, and Shane Davis, were involved in negotiating and reviewing the June 16 Memorandum of Understanding and/or the July 10 Apple Settlement Agreement before they were entered or whether they were present and participated at the mediations culminating in those agreements. The class notice says generally they support the settlement. However, the publicly-available settlement agreement on the settlement website does not contain the signatures of the class representatives, nor does it even contain signature blocks for them. (If they did sign the agreements, objection is made on the ground that that information was not provided on the settlement website on grounds that it is material information). In short, it is not clear what personal involvement the class representatives had in supervising the settlement process. In addition, the class notice does not indicate incentive awards will be sought for the class representatives. To the extent an incentive award is sought it is opposed to the extent it is

excessive and based upon a lack of notice to the class that incentive awards would be sought with an opportunity to object.

Objection is made to the adequacy of the class representatives. The proponents have not satisfied their burden of proof that the class representatives have adequately supervised class counsel and this settlement process.

**Class Counsel's Request For Approval Of Its Attorneys' Fee Award Should Be Denied.**

Attorneys' fee awards should "directly align[] the interests of the class and its counsel." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (2d Cir. 2005) (quotation omitted). Here, a severable fee structure was negotiated as part of the settlement agreement. As this Court explained, "If [the Liability Finding is affirmed ("Affirmed Scenario")], Apple is to pay $400 million to eligible consumers and $50 million in attorneys' fees to plaintiffs' counsel. If the Liability Finding is vacated or reversed and remanded for reconsideration or retrial on the merits (the "Remand Scenario"), Apple will pay $50 million to consumers and $20 million in attorneys' fees." Preliminary Approval Order at 3. Thus, instead of a single fund for each settlement scenario, the settlement contains separate, segregated funds.

In the Affirmed Scenario, there are 3 separate funds: $400 million for plaintiffs, $30 million for class counsel and $20 million for the Attorneys General. In the Remand Scenario, there are likewise three funds: $50 million for plaintiffs, $10 million for class counsel and $10 million for the Attorneys General.

It should be noted at the outset that Apple is indifferent as to the allocation of any settlement payments between the consumers and attorneys' fees. *See, eg., Malchman v. Davis*, 761 F.2d 893, 908 (2d Cir. 1985) (Jon O. Newman, concurring), *cert. denied*, 475 U.S. 1143 (1986); *see also Pampers*, 724 F.3d at 717-18. The existence of separate funds, therefore, should

be viewed as what it is: an artifact of class counsel's deliberate choice.[1] We object to the "questionable provision" of the separate fund: this Court should require that these funds be included in the common fund, with any reduction of the excessive attorneys' fee reverting to the consumers rather than Apple. *Eubank*, 753 F.3d at 723. If the parties will not make this modification, the settlement should be rejected.

This proposed settlement contains a "clear sailing clause," which stipulates that attorneys' fee awards up to a certain amount will not be contested by Apple. "Such a clause by its very nature deprives the court of the advantages of the adversary process." *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991). A clear sailing clause lays the groundwork for class counsel to "urge a class settlement ... on a less-than-optimal basis in exchange for red-carpet treatment on fees." *Id.* at 524; *accord Bluetooth*, 654 F.3d at 947. This proposed settlement also contains a "kicker arrangement," which stipulates that any reverting attorneys' fees goes to Apple and not the consumers. *See Bluetooth*, 654 F.3d at 949. "The clear sailing provision reveals the defendant's willingness to pay, but the kicker deprives the class of that full potential benefit if class counsel negotiates too much for its fees." *Id.* The kicker, like

---

[1] *GMC Trucks*, 55 F.3d at 820 (A severable fee structure "is, for practical purposes, a constructive common fund."); *Id.* at 821 ("[P]rivate agreements to structure artificially separate fee and settlement arrangements cannot transform what is in economic reality a common fund situation into a statutory fee shifting case."); *see also Redman, supra*; *Eubank, supra*; *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947-49 (9th Cir. 2011). The practical effect of this is that class counsel is taking a fee not just from the recovery in the Class-States, but also from the Non-Class States. Class counsel also justifies the percentage of its proposed fee award based on what consumers in the Non-Class States would receive. Memorandum (Dkt # 666) at 13-14 ("The following chart compares the percentage of fees that Apple has agreed to pay Class Counsel as a percentage of the benefit to be conferred first to all consumers, and second to just the twenty-three states represented by Class Counsel"). Objection is made to class counsel's fee, which is part of a constructive common fund that includes the settlement payments in the Non-Class States. It is unfair and unreasonable for class counsel to be paid any attorneys' fees out of the recovery in the Non-Class States or that the settlement even includes the possibility that that might occur.

the clear-sailing agreement, is a sign "that class counsel have allowed pursuit of their own self-interests … to infect the negotiations." *Id.* at 947.

In an ordinary common fund settlement with unsegregated fees, the District Court can correct any allocation issues because any fees not paid to class counsel simply reverts to the plaintiffs. *See, e.g., In re Citigroup Sec. Litig.*, 965 F. Supp. 2d 369 (S.D.N.Y. 2013) (reducing excessive fee request by $26.7M for benefit of shareholders). If "class counsel agreed to accept excessive fees and costs to the detriment of class plaintiffs, then class counsel breached their fiduciary duty to the class." *Lobatz v. U.S. West Cellular of Cal., Inc.*, 222 F.3d 1142, 1147 (9th Cir. 2000). Objection is made on this basis. *But see Blessing v. Sirius XM Radio Inc.*, 507 Fed. Appx. 1 (2d Cir. 2012) (not selected for publication in Federal Reporter).

In addition to the structural problems associated with the attorneys' fee request, the amounts sought by class counsel under both the Affirmed and Remand Scenarios are excessive using either a percentage of recovery or lodestar analysis. Reasonableness is the primary question in determining an award of attorneys' fees. The Second Circuit has set forth the following six factors to determine the reasonableness of a fee application: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).

Class counsel attempts to justify the amount of their fee request based on a percentage of recovery analysis. *See* Memorandum at 12-22 (Dkt #666). According to class counsel, "The percentage method permits the judge to focus on the quality of the lawyers' efforts and the benefits conferred to the class rather than on how many hours the attorneys billed. The hourly-

rate approach frequently bears 'little or no relationship to the value of the services performed in anything but the most routine work. A flash of brilliance by a trial lawyer may be worth far more to his clients than hours or days of plodding effort.'" *Id.* at 12. Here, it is hard to see that flash of brilliance by class counsel that dramatically altered the course of this litigation in favor of the class, let alone the consumers in the Class States. *See supra.* The percentages sought by class counsel are excessive and are not justified under either the Affirmed or Remand Scenarios, both of which are proposed megafund settlements and cannot be fairly compared to percentages in lesser settlements. Specifically, with respect to the Remand Scenario, a megafund of $70 million does not justify a $20 million award. *E.g., In re Synthroid Mktg. Litig.*, 264 F.3d 712 (7th Cir. 2001).

Class counsel also attempts to justify their fee request based on a lodestar cross-check. Memorandum at 23 (Dkt #666). The Second Circuit has held that an application for attorney's fees justified by hours worked must be supported by "contemporaneous time records" that "specify, for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). Not even a District Court's personal observations of an attorney's work can substitute for the required contemporaneous time records. *Scott v. City of New York*, 643 F.3d 56, 58 (2d Cir. 2011). The burden is on the attorney requesting fees to provide sufficient evidence, including production of contemporaneous time records or sufficient explanation for their absence. *Lewis v. Coughlin*, 801 F.2d 570, 577 (2d Cir. 1986) (citations omitted). The Court should apply this standard to the lodestar cross-check and require this quantum of proof and objection is made to the extent class counsel did not or does not provide these records. These detailed records are also required to ensure that hours spent working on the Publisher case are not accidentally included in the

lodestar in this case. Objection is made to the extent insufficient evidence exists to support class counsel's claimed lodestar.

Moreover, the lodestar multipliers sought by class counsel are excessive under the circumstances of this case. If the settlement is approved, the Remand Scenario is so bad, and class counsel has gone out on a limb saying how unlikely it is, they should have a significantly-discounted, negative multiplier. In any event, a positive multiplier is not justified in either of the two proposed settlement scenarios. The attorneys' fee application of class counsel should be denied.

## OBJECTOR INFORMATION AND STANDING

Dianne Young Erwin is a class member and, therefore, has standing to object. *See* Exhibits A and B, which are attached hereto and incorporated herein by reference as though set forth in full. Class member Dianne Young Erwin's Settlement I.D. Number is AP00526367. Her current address is 10239 Scull Creek Drive, Austin, Texas 78730; her telephone number is (727) 403-8884. Prior to June 2013, she lived at 408 Harbor Drive S., Indian Rock Beach, Florida 33785. Objector is represented by undersigned counsel and Bandas Law Firm, PC. Chris Bandas of Bandas Law Firm, PC does not presently intend on making an appearance for himself or his firm. Objection is made to the Apple Settlement in *State of Texas, et al. v. Penguin Group (USA) Inc., et al.*, Case No.12-cv-3394 and *In re: Electronic Books Antitrust Litigation*, Case No. 11-MD 2293.

Objector does not currently plan to attend the fairness hearing either in person or through counsel but asks that this objection be submitted to the Court and ruled on at that time. Objector joins the objections and arguments of any other objectors or *amici* to the extent those objections are not inconsistent with this one. Objector objects to any settlement provision that purports to

limit the right of class members to object or appeal. Objection is made to any procedures or requirements to object that are not satisfied by this objection on grounds that any such procedures or requirements are unnecessary, unreasonably burdensome and calculated to reduce the number and quality of objections.

## CONCLUSION

This proposed settlement should be rejected. In the event it is approved, class counsel's request for fees should be denied.

Dated: October 30, 2014                    Respectfully submitted,


/s/ *David Stein*
David Stein
Samuel and Stein
38 West 32nd Street, Suite 1110
New York, NY 10001
Phone: (212) 563-9884
Fax: (212) 563-9870
Email: dstein@samuelandstein.com

*Counsel for Objector/Class Member*
*Dianne Young Erwin*

For the foregoing reasons, I object to this settlement.

DATED: October 30, 2014

*[signature]*

Dianne Young Erwin
10239 Scull Creek Drive
Austin, Texas 78730
(727) 403-8884

## PROOF OF SERVICE

I hereby certify that on this day I electronically filed this objection and its attached exhibits using the CM/ECF filing system thus effectuating service of such filing on all ECF registered attorneys in this case.

I further certify that I mailed this objection and its attached exhibits to the following addresses.

Apple E-Books Antitrust Litigation
P.O. Box 1851
Faribault, Minnesota 55021-1899

Office of the Attorney General of Texas
Chief, Antitrust Section
300 W. 15th St., 7th Floor
Austin, Texas 78701

Office of the Attorney General of Connecticut
Chief, Antitrust Section
55 Elm Street
P.O. Box 120
Hartford, Connecticut 43215-3428

Jeff D. Friedman
Gagens Berman Sobol Shapiro LLP
715 Hears Avenue, Suite 202
Berkeley, California 94710

Gail E. Lees
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, California 90071

DATED this 30th day of October, 2014

/s/ *David Stein*