October 12, 2015

The Honorable Denise Cote
United States District Judge
Southern District of New York
Daniel P. Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

      Re:    *United States v. Apple Inc., et al.*, No. 12-cv-2826 (DLC)
             *State of Texas v. Penguin Group (USA), Inc.*, No. 12-cv-3394 (DLC)

Dear Judge Cote:

On behalf of the United States and the Plaintiff States (collectively, "Plaintiffs") and Apple Inc., we write in response to the Court's October 5, 2015 Order instructing the parties to provide our "positions in writing on whether the Monitorship should be extended." Neither Plaintiffs nor Apple recommends extending the Monitorship, as more fully explained in separate statements below.

Statement by Plaintiffs

After reviewing the External Compliance Monitor's ("Monitor's") assessment of Apple's antitrust compliance policies, procedures, and training, and speaking with the Monitor and Apple, Plaintiffs do not apply to extend the Monitor's term. Although the Monitor faced a challenging relationship with Apple, that did not prevent him from fulfilling the fundamental purpose of the Monitorship: ensuring that Apple implemented a significantly strengthened antitrust compliance program.

Plaintiffs' decision not to recommend that the Monitor's term be extended was not an easy one. Apple never embraced a cooperative working relationship with the Monitor. As the Monitor's reports detail, Apple often initially opposed or delayed responding to the Monitor's requests. This hampered the Monitor's ability to expeditiously assess and make recommendations regarding Apple's antitrust policies, procedures, and training.

In spite of the challenges he encountered, the Monitor was not deterred from evaluating Apple's antitrust compliance program, recommending improvements, and seeing his recommendations implemented. The Monitor observes that Apple has now implemented meaningful antitrust policies, procedures, and training programs that were obviously lacking at the time Apple participated in and facilitated the horizontal price-fixing conspiracy found by this Court. Apple's failure to adopt a more constructive working relationship with the Monitor regrettably required the Monitor to expend considerably more time and resources than otherwise would have been necessary to carry out his duties, but ultimately did not prevent the Monitor from satisfying his responsibilities or Apple from greatly improving its antitrust policies, procedures, and training.

One measure of the Monitor's impact, and Apple's antitrust compliance improvements, is Apple's agreement to implement the vast majority of the Monitor's numerous recommendations.

Plaintiffs also are prepared to see the Monitorship expire because Apple's obligations under the Final Judgment continue unabated, as does this Court's jurisdiction to oversee compliance with the Final Judgment under Section VIII and Plaintiffs' authority to scrutinize Apple's compliance pursuant to Section VII. Of greatest significance with respect to ensuring Apple's ongoing antitrust compliance, the Antitrust Compliance Officer ("ACO"), a position created under Section V of the Final Judgment, will remain in place at least until the expiration of the Final Judgment in three years. Under the Final Judgment, the Monitor has focused on evaluating Apple's antitrust policies, procedures, and training. The ACO, on the other hand, is responsible for supervising *all* of Apple's antitrust compliance efforts. As an Apple employee, the ACO is not constrained by any issues of privilege that have limited the Monitor's ability to evaluate fully Apple's antitrust compliance in practice. The Final Judgment further ensures that the ACO operates with significant independence by requiring that she report directly to the Audit and Finance Committee of Apple's Board. We share with the Monitor some reservations about the authority and independence that Apple, in practice, has granted to the ACO, but are encouraged by recent changes implemented by Apple to address those concerns. We will continue to make use of our authority under Section VII of the Final Judgment to obtain information concerning Apple's compliance with the ACO requirements, as well as other provisions of the Final Judgment, and will bring to the Court's attention concerns we have about any lack of compliance by Apple.

In arriving at our conclusion not to recommend an extension of the Monitor's term, we ultimately give greater weight to the Monitor's assessment that Apple has put in place a meaningful antitrust compliance program than to the difficult path it took to achieve this result.

Statement by Apple

Over the past two years, Apple has developed and implemented a comprehensive, engaging, and effective Antitrust Compliance Program. Among other things, Apple published a substantially revised antitrust and competition policy, distributed an innovative and interactive antitrust reference tool through its Business Conduct "eBook," created an interactive comprehensive online training course with relevant Apple-specific scenarios for over 10,000 employees, provided over 35 live antitrust compliance trainings, created a new internal website dedicated to antitrust and competition law, conducted a more formal risk assessment related to antitrust and competition issues, engaged PricewaterhouseCooper ("PwC") to evaluate its overall compliance program, and redoubled its commitment to "promot[ing] a culture of compliance." Fourth Report of the External Compliance Monitor, dated October 5, 2015, at 43-44 ("Report").

Mr. Bromwich, the External Compliance Monitor ("ECM"), was appointed to "assess whether Apple's internal antitrust policies and procedures . . . are reasonably designed to detect and prevent violations of the antitrust laws" and "whether Apple's training program . . . is sufficiently comprehensive and effective." Final Judgment § VI.C. In his Report, the ECM's "overall assessment" "is that Apple's antitrust compliance program is much stronger and more complete than it was when the Court issued the Final Judgment." Report at 2. The Report catalogues Apple's various achievements and improvements, including, among other things:

- The ECM's "positive assessment" of Apple's Antitrust and Competition Law Policy, the "most important of Apple's antitrust policy documents," and his conclusion that Apple has "fully implemented [the] recommendations regarding the substantive content of the Policy, and it has continued to work to improve the Policy's dissemination throughout the company." Report at 50, 52.
- The "significant improvements to procedures aimed at preventing and detecting potential antitrust violations," which were described as "appropriate in scope." *Id.* at 102.
- Apple's "[u]pdated Investigations Procedure is 'reasonably designed to detect and prevent violations of the antitrust laws.'" *Id.* at 63-64.
- "Apple has satisfied [the] recommendations related to its live antitrust training," and "the live training sessions [] monitored during this reporting session were interactive, engaging, and appropriately tailored to the responsibilities of the respective audiences." *Id.* at 86.
- Apple's "online antitrust training course, which approximately 10,000 employees took in either 2014 or 2015, is useful and effective." *Id.* at 105.
- Executive Team members are "attuned to potential antitrust issues," and indicated that they "proactively seek the advice of counsel when they believes actions they are considering could create antitrust risk, and instruct their employees to take a similarly cautious approach in their activities." *Id.* at 90.

The ECM's findings result from an exhaustive examination of Apple's policies, procedures, and trainings. In total, the ECM conducted over 100 interviews; observed and evaluated almost every antitrust training required under Section V.C. of the Final Judgment; scrutinized Apple's revised policies and procedures; reviewed thousands of pages of Apple documents; and prepared four reports, totaling nearly 400 pages of analysis and containing over 100 recommendations. As the ECM acknowledges, Apple incorporated almost all of these recommendations into its program. *See* Report Exs. A and B; *see also id.* at 107 ("[d]uring this reporting period, Apple made substantial progress in developing and improving its Antitrust Compliance Program and in implementing the numerous recommendations we made in our previous reports"); *id.* at 52 ("[Apple] has fully implemented our recommendations regarding the substantive content of the [Antitrust and Competition Law] Policy"); *id.* at 57 ("Apple has satisfied our recommendation that it develop procedures to guide the periodic review and update of the components of the Antitrust Compliance Program"); *id.* at 63 ("Apple has now satisfied our recommendations regarding its procedures for detecting, reporting, and investigating potential violations of the antitrust laws and the Final Judgment."). Additionally, Apple has accepted all but one of the ECM's further recommendations in the Report and it has developed a related "Implementation Plan" for incorporating these new suggestions.

In light of the foregoing, Apple respectfully submits that the ECM has completed his "assess[ment of] the appropriateness of the compliance programs adopted by Apple and the means used to communicate those programs to its personnel," and there is no need to extend his term. *See United States v. Apple*, No. 13–3741, Stay Order, 2014 WL 1623734, *1 (2d Cir. Feb. 10, 2014) ("Stay Order"); *United States v. Apple*, 787 F.3d 131, 137 (2d Cir. May 28, 2015) (confirming that "[t]his narrow interpretation of the injunction is [] the law of the case.").

Apple acknowledges that its relationship with the ECM has been rocky at times. There have been occasions when Apple exercised its rights under the Final Judgment to delineate the

appropriate scope of the ECM's mandate and the impact of that scope on issues of confidentiality and privilege.  Apple respectfully disagrees with the ECM's charge that Apple's "lack of willing cooperation with [the ECM's] court-mandated efforts" "has cast an unnecessary shadow over meaningful progress in developing a comprehensive and effective antitrust compliance program."  Report at 108.  Apple asserted its rights in good faith, and, whatever the nature of the past skirmishes between Apple and the ECM, these disagreements do not diminish the fact that Apple, in collaboration with the ECM, has met the Court's challenge to create a world-class antitrust compliance program that will serve as a model for other companies.

The ECM also asserts that Apple delayed in providing certain documents and information.  *Id.* at 1, 74.  While nearly all materials were provided to the ECM promptly and without delay, there were rare instances in which Apple did not produce documents within the timeframe it had discussed with the ECM.  However, these delays were in no manner intended to frustrate the work of the ECM — rather, they were the result of Apple, under the leadership of the ACO, taking additional time to ensure not only that the substance of the policies and procedures being created with the assistance of the ECM were satisfactory, but that the policies and procedures would be effective within the broader context of Apple's business and compliance function.  All materials (including a number of separate procedure documents) were provided to the ECM in sufficient time for assessment by the ECM and inclusion in his final report.

Apple will continue to comply with all of its obligations under the Final Judgment, including those that pertain to the ACO, as it builds on the strong foundation of the Antitrust Compliance Program put in place over the past two years.  Under the ACO's supervision, Apple will hold annual training sessions, conduct periodic antitrust risk assessments and audits, and administer its enhanced Antitrust Compliance Program.  Apple therefore requests that the Court not extend the monitorship beyond the two-year appointment provided for under Section VI.A. of the Final Judgment.

Respectfully submitted,

By: /s/ Nathan P. Sutton
    Nathan P. Sutton
    Daniel McCuaig
    U.S. Department of Justice
    Antitrust Division
    450 Fifth Street, NW, Suite 4000
    Washington, DC 20530
    (202) 353-2384
    nathan.sutton@usdoj.gov

    *On behalf of the United States*

By: /s/ Eric Lipman
    Eric Lipman
    Assistant Attorney General
    Office of the Attorney General of Texas
    P.O. Box 12548
    Austin, TX 78711
    (512) 463-1579
    eric.lipman@texasattorneygeneral.gov

By: /s/ W. Joseph Nielsen
    W. Joseph Nielsen
    Assistant Attorney General
    Office of the Attorney General of Connecticut
    55 Elm Street
    Hartford, CT 06106
    (860) 808-5040
    joseph.nielsen@ct.gov

By: /s/ Robert L. Hubbard
    Robert L. Hubbard
    Assistant Attorney General
    New York Attorney General's Office,
    Antitrust Bureau
    120 Broadway
    New York, NY 10271
    (212) 416-8267
    robert.hubbard@ag.ny.gov

    *On Behalf of the Plaintiff States*

By: /s/ Theodore J. Boutrous, Jr.
Theodore J. Boutrous, Jr.
Daniel G. Swanson
Gibson, Dunn & Crutcher, LLP
333 South Grand Avenue
Los Angeles, CA  90071
(213) 229-7000
tboutrous@gibsondunn.com

Cynthia E. Richman
Gibson, Dunn & Crutcher, LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036
(202) 955-8500

By: /s/ Matthew J. Reilly
Matthew J. Reilly
Simpson Thacher & Bartlett LLP
900 G Street NW
Washington, DC 20001
(202) 636-5500
matt.reilly@stblaw.com

*On behalf of Defendant Apple Inc.*

Copy:  Michael R. Bromwich